**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

SONTERRA CAPITAL MASTER FUND LTD.,
*et al.*,

        Plaintiffs,

     v.

CREDIT SUISSE GROUP AG, *et al.*,

        Defendants.

---

Case No. 15-cv-00871 (SHS)

**Oral Argument Requested**

---

### MEMORANDUM OF LAW OF DEFENDANT BLUECREST CAPITAL MANAGEMENT, LLP IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT

Douglass Maynard
Joseph Boryshansky
John Murphy
Katherine Porter
AKIN GUMP STRAUSS HAUER
& FELD LLP
One Bryant Park
New York, NY 10036
(212) 872-1000 (tel)
(212) 872-1002 (fax)

*Attorneys for Defendant BlueCrest*
*Capital Management, LLP*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT...................................................................................1

SUMMARY OF ALLEGATIONS ...............................................................................3

    I.    Allegations as to BlueCrest............................................................4

    II.   Allegations as to Jurisdiction over BlueCrest.........................................6

ARGUMENT .............................................................................................................6

    I.    THE COURT SHOULD DISREGARD PLAINTIFFS' IMPERMISSIBLE
GROUP PLEADING ALLEGATIONS AND THE ALLEGATIONS
REGARDING THE 2005 MESSAGE...................................................6

    II.   PLAINTIFFS FAIL TO PLEAD PERSONAL JURISDICTION OVER
BLUECREST. ........................................................................8

        A.    BlueCrest Is Not Subject to General Jurisdiction Because It Is Not
"At Home" in New York or Elsewhere in the United States. ....................9

        B.    Plaintiffs Have Failed to Allege Sufficient Contacts to Support
The Exercise of Specific Jurisdiction over BlueCrest. ...........................10

        C.    It Would Be Unreasonable to Exercise Jurisdiction over BlueCrest. ........14

    III.   PLAINTIFFS FAIL TO PLEAD A CLAIM AGAINST BLUECREST
UNDER THE SHERMAN ACT, CEA, OR RICO. ...............................15

        A.    Plaintiffs Fail to Plead a Claim Against BlueCrest under the
Sherman Act..........................................................................16

            i    Plaintiffs Do Not Allege BlueCrest's Involvement in Any
Scheme to Manipulate Bid-Ask Spreads (Claim 1)....................16

            ii    Plaintiffs Fail to Plead an Antitrust Agreement or
Conspiracy Involving BlueCrest (Claims 1 and 2)......................16

            iii   Plaintiffs' Antitrust Claims Are Barred by the Statute of
Limitations. ...................................................................18

        B.    Plaintiffs Fail to Plead a Claim Against BlueCrest under the
Commodities Exchange Act.......................................................19

            i    Plaintiffs Do Not Allege Commodity Manipulation by
BlueCrest (Claim 3). .......................................................19

            ii    Plaintiffs' Derivative Claims Against BlueCrest Also Fail
(Claims 4 and 5)............................................................21

iii    Plaintiffs' CEA Claims Against BlueCrest Are Time-Barred (Claims 3, 4, and 5)...................................................................22

C.    Plaintiffs Fail to Plead RICO Claims Against BlueCrest...........................22

i    Plaintiffs Fail to Plead That BlueCrest Committed Two or More Predicate Acts Constituting a Pattern of Racketeering Activity (Claim 6). .........................................................................23

ii    Plaintiffs Fail to Allege that BlueCrest Participated in the Operation and Management of a RICO Enterprise (Claim 6). .......................................................................................24

iii    Plaintiffs Fail to Plead a Claim for RICO Conspiracy (Claim 7). .......................................................................................25

CONCLUSION.............................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*7 West 57th Realty Co. v. Citigroup, Inc.*,
    No. 13-cv-981(PGG), 2015 WL 1514539 (S.D.N.Y. Mar. 31, 2015) ...............................13, 14

*Appalachian Enters., Inc. v. ePayment Solutions, Ltd.*,
    No. 01-cv-11502(GBD), 2004 WL 2813121 (S.D.N.Y. Dec. 8, 2004).....................................6

*Asahi Metal Indus. Co. v. Superior Court of Cal.*,
    480 U.S. 102 (1987).........................................................................................................15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).....................................................................................................15, 16

*BanxCorp v. Apax Partners, L.P.*,
    No. 10-cv-4769(SDW), 2011 WL 1253892 (D.N.J. Mar. 28, 2011)......................................17

*Bell Atl. v. Twombly*,
    550 U.S. 544 (2007).....................................................................................................16, 18

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002)..............................................................................................4

*Concord Assocs., L.P. v. Entm't Prop. Tr.*,
    No. 12-cv-1667(ER), 2014 WL 1396524 (S.D.N.Y. Apr. 9, 2014) ......................................7

*Cont'l Petroleum Corp. v. Corp. Funding Partners, LLC*,
    No. 11-cv-7801(PAE), 2012 WL 1231775 (S.D.N.Y. Apr. 12, 2012) ..................................25

*Cruz v. FXDirectDealer, LLC*,
    720 F.3d 115 (2d Cir. 2013).............................................................................................24

*Daimler AG v. Bauman*,
    134 S. Ct. 746 (2014).....................................................................................................9, 10

*Fox v. Boucher*,
    794 F.2d 34 (2d Cir. 1986)...............................................................................................12

*Gatt Commc'ns, Inc. v. PMC Assocs., L.L.C.*,
    711 F.3d 68 (2d Cir. 2013)...............................................................................................16

*Gross v. Waywell*,
    628 F. Supp. 2d 475 (S.D.N.Y. 2009)................................................................................7, 8

*Gucci Am., Inc. v. Weixing Li*,
    768 F.3d 122 (2d Cir. 2014)........................................................................................8, 9, 10

*Guo Jin v. EBI, Inc.*,
No. 05-cv-4201(NGG), 2008 WL 896192 (E.D.N.Y. Mar. 31, 2008) ...................................11

*Herbert v. HSBC Mortg. Servs.*,
No. 13-cv-0322(RER), 2014 WL 3756360 (E.D.N.Y. June 30, 2014) ...................................24

*Hoatson v. N.Y. Archdiocese*,
No. 05-cv-10467(PAC), 2007 WL 431098 (S.D.N.Y. Feb. 8, 2007) .....................................24

*In re Aluminum Warehousing Antitrust Litig.*,
No. 13-md-2481(KBF), 2015 WL 892255 (S.D.N.Y. Mar. 3, 2015) .....................................14

*In re Amaranth Natural Gas Commodities Litig.*,
587 F. Supp. 2d 513 (S.D.N.Y. 2008)....................................................................................7, 22

*In re Amaranth Natural Gas Commodities Litig.*,
730 F.3d 170 (2d Cir. 2013)................................................................................................19, 21

*In re Commodity Exch., Inc. Silver Futures & Options Trading Litig.*,
560 F. App'x 84 (2d Cir. 2014) ................................................................................................21

*In re Elevator Antitrust Litig.*,
502 F.3d 47 (2d Cir. 2007)........................................................................................................17

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
935 F. Supp. 2d 666 (S.D.N.Y. 2013) ................................................................................12, 19

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
No. 11-md-2262(NRB), 2015 WL 4634541 (S.D.N.Y. Aug. 4, 2015) ........................ passim

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
No. 11-md-2262(NRB), 2014 WL 6488219 (S.D.N.Y. Nov. 17, 2014) .................................19

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
962 F. Supp. 2d 606 (S.D.N.Y. 2013)................................................................................20, 21

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
27 F. Supp. 3d 447 (S.D.N.Y. 2014)........................................................................19, 20, 22

*In re Platinum & Palladium Commodities Litig.*,
828 F. Supp. 2d 588 (S.D.N.Y. 2011)........................................................................................8

*In re Terrorist Attacks on Sept. 11, 2001*,
714 F.3d 659 (2d Cir. 2013).................................................................................................8, 13

*Invamed, Inc. v. Barr Labs., Inc.*,
22 F. Supp. 2d 210 (S.D.N.Y. 1998).......................................................................................17

