UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SONTERRA CAPITAL MASTER FUND LTD., FRONTPOINT EUROPEAN FUND, L.P., FRONTPOINT FINANCIAL SERVICES FUND, L.P., FRONTPOINT HEALTHCARE FLAGSHIP ENHANCED FUND, L.P., FRONTPOINT HEALTHCARE FLAGSHIP FUND, L.P., FRONTPOINT HEALTHCARE HORIZONS FUND, L.P., FRONTPOINT FINANCIAL HORIZONS FUND, L.P., FRONTPOINT UTILITY AND ENERGY FUND, L.P., HUNTER GLOBAL INVESTORS FUND I, L.P., HUNTER GLOBAL INVESTORS FUND II, L.P., HUNTER GLOBAL INVESTORS OFFSHORE FUND LTD., HUNTER GLOBAL INVESTORS OFFSHORE FUND II LTD., HUNTER GLOBAL INVESTORS SRI FUND LTD., HG HOLDINGS LTD., HG HOLDINGS II LTD., and FRANK DIVITTO, on behalf of themselves and all others similarly situated, <br><br>                                                    Plaintiffs, <br><br>                                                  *- against -* <br><br>CREDIT SUISSE GROUP AG, CREDIT SUISSE AG, JPMORGAN CHASE & CO., THE ROYAL BANK OF SCOTLAND PLC, UBS AG, BLUECREST CAPITAL MANAGEMENT LLP, DEUTSCHE BANK AG, DB GROUP SERVICES UK LIMITED, and JOHN DOE NOS. 1-50, <br><br>                                                    Defendants. | Case No. 15-cv-00871 (SHS) |

**JOINT REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF FOREIGN DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii
PRELIMINARY STATEMENT ............................................................................................. 1
I.    THE FOREIGN DEFENDANTS HAVE NOT CONSENTED TO THIS COURT'S JURISDICTION. ............................................................................................ 1
    A.    Credit Suisse AG, Deutsche Bank, and RBS Did Not Consent to Jurisdiction in "Any Action" by Registering under the New York Banking Laws. .......................................................................................................................... 1
    B.    UBS Did Not Consent to This Court's Jurisdiction by Registering under the International Banking Act. ................................................................................ 4
II.    PLAINTIFFS' CONSPIRACY ALLEGATIONS DO NOT GIVE THIS COURT SPECIFIC JURISDICTION OVER DEFENDANTS. ......................................... 5
III.    THE FOREIGN DEFENDANTS ARE NOT SUBJECT TO SPECIFIC JURISDICTION. ................................................................................................................ 7
    A.    Foreign Defendants' Sales of CHF LIBOR-Based Derivatives in the United States Do Not Establish a Causal Nexus Sufficient for Specific Jurisdiction. ........................................................................................................... 8
    B.    Foreign Defendants Did Not Purposely Avail Themselves of the Forum. ............. 9
CONCLUSION ...................................................................................................................... 10

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*7 W. 57th St. Realty Co., LLC* v. *Citigroup, Inc.*,
 2015 WL 1514539 (S.D.N.Y. Mar. 31, 2015) ................................................................ 2, 9-10

*In re Aluminum Warehousing Antitrust Litig.*,
 90 F. Supp. 3d 219 (S.D.N.Y. 2015) ..................................................................................... 6

*AM Trust* v. *UBS AG*,
 78 F. Supp. 3d 977, 985 (N.D. Cal. 2015), *appeal docketed*,
 No. 15-15343 (9th Cir. Feb. 25, 2015) .................................................................................. 5

*AstraZeneca AB* v. *Mylan Pharm., Inc.*,
 72 F. Supp. 3d 549 (D. Del. 2014), *petition for permission to appeal granted*,
 No. 15-117 (Fed. Cir. Mar. 17, 2015) .................................................................................. 5n

*In re Auto. Parts Antitrust Litig.*,
 2015 WL 4508938 (E.D. Mich. July 24, 2015) ..................................................................... 6

*B & M Kingstone, LLC* v. *Mega Int'l Commercial Bank Co.*,
 131 A.D.3d 259 (1st Dep't Aug. 11, 2015) ......................................................................... 4n

*Calder* v. *Jones*,
 465 U.S. 783 (1984) .............................................................................................................. 9

*Cebulske* v. *Johnson & Johnson*,
 2015 WL 1403148 (S.D. Ill. Mar. 25, 2015) ......................................................................... 6

*Chambers* v. *Weinstein*,
 2014 WL 4276910 (N.Y. Sup. Ct. Aug. 22, 2014) .............................................................. 5n

*Chew* v. *Dietrich*,
 143 F.3d 24 (2d Cir. 1998) .................................................................................................... 7

*Daimler AG* v. *Bauman*,
 134 S. Ct. 746 (2014) .................................................................................................... 2n, 3n

*First Am. Corp.* v. *Price Waterhouse LLP*,
 154 F.3d 16 (2d Cir. 1998) .................................................................................................. 4n

*Forest Labs., Inc.* v. *Amneal Pharms., LLC*,
 2015 WL 880599 (D. Del. Feb. 26, 2015) .......................................................................... 5n

*Freedman* v. *Suntrust Banks, Inc.*,
 2015 WL 5579559 (D.D.C. Sept. 21, 2015) ..................................................................... 4-5

