UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SONTERRA CAPITAL MASTER FUND LTD., *et al.*,<br><br>                              Plaintiffs,<br><br>                v.<br><br>CREDIT SUISSE GROUP AG, *et al.*,<br><br>                              Defendants. | Case No. 15-cv-00871 (SHS) |

**REPLY OF BLUECREST CAPITAL MANAGEMENT, LLP
IN FURTHER SUPPORT OF ITS MOTION TO
DISMISS THE AMENDED COMPLAINT**

Douglass Maynard
Joseph Boryshansky
John Murphy
Katherine Porter
AKIN GUMP STRAUSS HAUER
& FELD LLP
One Bryant Park
New York, NY 10036
(212) 872-1000 (tel)
(212) 872-1002 (fax)

*Attorneys for Defendant BlueCrest
Capital Management, LLP*

## TABLE OF CONTENTS

**Page**

I.  PLAINTIFFS' PROPOSED "INFERENCES" FROM THE NYSDFS CONSENT ORDER ARE PURE SPECULATION ........................................................................ 1

II.  PLAINTIFFS' "ON THE BANDWAGON" ALLEGATION IS IRRELEVANT ................ 2

III.  PLAINTIFFS MISSTATE THE RULE 8 PLEADING STANDARD ................................ 3

IV.  PLAINTIFFS FAIL TO PLEAD PERSONAL JURISDICTION ........................................ 4

    A.  Plaintiffs Fail to Plead Specific Jurisdiction over BlueCrest. .................................. 4

    B.  Plaintiffs' Attempt to Rely on "Conspiracy Jurisdiction" Fails. .............................. 6

V.  Plaintiffs Fail to Plead a Claim Against BlueCrest Under the Sherman Act, CEA, or RICO ........................................................................................................................... 7

    A.  Plaintiffs Fail to Plead an Antitrust Claim against BlueCrest. ................................. 7

    B.  Plaintiffs Fail to Plead CEA Claims against BlueCrest. .......................................... 8

    C.  Plaintiffs Fail to Plead RICO Claims Against BlueCrest ......................................... 9

CONCLUSION ............................................................................................................................. 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................................... 11

*Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*,
  No. 93 Civ. 6876 (LMM), 2000 WL 1694322 (S.D.N.Y. Nov. 9, 2000) .................................. 10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..................................................................................................................... 4

*Chew v. Dietrich*,
  143 F.3d 24 (2d Cir. 1998) ........................................................................................................... 6

*City of Brockton Ret. Sys. v. Avon Prods.*,
  2014 WL 4832321 (S.D.N.Y. Sept. 28, 2014) ............................................................................. 3

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  131 S. Ct. 2846 (2011) ................................................................................................................. 5

*Gucci Am., Inc. v. Weixing Li*,
  No. 10-cv-4974 (RJS), 2015 WL 5707135 (S.D.N.Y. Sept. 29, 2015) ....................................... 6

*Hinds Cnty. v. Wachovia Bank N.A.*,
  885 F. Supp. 2d 617 (S.D.N.Y. 2012) ....................................................................................... 10

*In re Aluminum Warehouse Antitrust Litg.*,
  90 F. Supp. 3d 219 (S.D.N.Y. 2015) ........................................................................................... 6

*In re Commodity Exch., Inc., Silver Futures & Options Trading Litig.*,
  No. 11-md-2213(RPP), 2012 WL 6700236 (S.D.N.Y. Dec. 21, 2012) ....................................... 8

*In re Elec. Carbon Prods. Antitrust Litig..*
  333 F. Supp. 2d 303 (D.N.J. 2004) .............................................................................................. 4

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  No. 11-md-2262 (NRB), 935 F. Supp. 2d 666 (S.D.N.Y. 2013) ........................................... 8, 10

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  No. 11-md-2262 (NRB), 962 F. Supp. 2d 606 (S.D.N.Y 2013) .................................................. 8

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  No. 11-md-2262 (NRB), 27 F. Supp. 3d 447 (S.D.N.Y. 2014) ................................................. 10

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
   No. 11-md-2262 (NRB), 2014 WL 6488219 (S.D.N.Y. Nov. 17, 2014) .................................9

