CAHILL GORDON & REINDEL LLP

EIGHTY PINE STREET

NEW YORK, NY 10005-1702

L. HOWARD ADAMS
ROBERT A. ALESSI
HELENE R. BANKS
ANIRUDH BANSAL
DAVID L. BARASH
LANDIS C. BEST
BRADLEY J. BONDI
BROCKTON B. BOSSON
KEVIN J. BURKE
JAMES J. CLARK
SEAN M. DAVIS
STUART G. DOWNING
ADAM M. DWORKIN
ANASTASIA EFIMOVA
JENNIFER B. EZRING
JOAN MURTAGH FRANKEL
JONATHAN J. FRANKEL
PIERRE M. GENTIN

CHARLES A. GILMAN
ARIEL GOLDMAN
JASON M. HALL
WILLIAM M. HARTNETT
CRAIG M. HOROWITZ
DOUGLAS S. HOROWITZ
TIMOTHY B. HOWELL
DAVID G. JANUSZEWSKI
ELAI KATZ
BRIAN S. KELLEHER
RICHARD KELLY
CHÉRIE R. KISER*
JOEL KURTZBERG
TED B. LACEY
MARC R. LASHBROOK
ALIZA R. LEVINE
JOEL H. LEVITIN

TELEPHONE: (212) 701-3000
WWW.CAHILL.COM
————
1990 K STREET, N.W.
WASHINGTON, DC 20006-1181
(202) 862-8900

CAHILL GORDON & REINDEL (UK) LLP
24 MONUMENT STREET
LONDON EC3R 8AJ
+44 (0)20 7920 9800
————
WRITER'S DIRECT NUMBER

GEOFFREY E. LIEBMANN
BRIAN T. MARKLEY
WILLIAM J. MILLER
NOAH B. NEWITZ
MICHAEL J. OHLER
DAVID R. OWEN
JOHN PAPACHRISTOS
LUIS R. PENALVER
KIMBERLY PETILLO-DÉCOSSARD
SHEILA C. RAMESH
MICHAEL W. REDDY
OLEG REZZY
JAMES ROBINSON
THORN ROSENTHAL
TAMMY L. ROY
JONATHAN A. SCHAFFZIN
JOHN SCHUSTER

MICHAEL A. SHERMAN
DARREN SILVER
JOSIAH M. SLOTNICK
RICHARD A. STIEGLITZ JR.
SUSANNA M. SUH
ANTHONY K. TAMA
JONATHAN D. THIER
SEAN P. TONOLLI*
JOHN A. TRIPODORO
GLENN J. WALDRIP, JR.
HERBERT S. WASHER
MICHAEL B. WEISS
S. PENNY WINDLE
DAVID WISHENGRAD
COREY WRIGHT
JOSHUA M. ZELIG
DANIEL J. ZUBKOFF

*ADMITTED IN DC ONLY

(212) 701-3120

April 7, 2017

Re:     *Sonterra Capital Master Fund Ltd.* v. *Credit Suisse Group AG, et al.*, No. 15-cv-0871 (S.D.N.Y.)

Dear Judge Stein:

We represent Credit Suisse Group AG and Credit Suisse AG in the above-captioned litigation and write on behalf of Foreign Defendants[1] in response to the letter filed by Plaintiffs on March 13, 2017 (Dkt. 129) (the "Letter" or Ltr."), submitting as supplemental authority Judge Castel's recent decision in *Sullivan* v. *Barclays PLC*, 2017 WL 685570 (S.D.N.Y. Feb. 21, 2017). Defendants agree that *Sullivan* should be considered by this Court, but Plaintiffs' reliance on *Sullivan* is misplaced, as it shows why Plaintiffs' meritless claims should be dismissed. Moreover, *Sullivan* is reinforced by four recent decisions, which Defendants also respectfully submit as supplemental authorities in further support of their motions to dismiss: *Laydon* v. *Mizuho Bank, Ltd.*, 2017 WL 1113080 (S.D.N.Y. Mar. 10, 2017) ("*Laydon V*") (attached as Exhibit A); and *Laydon* v. *Mizuho Bank, Ltd.*, 2017 WL 1093288 (S.D.N.Y. Mar. 10, 2017) ("*Laydon VI*") (attached as Exhibit B); *Sonterra Capital Master Fund, Ltd.* v. *UBS AG*, 2017 WL 1091983 (S.D.N.Y. Mar. 10, 2017) (attached as Exhibit C); and *Williams* v. *Yamaha Motor Co. Ltd.*, 2017 WL 1101095 (9th Cir. Mar. 24, 2017) (attached as Exhibit D).

