

July 20, 2017

**BY ECF**
The Honorable Sidney H. Stein
United States Courthouse
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

      Re:    <u>*Sonterra Capital Master Fund Ltd., et al v. Credit Suisse Group AG, et al*, No. 15-cv-0871</u>

Dear Judge Stein:

      We represent Plaintiffs and submit the Supreme Court's decision in *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 137 S. Ct. 1773 (June 19, 2017) ("*Bristol-Myers*") as supplemental authority in opposition to Defendants' pending motions to dismiss the Amended Class Action Complaint [ECF No. 36] ("¶" or "Complaint") for lack of personal jurisdiction. *Bristol-Myers* confirms that Defendants' motions should be denied because this Court has specific personal jurisdiction over claims brought by Plaintiffs who purchased Swiss franc LIBOR-based derivatives in the United States and were injured here by Defendants' illegal price fixing conspiracy.

      *Bristol-Myers* evaluated whether the California Superior Court had specific personal jurisdiction over claims under California law against Bristol-Myers Squibb ("BMS"), a non-resident pharmaceutical company incorporated in Delaware and headquartered in New York. *See* 137 S. Ct. at 1777-78. More than 600 plaintiffs sued BMS in California for injuries allegedly related to their consumption of a BMS drug called Plavix. *Id.* at 1776. Of this group, only 86 plaintiffs were California residents. *Id.* at 1778. The rest were non-residents who lived outside the forum and "were not prescribed Plavix in California, did not purchase Plavix in California, did not ingest Plavix in California, and were not injured by Plavix in California." *Id.* at 1781.

      The Court held that these non-resident plaintiffs could not sue BMS (a non-resident defendant) in California because there was not a sufficient "affiliation between the forum and the underlying controversy." *Id.* at 1780 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Specific jurisdiction required that plaintiffs' claims "principally" relate to "[an] activity or an occurrence that takes place in the forum State." *Id.* The non-resident plaintiffs could not establish this connection: none was prescribed Plavix in California, nor did any of them purchase, consume, or suffer injury from the drug in that state. It followed that the California courts could not exercise specific jurisdiction because all the "*relevant* conduct occurred" somewhere else, *e.g.*, in the non-resident plaintiffs' home states, and not California. *Id.* at 1781 (quoting *Walden v. Fiore*, 134 S. Ct. 1115, 1126 (2014)).

www.lowey.com

44 South Broadway, Suite 1100, White Plains, NY 10601   (p) 914-997-0500   (f) 914-997-0035
Four Tower Bridge, 200 Barr Harbor Drive, Suite 400, West Conshohocken, PA 19428-2977   (p): 610-941-2760   (f): 610-862-9777



In contrast, the California courts *can and did* exercise specific jurisdiction over the **in-forum** California plaintiffs' claims. These plaintiffs consumed Plavix in California and allegedly "suffered harm in that State." *Id.* at 1782.[1] Thus, there was an "affiliation between the forum and the underlying controversy" that was missing from the non-resident plaintiffs' claims—*i.e.*, the fact that BMS "sell[s] Plavix in California" was directly related to the California plaintiffs' claims. *Id.* at 1778. Moreover, BMS's sales of Plavix in California created a sufficient "relationship to the forum State" (*id.* at 1779 (quoting *Walden,* 134 S. Ct. at 1121-23)) such that jurisdiction was appropriate even though almost everything associated with Plavix happened in New York or New Jersey. *See id.* at 1778 ("BMS did not develop Plavix in California, did not create a marketing strategy for Plavix in California, and did not manufacture, label, package, or work on the regulatory approval of the product in California.").

*Bristol-Myers* is directly applicable to the jurisdictional analysis in this case and supports denying Defendants' Rule 12(b)(2) motions for several reasons:

*First*, Plaintiffs here are identical to the in-forum California plaintiffs in *Bristol-Myers*. They: (1) are at home in the forum (¶¶ 20-37);[2] (2) transacted in a product—Swiss franc LIBOR-based derivatives—that Defendants sell in the forum (¶¶ 46-48, 51-52, 56-58, 61-65, 67-68, 221); and (3) suffered an injury in the forum when Defendants illegally conspired to fix Swiss franc LIBOR-based derivatives prices. *See, e.g.*, ¶¶ 198-219. Thus, Plaintiffs' claims arise from "[an] activity or an occurrence that takes place in the forum"—their price-fixed Swiss franc LIBOR-based derivatives trades—making the exercise of specific jurisdiction appropriate under *Bristol-Myers*. 137 S. Ct. at 1780.