*Jazini v. Nissan Motor Co.*,
    148 F.3d 181 (2d Cir. 1998)..............................................................................14

*Johnson v. Nyack Hosp.*,
    86 F.3d 8 (2d Cir. 1996)...................................................................................18

*Kerik v. Tacopina*,
    64 F. Supp. 3d 542 (S.D.N.Y. 2014).................................................................23

*King Cnty., Wash. v. IKB Deutsche Industriebank, AG*,
    769 F. Supp. 2d 309 (S.D.N.Y. 2011)...............................................................14

*LaFlamme v. Societe Air France*,
    702 F. Supp. 2d 136 (E.D.N.Y. 2010) ..............................................................18

*Landgraf v. USI Film Prods.*,
    511 U.S. 244 (1994)..........................................................................................19

*Laydon v. Mizuho Bank Ltd.*,
    No. 12-cv-3419(GBD), 2015 WL 1515358 (S.D.N.Y. Mar. 31, 2015)..................9, 12, 13, 14

*Lippe v. Bairnco Corp.*,
    218 B.R. 294 (S.D.N.Y. 1998)..........................................................................24

*Lipsky v. Commonwealth United Corp.*,
    551 F.2d 887 (2d Cir. 1976)...............................................................................8

*McLaughlin v. Anderson*,
    962 F.2d 187 (2d Cir. 1992)..............................................................................24

*Medinol Ltd. v. Boston Scientific Corp.*,
    346 F. Supp. 2d 575 (S.D.N.Y. 2004)...............................................................25

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
    84 F.3d 560 (2d Cir. 1996)...........................................................................14, 15

*MLSMK Inv. Co. v. JP Morgan Chase & Co.*,
    737 F. Supp. 2d 137 (S.D.N.Y. 2010)...............................................................11

*Moss v. Morgan Stanley Inc.*,
    719 F.2d 5 (2d Cir. 1983)..................................................................................22

*Olde Monmouth Stock Transfer Co., Inc. v. Depository Tr. & Clearing Corp.*,
    485 F. Supp. 2d 387 (S.D.N.Y. 2007)...............................................................17

*Penguin Grp. (USA) Inc. v. Am. Buddha*,
    609 F.3d 30 (2d Cir. 2010)..................................................................................8

*Porina v. Marward Shipping Co., Ltd.*,
   521 F.3d 122 (2d Cir. 2008)............................................................................15

*Redtail Leasing, Inc. v. Bellezza*,
   No. 95-cv-5191(JFK), 1999 WL 32941 (S.D.N.Y. Jan. 22, 1999).........................................25

*Reves v. Ernst & Young*,
   507 U.S. 170 (1993)....................................................................................24

*Schwimmer v. Sony Corp. of Am.*,
   677 F.2d 946 (2d Cir. 1982)...........................................................................17

*Shetiwy v. Midland Credit Mgmt.*,
   15 F. Supp. 3d 437 (S.D.N.Y. 2014)...................................................................23

*Sonera Holding B.V. v. Cukurova Holding A.S.*,
   750 F.3d 221 (2d Cir. 2014)...........................................................................10

*Spool v. World Child Int'l Adoption Agency*,
   520 F.3d 178 (2d Cir. 2008)......................................................................16, 24

*SPV OSUS Ltd. v. UBS AG*,
   No. 14-cv-9744(JSR), 2015 WL 4394955 (S.D.N.Y. July 20, 2015).....................................13

*Strong & Fisher Ltd. v. Maxima Leather, Inc.*,
   No. 91-cv-1779(JSM), 1993 WL 277205 (S.D.N.Y. July 22, 1993).....................................24

*Teletronics Proprietary, Ltd. v. Medtronic, Inc.*,
   687 F. Supp. 832 (S.D.N.Y. 1988) ...................................................................18

*Walden v. Fiore*,
   134 S. Ct. 1115 (2014)........................................................................... passim

**FEDERAL STATUTES**

7 U.S.C. § 25(a)(1)......................................................................................19

15 U.S.C. § 1...........................................................................................16

15 U.S.C. § 15b.........................................................................................18

**RULES**

Federal Rule of Civil Procedure 9(b).......................................................................7

Federal Rule of Civil Procedure 12(b)(6) .................................................................15

CFTC Rules 180.1 & 180.2 ..............................................................................19

Defendant BlueCrest Capital Management, LLP ("BlueCrest") respectfully submits this memorandum of law in support of its motion to dismiss Claims 1 through 7 asserted against it in Plaintiffs' Amended Complaint ("Am. Compl.").

## PRELIMINARY STATEMENT

Plaintiffs allege a scheme to manipulate Swiss franc LIBOR ("CHF LIBOR") derivatives through the fixing of the "bid-ask spreads" of those derivatives and submission of false LIBOR quotes to the BBA.[1] They do not (and cannot) allege that BlueCrest had any role in fixing any bid-ask spreads or that it ever submitted a single CHF LIBOR quote. Much of the Amended Complaint simply has no relevance as to BlueCrest.

Indeed, the claims against BlueCrest are based on a single alleged February 2005 message from a BlueCrest employee to a Deutsche Bank employee. Without alleging any response or follow-up of any kind, Plaintiffs manufacture claims against BlueCrest under the Sherman Act, CEA, and RICO based on that message. Although the Amended Complaint contains a few other assertions about BlueCrest—describing its business, performance history, compensation structure, and post-Class Period hiring of a former Deutsche Bank trader—and while it sweeps up BlueCrest into improper group pleading allegations, those assertions add no substance to their purported claims against BlueCrest.

All of the claims against BlueCrest should be dismissed. As an initial matter, BlueCrest joins in the arguments set forth in the brief filed by the other Defendants addressing Plaintiffs' lack of standing and failure to state a claim ("Banks' Brief"). These arguments compel dismissal of each of the claims asserted against BlueCrest.

---

[1]   Capitalized terms not defined herein have the meaning given to them in the Amended Complaint.

In addition, the scant allegations against BlueCrest are insufficient for several additional reasons.  *First*, BlueCrest, which is headquartered and incorporated in Europe, is not subject to personal jurisdiction in this Court.  The Supreme Court has made clear that, absent exceptional circumstances, a corporate defendant is subject to general jurisdiction only where it is incorporated or has its principal place of business—and for BlueCrest, neither location is New York (or the United States).  Plaintiffs try to plead specific jurisdiction by alleging that the Deutsche Bank employee who received the 2005 message was—"upon information and belief"—present in New York.  But they fail to describe, as required, the basis for this purported "information and belief," and the consent order from which they derived their allegation does not say the message was sent to New York.  And even if the message had been sent to New York, such an isolated contact cannot constitute purposeful availment of this forum.

*Second*, Plaintiffs' Sherman Act claims against BlueCrest should be dismissed as time-barred, and also because Plaintiffs fail to allege any conduct by BlueCrest relating to purported manipulation of bid-ask spreads, or any agreement in restraint of trade between BlueCrest and anyone else.  At most, they allege that a BlueCrest employee sent a single message in 2005 to a Deutsche Bank employee regarding CHF LIBOR.  But they nowhere allege that Deutsche Bank responded in any way, let alone agreed to alter, or altered, any LIBOR submission, or otherwise allege any other communications involving BlueCrest.

*Third*, Plaintiffs' CEA claims against BlueCrest fail because they do not plead causation or damages stemming from BlueCrest's alleged conduct.  They do not suggest that the alleged 2005 message was acted on in any way, that they transacted in CHF LIBOR-based derivatives that day, or that the prices of those derivatives were artificially high or low due to a false LIBOR submission resulting from the 2005 message.  BlueCrest also is not alleged to have been a

2

market maker or CHF LIBOR submitter (it was neither), and thus could not possibly have set the prices of commodities tied to CHF LIBOR, as required for liability for commodity manipulation.

*Finally*, Plaintiffs' RICO claim fails because the only particularized allegation against BlueCrest—the 2005 message—fails to encompass *two* predicate acts of "racketeering," let alone to establish that BlueCrest had the authority and power to direct the alleged RICO enterprise.