*Galope* v. *Deutsche Bank Nat'l Tr. Co.*,
    2014 WL 8662645 (C.D. Cal. Nov. 14, 2014)......................................................................10

*Giordano* v. *UBS, AG*,
    2015 WL 5671970 (S.D.N.Y. Sept. 25, 2015)......................................................................7n

*Glaros* v. *Perse*,
    628 F.2d 679 (1st Cir. 1980).................................................................................................6

*Gliklad* v. *Bank Hapoalim B.M.*,
    2014 WL 3899209 (N.Y. Sup. Ct. Aug. 4, 2014)............................................................2n, 5n

*Gucci Am., Inc.* v. *Bank of China*,
    768 F.3d 122 (2d Cir. 2014)...............................................................................................3, 5

*Gucci Am., Inc.* v. *Weixing Li*,
    2015 WL 5707135 (S.D.N.Y. Sept. 29, 2015)..................................................................5n, 7

*King* v. *Am. Family Mut. Ins. Co.*,
    632 F.3d 570 (9th Cir. 2011) ..............................................................................................5n

*Koontz* v. *St. Johns River Water Mgmt. Dist.*,
    133 S. Ct. 2586 (2013).........................................................................................................3n

*Laydon* v. *Mizuho Bank, Ltd.*,
    2015 WL 1515358 (S.D.N.Y. Mar. 31, 2015) ..................................................................8, 10

*Leasco Data Processing Equip. Corp.* v. *Maxwell*,
    468 F.2d 1326 (2d Cir. 1972), *abrogated on other grounds*,
    *Morrison* v. *Nat'l Australia Bank Ltd.*, 130 S. Ct. 2869 (2010) ...............................................7

*Legal Servs. Corp.* v. *Velazquez*,
    531 U.S. 533 (2001).............................................................................................................3n

*Levitin* v. *Sony Music Entm't*,
    2015 WL 1849900 (S.D.N.Y. Apr. 22, 2015).......................................................................7n

*In re LIBOR-Based Fin. Instr. Antitrust Litig.*,
    2015 WL 6243526 (S.D.N.Y. Oct. 20, 2015) ........................................................... 2n, 6n, 7-8

*Motorola Credit Corp.* v. *Uzan*,
    2015 WL 5613077 (S.D.N.Y. Sept. 9, 2015).................................................................2, 3, 5

*In re SAIC, Inc. Sec. Litig.*,
    2014 WL 407050 (S.D.N.Y. Jan. 30, 2014) .......................................................................10n

*In re Satyam Computer Servs. Ltd. Sec. Litig.*,
    915 F. Supp. 2d 450 (S.D.N.Y. 2013)...................................................................................6

*Simon* v. *Southern Ry.*,
   236 U.S. 115 (1915) ..................................................................................................5

*Tarsavage* v. *CITIC Trust Co.*,
   3 F. Supp. 3d 137 (S.D.N.Y. 2014) ...................................................................6n, 7n

*U.S. Bank Nat'l Ass'n* v. *Bank of Am., N.A.*,
   2015 WL 5971126 (S.D. Ind. Oct. 14, 2015) ............................................................5

*United States* v. *Hayes*,
   2015 WL 1740830 (S.D.N.Y. Mar. 20, 2015) ....................................................6n, 9n

*Varga* v. *Credit Suisse*,
   155 N.Y.S. 2d 665 (N.Y. Sup. Ct. 1956), *aff'd*, 2 A.D.2d 596 (1st Dep't 1956) ....................3n

*Vera* v. *Republic of Cuba*,
   91 F. Supp. 3d 561 (S.D.N.Y. 2015)..........................................................................3

*Walden* v. *Fiore*,
   134 S. Ct. 1115, 1122 (2014). .......................................................................... 1, 6, 9-10

*Wenche Siemer* v. *Learjet Acquisition Corp.*,
   966 F.2d 179 (5th Cir. 1992) ....................................................................................5n

*Wilder* v. *News Corp.*,
   2014 WL 1315960 (S.D.N.Y. Mar. 31, 2014) ...........................................................6

**Statutes**

12 U.S.C. § 3102(b) (2015) ................................................................................................4

N.Y. Banking Law §§ 200 and 200-b (McKinney 2006) ...................................................2

**Regulations**

12 C.F.R. § 28.21 (2015) ....................................................................................................4

**Congressional Materials**

124 Cong. Rec. S26129 (1978).........................................................................................5n

Foreign Defendants[1] submit this joint reply memorandum of law in further support of their motion to dismiss the Amended Complaint for lack of personal jurisdiction.