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
   No. 11-md-2262 (NRB), 2015 WL 4634541 (S.D.N.Y Aug. 4, 2015) ............................3, 6, 9

*In re Platinum & Palladium Commodities Litig.*,
   828 F. Supp. 2d 588 (S.D.N.Y. 2011)................................................................................1

*In re Satyam Computer Servs. Sec. Litig.*,
   915 F. Supp. 2d 450 (S.D.N.Y. 2013)................................................................................7

*In re Terrorist Attacks on Sept. 11, 2001*,
   714 F.3d 659 (2d Cir. 2013)..............................................................................................5

*Licci v. Lebanese Can. Bank*,
   732 F.3d 161  (2d Cir. 2013)..............................................................................................5

*Morpurgo v. Inc. Vill. of Sag Harbor*,
   697 F. Supp. 2d 309 (E.D.N.Y. 2010) .............................................................................2

*Olde Monmouth Stock Transfer Co. v. Depository Trust & Clearing Corp.*,
   485 F. Supp. 2d 387 (S.D.N.Y. 2007)..............................................................................8

*RSM Prod. Corp. v. Fridman*,
   643 F. Supp. 2d 382 (S.D.N.Y. 2009)..............................................................................2

*Simmtech Co. v. Barclays Bank PLC (In re Foreign Exch. Benchmark Rates Antitrust
   Litigation)*,
   74 F. Supp. 3d 581 (S.D.N.Y. 2015)................................................................................1

*Tarsavage v. Citic Trust Co.*,
   3 F. Supp. 3d 137 (S.D.N.Y. 2014) .................................................................................7

*Twombly v. Bell Atl. Corp.*,
   425 F.3d 99 (2d Cir. 2005), *rev'd* 550 U.S. 544 (2007) ..............................................4

*Walden v. Fiore*,
   134 S. Ct. 1115 (2014).................................................................................................5, 6

Plaintiffs' Opposition[1] confirms that their claims against BlueCrest all hinge on one tenuous allegation, coupled with the hope that the Court will accept a dizzying sequence of implausible "inferences" and speculative leaps. Stripped of these inferences and leaps, the actual allegations of the Amended Complaint do not support any of Plaintiffs' claims against BlueCrest.

## I.   PLAINTIFFS' PROPOSED "INFERENCES" FROM THE NYSDFS CONSENT ORDER ARE PURE SPECULATION

Plaintiffs' case against BlueCrest rests on one factual allegation—a one-way message about CHF LIBOR allegedly sent in 2005 to an unnamed Deutsche Bank employee in an unspecified location, with no allegation the message was received, reviewed, responded to, or acted upon. This allegation was lifted from a NYSDFS Consent Order that BlueCrest did not sign, issued in a proceeding that neither targeted nor charged BlueCrest.[2] Plaintiffs assert that the 2005 message was only "one example" (Opp. 3) but they fail to allege others.

The Consent Order does not support any claim against BlueCrest. It mentions the 2005 message but nowhere states that Deutsche Bank replied to BlueCrest, let alone agreed to make, or in fact made, a false CHF LIBOR submission in response. The Consent Order also does not

---

[1]   Plaintiffs' Memorandum of Law in Opposition to BlueCrest Capital Management, LLP's Motion to Dismiss the Amended Complaint [ECF 88] ("Opposition" or "Opp."). Capitalized terms not defined herein have the meaning given to them in BlueCrest's Memorandum of Law in Support of its Motion to Dismiss the Amended Complaint [ECF 75] ("Motion to Dismiss" or "Mot."). BlueCrest incorporates the arguments set forth in the brief filed by the other defendants in reply to (i) Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss for Failure To State a Claim and for Lack of Subject Matter Jurisdiction [ECF 86] ("Main Opposition" or "Main Opp.") and (ii) Plaintiffs' Memorandum of Law in Opposition to Bank Defendants' Motion to Dismiss for Lack of Personal Jurisdiction [ECF 89] ("PJ Opposition" or "PJ Opp.").