I.     **Sullivan, Laydon V, and Williams Confirm That Claims Asserted Against the Foreign Defendants Should Be Dismissed for Lack of Personal Jurisdiction.**

Judge Castel and Judge Daniels, in *Sullivan* and *Laydon V*, respectively, joined other judges in this District who have dismissed for lack of personal jurisdiction claims in cases concerning the alleged manipulation of various foreign benchmark rates. In dismissing *all* foreign defendants who

---

[1] Unless otherwise specified, defined terms have the same meaning as in Defendants' briefs filed in support of Defendants' Motion to Dismiss the First Amended Class Action Complaint.

CAHILL GORDON & REINDEL LLP

- 2 -

had moved to dismiss, both judges rejected many of the same arguments Plaintiffs advance here in opposing the Foreign Defendants' motion to dismiss for lack of personal jurisdiction.

A.    Plaintiffs Fail to Adequately Allege Specific Jurisdiction.

Both *Sullivan* and *Laydon V* make clear that Plaintiffs have failed to allege specific jurisdiction over the Foreign Defendants. *See Sullivan*, 2017 WL 685570, at *41-49; *Laydon V*, 2017 WL 1113080, at *3-5. *Sullivan*, which involved allegations of Euribor manipulation, found that plaintiffs had not met the "threshold requirement" of alleging "suit-related conduct with a substantial connection to the forum," such as "alleg[ations] that any United States branch or employee . . . participated in the scheme to rig the Euribor" or "directly communicated with any United States co-conspirator about fixing the Euribor." 2017 WL 685570, at *45. Plaintiffs' allegations here fail for precisely the same reason: Plaintiffs have not plausibly alleged that Defendants engaged in manipulative conduct relating to Swiss Franc LIBOR in the forum.[2] *See* Defs.' PJ Br. at 15-18. In addition to their failure to allege in-forum contacts, Plaintiffs also fail to adequately "allege conduct that was aimed at the United States." *Sullivan*, 2017 WL 685570, at *45; *Laydon V*, 2017 WL 1113080, at *3-5. As Judge Castel found in *Sullivan*, allegations of entirely foreign misconduct, even if it might have had some effect in the U.S., are insufficient to support jurisdiction where, as here, Plaintiffs fail to show that "the existence, causation or intent to manipulate [a foreign interest rate benchmark] on the part of [a foreign bank] had its 'nucleus' or 'focal point' in the United States." *Sullivan*, 2017 WL 685570, at *44.

Significantly, both *Sullivan* and *Laydon V* hold that allegations that a foreign defendant traded interest rate derivatives in the forum are insufficient to establish a substantial nexus between the alleged manipulation and the forum. *Sullivan*, 2017 WL 685570, at *44 ("Some of UBS's counterparties were located in the United States, including [plaintiffs]. But the presence of U.S. victims alone does not make out jurisdiction . . . ."); *see also id.* at *39 (rejecting argument that defendants' transactions with non-named plaintiffs are relevant to the specific jurisdiction inquiry (citing *Beach* v. *Citigroup Alternative Invs. LLC*, 2014 WL 904650, at *6 (S.D.N.Y. Mar. 7, 2014))); *Laydon V*, 2017 WL 1113080, at *5 ("The fact that some of Lloyds' counterparties in derivatives transactions . . . were located in the United States is insufficient to establish minimum contacts with the United States."). Even if Plaintiffs here did adequately allege that the Foreign Defendants traded Swiss Franc LIBOR-based derivatives in the U.S. (and they do not, *see* Defs.' PJ Br. at 5-6), such conduct is insufficient to confer jurisdiction. What was lacking in *Sullivan* and *Laydon V* — and what is lacking here — is any allegation that the wrongful conduct in question was aimed at the U.S.