*Second*, Defendants' suit-related contacts far exceed BMS's. In *Bristol-Myers*, the Supreme Court recognized that California courts had specific jurisdiction over the California plaintiffs' claims even though "BMS did not develop Plavix in California, did not create a marketing strategy for Plavix in California, and did not manufacture, label, package, or work on the regulatory approval of the product in California." 137 S. Ct. 1778. Here, in contrast, Defendants conducted all those activities in the forum—employing traders and salespeople to develop, manufacture, market, and sell Swiss franc LIBOR-based derivatives at artificial prices to Plaintiffs and other Class members; (2) seeking regulatory approval for their business activity by obtaining banking licenses from the New York Department of Financial Services, among other government entities; and (3) deputizing traders located in the forum to coordinate trading strategies that would financially benefit from Defendants' Swiss franc LIBOR manipulation. ¶¶ 39, 42-48, 51-52, 57-58, 61-65, 67-68. Plaintiffs' claims, which

---

[1] Consistent with this ruling, the Supreme Court indicated that the non-resident plaintiffs' respective home states where they were injured were appropriate forums for their claims against BMS, noting that "plaintiffs who are residents of a particular State . . . could probably sue together." *Id.* at 1783.

[2] The forum in this case is the entire United States. Plaintiffs' Sherman Act, RICO, and CEA claims arise under statutes that permit a defendant to be sued in any district where the defendant is found or where the violation occurred. *See* 7 U.S.C. § 25; 15 U.S.C. § 22; 18 U.S.C. § 1965.


seek to recover the monetary losses suffered in these priced-fixed transactions, "aris[e] out of or relat[e] to" the same contacts with the forum, establishing specific jurisdiction. 137 S. Ct. at 1780.

Moreover, *Bristol-Myers* confirms that Defendants' use of their own traders and personnel to market and distribute Swiss franc LIBOR-based derivatives in the forum is a significant suit-related contact. In contrast to Defendants here, BMS did not handle the sale of Plavix in California itself and contracted with a third-party distributor named McKesson to distribute the drug in that state. *Id.* at 1783. The Court rejected the non-resident plaintiffs' argument that BMS's distribution agreement with McKesson could establish specific jurisdiction because BMS itself had no foothold in California—it only sold Plavix in California through a third party. The opposite is true here. Defendants used their own U.S. offices to cultivate their Swiss franc LIBOR-based derivatives business and solicit U.S. counterparties, like Plaintiffs, directly. *See, e.g.*, ¶¶ 47, 65 (Credit Suisse & UBS transacted Swiss franc LIBOR-based derivatives directly with Plaintiff FrontPoint). Defendants did not act through a third party but through their U.S.-based offices and branches that have no separate legal existence from and are the same legal entity as the parent company operating in the United States. ¶¶ 51, 56, 61, 63.

*Lastly*, the Court's discussion of *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984), discredits Defendants' "effects test" argument that specific jurisdiction requires Defendants to have manipulated Swiss franc-LIBOR with the "express aim of causing an effect in New York." Joint Memorandum of Law in Support of Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, ECF No. 64, at 19-20; *see also* Memorandum of Law of Defendant BlueCrest Capital Management, LLP in Support of its Motion to Dismiss the Amended Complaint, ECF No. 75, at 12-13. As the *Bristol-Myers* Court explained, the conclusion in *Keeton* "that specific jurisdiction was present relied principally on the connection between the circulation of the magazine in [the forum] and damage allegedly caused within the State." 137 S. Ct. at 1782. That same reasoning distinguished the California plaintiffs, who "suffered harm in that State," from the non-resident plaintiffs, who were adversely affected by conduct which resulted in "no harm in California and no harm to California residents." *Id.*

This court should apply the specific jurisdiction analysis outlined by the Supreme Court in *Bristol-Myers* and deny Defendants' motions to dismiss.[3]

---

[3] The Second Circuit's decision in *Waldman v. Palestine Liberation Organization* also supports this result. *See* 835 F.3d 317 (2d Cir. 2016). In *Waldman*, the Second Circuit reaffirmed that that "the due process analysis [for the purpose of the court's *in personam* jurisdiction] is basically the same under both the Fifth and Fourteenth Amendments." *Id.* at 330. Thus, under Second Circuit law, the *Bristol-Myers* Court's analysis of personal jurisdiction under the Fourteenth Amendment should be applied here. Moreover, to the extent that Fifth Amendment due process differs, it is "less restrictive" than the Fourteenth Amendment analysis and easily met by the conduct alleged in the Complaint. *Mark E. Mitchell, Inc. v. Charleston Library Soc.,* 114 F. Supp. 2d 259, 263-64 (S.D.N.Y. 2000).



Letter to The Honorable Sidney H. Stein
July 20, 2017
Page 4

Respectfully submitted,

/s/Geoffrey M. Horn
Geoffrey M. Horn