## SUMMARY OF ALLEGATIONS

The Amended Complaint alleges a conspiracy to manipulate CHF LIBOR, a benchmark rate designed to reflect the cost of borrowing Swiss francs in the interbank money market based on interest rates banks charge each other for making short-term Swiss francs deposits.  Am. Compl. ¶¶ 1, 69.  During the Class Period, CHF LIBOR was calculated based on daily submissions from twelve banks, five of whom are defendants in this lawsuit ("Contributor Banks"), sitting on the CHF LIBOR panel of the BBA.  *Id.* ¶ 70.  Plaintiffs recognize that BlueCrest is not a BBA panel member and did not make any CHF LIBOR submissions.  *Id.* ¶ 4. Plaintiffs' allegations, moreover, are principally derived from settlement agreements between the Contributor Banks and various regulators.  But they cite no settlement by BlueCrest relating to CHF LIBOR—and indeed there is none.

The Amended Complaint principally asserts two theories of manipulation:  (1) a long-term conspiracy to fix the "bid-ask spread" for CHF LIBOR-based derivatives (*id.* ¶¶ 3, 91-96); and (2) "trader-based" LIBOR manipulation, *i.e.*, instances in which traders allegedly asked CHF LIBOR submitters to make "false" LIBOR quotes to the BBA to benefit specific investment positions (*id.* ¶¶ 100, 102-16, 131).[2]  Plaintiffs' factual allegations against BlueCrest appear to implicate only the trader-based theory of manipulation.  *See id.* ¶ 131.

---

[2]     *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11-md-2262(NRB), 2015 WL 4634541, at *3 (S.D.N.Y. Aug. 4, 2015) ("*LIBOR IV*") ("trader-based manipulation" occurs when trader asks LIBOR submitter to send false LIBOR quote so as to benefit trader's book).

## I.    Allegations As To BlueCrest

While the Amended Complaint spans over 300 paragraphs, it contains nearly no substance as to BlueCrest.[3]  In fact, Plaintiffs' claims against BlueCrest rest on one alleged message, a purported instance of attempted trader-based manipulation.  In particular, they allege that BlueCrest "conspired with Defendant Deutsche Bank to manipulate Swiss franc LIBOR for its financial benefit, [by] requesting that Deutsche Bank make a false 1 month Swiss franc LIBOR submission on February 10, 2005."  *Id.* ¶ 40; *see also id.* ¶ 131.

This allegation derives from a consent order between Deutsche Bank and NYSDFS ("Consent Order"), to which BlueCrest was not a party.  *See* Am. Compl. nn. 16, 113.  The Consent Order mentions BlueCrest briefly and only once, as follows:

> [O]n February 10, 2005, an external banker, an employee of BlueCrest Capital, wrote to a director [at Deutsche Bank], requesting, "Can't you ask your fft to contribute 1m chf libor very low?? I have 10yr of fix, 8 of which against ubs, and they're getting on my nerves."

Murphy Decl. Ex. A ¶ 40.[4]

Significantly, the Consent Order does not state—*and Plaintiffs do not allege*—that Deutsche Bank agreed to lower its 1-month CHF LIBOR submission in response to the alleged message; that Deutsche Bank's submission that day was lower than it would have been in the absence of BlueCrest's message; that Deutsche Bank's submission affected the published 1-month CHF LIBOR rate on that day; or that Deutsche Bank even reviewed or responded to the message at all.  Plaintiffs also do not allege that they transacted in any CHF LIBOR-based derivatives on or around February 10, 2005, or that Deutsche Bank's CHF LIBOR submission

---

[3]    BlueCrest is named in only 10 paragraphs (Am. Compl. ¶¶ 7, 9, 38-41, 129-131, 277), several of which describe background information about its business, compensation, and investment history.

[4]    The Court can consider on this motion the Consent Order and other documents cited in the Amended Complaint.  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

that day impacted any transactions they made, and if so, how.  And finally, besides the 2005 message, Plaintiffs describe no other communication between BlueCrest and Deutsche Bank or any other Contributor Bank or broker who allegedly made "false" CHF LIBOR submissions.

The rest of Plaintiffs' assertions about BlueCrest in the Amended Complaint add no substance to their claims.  They assert that BlueCrest "advises clients on a number of investment strategies," "acts as a commodity pool operator and commodity trading adviser," and has "deep connections to the Contributor Bank Defendants."  *Id.* ¶¶ 38, 39.  They further allege that BlueCrest "charges clients performance-based compensation," had "a decade-long winning streak . . . for its two largest funds," and its traders were compensated for performance.  *Id.* ¶¶ 7, 39, 130.  Finally, Plaintiffs allege that BlueCrest "eventually" hired Christian Bittar, a former Deutsche Bank trader, sometime after he left the bank.  *Id.* ¶¶ 9, 41.  Like other assertions about BlueCrest's business, this one is immaterial:  Plaintiffs do not allege that BlueCrest hired Bittar during the Class Period[5] or that he took any relevant action on behalf of BlueCrest.

The remaining allegations regarding BlueCrest take the form of conclusory, collectivized allegations that lump BlueCrest together with all other "Defendants," or with supposed "clients" or "hedge funds," with no detail whatsoever as to the conduct attributable to BlueCrest.  *E.g.*, Am. Compl. ¶¶ 38, 39, 129, 277.  Plaintiffs allege that "[l]arge hedge funds, including Defendant BlueCrest, lobbied LIBOR panel banks for favorable submissions" (*id.* ¶ 129), and that "banks, eager to burnish relationships with their best clients, frequently obliged" (*id.* ¶ 131).  They also allege that "Defendants agreed to make false Swiss franc LIBOR submissions with the specific intent to fix the prices of many different types of Swiss franc LIBOR-based derivatives . . . ."  *Id.* ¶ 126.  These generalized allegations provide no detail of any actions by BlueCrest.

---

[5]    Plaintiffs do not say when Bittar left Deutsche Bank, but the article they cite states this occurred in December 2011, the last month of the Class Period.  Am. Compl. ¶ 9 n.10; Murphy Decl. Ex. B.

## II.      Allegations As To Jurisdiction Over BlueCrest

Plaintiffs also fail to allege sufficient facts to establish personal jurisdiction over

BlueCrest.  They describe BlueCrest as a "limited liability partnership formed under the laws of

England and Wales," with subsidiaries in the United States.  *Id.* ¶ 38.  No BlueCrest subsidiary is

a defendant in this action, however, and Plaintiffs do not allege that any BlueCrest subsidiary

engaged or participated in any of the conduct alleged in the Amended Complaint.

To nevertheless suggest a nexus to the forum, Plaintiffs allege―"on information and

belief"―that the 2005 message was sent from a BlueCrest employee to a "Swiss franc LIBOR-

based derivatives trader and/or Swiss franc LIBOR submitter located in New York."  Am.

Compl. ¶ 40.  But Plaintiffs fail to describe the basis for their "information and belief," or

provide support for it in any way.  And notably, the Consent Order from which their allegation

was taken does not say that the 2005 message was sent to or received in New York or anywhere

else in the United States.  *See* Murphy Decl. Ex. A ¶ 40.  Thus, the basis of Plaintiffs'

"information and belief," if one exists, is unknown.  Nor do Plaintiffs allege that the purported

recipient of the 2005 message made, after receiving it, any CHF LIBOR submission, whether

from New York or anywhere else in the United States.

## ARGUMENT

## I.      THE COURT SHOULD DISREGARD PLAINTIFFS' IMPERMISSIBLE GROUP PLEADING ALLEGATIONS AND THE ALLEGATIONS REGARDING THE 2005 MESSAGE.