## PRELIMINARY STATEMENT

In Plaintiffs' opposition brief, they concede that (1) none of the Foreign Defendants is "at home" in the forum and, therefore, subject to general jurisdiction on that basis; and (2) the alleged manipulation of CHF LIBOR by the Foreign Defendants occurred entirely outside of the United States. Plaintiffs instead make three principal arguments in support of jurisdiction, all of which are without merit. *First*, Plaintiffs argue that, by registering to do business under state or federal law, certain Foreign Defendants consented to jurisdiction in "any action," regardless of Defendants' lack of connection to the forum. This argument fails because the relevant statutes and applicable case law clarify that registration does not constitute consent to "general jurisdiction." *Second*, Plaintiffs allege that certain Foreign Defendants entered a conspiracy with JPMorgan, a New York resident, and, on that basis alone, subjected themselves to jurisdiction in New York. In the civil context, however, courts have generally rejected a theory of jurisdiction based on conspiracy and, to the extent the theory remains viable, it requires allegations that the foreign defendant had suit-related contacts with the forum, which Plaintiffs do not adequately allege. *Third*, Plaintiffs' argument that Foreign Defendants had sufficient suit-related contacts with the forum for this Court to assert specific jurisdiction over them also fails because Plaintiffs' allegations relate to financial products in which they did not transact and to the supposedly foreseeable domestic effects of the Foreign Defendants' alleged misconduct, which are insufficient to establish jurisdiction under *Walden* v. *Fiore*, 134 S. Ct. 1115, 1122 (2014).

## I. THE FOREIGN DEFENDANTS HAVE NOT CONSENTED TO THIS COURT'S JURISDICTION.

### A. Credit Suisse AG, Deutsche Bank, and RBS Did Not Consent to Jurisdiction in "Any Action" by Registering under the New York Banking Laws.

Plaintiffs incorrectly assert that Credit Suisse AG, Deutsche Bank, and RBS[2] consented to personal jurisdiction in "any action" by registering branches with the New York Department

---

[1] Except where otherwise noted, defined terms are the same as those used in Foreign Defendants' opening brief.

[2] Plaintiffs do not assert that any of the other Foreign Defendants — including Credit Suisse Group AG, DB Group Services UK Limited, and UBS AG — consented to general jurisdiction by registering under the New York Banking

1

of Financial Services under New York Banking Law §§ 200 and 200-b, regardless of whether the conduct at issue in such action has any connection to the registered branch or occurred in New York. Plaintiffs' reading of the relevant statutes is contrary to the language of the statute and the case law interpreting it, and, in any event, would be unconstitutional as applied in this case.

Under Plaintiffs' reading, once a defendant registers a New York branch under § 200, they can be sued in New York for *anything* — even, for example, for negligence by a European citizen who slipped and fell in a defendant's European branch. Opp. Br. at 10-13. This argument, however, is negated by the plain language of the statute. Under § 200, to do business in New York, a branch of a foreign bank must file a written instrument with the office of the superintendent:

> appointing the superintendent and his or her successors its true and lawful attorney, upon whom all process in any action or proceeding against it on a cause of action *arising out of a transaction with its New York agency or agencies or branch or branches* . . . may be served.

N.Y. Banking Law § 200(3) (McKinney 2006) (emphasis added). Plaintiffs do not even attempt to reconcile their erroneous reading of the statute with the "arising out of a transaction with its New York agency . . . or branch" language. Nor can they. The text expressly limits acceptance of service to only those suits "arising out of a transaction" with the foreign bank's New York agency or branch. *See, e.g.*, *7 W. 57th St. Realty Co., LLC* v. *Citigroup, Inc.*, 2015 WL 1514539, at *11 (S.D.N.Y. Mar. 31, 2015) (Gardephe, J.) ("The plain language of this provision [i.e., § 200] limits any consent to personal jurisdiction by registered banks to *specific* personal jurisdiction.") (emphasis in original); *Motorola Credit Corp.* v. *Uzan*, 2015 WL 5613077, at *2 (S.D.N.Y. Sept. 9, 2015) (Rakoff, J.) (same).[3] Because Plaintiffs did not allege a cause of action arising out of a transaction with any Foreign Defendant's New York branch or agency, Plaintiffs

---

laws. Plaintiffs' allegations that certain Foreign Defendants admitted that they were residents of New York by filing suits in New York are irrelevant because each suit predates *Daimler AG* v. *Bauman*, 134 S. Ct. 746 (2014), and Plaintiffs concede that none of the Foreign Defendants is "at home" in New York.

[3] *See also In re LIBOR-Based Fin. Instr. Antitrust Litig.* ("*LIBOR IV*"), 2015 WL 6243526, at *26-27 (S.D.N.Y. Oct. 20, 2015) (rejecting argument that obtaining licenses from the New York State Department of Financial Services establishes general jurisdiction); *Gliklad* v. *Bank Hapoalim B.M.*, 2014 WL 3899209, at *1 (N.Y. Sup. Ct. Aug. 4, 2014) (Section 200 "provid[es] for the exercise of specific jurisdiction, not general").

have failed to demonstrate that Foreign Defendants consented to personal jurisdiction under § 200.

Plaintiffs' reading of § 200 also violates Foreign Defendants' due process rights under the Second Circuit's decision in *Gucci Am., Inc.* v. *Bank of China*, 768 F.3d 122 (2d Cir. 2014). If obtaining a license under § 200 *were* tantamount to consent to general jurisdiction then foreign banks with New York branches would *always* be subject to general jurisdiction in New York. That outcome is contrary to the holding in *Gucci*. *Id.* at 135. "*Gucci* stands for the proposition that mere operation of a branch office in a forum — and satisfaction of any attendant licensing requirements — is not constitutionally sufficient to establish general jurisdiction." *Motorola Credit Corp.*, 2015 WL 5613077, at *2.[4]

Moreover, the cases Plaintiffs cite do not support the application of jurisdiction here.[5] In *Vera* v. *Republic of Cuba*, the court found that a foreign bank that had registered under § 200 was subject to jurisdiction in New York for a post-judgment information subpoena served upon the foreign bank's New York branch. 91 F. Supp. 3d 561, 570 (S.D.N.Y. 2015). Far from holding that registration under § 200 was tantamount to consent to *general* jurisdiction, the court held that the New York branch of a foreign bank merely had to produce documents located *in New York*. *Id.* at 573 ("The information requested by the [subpoena] can be found via electronic searches performed in [the foreign bank's] New York office, and are within this jurisdiction.").