[2]   As BlueCrest argued in its opening brief, the Consent Order should be disregarded because it was the product of a settlement, not a merits adjudication. Mot. 8 (citing *In re Platinum & Palladium Commodities Litig.*, 828 F. Supp. 2d 588, 593-95 (S.D.N.Y. 2011)). Plaintiffs argue that Judge Pauley called into question his own decision in *Platinum*, but the comment they rely on related to the procedural aspects of that decision and did not dispute its legal merit. *See* Conston Decl. Ex. 8. Nor is *In re Foreign Exch. Benchmark Rates Antitrust Litigation*, 74 F. Supp. 3d 581 (S.D.N.Y. 2015) helpful to Plaintiffs. That case held that governmental "penalties" levied against the defendants provided "non-speculative support for an inference of conspiracy." *Id.* at 592. BlueCrest, however, has not been penalized or (to its knowledge) even investigated by a regulatory agency in connection with CHF LIBOR. Further, in *Foreign Exchange*, the "investigations and their outcomes merely buttress[ed] the critical allegations" in the complaint. *Id.* Here, the Consent Order is the *only* source of Plaintiffs' allegations against BlueCrest.

state that BlueCrest sent any other request to Deutsche Bank or anyone else, or that anyone ever agreed to make, or in fact made, a false CHF LIBOR submission in response to an alleged request from BlueCrest. Yet Plaintiffs ask the Court to "infer" that all of these things happened—not just once, but many times over more than a decade. These are not reasonable inferences but baseless speculation.[3] *See RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 413 (S.D.N.Y. 2009) (dismissing complaint based "almost entirely on speculation and inference stacked upon inference"); *Morpurgo v. Inc. Vill. of Sag Harbor*, 697 F. Supp. 2d 309, 340 (E.D.N.Y. 2010) (dismissing complaint based on "freewheeling and speculative allegations which fail to raise a reasonable inference of a conspiracy"). Such speculation is all the more unreasonable because the Consent Order expressly states that Deutsche Bank accommodated requests related to CHF LIBOR only "in certain instances." Murphy Decl. [ECF 76], Ex. A ¶ 12.

Plaintiffs also assert without basis that "BlueCrest is identified as a co-conspirator with Deutsche Bank" in the Consent Order. Opp. 13. The Consent Order does not mention the terms "conspirator" or "co-conspirator" or any agreement between Deutsche Bank and BlueCrest.

## II.   PLAINTIFFS' "ON THE BANDWAGON" ALLEGATION IS IRRELEVANT

In addition to groundless speculation, Plaintiffs repeatedly invoke the ethereal allegation that BlueCrest was "on the bandwagon"—a supposed reference to "hedge fund manager[s] influencing banks to submit LIBOR quotes that favored the manager's portfolios." Opp. 3. This

---

[3] In other words, from a single alleged one-way message in 2005, Plaintiffs ask the Court to "infer" that: (1) Deutsche Bank responded, (2) the response was affirmative, (3) the trader at Deutsche Bank asked its CHF LIBOR submitter to submit a false quote, (4) the CHF LIBOR submitter agreed to do so, and (5) the CHF LIBOR submitter actually made a false submission on that day. Next, having "inferred" that all of this happened once, Plaintiffs ask the Court to further "infer" that Deutsche Bank and BlueCrest engaged in similar conduct "regularly" and "routinely" for a decade (and that BlueCrest engaged in similar conduct with others). In truth, the appropriate inference from the Consent Order's lack of allegations about the 2005 message is that Deutsche Bank did not make a CHF LIBOR submission at BlueCrest's request. This inference is supported by the Consent Order itself because the vast majority of cited requests in the Consent Order include a description of a corresponding response or consequent LIBOR submission (whereas the Consent Order does not reference any corresponding response or submission relating to BlueCrest's alleged message). Murphy Decl. [ECF 76], Ex. A ¶¶ 14, 16-18, 20-22, 31-32, 35-38.