Plaintiffs argue that *Sullivan* should be disregarded because it purportedly fails to address the test for purposeful availment that Plaintiffs advance based on *Waldman* v. *Palestine Liberation*

---

[2] While *Sullivan* examined whether defendants were subject to specific jurisdiction under a nationwide contacts approach, it did so, in part, because, unlike here, "[n]o party has addressed the relationship between the venue provision and the service of process provision, and defendants have not challenged this District's venue." 2017 WL 685570, at *42. Even if a nationwide test is used however, Plaintiffs' jurisdictional allegations remain fatally insufficient. *See* Joint Mem. of Law in Supp. of Defs.' Mot. to Dismiss for Lack of Personal Jurisdiction (Dkt. 64) ("Defs.' PJ Br.") at Part III.

CAHILL GORDON & REINDEL LLP

- 3 -

*Organization*, 835 F.3d 317, 342-43 (2d Cir. 2016), and *Bank Brussels Lambert* v. *Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 128 (2d Cir. 2002). *See* Ltr. at 7-9. That is wrong. Judge Castel cited *Waldman* numerous times and expressly applied this Circuit's purposeful availment standard to find — contrary to the result that Plaintiffs seek here — the allegations to be insufficient to confer jurisdiction. *Sullivan*, 2017 WL 685570 at *43-48. Many of the allegations that Judge Castel found insufficient are the same as those made here (*e.g.*, trading derivatives in the United States, employing U.S.-based traders, operating U.S. branch offices). *See id. Sullivan* thus confirms that Plaintiffs' jurisdictional allegations are deficient under the very purposeful availment test they advance here. *See* Defs.' PJ Br. at 15-20; Joint Reply Mem. of Law in Further Supp. of Defs.' Mot. to Dismiss for Lack of Personal Jurisdiction (Dkt. 91) ("Defs.' PJ Reply Br.") at 9-10.

Plaintiffs also mistakenly assert that *Sullivan*'s minimum contacts analysis is somehow inconsistent with the Second Circuit's decision in *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204 (2d Cir. 2003). Ltr. 9. *In re Magnetic* involved allegations that the defendant Korean manufacturer met with competitors to discuss and agree upon pricing levels for magnetic audio tape in the United States. *See In re Magnetic*, 334 F.3d at 208. Nothing of that sort was alleged in *Sullivan*, and nothing similar is alleged here. *See* Defs.' PJ Reply Br. at 8-10. Plaintiffs at most allege that the conduct of Foreign Defendants with respect to a foreign benchmark in a foreign country affected the downstream prices of certain instruments sold worldwide, including in the United States. *See Sullivan*, 2017 WL 685570, at *44-45. Such allegations do not show conduct "aimed at the United States," *id.*, and are therefore insufficient to establish personal jurisdiction.

B.   Defendants Did Not Consent to Jurisdiction.

*Sullivan* also confirms that no Foreign Defendant consented to personal jurisdiction in this forum. *First*, *Sullivan* rejects the argument that Defendants consented to general jurisdiction by registering their branch offices under New York Banking Law § 200(3). *See* 2017 WL 685570, at *39-40. This Court should do the same.[3]

*Second*, *Sullivan* rejects the argument made here that the ISDA Master Agreement that FrontPoint entered into with UBS and Credit Suisse gives rise to specific jurisdiction. Plaintiffs' attempt to distinguish *Sullivan* on its facts fails. In *Sullivan*, Judge Castel found that a forum-selection clause in an ISDA Agreement does not establish "irrevocable consents to submit to New York's jurisdiction" for "*any* dispute" between the contracting parties. 2017 WL 685570, at *38. Rather, he found the express terms of the ISDA Agreement established consent to jurisdiction only with respect to claims "relating to this [ISDA] Agreement," and he ruled that the alleged manipulation of Euribor does not relate to the terms of the ISDA Agreement. *Id.* at *38-39 (internal quotation marks omitted). Like in *Sullivan*, Plaintiffs here fail to allege that their claims of alleged

---

[3] Although Plaintiffs assert that *Sullivan* should be disregarded because it did not address consent to jurisdiction under New York Banking Law § 200-b, Ltr. at 8 n.8, Section 200-b is irrelevant because it relates to *subject matter* jurisdiction, not *personal* jurisdiction. *See In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 2016 WL 1268267, at *2 ("[T]he New York Court of Appeals has interpreted §200-b to confer subject matter jurisdiction and not personal jurisdiction.").