Beyond the few allegations that name BlueCrest, Plaintiffs repeatedly resort to

impermissible group pleadings, which deserve no weight.  "A plaintiff fails to satisfy [Federal

Rule of Civil Procedure] 8, where the complaint lump[s] all the defendants together and fails to

distinguish their conduct because such allegations fail to give adequate notice to the defendants

as to what they did wrong."  *Appalachian Enters., Inc. v. ePayment Solutions, Ltd.*, No. 01-cv-

11502(GBD), 2004 WL 2813121, at *7 (S.D.N.Y. Dec. 8, 2004) (quotations and alterations omitted).  Group pleading allegations also do not satisfy Federal Rule of Civil Procedure 9(b). *Gross v. Waywell*, 628 F. Supp. 2d 475, 495 (S.D.N.Y. 2009).

Plaintiffs' group pleading allegations take two forms.  First, they lump BlueCrest within undefined groups of bank "clients" and "hedge funds."  *E.g.*, Am. Compl. ¶¶ 129, 131.  Second, they repeatedly assert allegations about the group of "Defendants" as a whole.[6]  In neither case do they identify BlueCrest's role in the alleged conduct, or meaningfully put BlueCrest on notice of what it is alleged to have done wrong.  Indeed, since BlueCrest was not a CHF LIBOR submitter, Plaintiffs' allegations against the "Defendants" as a group make little sense when applied to BlueCrest.  For example, Plaintiffs allege that "[b]y coordinating their submissions, Defendants caused the composite, published Swiss franc LIBOR to reflect their needs rather than the forces of competition."  But BlueCrest was not a CHF LIBOR submitter and had no "submissions" to "coordinate."  The same error is repeated over and over again throughout the Amended Complaint.  *E.g.*, Am. Compl. ¶¶ 126, 193, 236.

Plaintiffs' reliance on group pleading allegations undercuts each of their claims against BlueCrest, and courts in this District have rejected just such allegations in dismissing antitrust, CEA, and RICO claims.  *Concord Assocs., L.P. v. Entm't Prop. Tr.*, No. 12-cv-1667(ER), 2014 WL 1396524, at *24 (S.D.N.Y. Apr. 9, 2014) (dismissing antitrust claims where "Amended Complaint predominantly attributes conduct that advanced the conspiracy to various defendants grouped together under a single name"); *In re Amaranth Natural Gas Commodities Litig.*, 587 F. Supp. 2d 513, 543 (S.D.N.Y. 2008) (dismissing CEA claims where "Complaint contain[ed] minimal specific factual allegations" and instead "lumped [certain defendants] together" raising

---

[6]   *E.g.*, Am. Compl. ¶ 98 (alleging "Defendants" reorganized their trading desks, implemented lax compliance standards, improperly influenced the BBA, and made misleading statements to regulators). Plaintiffs nowhere state any facts that support these allegations with respect to BlueCrest specifically.

"generalized allegations against them"); *Gross*, 628 F. Supp. 2d at 495-96 ("[L]umping the defendants into collective allegations results in a failure to demonstrate the elements of [RICO] with respect to each defendant individually").  Accordingly, the Court should disregard Plaintiffs' group pleading allegations in assessing the sufficiency of their claims against BlueCrest.

After discarding improper group pleading allegations, Plaintiffs' only remaining substantive allegations against BlueCrest relate to the 2005 message.  These allegations, however, should be given no weight because they are derived from a negotiated consent order between NYSDFS and Deutsche Bank, "the product of a settlement [that is] not an adjudication of the underlying issues."  *In re Platinum & Palladium Commodities Litig.*, 828 F. Supp. 2d 588, 593-95 (S.D.N.Y. 2011) (striking allegations based on a CFTC consent order, noting plaintiffs are "prohibited from relying on the CFTC order to plead the underlying facts of liability") (quotation omitted); *see also Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976).

## II.   PLAINTIFFS FAIL TO PLEAD PERSONAL JURISDICTION OVER BLUECREST.

A plaintiff bears the burden of showing that the court has jurisdiction over a defendant. *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010).  Before discovery, a plaintiff must plead "facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant."  *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013).  In assessing if the plaintiff met her burden, the court should not draw argumentative inferences in the plaintiff's favor, nor accept as true a legal conclusion couched as a factual allegation.  *Id.* (citations and quotations omitted).

Any exercise of personal jurisdiction over a defendant must comport with constitutional due process guarantees, which require that the defendant have "sufficient minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 134 (2d Cir. 2014)

(quotations and citations omitted).  The Supreme Court has recently stressed that "the 'minimum contacts' inquiry principally protects the liberty interest of the nonresident defendant, not the interest of the plaintiff." *Walden v. Fiore*, 134 S. Ct. 1115, 1125 n.9 (2014).  The first step in this inquiry is to determine if a defendant's contacts with the forum are sufficient; if not, jurisdiction cannot be exercised.  *Laydon v. Mizuho Bank Ltd.*, No. 12-cv-3419(GBD), 2015 WL 1515358, at *2 (S.D.N.Y. Mar. 31, 2015).  If a plaintiff pleads sufficient contacts, the court must then consider if exercising jurisdiction would be reasonable in the circumstances.  *Id.*  Here, under both prongs, the exercise of jurisdiction over BlueCrest would be improper.[7]

### A.  BlueCrest Is Not Subject to General Jurisdiction Because It Is Not "At Home" in New York or Elsewhere in the United States.

Personal jurisdiction may be general or specific.  *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014).  General jurisdiction over a corporate defendant, like BlueCrest, exists where the defendant's contacts with the forum are "so 'continuous and systematic,' judged against the corporation's global activities, that it is 'essentially at home'" in the forum.  *Gucci*, 768 F.3d at 135 (quoting *Daimler*, 134 S. Ct. at 761-62).  Last year, the Supreme Court squarely rejected the "sprawling view of general jurisdiction" whereby general jurisdiction over a foreign corporation existed whenever it had a subsidiary or affiliate in the forum.  *Daimler*, 134 S. Ct. at 760.  Addressing *Daimler*, the Second Circuit explained that, "[a]side from 'an exceptional case,' . . . a corporation is at home (and thus subject to general jurisdiction, consistent with due process) only in a state that is the company's formal place of incorporation or its principal place of business."  *Gucci*, 768 F.3d at 135.  Under Second Circuit law, "'engage[ment] in a substantial, continuous,

---

[7]     As explained in the Joint Memorandum of Law in Support of Defendants' Motion to Dismiss for Lack of Personal Jurisdiction filed by the Contributor Banks ("<u>Jurisdiction Brief</u>"), personal jurisdiction under the Sherman Act, CEA, and RICO should be analyzed based on contacts with New York for due process purposes. *See* Jurisdiction Br. Part III.  Whether the Court considers BlueCrest's contacts with New York or with the United States as a whole, however, is immaterial because BlueCrest's sole alleged contact with the forum is the 2005 message that purportedly was sent to New York.

and systematic course of business' is alone insufficient to render [a company] at home in a forum."  *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 226 (2d Cir. 2014).

 *Daimler* precludes the exercise of general jurisdiction over BlueCrest.  Plaintiffs allege that BlueCrest is established under the laws of England and Wales and "is one of Europe's largest alternative asset management groups."  Am. Compl. ¶¶ 38-39.  Plaintiffs fail to allege any systematic or regular contacts between BlueCrest and New York.  Instead, they allege that BlueCrest maintains "various sub-entities" in the United States.  *Id.* ¶ 38.  But this allegation is insufficient under *Daimler*, especially where, as here, there are no allegations that a United States subsidiary was involved in any misconduct.  Thus, formed under foreign laws and headquartered overseas, BlueCrest is not the "exceptional case" in which a foreign corporation's contacts with the forum are so "continuous or systematic" that it is "essentially at home" here.  The presence of any BlueCrest subsidiaries in the United States does not change this conclusion.  *Daimler*, 134 S. Ct. at 760; *Gucci*, 768 F.3d at 135 (bank with U.S. offices conducting some of its global business in New York "plainly [did] not approach the required level of contact"); *accord LIBOR IV*, 2015 WL 4634541 at *21.