---

[4] Plaintiffs' reading should also be rejected because it offends the unconstitutional conditions doctrine by requiring defendants to surrender a constitutional right to receive a government benefit (the privilege of doing business in New York). *See Koontz* v. *St. Johns River Water Mgmt. Dist.*, 133 S. Ct. 2586, 2594 (2013). This Court is required to avoid such a reading. *See Legal Servs. Corp.* v. *Velazquez*, 531 U.S. 533, 545 (2001).

[5] Plaintiffs' citation to a decision from the 1950s, *Varga* v. *Credit Suisse,* is inapposite. 155 N.Y.S. 2d 655 (N.Y. Sup. Ct. 1956), *aff'd*, 2 A.D.2d 596 (1st Dep't 1956). *Varga* did not hold that registration under the New York Banking Law alone conferred jurisdiction over the defendant foreign bank. The Court recognized that the underlying cause of action, which involved a dispute over funds deposited in a bank in Switzerland, "[c]learly…does not come within the scope of [§ 200(3) of the Banking Law]" because it did not "aris[e] out of a transaction with [defendants'] New York agency." 155 N.Y.S.2d at 658. Instead, the court found defendants consented to general jurisdiction based on the court's interpretation of the Civil Practice Act § 229, which "deal[t] with service upon foreign corporations generally" and which Plaintiffs do not invoke here. *Id.* In any event, *Varga* long predates *Daimler* and does not address the constitutional question of when branches of foreign banks may be subject to general jurisdiction consistent with due process.

3

The "arising out of a transaction" language in § 200 was satisfied by the presence of the documents in New York.[6] The same is not true here.

Plaintiffs' policy argument that their reading of § 200 prevents foreign banks from having a competitive advantage over domestic banks is also without merit. Opp. Br. at 14. Plaintiffs' reading would put foreign banks with New York branches at a competitive *disadvantage*, because they would be subject to suit in New York for causes of action with no connection to New York whatsoever. A domestic bank that resides in another state but has a New York branch is not subject to such suits in New York, because that would clearly violate due process.

### B. UBS Did Not Consent to This Court's Jurisdiction by Registering under the International Banking Act.

Plaintiffs assert that this Court can exercise personal jurisdiction over UBS because its registration under the International Banking Act ("IBA") makes UBS "subject to service of process at the location of the Federal branch or agency." 12 C.F.R. § 28.21 (2015). This argument fails for many of the same reasons as Plaintiffs' arguments about § 200.

First, Plaintiffs' consent argument is inconsistent with the language of the relevant statute. Under the IBA, if a foreign bank establishes and operates a federal branch or agency, then the "operations. . . shall be conducted with the same rights and privileges as a national bank at the same location and shall be subject to all the same duties, restrictions, penalties, liabilities, conditions, and limitations that would apply under the National Bank Act to a national bank doing business at the same location." 12 U.S.C. § 3102(b) (2015). If Plaintiffs' reading of the statute were correct, then foreign banks with federal branches or agencies would be subject to suit in the forum where their federal branches are located for *anything*, even if the action did not arise out of the conduct of their federal branch or agency. Opp. Br. at 13. That scenario would put foreign banks in a *worse* position than national banks, which are not subject to general jurisdiction wherever they have branch offices. *See, e.g.*, *Freedman* v. *Suntrust Banks, Inc.*, 2015 WL

---

[6] *Accord B & M Kingstone, LLC* v. *Mega Int'l Commercial Bank Co.*, 131 A.D.3d 259, 264-65 (1st Dep't Aug. 11, 2015) (finding a foreign bank had only consented to comply with an information subpoena served in New York from its act of registration); *see also First Am. Corp.* v. *Price Waterhouse LLP*, 154 F.3d 16, 20 (2d Cir. 1998) (recognizing the hardships are far greater on a defendant than a recipient of an information subpoena).

4

5579559, at *5 (D.D.C. Sept. 21, 2015); *U.S. Bank Nat'l Ass'n* v. *Bank of Am., N.A.*, 2015 WL 5971126, at *8 (S.D. Ind. Oct. 14, 2015).