2

allegation, taken from a statement reportedly made by an unidentified Barclays trader, cannot save any of Plaintiffs' claims against BlueCrest, for several reasons.[4]

*First*, on its face the statement relates to BlueCrest's alleged "trading" in LIBOR-based products, not the manipulation of CHF LIBOR rates that Plaintiffs allege here.[5]  *Second*, the statement discusses alleged trading surrounding bid-ask spreads, yet Plaintiffs concede that they "have not alleged BlueCrest's involvement in any bid-ask spread manipulation." Opp. 12. *Third*, the statement does not mention *Swiss franc* LIBOR, the only benchmark rate at issue here; allegations relating to other LIBOR rates are irrelevant. *See LIBOR IV*, No. 11-md-2262, 2015 WL 4634541, at *36 (S.D.N.Y. Aug. 4, 2015). *Fourth*, the statement relates to overnight index swaps (referred to as "OIS"), a product that Plaintiffs do not allege they ever purchased. *Fifth*, a statement from a Barclays trader is irrelevant because Plaintiffs do not allege that BlueCrest engaged in CHF LIBOR manipulation with Barclays.  *Sixth*, at best, the statement at issue is a vague secondhand account, retold by an unidentified party based on unspecified conversations with unnamed "salespeople," and thus lacks even minimal indicia of reliability.  In short, Plaintiffs' "bandwagon" allegation, which their Opposition heavily relies on, is predicated on a statement that, on its face, does not support their claims against BlueCrest.

### III. PLAINTIFFS MISSTATE THE RULE 8 PLEADING STANDARD

Underscoring the weakness of their substantive allegations, Plaintiffs' opposition relies

---

[4] The trader's statement is: "[T]alking to a lot of our salespeople here, the ones that speak to hedge, um, funds, it's quite obvious that a lot of the bigger, more active sort of trading derivatives guys in London like Brevan Howard and Blue, uh, Crest that they've been, um, um, on the bandwagon if you like of looking for higher LIBOR OIS spreads and they're still trading that—that way round of it and they're—they're quite aggressive in the market."

[5] Citing to a passage in a book, Plaintiffs assert that "on the bandwagon" also means that BlueCrest sought to influence banks' CHF LIBOR submissions.  But the "bandwagon" quote on which the book passage relies does not support this assertion, and the book author's unsupported interpretation—made without citation to any other source or authority or other indication that it is reliable—deserves no credit at all.  *See City of Brockton Ret. Sys. v. Avon Prods.*, 2014 WL 4832321 (S.D.N.Y. Sept. 28, 2014) (rejecting allegation based on news article where the article "provide[d] no basis for the Court to evaluate its reliability").

3

on an outdated pleading standard.  Opp. 5-6.  Most cases they cite pre-date *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the landmark Supreme Court decision that overturned the Second Circuit's prior Rule 8 pleading standard.  Before the Supreme Court's decision, the Second Circuit rule was that a complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Twombly v. Bell Atl. Corp.*, 425 F.3d 99, 106, 107 (2d Cir. 2005), *rev'd* 550 U.S. 544 (2007).  Plaintiffs rely almost entirely on cases decided under the "no set of facts" standard that the Supreme Court repudiated when it held that a complaint must instead contain "enough factual matter (taken as true) to suggest that an agreement [in violation of the antitrust laws] was made."  *Twombly*, 550 U.S. at 556, 563.  Applying the correct standard, as explained further below, Plaintiffs do not come close to pleading a claim against BlueCrest.[6]

## IV.  PLAINTIFFS FAIL TO PLEAD PERSONAL JURISDICTION

### A.  Plaintiffs Fail to Plead Specific Jurisdiction over BlueCrest.

Plaintiffs acknowledge that BlueCrest is not subject to general jurisdiction.  Opp. 7-12; PJ Opp. 8 ("Plaintiffs do not invoke a 'general jurisdiction' theory . . . .").  Instead, they argue for specific jurisdiction but fail to identify a single instance of suit-related conduct by BlueCrest sufficient to establish minimum contacts.  Their sole jurisdictional hook is the alleged 2005 message to Deutsche Bank, which they argue the Court can infer was sent to New York because the message was mentioned by a New York state regulator.  Opp. 9 n.22.  But this "inference" is contradicted by the Consent Order itself, which expressly covers conduct that occurred abroad.