CAHILL GORDON & REINDEL LLP

- 4 -

manipulation of Swiss Franc LIBOR relate in any way to FrontPoint Plaintiffs' ISDA Master Agreements with UBS and Credit Suisse. *See* Ltr. at 7.

### C.   Plaintiffs' Conspiracy and Domestic Subsidiary Allegations Fail.

*Laydon V* shows that Plaintiffs' allegations are also insufficient to establish conspiracy-based personal jurisdiction. Rejecting similar allegations of conspiracy, Judge Daniels held that there is no jurisdiction over foreign defendants because plaintiffs pled "no facts to suggest that any defendant committed a tort in the United States, nor that any defendant expressly aimed the effects of their alleged manipulative conduct at the United States." *Laydon V*, 2017 WL 1113080, at *6. Even assuming that Plaintiffs here had adequately alleged a conspiracy — and they have not — their allegations of conspiracy jurisdiction are equally deficient. Plaintiffs assert that one of the alleged co-conspirators was based in New York and that Foreign Defendants engaged in a so-called "overt act" in the forum, Opp. Br. at 16-17, but as in *Laydon V*, they fail to plead facts to show that any Defendant committed a tort in the U.S., that any Defendant expressly aimed the effects of their alleged manipulative conduct at the U.S., or that any such act occurred with the requisite knowledge, direction, and control of a Foreign Defendants. Defs.' PJ Reply Br. at 5-7.

*Laydon V* and *Williams* also reject Plaintiffs' contention that forum contacts of a defendant's affiliate, by themselves, are sufficient to confer personal jurisdiction over a foreign corporate parent. Judge Daniels found that "[a]llegations of common ownership, without more," are insufficient to establish jurisdiction under an alter ego theory. *Laydon V*, 2017 WL 1113080, at *7;[4] *Williams*, 2017 WL 1101095, at *6 (requiring plaintiffs to allege a *prima facie* case for an agency relationship). Plaintiffs here have made no showing that the activities of the Foreign Defendants' domestic affiliates are connected in any meaningful way to the Foreign Defendants' alleged misconduct. *See* Defs.' PJ Reply Br. at 7 n.14. Moreover, even if Plaintiffs had made "alter ego" allegations — and they have not — such allegations would be rejected under *Williams*, which found that the in-state connections of the foreign defendant's domestic subsidiary could not be used to establish specific jurisdiction under an agency theory given the Supreme Court's holding in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014). *Williams*, 2017 WL 1101095, at *5-6 ("If an agency theory of imputable contacts survives *Daimler* in the context of specific jurisdiction, then *Walden*'s directive that contacts must be directly between the defendant and the forum is inapposite[.]"). To the extent Plaintiffs rely on such allegations in an attempt to establish "substantial contacts in the forum," this Court should find them deficient.

### D.   Plaintiffs Are Not Entitled to Jurisdictional Discovery.

Both Judge Castel and Judge Daniels denied plaintiffs' request for jurisdictional discovery because plaintiffs had failed to make out a *prima facie* case for jurisdiction. *See Sullivan*, 2017 WL

---

[4] Judge Daniels also concluded that, even if plaintiffs had alleged the requisite minimum contacts, exercising personal jurisdiction "would not comport with notions of fair play and substantial justice." *Laydon V*, 2017 WL 1113080, at *7. The same due process considerations render the exercise of personal jurisdiction over the Foreign Defendants here unreasonable.

CAHILL GORDON & REINDEL LLP

- 5 -

685570, at *49; *Laydon V*, 2017 WL 1113080, at *8. Plaintiffs here have similarly failed to make a *prima facie* case for jurisdiction. Therefore, their request for jurisdictional discovery should also be denied. Defs.' PJ Br. at 25.[5]

## II.  *Sullivan* and *Sonterra* Confirm That Plaintiffs Lack Article III Standing to Assert Any Swiss Franc-Related Claim.