  **B.**  **Plaintiffs Have Failed to Allege Sufficient Contacts To Support The Exercise of Specific Jurisdiction over BlueCrest.**

 Specific jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation."  *Walden*, 134 S. Ct. at 1121.  If, as here, a foreign defendant's alleged activities giving rise to the suit occurred outside of the forum, the defendant must have "purposefully established minimum contacts with the forum" by taking "intentional" actions "expressly aimed" at the forum—and the claim must arise out such contacts.  *LIBOR IV*, 2015 WL 4634541 at *22.

 In *Walden*, the Supreme Court held that for minimum contacts to be pled, the "defendant's suit-related conduct must create a *substantial connection* with the forum."  134 S. Ct. at 1121.  Elaborating on this standard, the Supreme Court explained that, first, the

defendant's relationship with the forum "must arise out of contacts that the 'defendant *himself*' creates with the forum," and second, the analysis "looks to the defendant's contacts with the forum state itself, not the defendant's contact with persons who reside there." *Id*. at 1121-22. Due process, the Court stressed, "requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Id.* at 1123.

For several reasons, Plaintiffs fail to allege sufficient facts to support the exercise of specific jurisdiction over BlueCrest. *First*, they do not properly allege *any* contacts between BlueCrest and New York. The Amended Complaint alleges that a BlueCrest employee sent a message in 2005 to an employee at Deutsche Bank who, they assert on "information and belief," was in New York. Am. Compl. ¶ 40. But Plaintiffs provide no basis to support this assertion and no reason for the Court to accept it as true. Plaintiffs' conclusory allegation, made on unspecified "information and belief," is entitled to no deference or truth presumption.[8] *See Guo Jin v. EBI, Inc.*, No. 05-cv-4201(NGG), 2008 WL 896192, at *2 (E.D.N.Y. Mar. 31, 2008) ("Conclusory allegations showing the presence of jurisdiction, particularly those stated only upon 'information and belief,' are insufficient to establish . . . personal jurisdiction over the defendant." (quotations omitted)); *MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 737 F. Supp. 2d

---

[8]    Plaintiffs' allegation that the 2005 message was purportedly sent to a Deutsche Bank employee in New York finds no support in the Consent Order and is in tension with other allegations that relevant Deutsche Bank personnel were located in Europe. Am. Compl. ¶ 149 (alleging that "most of Deutsche Bank's Swiss franc LIBOR submissions were made by traders in Frankfurt, Germany," and that a manager encouraged Frankfurt traders "to contact the derivatives traders in London"). Likewise, the Statement of Facts in the DOJ Deferred Prosecution Agreement with Deutsche Bank, which the Amended Complaint cites, states that Deutsche Bank's CHF LIBOR traders and submitters were located in London and Frankfurt. *See* Murphy Decl. Ex. C ¶¶ 90-95. Indeed, the declarations filed in support of Deutsche Bank's motion to dismiss for lack of personal jurisdiction state that the Deutsche Bank employee who received the 2005 message was at all relevant times employed by Deutsche Bank AG's *London* branch, and that *no employees* responsible for the bank's CHF LIBOR submissions were located in the United States. Ifrah Decl. ¶ 2; Randazzo Decl. ¶ 2.

137, 144 (S.D.N.Y. 2010) ("[I]t is axiomatic that the complaint must allege facts demonstrating the basis for the information and belief." (quotations omitted)).

*Second*, even if the 2005 message was sent to a Deutsche Bank employee in New York, this "random, fortuitous, [and] attenuated" contact does not constitute an action expressly aimed at, let alone purposeful availment of, the forum.  *Walden*, 134 S. Ct. at 1121; *see also Fox v. Boucher*, 794 F.2d 34, 37 (2d Cir. 1986) ("It would offend 'minimum contacts' due process principles to force [a foreign resident] to litigate this claim in a New York forum on the basis of one telephone call.").  Carefully analyzing personal jurisdiction in the context of LIBOR-related claims, Judge Buchwald recently held that personal jurisdiction could exist over a defendant who asked a submitter to make a false LIBOR submission "only where the LIBOR submission was determined or transmitted . . . [or] in the location of the per.son who requested the submitter to engage in manipulation."  *LIBOR IV*, 2015 WL 4634541, at *27, 32.  Here, Plaintiffs allege that the 2005 message was sent from the United Kingdom, and they do not allege any resulting LIBOR submission at all, let alone one that was "determined or transmitted" in New York.

Indeed, Plaintiffs do not allege that the BlueCrest employee who sent the message even knew or believed that the recipient was in New York, as would be required for *purposeful* availment.  *See id.* at 22.  Moreover, the minimum contacts inquiry "looks to the defendant's contacts with the *forum state* itself, not the defendant's contact with persons who reside there." *Walden*, 134 S. Ct. at 1121 (emphasis added).  Even if the Deutsche Bank employee was in New York—which, as noted, Plaintiffs do not properly allege—his or her presence in New York would have been entirely incidental to the thrust of Plaintiffs' claims, *i.e.*, that CHF LIBOR submissions made in *Europe* were purportedly false.  *See In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 935 F. Supp. 2d 666, 733 (S.D.N.Y. 2013) ("*LIBOR I*") (the setting of LIBOR is a foreign enterprise); *cf. Laydon*, 2015 WL 1515358, at *3 ("Communications that 'passed

through and/or were stored within the United States' are insufficient to assert personal jurisdiction").

When conduct occurs entirely out-of-forum, courts sometimes employ an 'effects test,' by which jurisdiction may be constitutionally permissible only if a defendant expressly aimed its conduct at the forum.  *Terrorist Attacks*, 714 F.3d at 674.  "[I]t is not sufficient that conduct incidentally had an effect in the forum, or even that effects in the forum were foreseeable."  *7 W. 57th Realty Co. v. Citigroup, Inc.*, No. 13-cv-981(PGG), 2015 WL 1514539, at *9 (S.D.N.Y. Mar. 31, 2015).  Three courts in this District, presiding over LIBOR-related cases, have rejected the argument that foreign defendants expressly aimed their conduct at the United States simply by participating in alleged schemes to manipulate LIBOR.  *LIBOR IV*, 2015 WL 4634541, at *15, 27 (Buchwald, J.); *7 W. 57th*, 2015 WL 1514539, at *10-11 (Gardephe, J.); *Laydon*, 2015 WL 1515358, at *3 (Daniels, J.).  The result is no different here.

*Third*, Plaintiffs do not claim that any injury arose out of the single purported contact between BlueCrest and New York—the alleged 2005 message.  They do not allege, for example, that the message caused Deutsche Bank to make a false CHF LIBOR submission, that the CHF LIBOR rate was lower on that day as a result, or that Plaintiffs incurred any related damages.  *See LIBOR IV*, 2015 WL 4634541, at *23 (specific jurisdiction requires "but for" connection between defendant's forum-directed activities and alleged claim); *see also SPV OSUS Ltd. v. UBS AG*, No. 14-cv-9744(JSR), 2015 WL 4394955, at *7 (S.D.N.Y. July 20, 2015) (finding no jurisdiction given defendant's "scant contacts" with forum and "utter lack of nexus" between alleged conduct and claims).  The allegation about the 2005 message alone is insufficient.

*Finally*, Plaintiffs cannot rely on the alleged conduct of the Contributor Banks to establish personal jurisdiction over BlueCrest because "the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum."  *Walden*, 134 S. Ct. at 1121.  Alleged

contacts between the Contributor Banks and New York cannot qualify as contacts between *BlueCrest* and New York.  Nor can Plaintiffs rely on allegations of conspiracy to support jurisdiction over BlueCrest.  The requirement that the "defendant himself" create the contacts with the forum, *Walden*, 134 S. Ct. at 1121, undercuts such a tactic.  *See also In re Aluminum Warehousing Antitrust Litig.*, No. 13-md-2481(KBF), 2015 WL 892255, at *5 (S.D.N.Y. Mar. 3, 2015) (rejecting argument "that the assertion of participation in a conspiracy generally can provide a standalone basis for jurisdiction subject only to the constraints of due process").[9]

In sum, the Amended Complaint does not come close to alleging sufficient facts to support the exercise of jurisdiction over BlueCrest.