It is not surprising then, that courts have rejected Plaintiffs' argument, including in a case involving UBS. *See, e.g.*, *AM Trust* v. *UBS AG*, 78 F. Supp. 3d 977, 985 (N.D. Cal. 2015), *appeal docketed*, No. 15-15343 (9th Cir. Feb. 25, 2015). Moreover, Plaintiffs' reading of the statute is contrary to the Second Circuit's holding in *Gucci*. *Motorola Credit Corp.*, 2015 WL 5613077, at *2.[7] Courts interpreting similar state law provisions have reached the same conclusion.[8] *See, e.g.*, *Simon* v. *Southern Ry.*, 236 U.S. 115, 130 (1915) ("power to designate by statute the officer upon whom service in suits against foreign corporations may be made relates to business and transactions within the jurisdiction").[9]

Finally, Plaintiffs' depiction of the IBA is also at odds with public policy because it (i) advantages domestic banks over foreign banks and (ii) creates a constitutional question of whether the IBA violates the unconstitutional conditions doctrine. *See supra* p. 4, n.4.

## II. PLAINTIFFS' CONSPIRACY ALLEGATIONS DO NOT GIVE THIS COURT SPECIFIC JURISDICTION OVER DEFENDANTS.

Plaintiffs' argument that their allegations that certain Defendants entered into a "conspiracy" with JPMorgan, a New York resident, provide a basis for this Court to exercise specific ju-

---

[7] *See also Gucci Am., Inc.* v. *Weixing Li* ("*Gucci II*"), 2015 WL 5707135, at *15 (S.D.N.Y. Sept. 29, 2015) (on remand after the Second Circuit ruling, holding that a foreign bank was not subject to general jurisdiction where plaintiff had argued in its briefing that registration under the IBA constitutes consent to general jurisdiction, Pls.' Mot. to Compel at 9-10, No. 10-cv-4974, ECF No. 136).

[8] Plaintiffs' citation to a Delaware case, *Forest Labs., Inc.,* v. *Amneal Pharm. LLC*, which held that registration under Delaware law constituted consent to general jurisdiction, is inapposite. 2015 WL 880599 (D. Del. Feb. 26, 2015). That case addressed Delaware's registration statute, not the IBA, which serves a different purpose because Congress enacted the IBA to regulate domestic banking activity—not to oversee extraterritorial conduct. *See* 124 Cong. Rec. S26129 (1978) (statement of Sen. McIntyre) (purpose of the IBA was to establish "authority to examine foreign bank operations *in the United States* by Federal regulatory authorities") (emphasis added). In any event, Delaware courts are split on the issue under Delaware law, *see AstraZeneca AB* v. *Mylan Pharm., Inc.*, 72 F. Supp. 3d 549 (D. Del. 2014), *petition for permission to appeal granted*, No. 15-117 (Fed. Cir. Mar. 17, 2015) (rejecting the argument that registration constitutes consent to general jurisdiction), and, for the reasons stated above, the better view is that registration does not constitute consent to general jurisdiction.

[9] *See also Wenche Siemer* v. *Learjet Acquisition Corp.*, 966 F.2d 179, 183 (5th Cir. 1992) (registering an agent, without more, does not constitute consent to personal jurisdiction); *King* v. *Am. Family Mut. Ins. Co.*, 632 F.3d 570, 576 (9th Cir. 2011) (same); *Chambers* v. *Weinstein*, 2014 WL 4276910, at *16 (N.Y. Sup. Ct. Aug. 22, 2014) (same); *Gliklad* v. *Bank Hapoalim B.M.*, 2014 WL 3899209, at *1 (N.Y. Sup. Ct. Aug. 4, 2014) (same).

risdiction over Credit Suisse Group AG, RBS, and UBS[10] cannot satisfy the requirements of due process and therefore fails as a matter of law in the wake of *Walden* v. *Fiore*. 134 S. Ct. at 1122 (personal jurisdiction must be based upon contacts that the "defendant *himself* creates with the forum State"); *see also Cebulske* v. *Johnson & Johnson*, 2015 WL 1403148, at *3 (S.D. Ill. Mar. 25, 2015) ("[S]omething more than an attenuated link is necessary to establish a defendant's personal jurisdiction."). Even if the theory were viable, however, the conspiracy allegations fail because they are implausible,[11] and because Plaintiffs do not allege that Foreign Defendants committed any tortious acts in furtherance of the alleged conspiracy in New York — a prerequisite to conspiracy-based personal jurisdiction.[12] *See Glaros* v. *Perse*, 628 F.2d 679, 682 (1st Cir. 1980) (a "conspiracy theory of personal jurisdiction . . . . require[s] something more than the presence of a co-conspirator within the forum state"); *In re Aluminum Warehousing Antitrust Litig.*, 90 F. Supp. 3d 219, 226-27 (S.D.N.Y. 2015) (rejecting "conspiracy jurisdiction" and holding that, for jurisdiction to exist, each entity must have engaged in an affirmative act directed at the forum); *In re Auto. Parts Antitrust Litig.*, 2015 WL 4508938, at *4 (E.D. Mich. July 24, 2015); *Wilder* v. *News Corp.*, 2014 WL 1315960, at *6 (S.D.N.Y. Mar. 31, 2014); *In re Satyam Computer Servs. Ltd. Sec. Litig.*, 915 F. Supp. 2d 450, 485 (S.D.N.Y. 2013).