---

[6]  Citing an out-of-circuit pre-*Twombly* decision, Plaintiffs also argue that their group pleading allegations can "supplement" their meager substantive allegations against BlueCrest.  Opp. 6 (citing *In re Elec. Carbon Prods. Antitrust Litig.*, 333 F. Supp. 2d 303, 311-12 (D.N.J. 2004)).  But Plaintiffs ignore that courts in this district have rejected precisely this type of group pleading in dismissing antitrust, CEA, and RICO claims.  *See* Mot. at 7-8.  *Electrical Carbon*, moreover, is easily distinguishable because each defendant there, unlike BlueCrest, either was charged or fined by regulatory agencies for antitrust or related violations, employed a person who was charged or fined for those violations, or was a parent, subsidiary, or affiliate of those entities.  *Id.* at 311-314.

Consent Order ¶ 11 ("The misconduct described in this Order . . . spanned geographically across numerous countries . . . ."). Indeed, while Plaintiffs originally alleged "on information and belief" that the 2005 message was sent to New York, their Opposition papers make clear that they had no valid basis for that allegation.[7]

Plaintiffs try to bolster support for specific jurisdiction by citing to a string of generalized contacts unrelated to their claims or involving nonparty entities, such as BlueCrest affiliates or clients.[8] Opp. 3-4, 9-10. Contacts between such affiliates and clients, however, are irrelevant to whether the Court has jurisdiction over BlueCrest. *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) ("the defendant *himself*" must create the contacts with the forum).

Further, by citing non-suit-related contacts to support specific jurisdiction, Plaintiffs make the mistake of "[c]onfusing or blending [the] general and specific jurisdictional inquiries." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011).[9] Specific jurisdiction requires that the claims arise out of or relate to the defendant's contact with the forum. *Licci v. Lebanese Can. Bank*, 732 F.3d 161, 170-73 (2d Cir. 2013). Where a defendant's suit-related contacts with the forum are substantial, those contacts must be, at a minimum, a "but for" cause of the plaintiff's injury. *Chew v. Dietrich*, 143 F.3d 24, 29 (2d Cir. 1998); *see also LIBOR IV*, 2015 WL 4634541, at *23. Where the defendant has only limited contacts with the

---

[7] In fact, the Amended Complaint's allegations, other documents on which Plaintiffs rely, and the declaration from Deutsche Bank overwhelmingly indicate that the 2005 message was *not* sent to New York. *See* Mot. 11 n.8.

[8] Specifically, Plaintiffs refer to allegations that: (i) BlueCrest is registered with the SEC and files a quarterly Form 13F; (ii) two client funds "invest in foreign exchange and interest rate derivatives" (although not necessarily CHF LIBOR-based derivatives) and operate from New York; and (iii) 29% of BlueCrest's clients are U.S. persons or entities. Opp. 3-4, 9-10. In a footnote, Plaintiffs also point to "derivatives transactions with U.S. counterparties" (Opp. 9 n.23), but the Amended Complaint alleges no such transactions involving BlueCrest.

[9] In a further confusion, Plaintiffs contend that BlueCrest "purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." Opp. 8. But the "effects" test, not the "doing business" test, is the appropriate standard here, where the alleged conduct occurred out-of-forum and the purported jurisdictional nexus comprises alleged in-forum effects on the Plaintiffs. *Licci*, 732 F.3d at 170-73. And Plaintiffs do not properly allege that BlueCrest "expressly aimed" any conduct at New York, a necessary element of the "effects test." *See In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 674 (2d Cir. 2013).

forum, a more stringent test applies requiring that those contacts be a proximate cause of the injury. *Id.* But here, the generalized contacts Plaintiffs cite have no alleged causal connection whatsoever to their claims—indeed, many of them are not BlueCrest's contacts. Simply put, Plaintiffs allege no forum-directed conduct by BlueCrest that caused them injury. BlueCrest's SEC registration, or the presence of unrelated funds or clients here, cannot remedy that.[10]