Plaintiffs also contend that Judge Castel's conclusion that the *Sullivan* plaintiffs who transacted in Euro foreign exchange products had standing to bring Euribor-related claims somehow shows that Plaintiffs have standing to assert Swiss Franc-related claims. *See* Ltr. at 1. Not so. Defendants respectfully disagree that the *Sullivan* plaintiffs satisfied Article III by pleading a supposedly formulaic pricing relationship between Euribor and the products they traded, 2017 WL 685570, at *9. But, in any event, the *Sullivan* court did not address several arguments made by Defendants here that are fatal to Plaintiffs' claims, which are even more deficient than those in *Sullivan*.

Judge Castel's opinion does not address Defendants' argument that Plaintiffs in this case have *never alleged* that they "used or relied on the generic formula" to "price the[ir] FX forwards and futures." Mem. of Law in Supp. of Defs.' Mot. to Dismiss for Failure to State a Claim and Lack of Subject Matter Jurisdiction (Dkt. 73) ("Defs.' Merits Br.") at 10 (citing *Allen v. Wright*, 468 U.S. 737, 759 (1984)); *see* Reply Mem. of Law in Further Supp. of Defs.' Mot. to Dismiss for Failure to State a Claim and Lack of Subject Matter Jurisdiction (Dkt. 92) ("Defs.' Merits Reply Br.") at 1–2. It also does not discuss Defendants' argument — not advanced in *Sullivan* — that "the CME Publication in which the formula is found concedes that . . . [the] generic formula . . . is not always used to price actual FX forwards." Defs.' Merits Br. at 11. And the pleadings in this case, unlike in *Sullivan*, affirmatively demonstrate that the generic formula necessarily was not used in pricing Plaintiffs' instruments. *See* Defs.' Merits Reply Br. at 4 (explaining that Plaintiffs' own allegations show "the exact opposite of what would happen if the generic formula were used").

Plaintiffs' allegations are, however, substantially similar to those Judge Daniels found deficient in *Sonterra*. There, plaintiffs who transacted in FX forwards — including Plaintiff Sonterra — attempted to assert claims based on the alleged manipulation of Yen LIBOR and Euroyen TIBOR. *Sonterra*, 2017 WL 1091983, at *2. Judge Daniels dismissed those claims for failure to allege Article III injury, reaffirming his prior holdings that foreign exchange instruments are not "indexed or priced by reference to Euroyen TIBOR or Yen LIBOR" and that the "connection is too attenuated and speculative to support standing." *Id.* (quoting *Laydon* v. *Mizuho Bank, Ltd.*, 2015 WL 1515487, at *10 (S.D.N.Y. Mar. 31, 2015)).

_____

[5] Plaintiffs claim that *Sullivan* applied the incorrect standard for determining whether to permit jurisdictional discovery. Ltr. at 9 n.9. According to Plaintiffs, they need only allege facts giving rise to "non-frivolous contentions" that jurisdiction in this Court is proper to attain jurisdictional discovery. *Id.* That is wrong. The Second Circuit has routinely held that district courts have broad discretion to deny jurisdictional discovery where, as here, plaintiffs fail to establish a *prima facie* case of jurisdiction. *See, e.g.*, *Best Van Lines, Inc.* v. *Walker*, 490 F.3d 239, 255 (2d Cir. 2007).

- 6 -

Judge Daniels further rejected as "conclusory" plaintiffs' allegation that "derivatives traders use Yen-LIBOR to price Yen foreign exchange forwards," and determined that plaintiffs' citations to "academic literature" and other sources (including the *very same* CME publication relied upon by Plaintiffs here) are insufficient to support the allegation that "the Yen LIBOR rate is definitively used to price" plaintiffs' instruments. *Id.* Similarly, Plaintiffs here allege conclusorily that "small changes in Swiss Franc LIBOR" will somehow "impact" the prices of Plaintiffs' FX forwards and futures, Plaintiffs' Amended Complaint ("Pls.' Am. Compl.") (Dkt. 36) at ¶ 89, but, like in *Sonterra*, fail to show that Swiss Franc LIBOR was actually "used to price" the FX forwards they allegedly traded. In dismissing their claims, Judge Daniels noted that "[c]ritically [plaintiffs] still fail to plead facts to suggest that *their* FX forwards were indexed to Yen LIBOR." *Sonterra*, 2017 WL 1091983, at *2 (emphasis added). This is even more true here. In fact, plaintiffs never allege — not even once — that they used the "generic" formula that purportedly used Swiss Franc LIBOR as input when pricing their instruments. Further, Defendants have demonstrated that it would have been impossible for Swiss Franc LIBOR to be used because there is no Swiss Franc LIBOR tenor that matches the maturity of Plaintiffs' alleged transactions. *See* Defs.' Merits Br. at 10–11. Plaintiffs' claims should therefore be dismissed. *Sonterra*, 2017 WL 1091983, at *2; *see also* Defs.' Merits Br. at 6–7; Defs.' Merits Reply Br. at 1–4.