### C.     It Would Be Unreasonable To Exercise Jurisdiction over BlueCrest.

Even if Plaintiffs had alleged sufficient contacts (which they have not), they would still need to establish that exercising jurisdiction would be "reasonable" under the circumstances.[10] *Laydon*, 2015 WL 1515358, at *2.  This inquiry requires analysis of (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies. *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996).

Here, it would be unreasonable to subject BlueCrest to personal jurisdiction.  *First*,

---

[9]     Similarly, Plaintiffs' generalized group allegations that the "Defendants" are subject to personal jurisdiction due to transacting business in the United States, using electronic means of communication, or knowing that LIBOR rates were published in the United States (*e.g.* Am. Compl. ¶¶ 15, 16, 18, 67) are insufficient.  *King Cnty., Wash. v. IKB Deutsche Industriebank, AG*, 769 F. Supp. 2d 309, 313 (S.D.N.Y. 2011) ("A plaintiff bears the burden of demonstrating that the court may exercise jurisdiction over *each* defendant" (emphasis added)); *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 1998) ("conclusory non-fact-specific jurisdictional allegations" were insufficient to establish a prima facie case of jurisdiction); *7 W. 57th*, 2015 WL 1514539, at *10 (conduct not "suit-related").

[10]    The Court need not address the reasonableness inquiry because Plaintiffs have not alleged minimum contacts by BlueCrest.  *Metro. Life Ins.*, 84 F.3d at 568.

litigating in New York would be burdensome because BlueCrest is a foreign entity with its records and employees located overseas. Furthermore, as the Second Circuit has noted, a "defendant's contacts with the particular federal district in which the suit was filed, or lack thereof, may be relevant in determining . . . whether it would be reasonable, in all circumstances, to exercise personal jurisdiction." *Porina v. Marward Shipping Co., Ltd.*, 521 F.3d 122, 127 (2d Cir. 2008). The fact that the Amended Complaint alleges only the flimsiest nexus between BlueCrest and New York—on unsupported "information and belief"—further confirms that exercising jurisdiction would be unreasonable. *Second*, this forum's interest in adjudicating the claims against BlueCrest is minimal because Plaintiffs' allegations as to BlueCrest relate to conduct that occurred overseas. *Metro. Life Ins.*, 84 F.3d at 574. *Third*, dismissing BlueCrest from this case would not undermine Plaintiffs' ability to seek effective relief in the jurisdiction where BlueCrest resides. *Fourth*, considerations of the efficient administration of justice weigh against the exercise of jurisdiction over BlueCrest because its records and witnesses are located abroad. *Id.* And *fifth*, policy considerations must embrace the Supreme Court's admonition that "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 115 (1987). For the foregoing reasons, even if minimum contacts were present (and they are not), it would be unreasonable to exercise jurisdiction over BlueCrest.

## III.   PLAINTIFFS FAIL TO PLEAD A CLAIM AGAINST BLUECREST UNDER THE SHERMAN ACT, CEA, OR RICO.

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A complaint that contains factual allegations that are "merely consistent with a defendant's liability" does not meet the

plausibility standard.  *Id.*  Where "well pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief," and the complaint must be dismissed.  *Id.* at 679.  A plaintiff, moreover, must do more than provide "labels and conclusions, and a formulaic recitation of the elements of a cause of action."  *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007).  Conclusory allegations are not entitled to a presumption of truth, *see Iqbal*, 556 U.S. at 679, even if disguised as facts, *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008).

## A.   Plaintiffs Fail to Plead a Claim Against BlueCrest Under the Sherman Act.

### i   *Plaintiffs Do Not Allege BlueCrest's Involvement in Any Scheme to Manipulate Bid-Ask Spreads (Claim 1).*

Plaintiffs' First Claim, for violation of Section 1 of the Sherman Act by "[c]olluding to widen the bid-ask spread" for CHF LIBOR-based derivatives, should be dismissed because they do not allege any facts tying BlueCrest to this purported violation.  Instead, their factual allegations regarding this claim are aimed at the "EC Cartel Defendants"—a group of four banks that does not include BlueCrest.  *See* Am. Compl. ¶¶ 3, 91-96.  The absence of allegations against BlueCrest compels dismissal of this claim.

### ii   *Plaintiffs Fail to Plead an Antitrust Agreement or Conspiracy Involving BlueCrest (Claims 1 and 2).*

Section 1 of the Sherman Act prohibits "[e]very contract, combination  . . . , or conspiracy, in restraint of trade."  15 U.S.C. § 1.  To plead a claim, Plaintiffs must allege that the Defendants "contracted, combined or conspired among each other to engage in anticompetitive conduct, and that the Plaintiff was injured as a proximate result of that conspiracy."  *Gatt Commc'ns, Inc. v. PMC Assocs., L.L.C.*, 711 F.3d 68, 76 (2d Cir. 2013).  Plaintiffs must plead "enough factual matter (taken as true) to suggest that an agreement was made," *Twombly*, 550 U.S. at 556, by alleging facts that show "joint or concerted action" and that "reveal a unity of

purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement," *Schwimmer v. Sony Corp. of Am.*, 677 F.2d 946, 952-53 (2d Cir. 1982) (quotations and citations omitted).

A plaintiff asserting a Section 1 claim must allege facts *specific to each defendant* to support that Defendant's involvement in the alleged conspiracy. It is not enough to use "global terms" like "defendants" or "cartel" "to apply to numerous parties without any specific allegations that would tie each particular defendant to the conspiracy under *Twombly*." *BanxCorp v. Apax Partners, L.P.*, No. 10-cv-4769(SDW), 2011 WL 1253892, at *4 (D.N.J. Mar. 28, 2011); *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50-51 (2d Cir. 2007) (finding allegations "without any specification of any particular activities by any particular defendant" insufficient).

Plaintiffs fail to allege any plausible grounds for inferring that BlueCrest entered into an agreement to manipulate CHF LIBOR. The 2005 message is the sole alleged communication between BlueCrest and another Defendant that is described in the Amended Complaint. On its face, however, the 2005 message cannot support an inference of an agreement—it is phrased as a question, mentions no prior or present agreement, and reflects no expectation that Deutsche Bank would agree to act according to the message. Am. Compl. ¶ 131. More importantly, Plaintiffs fail to allege that Deutsche Bank responded to the message in any way, let alone agreed to alter (or in fact altered) any CHF LIBOR submissions as a result. An isolated one-way message simply does not suffice to plead an agreement to violate the antitrust laws. *See Olde Monmouth Stock Transfer Co., Inc. v. Depository Tr. & Clearing Corp.*, 485 F. Supp. 2d 387, 397 (S.D.N.Y. 2007) (one-sided communications between defendant and plaintiffs' clients insufficient to plead antitrust conspiracy absent allegations clients agreed to form a combination, contract, or conspiracy in response); *Invamed, Inc. v. Barr Labs., Inc.*, 22 F. Supp. 2d 210, 221 (S.D.N.Y.

1998) (dismissing antitrust claim absent allegations that defendants "agreed with anyone to take action or not take action with the intent of furthering the alleged conspiracy").

In other words, Plaintiffs' failure to allege that Deutsche Bank took any action in response to BlueCrest's message renders implausible any allegation of BlueCrest's participation in an antitrust conspiracy.  *See LaFlamme v. Societe Air France*, 702 F. Supp. 2d 136, 147-48 (E.D.N.Y. 2010) (dismissing antitrust claim because notion of agreement was rendered "implausible by the fact that the Complaint nowhere alleges that [the purported subject of the agreement] was implemented"); *Teletronics Proprietary, Ltd. v. Medtronic, Inc.*, 687 F. Supp. 832, 837 (S.D.N.Y. 1988) (dismissing antitrust claim where plaintiff "ha[d] not specified . . . what concerted actions the[] parties took to further their goal").

Plaintiffs' remaining indirect references to BlueCrest in the Amended Complaint, which lump BlueCrest together with the other Defendants, bank "clients," or "large hedge funds," are mere "bare assertions" of conspiracy that do not suffice under *Twombly*.  These allegations do not identify any specific action taken by BlueCrest, let alone any agreement between BlueCrest and any other Defendant.  They are "speculative" and "conclusory" and therefore fail to "nudge [plaintiffs' claims] across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.