Plaintiffs do not dispute that Foreign Defendants' alleged manipulation occurred outside the United States. Plaintiffs' additional allegations that Foreign Defendants engaged in so-called "overt acts" in the forum, Opp. Br. at 16-17, also fail. As discussed below, such assertions only address the alleged downstream effects of the Foreign Defendants' alleged misconduct and do not connect the defendant "to the forum in a meaningful way." *Walden*, 134 S. Ct. at 1125.[13]

---

[10] The relevant regulatory settlements do not implicate Credit Suisse AG, Deutsche Bank AG, and DB Group Services UK Limited, AC ¶¶ 49, 139, and, as to them, Plaintiffs do not assert a conspiracy theory of jurisdiction.

[11] As described in the Rule 12(b)(6) motion, Plaintiffs' conspiracy allegations based on the regulatory settlements are inadequately alleged. Dkt. No. 73 at Part II.D; *see also LIBOR IV*, 2015 WL 6243526, at *29 (S.D.N.Y. Aug. 4, 2015) (rejecting conspiracy theory of personal jurisdiction where conspiracy not plausibly alleged).

[12] Plaintiffs argue that *United States* v. *Hayes*, 2015 WL 1740830, at *13 (S.D.N.Y. Mar. 20, 2015), a criminal case, establishes that the "the acts of co-conspirators may be taken into account in deciding whether United States courts may prosecute an alleged conspirator." Opp. Br. at 18. *Hayes* has no bearing here, since that court acknowledged its findings are "not relevant" to "the law of personal jurisdiction developed in civil cases" as "criminal law and civil law serve different purposes and have different sources and constraints." *Hayes*, 2015 WL 1740830, at *12 n.4.

[13] *Tarsavage* v. *CITIC Trust Co.*, 3 F. Supp. 3d 137 (S.D.N.Y. 2014) contrasts conclusory conspiracy allegations

That one of the alleged co-conspirators was based in New York does not change the result. Opp. Br. at 15. An alleged co-conspirator's residence in the forum alone does not demonstrate that the Foreign Defendants engaged in any acts in furtherance of the alleged conspiracy in New York and is insufficient to establish personal jurisdiction. *See Leasco Data Processing Equip. Corp.* v. *Maxwell*, 468 F.2d 1326, 1343 (2d Cir. 1972) ("[T]he mere presence of one conspirator . . . does not confer personal jurisdiction over another alleged conspirator."), *abrogated on other grounds*, *Morrison* v. *Nat'l Australia Bank Ltd.*, 130 S. Ct. 2869 (2010); *LIBOR IV*, 2015 WL 6243526 at *29 ("[T]he cases are unanimous that a bare allegation of a conspiracy between the defendant and a person within the personal jurisdiction of the court is not enough.").

## III. THE FOREIGN DEFENDANTS ARE NOT SUBJECT TO SPECIFIC JURISDICTION.

Plaintiffs do not dispute that their claims must arise out of, or relate to, the Foreign Defendants' contacts with the forum to give rise to specific jurisdiction. Plaintiffs argue that they do not need to show proximate causation, and that such contacts with the forum merely have to "relate to" their claims. Opp. Br. at 18-19. But the Second Circuit requires Plaintiffs to show proximate causation in cases, such as this one, where the defendants have only limited contacts with the forum state.[14] *Chew* v. *Dietrich*, 143 F.3d 24, 29 (2d Cir. 1998). Plaintiffs also cite *Gucci II* for the proposition that something less than "but for" causation applies. Opp. Br. at 18-19. But *Gucci II* does not support that proposition. *Gucci II*, 2015 WL 5707135, at *9 (applying "but for" causation). After *Chew*, courts have applied, at a minimum a "but for" causa-

---

insufficient to create specific jurisdiction with sufficient factual allegations, e.g. "letters and meetings that the defendant acted in New York for the benefit of two other defendants with their knowledge and consent and under their control." *Id.* at 143, 147-48. Plaintiffs here make no such specific factual allegations.

[14] Although Plaintiffs attempt to demonstrate the Foreign Defendants have "substantial contacts in the forum," Opp. Br. at 20 n.44, their support for this claim is lacking. For example, in their Amended Complaint, Plaintiffs allege that "Credit Suisse's U.S.-based dealers trade in the over-the-counter foreign exchange and derivatives markets, which includes interest rate swaps, forward rate agreements, foreign exchange swaps, and currency swaps, priced, benchmark[ed] and/or settled based on Swiss franc LIBOR." AC ¶ 44 n.20 (citing Federal Reserve Bank survey that lumps together all Credit Suisse entities as the only support for the allegation that the Credit Suisse defendants transacted in the United States). But Credit Suisse's "U.S.-based dealers" refers to Credit Suisse subsidiaries that are based in the U.S. and have not been sued here. The Court cannot consider forum contacts of a *defendant's affiliates* in assessing whether a *defendant* is subject to personal jurisdiction. *Giordano* v. *UBS, AG*, 2015 WL 5671970, at *9 (S.D.N.Y. Sept. 25, 2015) ("Plaintiff cannot aggregate all of the forum contacts of the entire UBS family of entities and attribute them all to UBS AG . . . ."*); see also Levitin* v. *Sony Music Entm't*, 2015 WL 1849900, at *7 (S.D.N.Y. Apr. 22, 2015).

7

tion test even in cases where there are numerous contacts with the forum state. *See, e.g., LIBOR IV*, 2015 WL 6243526, at *28 (finding that, at a minimum, "but for" causation is required).