### B. Plaintiffs' Attempt to Rely on "Conspiracy Jurisdiction" Fails.

Plaintiffs' argument that BlueCrest is subject to jurisdiction based on its alleged conspiracy with Deutsche Bank, Opp. 11-12, is without merit. *First*, Plaintiffs' conspiracy jurisdiction theory cannot survive the Supreme Court's admonition that "the defendant *himself*" must create the contacts with the forum. *Walden*, 134 S. Ct. at 1121.[11] *Second*, Plaintiffs invoke conspiracy jurisdiction based on an alleged conspiracy between a U.S.-based bank, JP Morgan, and certain other banks—but not Deutsche Bank, the only bank that BlueCrest is alleged to have conspired with. PJ. Opp. 14-18. But if the alleged conspiracy does not include BlueCrest's purported co-conspirator, then conspiracy jurisdiction cannot apply to BlueCrest. *Third*, even if conspiracy jurisdiction survived *Walden*, it does not apply here. The very cases Plaintiffs cite recognize that conspiracy jurisdiction is still subject to the constraints of due process, that "bland and conclusory assertions of conspiracy are insufficient," and that Plaintiffs must "connect the defendant with transactions occurring in the United States." *In re Satyam Computer Servs. Sec.*

---

[10] Plaintiffs cite *Gucci Am., Inc. v. Weixing Li*, 2015 WL 5707135 (S.D.N.Y. Sept. 29, 2015) for the proposition that jurisdiction can be "bolstered" by the alleged contacts by other entities and by BlueCrest's non-suit-related contacts with the forum. Opp. 9. But *Gucci* does not hold that. Rather, consistent with *Chew*, *Gucci* noted that the degree of contact by the party over whom jurisdiction was asserted (not unrelated subsidiaries or affiliates) was relevant to the degree of causation required for the exercise of jurisdiction—proximate or "but for" causation. *Id.*

[11] Contrary to Plaintiffs' assertion, BlueCrest does not misread *In re Aluminum Warehouse Litigation*. There, the court's observation that it would be inappropriate to rule on the merits of a conspiracy claim for purposes of finding jurisdiction was one of several bases for its conclusion that "if an entity has in fact engaged in some affirmative act directed at the forum, it may be subject to jurisdiction for that reason. The rules and doctrines applicable to personal jurisdiction are sufficient without the extension of the law to a separate and certainly nebulous 'conspiracy jurisdiction' doctrine." 90 F. Supp. 3d 219, 227 (S.D.N.Y. 2015).

*Litig.*, 915 F. Supp. 2d 450, 484-85 (S.D.N.Y. 2013) (minimum contacts not satisfied where allegations did not link defendants to transactions in forum) (cited at PJ. Opp. 15); *see also Tarsavage v. Citic Trust Co.*, 3 F. Supp. 3d 137 (S.D.N.Y. 2014) (conspiracy jurisdiction requires that "co-conspirators act[ing] in New York acted at the direction or under the control or at the request of or on behalf of the out-of-state defendant"). Here, Plaintiffs fail to establish minimum contacts between BlueCrest and the forum (Mot. 10-14), to adequately plead a conspiracy (Mot. 15-18), or to connect BlueCrest with any act taken in the forum at its direction or request.

## V. PLAINTIFFS FAIL TO PLEAD A CLAIM AGAINST BLUECREST UNDER THE SHERMAN ACT, CEA, OR RICO

### A. Plaintiffs Fail to Plead an Antitrust Claim against BlueCrest.

Plaintiffs rely on three allegations to support their antitrust claim[12] against BlueCrest: (i) the 2005 message; (ii) the false assertion that BlueCrest is "identified as a co-conspirator" in the Consent Order; and (iii) the ill-conceived and irrelevant "on the bandwagon" allegation. As noted above, none of these allegations support an inference that BlueCrest agreed with any Defendant to manipulate CHF LIBOR. *Olde Monmouth Stock Transfer Co. v. Depository Trust & Clearing Corp.*, 485 F. Supp. 2d 387 (S.D.N.Y. 2007) is on point. There, a stock transfer agent brought an antitrust claim based on allegations that the defendant contacted plaintiff's clients and suggested that they switch to a new agent. *Id.* at 390. The court dismissed the claim, reasoning that even if the defendant had contacted plaintiff's clients, "[n]othing in these allegations indicates that any third party actually agreed to form a combination, contract, or conspiracy with [the defendant]." *Id.* at 397. Likewise here, Plaintiffs' allegations do not indicate that Deutsche

---

[12] Plaintiffs concede that they "have not alleged BlueCrest's involvement in any bid-ask spread manipulation" (Opp. 12), and accordingly Claim 1 should be dismissed as to BlueCrest. Moreover, Plaintiffs' suggestion, premised on their bid-ask spread theory, that this Court defer ruling on the motions to dismiss the antitrust claims until the Second Circuit issues an opinion in an unrelated appeal (Main Opp. 24 n.15) does not apply to BlueCrest because Plaintiffs have not asserted a bid-ask spread claim against BlueCrest, and the appeal does not implicate BlueCrest's arguments regarding the insufficiency of Plaintiffs' antitrust claim against it.