## III. *Sonterra* and *Laydon VI* Show That Plaintiffs Lack Class Standing to Assert Claims Regarding Products They Never Traded.

In *Sonterra*, Judge Daniels held that plaintiffs lacked Article III standing to assert claims based on instruments they did not trade, since plaintiffs "could not have suffered any injury traceable to these instruments." 2017 WL 1091983, at *2. Here, Plaintiffs' claims regarding the "Swiss Franc LIBOR interest rate swaps, Swiss Franc LIBOR forward rate agreements, CME Swiss Franc currency futures, and LIFFE three-month Euro Swiss Franc futures" (the "Non-Traded Instruments") that they did not trade also should be dismissed, *see* Defs.' Merits Br. at 7-9, because Plaintiffs cannot possibly show that "they personally have been injured" in trading such products. *Sonterra*, 2017 WL 1091983, at *2 (quoting *Warth* v. *Seldon*, 422 U.S. 490, 502 (1975)).

Nevertheless, relying on *Sullivan* and *NECA-IBEW Health & Welfare Fund* v. *Goldman Sachs & Co.*, 693 F.3d 145 (2d Cir. 2012), Plaintiffs try to avoid dismissal by arguing that they have so-called "class standing" to assert claims relating to the Non-Traded Instruments. *See* Ltr. at 2. That is wrong. According to Plaintiffs' own pleadings, different instruments putatively related to Swiss Franc LIBOR are priced using different formulas, *see, e.g.*, Pls.' Am. Compl. at ¶ 82, and to the extent those instruments are linked to Swiss Franc LIBOR at all, they will be impacted by movements in Swiss Franc LIBOR in different ways. Moreover, unlike in *Sullivan* — where named plaintiffs traded, among other things, interest rate swaps, which are arguably similar in structure to FRAs — Plaintiffs here have not traded *any* interest rate derivatives whatsoever, but rather traded only FX futures and currency forwards. *Compare Sullivan*, 2017 WL 685570, at *10-11 (discussing plaintiffs' trades in interest rate swaps and LIFFE futures), *with* Opp. Br. at 22-23 (acknowledging that Plaintiffs did not trade FRAs, overnight index swaps or interest rate swaps). As Judge Daniels concluded in *Laydon VI*, Plaintiffs lack class standing because "claims on behalf of

CAHILL GORDON & REINDEL LLP

- 7 -

absent class members will not involve the 'same set of concerns,'" nor would "'the proof contemplated for all of the claims . . . be sufficiently similar.'"  2017 WL 1093288, at *3 (quoting *NECA*, 693 F.3d at 162-64).  At a minimum, Plaintiffs' claims related to "bid-ask spread" conduct must be dismissed because they admit that they did not engage in any of the transactions at issue.