### iii   Plaintiffs' Antitrust Claims Are Barred by the Statute of Limitations.

Plaintiffs' Sherman Act claims against BlueCrest should also be dismissed as time-barred. The Sherman Act's limitation period is four years and begins to run on the date of injury.  15 U.S.C. § 15b; *Johnson v. Nyack Hosp.*, 86 F.3d 8, 11 (2d Cir. 1996).  Here, the only conduct in the Amended Complaint attributable to BlueCrest occurred in 2005, and the statute of limitations therefore expired in 2009, well before Plaintiffs filed their claims.  *See also* Banks' Br. Part II(E).

**B.**      **Plaintiffs Fail to Plead a Claim Against BlueCrest Under the Commodities Exchange Act.**

*i*      *Plaintiffs Do Not Allege Commodity Manipulation by BlueCrest (Claim 3).*

To state a claim for manipulation under the CEA, a plaintiff must show that:  (1) the defendant had the ability to influence market prices; (2) the defendant specifically intended to do so; (3) artificial prices existed; and (4) the defendant caused the artificial prices.  *LIBOR I*, 935 F. Supp. 2d at 713.[11]  A plaintiff must also establish "actual damages" from the alleged violation.  7 U.S.C. § 25(a)(1); *see also In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 27 F. Supp. 3d 447, 460-61 (S.D.N.Y. 2014) ("*LIBOR III*") (denying leave to amend where plaintiffs failed to allege damages).  Commodity manipulation claims must be pled with particularity, requiring the plaintiff to allege "what manipulative acts were performed, which defendants performed them, when the manipulative acts were performed, and what effect the scheme had on the market for the securities at issue."  *LIBOR I*, 935 F. Supp. 2d at 714.

Because Plaintiffs have not alleged a single instance in which a Contributor Bank made a "false" LIBOR submission at BlueCrest's behest, they cannot allege the necessary elements of causation and damages.  Addressing similar facts, Judge Buchwald declined to permit a claim to proceed premised on trader-based LIBOR manipulation absent an indication that the submitter "acted upon" the request.  *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11-md-2262(NRB), 2014 WL 6488219, at *4 (S.D.N.Y. Nov. 17, 2014).  The same is true here.  Plaintiffs have failed to allege that Deutsche Bank ever acted on the alleged 2005 message and have thus failed to plead the necessary causation.

---

[11]   In addition to CEA sections 6(c), 9, and 22, Plaintiffs cite CFTC Rules 180.1 and 180.2.  These Rules, however, do not apply to conduct preceding August 2011 and the only act attributed to BlueCrest in the Amended Complaint occurred in 2005.  *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994) (presumption against retroactive legislation); *In re Amaranth Natural Gas Commodities Litig.*, 730 F.3d 170, 173 (2d Cir. 2013) (Rule 180.1 "does not impact the present appeal, however, given the regulation's effective date of August 15, 2011.").

Plaintiffs have also failed to allege that they suffered any injury as a result of the 2005 message or any other conduct related to BlueCrest.  To state a claim under the CEA for trader-based LIBOR manipulation:

> [a] private plaintiff must plead sufficient information to show injury from a particular incident of manipulation:  which defendant bank engaged in manipulation, of which tenor of USD LIBOR, on which date, and in which direction?  Further, did the manipulation affect the published rate?  Finally, which instrument did the plaintiff invest in, and how did manipulation of the particular tenor affect the plaintiff's position?

*LIBOR IV*, 2015 WL 4634541, at *34; *see also In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 962 F. Supp. 2d 606, 620-21 (S.D.N.Y. 2013) ("*LIBOR II*"); *LIBOR III*, 27 F. Supp. 3d at 460-61.

Thus, Plaintiffs must allege that they transacted in derivatives tied to 1-month CHF LIBOR on February 10, 2005; that Deutsche Bank made a false submission on that date; that the false submission was caused by the 2005 message from BlueCrest; that this submission affected the published CHF LIBOR rate; and that Plaintiffs suffered losses resulting from the artificial prices of those derivatives.  Plaintiffs allege nothing of the sort.  They nowhere allege that Deutsche Bank made a false submission on February 10, 2005; or that if a false submission was made, that it was made in response to the 2005 message; or that such submission affected the published 1-month CHF LIBOR rate.[12]  Plaintiffs also do not allege that they transacted in CHF LIBOR-based derivatives on this date (*see* Am. Compl. ¶¶ 199, 204, 208, 212) and therefore cannot establish that they incurred any purported losses resulting from BlueCrest's alleged

---

[12]    To the contrary, Plaintiffs' own analysis of 1-month CHF LIBOR rates during the Class Period, which compares CHF LIBOR to Swiss Franc deposit rates, shows no meaningful difference between them during 2005, indicating 1-month CHF LIBOR *was not* artificial on February 10, 2005.  *See* Am. Compl. 73, fig. 4.

conduct.  *See LIBOR II*, 962 F. Supp. 2d at 620-21 (rejecting trader-based manipulation claim under CEA where plaintiffs did not allege prices were artificial on days they transacted).

Moreover, because BlueCrest was not a CHF LIBOR panel member, Plaintiffs have not shown that BlueCrest had the "ability to influence market prices" through the submission of LIBOR quotes to the BBA.  Indeed, Plaintiffs do not even allege that Deutsche Bank (or another CHF LIBOR submitter) actually altered any submission at BlueCrest's behest.  And they do not (and cannot) allege that BlueCrest was a market-maker for CHF LIBOR derivatives or that it took, or had the capacity to take, any actions to fix those derivatives' bid-ask spread.

Lastly, as stated in the Banks' Brief, Plaintiffs fail to plead that BlueCrest specifically intended to manipulate the price of Swiss franc futures.  *See* Banks' Br. Part III(C)(2).

### ii   *Plaintiffs' Derivative Claims against BlueCrest Also Fail (Claims 4 and 5).*

Plaintiffs' derivative claims against BlueCrest for aiding-and-abetting and principal-agent liability should also be dismissed.  Plaintiffs allege with specificity only one discrete instance of BlueCrest's purported involvement in CHF LIBOR manipulation—the 2005 message.  But they have not alleged any primary CEA violation resulting from this message, and BlueCrest cannot be held secondarily liable, as either principal or aider-and-abettor, unless a primary violation occurred.  *In re Commodity Exch., Inc. Silver Futures & Options Trading Litig.*, 560 F. App'x 84, 87 (2d Cir. 2014) ("As plaintiffs failed to allege a CEA violation, their aiding and abetting claim was properly dismissed as well.").

Moreover, to plead aiding and abetting liability, Plaintiffs must allege that BlueCrest "associated [itself] with a violation of the Act, participated in it as something that [it] wished to bring about, and sought by [its] actions to make the violation succeed."  *Amaranth*, 730 F.3d at 182.  But the Amended Complaint does not plead any particularized facts satisfying this

standard.  Indeed, Plaintiffs nowhere suggest that BlueCrest lent substantial assistance to anyone's alleged LIBOR manipulation, or what sort of assistance BlueCrest could even offer. Nor have Plaintiffs alleged that the sender of the 2005 message was acting within the scope of his employment at BlueCrest or even employed by the same BlueCrest entity that Plaintiffs have sued, as required to establish principal-agent liability.  *See Amaranth*, 587 F. Supp. 2d at 546-47.

### iii  Plaintiffs' CEA Claims Against BlueCrest Are Time-Barred (Claims 3, 4, and 5).

For the reasons set forth in the Banks' Brief, the CEA claims against BlueCrest must also be dismissed as time-barred.  The statute of limitations for Plaintiffs' purported CEA claims began to run when Plaintiffs were on inquiry notice, *i.e.* by December 2012 at the latest.  *See* Banks' Br. Part III(A).  Significantly, inquiry notice requires only that Plaintiffs have been on inquiry notice of their *injury*—it is not a defendant-specific determination.  *See LIBOR III*, 27 F. Supp. 3d at 484-85; *LIBOR IV*, 2015 WL 4634541, at *116, 123-24 (question of when plaintiffs might have discovered alleged complicity of non-panel-bank entities had "no effect" on inquiry notice for CEA claims against such defendants where plaintiffs did not allege meaningful investigation).  Accordingly, the CEA claims against BlueCrest are time-barred.