Under any of these standards, Plaintiffs fail to connect Foreign Defendants' alleged misconduct with both the forum, here New York,[15] and their claims.

### A. Foreign Defendants' Sales of CHF LIBOR-Based Derivatives in the United States Do Not Establish a Causal Nexus Sufficient for Specific Jurisdiction.

Plaintiffs' argument that Foreign Defendants engaged in "suit-related" conduct by transacting in CHF LIBOR-based derivatives in the United States for the purpose of profiting from Plaintiffs fails because they do not allege adequately that any such sales were affected by alleged CHF LIBOR manipulation.

Although Plaintiffs allege generally that Foreign Defendants sold CHF LIBOR-based derivatives in the United States, Opp. Br. at 19-20 (citing AC ¶¶ 55, 58, 67, 202-04), they plead no facts indicating that these derivatives were affected by alleged CHF LIBOR manipulation.[16] Def. Br. at 16-17; *Laydon* v. *Mizuho Bank, Ltd.*, 2015 WL 1515358, at *3 (S.D.N.Y. Mar. 31, 2015) ("*Laydon I*") (no specific jurisdiction where "[t]here is no basis to conclude that any of the . . . Defendants . . . took actions 'expressly aimed' at the United States"). In particular, Plaintiffs allege no facts showing that Foreign Defendants' alleged manipulation affected the FX forwards that Plaintiffs themselves claim to have traded and that are the subject of this litigation.[17] Def. Br. at 17-18.

---

[15] Assessing Defendants' connection to the forum on a "nationwide contacts" basis does not provide a sufficient basis for asserting personal jurisdiction over the Foreign Defendants as, even under this analysis, there are no suit-related contracts. Def. Br. at 20-21. Regardless, a "nationwide contacts" analysis is inconsistent with due process which requires Plaintiffs to demonstrate contacts with the forum, New York. Def. Br. at 22-23.

[16] Plaintiffs allege that Deutsche Bank held internal "Monday Risk Calls" to discuss trading strategy. Conston Decl., Ex. 2 at 10; *see also* Opp. Br. at 20. But Plaintiffs do not allege any facts that suggest that these "Monday Risk Calls" contemplated — or had any impact on — CHF LIBOR-based derivatives sold in the United States. Nor do they plausibly allege a nexus between these calls and their allegations of a conspiracy among the banks.

[17] Plaintiffs do not even respond to the argument that the contracts covered in the Amended Complaint are not plausibly included in the allegations against the Credit Suisse defendants, because the Credit Suisse defendants are only plausibly alleged to have participated in the Bid-Ask Spread conspiracy, which was limited to forward interest rate agreements referenced to CHF LIBOR and interest rate swaps in Europe. *See* Def. Br. at 18. Plaintiffs do not allege to have entered into any such contracts with the Credit Suisse defendants.

Plaintiffs respond by citing an unadjudicated finding, set forth in the Commodity Futures Trading Commission's ("CFTC") order concerning its settlement with RBS, for the proposition that FX forwards are priced based on CHF LIBOR. Opp. Br. at 19 n. 43. Plaintiffs, however, misinterpret the CFTC order, which does not find that FX forwards are generally priced based on CHF LIBOR, but only that certain traders at RBS may have traded FX forwards so priced.[18] Again, it is not enough for Plaintiffs to allege that Defendants have contacts with the forum; they must allege a "causal nexus" between such contacts and the claims at issue in this case. Because Plaintiffs plead no relationship (let alone a causal nexus) between the alleged misconduct and the subject matter of their lawsuit, Plaintiffs do not and cannot establish specific jurisdiction.[19]

### B. Foreign Defendants Did Not Purposely Avail Themselves of the Forum.

Plaintiffs also argue, without merit, that Foreign Defendants purposefully availed themselves of the forum. Plaintiffs rely on *Calder* v. *Jones*, 465 U.S. 783 (1984), to argue that this Court can assert personal jurisdiction over the Foreign Defendants because the "lynchpin" of the alleged misconduct included "the dissemination of the artificial rates and prices in this forum." Opp. Br. at 21. This argument misapplies *Calder*.

*Walden* clarified that, under *Calder*, "[t]he proper question" for specific jurisdiction is no longer "where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." 134 S. Ct. at 1125. Following *Walden*, Plaintiffs must "plead facts demonstrating that the LIBOR manipulation was done with the express aim of causing an effect in New York."[20] *7 W. 57th St. Realty Co., LLC*, 2015 WL

---

[18] The CFTC finding does not support personal jurisdiction over RBS — with which Plaintiffs do not claim to have transacted — nor over the other Foreign Defendants, as Plaintiff must demonstrate personal jurisdiction for each defendant. Def. Br. at 18-19.

[19] Plaintiffs' reliance on allegations that Credit Suisse and UBS transacted with Frontpoint Plaintiffs who reside in Greenwich, Connecticut, Opp. Br. at 19-20 (citing AC ¶¶ 202-04), does not help them as they have failed to sufficiently allege that they transacted with Foreign Defendants in the forum (or even at all). Def. Br. at 17-18. First, identifying a contracting party's residency does not, by itself, confer jurisdiction and the paragraphs of the Amended Complaint cited in support of this argument fail to provide the detail needed to support a finding of specific jurisdiction. Def. Br. at 17-18. Second, even if it were true that the parties transacted in Connecticut, that allegation would not suffice to subject Credit Suisse and UBS to jurisdiction in New York. *See supra* n.15.