Bank actually agreed to form a combination, contract, or conspiracy with BlueCrest, an essential element of their antitrust claim. That claim should therefore be dismissed.

### B. Plaintiffs Fail to Plead CEA Claims against BlueCrest.

Plaintiffs rely on improper speculation dressed up as "inferences" for each element of their CEA claims. Opp. 14-18. But such claims must be pled *with particularity*, including "what manipulative acts were performed, which defendants performed them, when the manipulative acts were performed, and what effect the scheme had on the market . . . ." Mot. 19 (*citing LIBOR I*, 935 F. Supp. 2d 666, 714 (S.D.N.Y. 2013)).[13] Plaintiffs do not satisfy this standard.[14]

They argue, instead, that the causation element is sufficiently pled because this Court can "infer" that Deutsche Bank made a false submission on February 10, 2005 and such submission impacted futures prices. Opp. 15. As noted above, this speculation is not grounded in any allegations, nor is it a reasonable inference. *E.g.*, *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11-md-2262(NRB), 2014 WL 6488219, at *4 (S.D.N.Y. Nov. 17, 2014) (rejecting trader-based manipulation claim absent indication submitter "acted upon" trader's request).

Next, Plaintiffs argue that they have sufficiently pled injury because they traded in derivatives "during the [eleven-year] Class Period," and this Court can "infer" that prices were artificial from the date of the 2005 message until "some point in the future." Opp. 16-17. Such

---

[13] Notwithstanding their claims to the contrary (Main Opp. 35 n.27), Plaintiffs' CEA claims against BlueCrest sound in fraud because they are premised on allegations of dissemination of false information and thus are governed by Rule 9(b). Mot. 19. Even under Rule 8, however, Plaintiffs' claims must be dismissed. *See, e.g.*, *In re Commodity Exch., Inc., Silver Futures & Options Trading Litig.*, No. 11-md-2213(RPP), 2012 WL 6700236, at *18 (S.D.N.Y. Dec. 21, 2012) (deferring decision on whether Rule 8 or Rule 9(b) standard applied because, under either standard, CEA claims would be dismissed where complaint "merely ple[d] facts that might be 'consistent with' Defendants' liability and it 'stop[ped] short of the line between possibility and plausibility of entitlement to relief'").

[14] In their Opposition, Plaintiffs incorrectly argue that the trader-based manipulation standard for pleading CEA claims does not apply here because Plaintiffs have alleged "persistent" manipulation. Main Opp. 37 n.29. The trader-based manipulation standard applies where alleged submissions were "varying in direction" and "at times, artificially high and, at other times, artificially low," which is what Plaintiffs have alleged here. *LIBOR II*, 962 F. Supp. 2d 606, 620 (S.D.N.Y. 2013). Indeed, as to BlueCrest, Plaintiffs have alleged only one message related to CHF LIBOR, which falls far short of any allegation of "persistent" conduct.

8

open-ended conjecture does not satisfy Plaintiffs' pleading burden. *See LIBOR IV*, 2015 WL 4634541, at *34 (to plead injury a plaintiff must show that the manipulation affected the published rate, which instrument plaintiff invested in, and how the manipulation affected plaintiff's position). Plaintiffs have not alleged that any false submission was made in response to BlueCrest's alleged 2005 message, let alone that any manipulation ensued or that they traded a relevant instrument in proximity to such submission and were injured thereby.[15]

The remaining elements are similarly unsupported. Plaintiffs fail to plead that BlueCrest specifically intended to manipulate CHF LIBOR or offer any explanation on how it could do so, besides asserting that BlueCrest is a large hedge fund with banking relationships. Opp. 18.[16]