## IV.   *Sullivan* Confirms That Plaintiffs Who Did Not Purchase Directly From Any Defendant Lack Antitrust Standing.

   *Sullivan* confirms that Plaintiffs who do not allege to have transacted with any Defendant are not "efficient enforcers" and their antitrust claims should therefore be dismissed for lack of antitrust standing.[6]  Following the Second Circuit's guidance on the "efficient enforcer" factors in *Gelboim*[7] and adopting Judge Buchwald's reasoning in *LIBOR VI*,[8] Judge Castel dismissed the antitrust claims asserted by plaintiffs "who had no direct dealings with the defendant" for lack of antitrust standing. *See Sullivan*, 2017 WL 685570, at *16-17.  Here, the antitrust claims of Sonterra, Divitto, Hunter, and the FrontPoint entities who do not allege direct transactions with any defendant, Pls.' Am. Compl. at ¶¶ 199-200, 202, 212-13, should be dismissed because they contracted only with non-defendants and, as in *Sullivan*, the "'independent decision' of contracting parties to incorporate [Swiss Franc LIBOR] 'breaks the chain of causation between defendants' actions and a plaintiff's injury,'" *Sullivan*, 2017 WL 685570, at *17 (quoting *LIBOR VI*, 2016 WL 7378980, at *16), and renders damages unduly speculative, thereby precluding antitrust standing.

   To the extent that certain FrontPoint entities do allege transactions with Defendants,[9] those antitrust claims should also be dismissed on efficient enforcer grounds, because Plaintiffs' FX instruments do not reference Swiss Franc LIBOR, rendering their asserted injuries indirect and speculative at best.  Plaintiffs' argument that, "[p]ursuant to *Sullivan*'s directness test," those FrontPoint entities are efficient enforcers,  Ltr. at 3-4, fails to account for, among other things, the attenuated causal chain purportedly linking the alleged manipulation and a counterparty's alleged losses. *See* Defs.' Merits Br. at 14-17.  In any event, Defendants respectfully submit that, in light of the Second Circuit's willingness to countenance the dismissal of certain plaintiffs' claims premised upon instruments alleged to directly reference LIBOR, *Gelboim*, 823 F.3d 759, and Judge Buchwald's subsequent dismissal on efficient enforcer grounds of antitrust claims based on LIBOR-referencing bonds and futures, *LIBOR VI*, 2016 WL 7378980, that this Court adopt Judge Buchwald's approach, rather than Judge Castel's, to this issue.

   Plaintiffs also contend that, because *Sullivan* concludes that direct purchasers' damages are not "highly speculative," FrontPoint's claims here should be allowed to proceed.  Ltr. at

---

[6] For the same reasons that Plaintiffs fail to satisfy Article III's standing requirements, *see* Part II, *supra*, they likewise fail to plead an antitrust injury, and also lack antitrust standing on that basis.

[7] *See Gelboim* v. *Bank of Am. Corp.*, 823 F.3d 759, 778-80 (2d Cir. 2016).

[8] *In re LIBOR-Based Fin. Instruments Antitrust Litig.* ("*LIBOR VI*"), 2016 WL 7378980, at *16-17 (S.D.N.Y. Dec. 20, 2016).

[9] *See* Pls.' Am. Compl. at ¶¶ 203-204.

CAHILL GORDON & REINDEL LLP

- 8 -

4.   In support, Plaintiffs argue that they "will be able to demonstrate their damages through discovery of Defendants' money market transaction data," citing an analysis that Plaintiffs' counsel previously conducted in connection with certain settlements in *Sonterra*. *Id.* But proposing a plan of settlement allocation is not the same thing as pleading non-speculative damages sufficient to survive a motion to dismiss. Indeed, while Plaintiffs fail to mention it, just three days before Plaintiffs filed their Letter, Judge Daniels dismissed the claims in *Sonterra* in their entirety for failure to allege any injury at all, let alone an injury for which damages could be calculated on a non-speculative basis. *See supra* Part II. *Sonterra*, therefore, undermines Plaintiffs' arguments here.[10]

## V.   *Sullivan* Confirms That Plaintiffs' RICO Claims Are Impermissibly Extraterritorial and Inadequately Pled.

  *Sullivan* further confirms that Plaintiffs' RICO claims should be dismissed for failure to state a claim.  Addressing substantially similar allegations, Judge Castel rejected the *Sullivan* plaintiffs' RICO claims for the same reasons that dismissal is appropriate here:  the Complaint failed to (i) "allege facts that overcome the presumption against extraterritoriality," or (ii) "identify conduct on the part of individual defendants sufficient to state a claim." *Sullivan*, 2017 WL 685570, at *31.