### C.    Plaintiffs Fail to Plead RICO Claims Against BlueCrest.

Plaintiffs' minimal allegations against BlueCrest likewise do not state a claim under RICO.  A civil RICO plaintiff has two pleading burdens.  *Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir. 1983).  "First, a plaintiff must allege that the defendant has violated the substantive RICO statute," which requires that the plaintiff allege:  (1) that the defendant (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate or foreign commerce.  *Id*.  Second, a

plaintiff must allege that she was "injured in his business or property *by reason of* a [RICO] violation." *Id.* Plaintiffs' single specific allegation relating to BlueCrest—the 2005 message—falls far short of meeting these elements. Most notably, Plaintiffs fail to allege that BlueCrest committed two or more predicate acts or participated in a RICO enterprise, let alone that they were injured in their business or property by reason of a RICO violation by BlueCrest.

> **i**    *Plaintiffs Fail to Plead That BlueCrest Committed Two or More Predicate Acts Constituting a Pattern of Racketeering Activity (Claim 6).*

"To state a RICO claim, the plaintiff must allege two or more related 'predicate acts' that constitute a 'pattern' of racketeering activity." *Kerik v. Tacopina*, 64 F. Supp. 3d 542, 556 (S.D.N.Y. 2014). Significantly, "the plaintiff must allege that *each defendant* committed two or more predicate acts." *Shetiwy v. Midland Credit Mgmt.*, 15 F. Supp. 3d 437, 443 (S.D.N.Y. 2014). Where, as here, RICO claims are based on predicate acts of wire fraud (*see* Am. Compl. ¶¶ 267, 270), a plaintiff must meet the heightened pleading requirements of Rule 9(b) and plead "the contents of the communications, who was involved, and where and when they took place, and should explain why they were fraudulent." *Spool*, 520 F.3d at 185.

Plaintiffs allege with specificity only a single use of the wires relating to BlueCrest—the 2005 message. Am. Compl. ¶ 131. Even assuming this allegation pleads a predicate act of wire fraud (and it does not), plaintiffs have failed to allege with particularity any *second* predicate act by BlueCrest. Plaintiffs allege only that BlueCrest made similar requests of other banks "on a regular basis." Am. Compl. ¶ 129. But they provide no details at all about these supposed requests, and they certainly do not allege the "contents of the[se] communications, who was involved, [] where and when they took place, and . . . why they were fraudulent," as required by

Rule 9(b).  *Spool*, 520 F.3d at 185; *see also McLaughlin v. Anderson*, 962 F.2d 187, 194 (2d Cir.

1992) (affirming dismissal of RICO claim where plaintiff alleged "only a single predicate act").[13]

### ii  *Plaintiffs Fail to Allege that BlueCrest Participated in the Operation and Management of a RICO Enterprise (Claim 6).*

Plaintiffs also fail to allege that BlueCrest participated in the operation or management of

the purported RICO enterprise.  "[F]or an association of individuals to constitute an enterprise,

the individuals must share a common purpose to engage in a particular fraudulent course of

conduct and work together to achieve such purposes."  *Cruz v. FXDirectDealer, LLC*, 720 F.3d

115, 120 (2d Cir. 2013).   Mere association with the enterprise, however, does not suffice to

establish liability.  *Lippe v. Bairnco Corp.*, 218 B.R. 294 (S.D.N.Y. 1998).  The defendant must

have "participated in the operation or management of the enterprise itself," by having "some part

in directing" the enterprise's affairs.  *Reves v. Ernst & Young*, 507 U.S. 170, 184 (1993).

Plaintiffs have failed to allege that BlueCrest had any part in *directing* the affairs of the

alleged enterprise.  At most, Plaintiffs allege that BlueCrest, itself not a CHF LIBOR submitter,

"lobbied" a Contributor Bank to alter its CHF LIBOR submission.  "Lobbying," however, means

only a desire to *influence*—not an ability to *direct*.  *See* Black's Law Dictionary (10th ed.)

(defining "lobby" as "[t]o try to influence").  But "trying to influence" an enterprise is

insufficient to establish a defendant's ability to "direct" the operation and management of a

RICO enterprise.  *See Strong & Fisher Ltd. v. Maxima Leather, Inc.*, No. 91-cv-1779(JSM), 1993

WL 277205, at *1 (S.D.N.Y. July 22, 1993) (defendant's "substantial persuasive power" to

---

[13]    *Accord Herbert v. HSBC Mortg. Servs.*, No. 13-cv-0322(RER), 2014 WL 3756360, at *5 (E.D.N.Y. June 30, 2014), *report and recommendation adopted*, 2014 WL3756367 (July 28, 2014) ("Aside from [a single instance], the complaint contains no specific dates of interstate mail or wire usage.  Plaintiff's vague allegation that the misrepresentations were made 'numerous' times is not sufficient under Rule 9(b)"); *Hoatson v. N.Y. Archdiocese*, No. 05-cv-10467(PAC), 2007 WL 431098, at *5 (S.D.N.Y. Feb. 8, 2007) ("The bare allegation that 'defendants took numerous predicate acts or steps in furtherance of their criminal conspiracy . . . falls well short of pleading with particularity.").

influence enterprise was insufficient to demonstrate ability to conduct enterprise's affairs).[14]
Because Plaintiffs do not allege that BlueCrest directed the operation and management of the
alleged RICO enterprise, the RICO claims against it must be dismissed.

### iii  Plaintiffs Fail to Plead a Claim for RICO Conspiracy (Claim 7).

Plaintiffs also fail to plead a claim against BlueCrest for RICO conspiracy.  To plead a
RICO conspiracy claim, a complaint must allege a substantive RICO violation.  *Medinol Ltd. v.
Boston Scientific Corp.*, 346 F. Supp. 2d 575, 616 (S.D.N.Y. 2004).  For the reasons set forth
above and in the Banks' Brief, Plaintiffs have failed to allege a primary violation of RICO, and
their RICO conspiracy claim necessarily fails.

The RICO conspiracy claim against BlueCrest also fails because Plaintiffs fail to allege
BlueCrest's participation in the purported conspiracy.  In the civil context, a plaintiff asserting a
claim for RICO conspiracy must allege that the defendant "knew about and agreed to facilitate
the scheme."  *Cont'l Petroleum Corp. v. Corp. Funding Partners, LLC*, No. 11-cv-7801(PAE),
2012 WL 1231775, at *8 (S.D.N.Y. Apr. 12, 2012).  For the same reasons discussed above in
connection with the Sherman Act claims, Plaintiffs have failed to allege that BlueCrest agreed
with any other Defendant to manipulate CHF LIBOR.  *See infra* Part III(A)(2).

### CONCLUSION

For the foregoing reasons, this action should be dismissed in its entirety as to BlueCrest.

---

[14]   *Accord Redtail Leasing, Inc. v. Bellezza*, No. 95-cv-5191(JFK), 1999 WL 32941, at *4-5 (S.D.N.Y. Jan.
22, 1999) (dismissing RICO claim against alleged members of insider trading ring, despite allegations that
defendants passed on and traded on inside information and received kickbacks for illegal trades, where
complaint failed to allege they had a role in managing or directing enterprise's affairs).

Dated:  August 18, 2015
      New York, New York

/s/ Douglass Maynard
Douglass Maynard
Joseph Boryshansky
John Murphy
Katherine Porter
AKIN GUMP STRAUSS  HAUER &
FELD LLP
One Bryant Park
New York, NY 10036
Tel: (212) 872-1000
*Attorneys for Defendant BlueCrest*
*Capital Management, LLP*