[20] Plaintiffs claim *Walden's* "express aim" requirement is inapplicable because of a single case, *Hayes*. 2015 WL 1740830. But *Hayes* is a criminal case and is irrelevant to a personal jurisdiction analysis in a civil suit. *See supra* n.12. Plaintiffs' concern that imposing this requirement will allow defendants to engage in conduct supposedly "target[ing] the world," Opp. Br. at 23, is essentially a bald request that the Court disregard the constraints of due

9

1514539, at *11 (effects test not satisfied even if negative effect felt in New York "was a foreseeable result of the Foreign Banks' alleged LIBOR manipulation"); *Laydon I*, 2015 WL 1515358, at *5 (same).

Plaintiffs fail to demonstrate that any of the Foreign Defendants' own "conduct connects [them] to the forum" in any way, much less in "a meaningful way" as required by *Walden*. 134 S. Ct. at 1125. None of the three examples cited by Plaintiffs makes such a showing. For example, Plaintiffs point to Thomson Reuters' publication of CHF LIBOR rates worldwide, including in the forum, Opp. Br. at 20, but Plaintiffs cannot establish jurisdiction over a defendant based on the conduct of a third party. Def. Br. at 18-19. Plaintiffs also claim that Foreign Defendants "intended that harm occur, at least in part, in the United States," Opp. Br. at 23, but fail to cite facts demonstrating that it was Foreign Defendants' *express intent* to cause harm to Plaintiffs, and that any such harm was not simply a "foreseeable effect." Def. Br. at 19-20; AC ¶18. Similarly, Plaintiffs point to Foreign Defendants' use of "electronic communications on Bloomberg terminals transmitted through servers located in New York," Opp. Br. at 23 n. 48, but it is "unreasonable" to consider that this "highly attenuated connection" constitutes purposeful availment. *Laydon I*, 2015 WL 1515358, at *3 (rejecting an identical argument in a Yen LIBOR manipulation case). Plaintiffs point to no other facts that connect the Defendants' alleged misconduct to New York, and, therefore, their availment argument falls flat. *See Galope* v. *Deutsche Bank Nat'l Tr. Co.*, 2014 WL 8662645, at *3-4 (C.D. Cal. Nov. 14, 2014).[21]

## CONCLUSION

For the above reasons, all Foreign Defendants should be dismissed.

---

process and the Amended Complaint's failure to allege that Foreign Defendants had an "express aim of causing an effect" in the forum so that Plaintiffs' suit can proceed in their preferred forum.

[21] The Court has already denied Plaintiffs' request for jurisdictional discovery and held that "the jurisdictional issues will be decided on a pre-discovery basis." Dkt. No. 81. Plaintiffs cite nothing new – on the law or the facts – that was not previously before this Court, and reconsideration is inappropriate under these circumstances. *See In re SAIC, Inc. Sec. Litig.*, 2014 WL 407050, at *2 (S.D.N.Y. Jan. 30, 2014).

Dated: New York, New York
November 18, 2015

Respectfully Submitted,

| | |
|---|---|
| */s/* Joel Kurtzberg | */s/* Moses Silverman |
| Herbert S. Washer | Moses Silverman |
| Elai Katz | Andrew C. Finch |
| Joel Kurtzberg | Michael J. Biondi |
| CAHILL GORDON & REINDEL LLP | PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP |
| 80 Pine Street | |
| New York, New York  10005 | 1285 Avenue of the Americas |
| Telephone: (212) 701-3000 | New York, NY  10019 |
| hwasher@cahill.com | Telephone: (212) 492-0355 |
| ekatz@cahill.com | msilverman@paulweiss.com |
| jkurtzberg@cahill.com | afinch@paulweiss.com |
| | mbiondi@paulweiss.com |
| *Attorneys for Defendant Credit Suisse Group AG and Credit Suisse AG* | *Attorneys for Defendants Deutsche Bank AG and DB Group Services UK Limited* |
| */s/*  Peter Sullivan | */s/*  Fraser L. Hunter, Jr. |
| Peter Sullivan | Fraser L. Hunter, Jr. |
| Lawrence J. Zweifach | David S. Lesser |
| GIBSON, DUNN & CRUTCHER LLP | Jamie Dycus |
| 200 Park Avenue | WILMER CUTLER PICKERING HALE AND DORR LLP |
| New York, New York  10166-0193 | |
| Telephone: (212) 351-4000 | 250 Greenwich Street |
| psullivan@gibsondunn.com | New York, New York  10007 |
| lzweifach@gibsondunn.com | Telephone: (212) 230-8800 |
| | Fax: (212) 230-8888 |
| Joel S. Sanders | fraser.hunter@wilmerhale.com |
| Joshua D. Dick | david.lesser@wilmerhale.com |
| 555 Mission Street | jamie.dycus@wilmerhale.com |
| Suite 3000 | |
| San Francisco, California 94105-0921 | *Attorneys for Defendant The Royal Bank of Scotland plc* |
| jsanders@gibsondunn.com | |
| jdick@gibsondunn.com | |
| *Attorneys for Defendant UBS AG* | |