Finally, Plaintiffs' CEA claims are time-barred. Mot. 22. The case Plaintiffs cite for the proposition that "inquiry notice" is defendant-specific is inapposite. Opp. 19 (*citing Hinds Cnty. v. Wachovia Bank N.A.*, 885 F. Supp. 2d 617, 631 (S.D.N.Y. 2012)). *Hinds* is an antitrust case, relying on guidance from the securities fraud context. 885 F. Supp. 2d at 631. But the standards for inquiry notice under the CEA and the Securities Exchange Act are different. *LIBOR I*, 935 F. Supp. 2d at 698-99. Under the CEA, where a Plaintiff fails to allege undertaking an investigation, as here, the limitations period begins to run when the plaintiff should have commenced a reasonable investigation; it is not a defendant-specific determination. *Id.*

### C. Plaintiffs Fail to Plead RICO Claims Against BlueCrest.

Plaintiffs cannot escape their failure to allege two predicate acts of wire fraud by

---

[15] Plaintiffs apparently concede that only Frank Divitto has standing to bring CEA claims (Opp. 36), yet allege no details about the timing or nature of his purported transactions. Regardless, Plaintiffs allege no transactions (by Divitto or anyone else) at any point in 2005, the only relevant time with respect to their claims against BlueCrest.

[16] With respect to the derivative claims under the CEA, Plaintiffs failed to respond to the arguments in BlueCrest's Motion to Dismiss. Opp. 18-19. Plaintiffs do not refute that such claims are necessarily premised on a primary CEA violation (which is lacking here). Moreover, Plaintiffs failed to identify what sort of assistance BlueCrest did—or could—offer in furtherance of any manipulation, or that the alleged sender of the 2005 message was acting within the scope of his employment, or which BlueCrest entity employed the sender. Mot. 21-22.

BlueCrest, as required for a RICO claim.  They note that where the wires are used in furtherance of a scheme to defraud but the wire communications themselves are not false or misleading, Rule 9(b) is satisfied by pleading a detailed description of the underlying scheme and the connection to the wire communications.  But this does not relieve Plaintiffs from their burden of pleading *two* predicate acts of wire fraud.  Rather than point to any second predicate act by BlueCrest, Plaintiffs rely on their "on the bandwagon" allegation.  But this allegation, as explained above, is irrelevant—and courts have found similarly nebulous allegations insufficient to state a RICO claim.  *See* Mot. 24 n.13 (citing cases).

Plaintiffs also failed to allege that BlueCrest directed any part of the alleged RICO enterprise.  Relying on a pre-*Twombly* decision, Plaintiffs claim that merely reciting the language of the RICO statute is sufficient to plead this element.  Opp. 20 (citing *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, No. 93-cv-6876 (LMM), 2000 WL 1694322, at *4-5 (S.D.N.Y. Nov. 9, 2000)).  But after *Twombly*, merely reciting the elements of a claim is not enough. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Amended Complaint does not allege a single instance of BlueCrest directing the affairs of the alleged enterprise.  Plaintiffs' arguments that BlueCrest was "on the bandwagon" and "extensively involved" are irrelevant, conclusory, and speculative and lack any support whatsoever.  And their Opposition fails to address any of the cases cited by BlueCrest on this point.  *See* Mot. 24-25 & nn. 13, 14 (citing cases).

Finally, for the reasons discussed above regarding Plaintiffs' antitrust claim, Plaintiffs' RICO conspiracy claim should be dismissed because Plaintiffs have not alleged that BlueCrest agreed with anyone to facilitate any RICO enterprise.

## CONCLUSION

For the foregoing reasons, this action should be dismissed in its entirety as to BlueCrest.

Dated: November 18, 2015
      New York, New York

                                         /s/ Douglass Maynard
                                         Douglass Maynard
                                         Joseph Boryshansky
                                         John Murphy
                                         Katherine Porter
                                         AKIN GUMP STRAUSS HAUER & FELD LLP
                                         One Bryant Park
                                         New York, NY 10036
                                         Tel: (212) 872-1000
                                         *Attorneys for Defendant BlueCrest*
                                         *Capital Management, LLP*