  Here, as in *Sullivan*, Plaintiffs' RICO claims are premised on predicate acts of wire fraud, which Judge Castel concluded "does not have extraterritorial application and may not serve as a predicate act for a RICO claim" unless the "Complaint successfully alleges that the acts of wire fraud were domestic in nature." *Id.* at *33.  But even "[a]ccepting the truth of [P]laintiffs' allegations, [D]efendants' activities were organized outside of the United States through a [British] trade association," and the "use of United States wires was, at most, incidental." *Id.* at *34.

  Judge Castel further concluded that the *Sullivan* plaintiffs' RICO claims were inadequately pled for "failure to distinguish which [predicate] acts were attributable to individual defendants," noting that "lump[ing] the defendants' actions in the aggregate," as Plaintiffs do here, is entirely "insufficient." *Id.* at *35.  Because the Complaint here similarly fails to allege facts "specific to the individual defendants, and relies on overarching allegations about defendants' collective use of the interstate wires," Plaintiffs' RICO claims cannot withstand a motion to dismiss. *Id.*

## VI.   *Sullivan* Lends No Support to Plaintiffs' Flawed Contract-Based Claims.

  Plaintiffs' contention that *Sullivan* somehow supports Plaintiffs' claims for unjust enrichment and breach of the implied covenant of good faith and fair dealing, Ltr. at 5, is mistaken. Nothing in *Sullivan* cures FrontPoint's failure to adequately plead unjust enrichment and implied covenant claims against UBS and Credit Suisse.  For the same reasons FrontPoint fails to allege Article III injury, *see supra* Part II, FrontPoint fails to allege a causal link between either

---

[10] Defendants also respectfully disagree with *Sullivan*'s analysis of the FTAIA, which cannot be squared with the standards set forth in *Lotes Co.* v. *Hon Hai Precision Indus. Co.*, 753 F.3d 395 (2d Cir. 2014). *See* Defs.' Merits Br. at 17-19 (citing cases).

Cahill Gordon & Reindel llp

- 9 -

Defendant's alleged conduct and any losses it may have suffered.  Defs' Merits Br. at 45-48.  And, in any event, FrontPoint's claims are time barred.  *See* Defs.' Merits Br. at 48-49.

**VII.    *Sullivan* Does Nothing to Save Plaintiffs' Time-Barred Claims.**

Plaintiffs argue that *Sullivan* shows that their time-barred claims are saved by the doctrine of fraudulent concealment.  Ltr. at 5–6.  But *Sullivan* is inapposite.  There, the court found that plaintiffs' allegations of fraudulent concealment were plausible because it is "unclear how the plaintiffs could have recognized that the daily quotes were manipulated based on the bare fact of their publication."  *See* 2017 WL 685570, at *27.  Unlike in *Sullivan*, Plaintiffs here have had the benefit of numerous regulatory settlements to alert them to their claims, and their Amended Complaint explicitly refers to the UBS DOJ settlement, dated December 1, 2012.  Pls.' Am. Compl. at ¶ 64.   The UBS settlement agreements — cited repeatedly by Plaintiffs — are the "*very foundation* of their CEA claims."  Defs.' Merits Br. at 28 (emphasis added).[11]  Moreover, Plaintiffs, citing to supposedly fundamental principles of economics, argue that the "large spread between three-month Swiss Franc LIBOR and the three-month Swiss Franc Deposit Rate indicates that three-month Swiss Franc LIBOR was artificial."  Pls.' Am. Compl. at ¶¶ 183-184.  Thus, Plaintiffs' own pleadings show how "plaintiffs could have recognized . . . manipulation through diligence."  *Sullivan*, 2017 WL 685570, at *27.

*        *         *

For the above reasons, Defendants respectfully request that the Court consider *Sullivan*, *Laydon V*, *Laydon VI*, and *Williams* in further support of their pending motions to dismiss for lack of personal jurisdiction and for failure to state a claim.

Respectfully submitted,

/s/ Joel Kurtzberg
Joel Kurtzberg

The Honorable Sidney H. Stein
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

---

[11] Plaintiffs' letter concedes that their claims against UBS are time-barred.  *See* Ltr. at 6 (arguing that inquiry notice was not triggered as to Defendants *other than* UBS).

CAHILL GORDON & REINDEL LLP

- 10 -

BY ECF

cc:      Counsel of Record