# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

SONTERRA CAPITAL MASTER FUND LTD.,
FRONTPOINT EUROPEAN FUND, L.P.,
FRONTPOINT FINANCIAL SERVICES FUND,
L.P., FRONTPOINT HEALTHCARE FLAGSHIP
ENHANCED FUND, L.P., FRONTPOINT
HEALTHCARE FLAGSHIP FUND, L.P.,
FRONTPOINT HEALTHCARE HORIZONS
FUND, L.P., FRONTPOINT FINANCIAL
HORIZONS FUND, L.P., FRONTPOINT UTILITY
AND ENERGY FUND L.P., HUNTER GLOBAL
INVESTORS FUND I, L.P., HUNTER GLOBAL
INVESTORS FUND II, L.P., HUNTER GLOBAL
INVESTORS OFFSHORE FUND LTD., HUNTER
GLOBAL INVESTORS OFFSHORE FUND II
LTD., HUNTER GLOBAL INVESTORS SRI FUND
LTD., HG HOLDINGS LTD., HG HOLDINGS II
LTD., and FRANK DIVITTO, on behalf of
themselves and all others similarly situated,

                  Plaintiffs,

            - against -

CREDIT SUISSE GROUP AG, CREDIT SUISSE AG,
JPMORGAN CHASE & CO., THE ROYAL BANK OF
SCOTLAND PLC, UBS AG, BLUECREST CAPITAL
MANAGEMENT LLP, DEUTSCHE BANK AG, DB
GROUP SERVICES UK LIMITED, AND JOHN DOE
NOS. 1-50,

                 Defendants.

Docket No. 15-cv-00871 (SHS)
ECF Case

# PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR
# PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
# WITH JPMORGAN CHASE & CO.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................ii

INTRODUCTION ...............................................................................................................1

ARGUMENT......................................................................................................................2

I.    The Court should preliminarily approve the Settlement. ..........................................2

   A.    The preliminary approval standard. .....................................................................2

   B.    The Settlement provides a considerable benefit to the Settlement Class. ...............3

   C.    The Settlement is procedurally fair because it was produced by well-informed, arm's-length negotiations by experienced counsel...................................................5

   D.    There are no obvious or other deficiencies in the Settlement. ...............................6

   E.    The Settlement does not favor Plaintiffs or any Class Members or create any preferences.7

   F.    The Settlement consideration is well within the range of what possibly may be found, at final approval, to be fair and reasonable. ...........................................................8

     1.    Applying the Grinnell "final approval" Factors to the Settlement is unnecessary at preliminary approval. ..................................................................................11

     2.    Unlike in Grinnell, recovery on many of the claims being settled here is not foreclosed because of the availability of joint and several liability recovery from the remaining Defendants. ...............................................................................................13

II.   The Court should certify the Settlement Class defined in the Settlement. ...............13

   A.    The Settlement Class meets the Rule 23(a) requirements. ....................................14

     1.    Numerosity.....................................................................................................14

     2.    Commonality...................................................................................................15

     3.    Typicality .......................................................................................................16

     4.    Adequacy ........................................................................................................17

       a.    The Plaintiffs suffer no disabling conflicts with the members of the Settlement Class.....................................................................................................17

       b.    Interim Lead Counsel is adequate. ...............................................................18

       c.    The Court should appoint Class Counsel under Rule 23(g)(1). .......................19

   B.    The proposed Settlement Class satisfies Rule 23(b)(3). .......................................19

     1.    Predominance ..................................................................................................19

     2.    Superiority ......................................................................................................21

III.  The Court should appoint Citibank as Escrow Agent. ...........................................22

Conclusion ....................................................................................................................23

## TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997) ................................................................................................ 20, 21

*Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp.,*
    222 F.3d 52 (2d Cir. 2000) ................................................................................................17

*Bano v. Union Carbide Corp.,*
    273 F.3d 120 (2d Cir. 2001) ................................................................................................2

*Boeing Co. v. Van Gemert,*
    444 U.S. 472 (1980) ................................................................................................4

*Bolanos v. Norwegian Cruise Lines Ltd.,*
    212 F.R.D. 144 (S.D.N.Y. 2002) ................................................................................................16

*Brown v. Kelly,*
    609 F.3d 467 (2d Cir. 2010) ................................................................................................ 19, 20

*City of Detroit v. Grinnell Corp.,*
    495 F.2d 448 (2d Cir. 1974) ................................................................................................ 11, 13

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.,*
    502 F.3d 91 (2d Cir. 2007) ................................................................................................21

*Gottesman v. General Motors Corp.,*
    436 F.2d 1205 (2d Cir. 1971) ................................................................................................9

*Guerrero v. Wells Fargo Bank, N.A.,*
    No. C 12-04026, 2014 U.S. Dist. LEXIS 50015 (N.D. Cal. Apr. 7, 2014) ................................4

*In re "Agent Orange" Prod. Liab. Litig.,*
    597 F. Supp. 740 (E.D.N.Y. 1984) ................................................................................................8

*In re "Agent Orange" Prod. Liab. Litig.,*
    818 F.2d 145 (2d Cir. 1987) ................................................................................................7

*In re Air Cargo Shipping Servs. Antitrust Litig.,*
    MDL No. 1775, 2014 U.S. Dist. LEXIS 180914 (E.D.N.Y. Oct. 15, 2014) ............................20

*In re Am. Int'l Grp. Secs. Litig.,*
    689 F.3d 229 (2d Cir. 2012) ................................................................................................20

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.,*
    MDL No. 1500, 2006 U.S. Dist. LEXIS 17588 (S.D.N.Y. Apr. 6, 2006) ................................12

*In re Austrian and German Bank Holocaust Litig.*,
   80 F. Supp. 2d 164 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d
   Cir. 2001) .................................................................................................................................5

*In re Canadian Sup. Secs. Litig.*, No. 09-10087,
   2011 U.S. Dist. LEXIS 132708 (S.D.N.Y. Nov. 16, 2011) ........................................................7

*In re Corrugated Container Antitrust Litig.*,
   643 F.2d 195 (5th Cir. 1981).....................................................................................................17

*In re Currency Conversion Fee Antitrust Litig.*,
   224 F.R.D. 555 (S.D.N.Y. 2004) ...............................................................................................22

*In re Currency Conversion Fee Antitrust Litig.*,
   263 F.R.D. 110 (S.D.N.Y. 2009) ...............................................................................................10

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   574 F.3d 29 (2d Cir. 2009) ........................................................................................................16

*In re Flonase Antitrust Litig.,*
   951 F. Supp. 2d 739 (E.D. Pa. 2013) ..........................................................................................9

*In re Giant Interactive Grp. Inc. Secs. Litig.*,
   279 F.R.D. 151 (S.D.N.Y. 2011) .................................................................................................7

*In re Global Crossing Sec. and ERISA Litig.*,
   225 F.R.D. 439 (S.D.N.Y. 2004) .........................................................................................13, 17

*In re HealthSouth Corp. Sec. Litig.*,
   334 Fed. App'x 248 (11th Cir. 2009) ..........................................................................................7

*In re Initial Pub. Offering Sec. Litig.*
   260 F.R.D. 81 (S.D.N.Y. 2009) ...........................................................................................14, 21

*In re Marsh ERISA Litig.*,
   265 F.R.D. 128 (S.D.N.Y. 2010) ...............................................................................................10

*In re NASDAQ Market-Makers Antitrust Litig.,*
   169 F.R.D. 493 (S.D.N.Y. 1996) .........................................................................................17, 20

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
   176 F.R.D. 99 (S.D.N.Y. 1997) ..........................................................................................*passim*

*In re Packaged Ice Antitrust Litig.*,
   No. 08-MD-01952, 2011 U.S. Dist. LEXIS 17255 (E.D. Mich. Feb. 22, 2011) ........................3

*In re Platinum & Palladium Commodities Litig.*,
   No. 10 Civ. 3617, 2014 U.S. Dist. LEXIS 96457 (S.D.N.Y. July 15, 2014) ...............................3

*In re Prudential Sec. Inc. Ltd. Pshps. Litig.,*
    163 F.R.D. 200 (S.D.N.Y. 1995) ...................................................................................15

*In re Prudential Secs. Ltd P'ships Litig.,*
    No. M-21-67 (MP), 1995 U.S. Dist. LEXIS 22103 (S.D.N.Y. Nov. 20, 1995) ...................9, 10

*In re Take Two Interactive Secs. Litig.,*
    No. 06 Civ. 803 (RJS), 2010 U.S. Dist. LEXIS 143837 (S.D.N.Y. June 29, 2010) ...................11

*In re Traffic Exec. Assn. E. R.R.s.,*
    627 F.2d 631 (2d Cir. 1980) .........................................................................................2

*In re Tronox Inc.,*
    No. 14-cv-5495 (KBF), 2014 U.S. Dist. LEXIS 158767 (S.D.N.Y. Nov. 10, 2014) ...............13

*In re Visa Check/MasterMoney Antitrust Litig.,*
    280 F.3d 124 (2d Cir. 2001) .......................................................................................21

*In re Wachovia Equity Secs. Litig.,*
    No. 08-6171 (RJS), 2012 U.S. Dist. LEXIS 97910 (S.D.N.Y. June 12, 2012) ...........................7

*In re Warner Commc'ns Sec. Litig.,*
    618 F. Supp. 735 (S.D.N.Y. 1985) ................................................................................9

*Marisol A. by Forbes v. Giuliani,*
    126 F.3d 372 (2d Cir. 1997) .......................................................................................16

*Martens v. Smith Barney Inc.,*
    181 F.R.D. 243 (S.D.N.Y. 1998) .................................................................................17

*Maywalt v. Parker & Parsley Petroleum Co.,*
    67 F.3d 1072 (2d Cir. 1995) ...................................................................................9, 11

*Meredith Corp. v. SESAC, LLC,*
    87 F. Supp. 3d 650 (S.D.N.Y. 2015) .............................................................................22

*Messner v. Northshore Univ. HealthSystem,*
    669 F.3d 802 (7th Cir. 2012) ......................................................................................20

*Morris v. Affinity Health Plan, Inc.,*
    859 F. Supp. 2d 611 (S.D.N.Y. 2012) ............................................................................5

*Newman v. Stein,*
    464 F.2d 689 (2d Cir. 1972) .........................................................................................8

*Seijas v. Republic of Arg.,*
    606 F.3d 53 (2d Cir. 2010) .........................................................................................22

*Shapiro v. JPMorgan Chase & Co.*,
No. 11 Civ. 8331 (CM) (MHD), 2014 U.S. Dist. LEXIS 37872 (S.D.N.Y. Mar. 24, 2014)......5

*Strobl v. New York Mercantile Exch.*,
582 F. Supp. 770 (S.D.N.Y. 1984) ................................................................................13

*Tyson Foods, Inc. v. Bouaphakeo*,
136 S. Ct. 1036 (2016)......................................................................................................20

*Wal-Mart Stores, Inc. v. Dukes*,
131 S. Ct. 2541 (2011)......................................................................................................15

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005) ..................................................................................................2

## Other Authorities

Herbert B. Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS (4th ed. 2002)...................2, 7, 20

MANUAL FOR COMPLEX LITIGATION (FOURTH) ..........................................................................7

## Rules

FED. R. CIV. P. 23(a) ............................................................................................. 14, 15, 16, 17

FED. R. CIV. P. 23(b)(3)................................................................................................. 19, 21

FED. R. CIV. P. 23(e) ............................................................................................................2

FED. R. CIV. P. 23(g)(1)..........................................................................................................19

## INTRODUCTION

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure ("Federal Rules"), Plaintiffs[1] respectfully submit this memorandum of law and the accompanying Declaration of Vincent Briganti, Esq. ("Briganti Decl.") to demonstrate that this Court should grant Plaintiffs' motion for an order that: (a) preliminarily approves Plaintiffs' proposed Settlement[2] with Defendant JPMorgan Chase & Co. ("JPMorgan"), subject to later, final approval; (b) conditionally certifies a Settlement Class on the claims against JPMorgan, subject to later, final approval of such Settlement Class; (c) appoints Lowey Dannenberg, P.C. ("Lowey Dannenberg") as Class Counsel; and (d) appoints Citibank, N.A. ("Citibank") as the Escrow Agent under the Settlement Agreement. *See* Proposed Order annexed to the Notice of Motion.

The Settlement meets the two essential requirements for granting preliminary approval—it is procedurally and substantively fair. The Settlement is the product of serious, informed, arm's-length negotiations between experienced counsel. Further, the Settlement is substantively fair, reasonable, and adequate, providing for JPMorgan to pay $22 million into a Settlement Fund, which will then be distributed to qualifying Settling Class Members. Settlement Agreement ¶ 3. Of equal importance, JPMorgan agreed to provide specified cooperation to Plaintiffs to benefit the Settlement Class. *Id.* ¶ 4. Because the Settlement with JPMorgan meets all the requisites for preliminary approval, the Court should grant Plaintiffs' motion.

---

[1] The "Plaintiffs" are Sonterra Capital Master Fund Ltd., FrontPoint European Fund, L.P., FrontPoint Financial Services Fund, L.P., FrontPoint Healthcare Flagship Enhanced Fund, L.P., FrontPoint Healthcare Flagship Fund, L.P., FrontPoint Healthcare Horizons Fund, L.P., FrontPoint Financial Horizons Fund, L.P., FrontPoint Utility and Energy Fund, L.P., Hunter Global Investors Fund I, L.P., Hunter Global Investors Fund II, L.P., Hunter Global Investors Offshore Fund Ltd., Hunter Global Investors Offshore Fund II Ltd., Hunter Global Investors SRI Fund Ltd., HG Holdings Ltd., HG Holdings II Ltd., and Frank Divitto. Unless otherwise noted, ECF citations are to the docket in *Sonterra Capital Master Fund Ltd., et al. v. Credit Suisse AG, et al.*, No. 15-cv-00871 (S.D.N.Y.) (SHS) and internal citations and quotation marks are omitted.

[2] Unless otherwise noted, capitalized terms used herein have the same meaning as in the Stipulation and Agreement of Settlement between Plaintiffs and JPMorgan, dated June 2, 2017 (the "Settlement Agreement"). *See* Briganti Decl., Ex. 1.

## ARGUMENT

**I.   The Court should preliminarily approve the Settlement.**

The procedural history of this Action is set forth in the Briganti Decl. ¶¶ 7-12.

**A.   The preliminary approval standard.**

There is a "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 116 (2d Cir. 2005) ("The compromise of complex litigation is encouraged by the courts and favored by public policy"); *Bano v. Union Carbide Corp.,* 273 F.3d 120, 129-30 (2d Cir. 2001) (holding that there is an overriding public interest in settling and quieting litigation, particularly class actions).

Proposed settlements of a Rule 23(b)(3) class, like this one, require notice to class members, an opportunity for those class members to object, and final approval by the Court after a hearing at which class members may appear and be heard. *See* FED. R. CIV. P. 23(e) (settlements in class actions require "the court's approval"); *see generally* Herbert B. Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS § 11.41, at 89 (4th ed. 2002). Preliminary approval is akin to "a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *In re Traffic Exec. Assn. E. R.R.s.,* 627 F.2d 631, 634 (2d Cir. 1980).

Preliminary approval of a settlement is not expressly mentioned in either the Federal Rules generally or Rule 23 in particular. Frequently, the judicially-created requirements for preliminary approval have been expressed as follows:

> Where the proposed settlement [1] appears to be the product of serious, informed, non–collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class and [4] falls within the range of **possible** approval, preliminary approval is granted.

*In re NASDAQ Mkt.-Makers Antitrust Litig.,* 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("*NASDAQ II*") (emphasis and numbers in brackets supplied); *In re Platinum & Palladium Commodities Litig.,* No. 10-

cv-3617, 2014 U.S. Dist. LEXIS 96457, at *35-36 (S.D.N.Y. July 15, 2014) ("*Platinum*"). The Settlement with JPMorgan amply satisfies each of these four requirements. *See* Pts. I.B-F, *infra*.

In conducting the preliminary approval inquiry, a court primarily considers the "negotiating process leading up to the settlement, i.e., procedural fairness, as well as the settlement's substantive terms, i.e., substantive fairness." *Platinum,* 2014 U.S. Dist. LEXIS 96457, at *35-36. The question is whether the terms are "at least sufficiently fair, reasonable and adequate to justify notice to those affected and an opportunity to be heard." *NASDAQ II*, 176 F.R.D. at 102; *see also* Superseding Order Preliminarily Approving Settlements, *Laydon v. Mizuho Bank, Ltd., et al.*, No. 12-cv-3419 (S.D.N.Y. June 22, 2016) (GBD), ECF No. 659 ("Euroyen Order") (preliminarily approving $35 million and $23 million settlements obtained by Lowey Dannenberg in a proposed class action alleging the manipulation of the Tokyo Interbank Offered Rate ("Euroyen TIBOR") and the London Interbank Offered Rate for the Japanese yen ("Yen-LIBOR")); Order Preliminarily Approving Class Action Settlement and Conditionally Certifying a Settlement Class, *Sullivan, et al. v. Barclays plc, et al.*, No. 13-cv-2811 (PKC), (S.D.N.Y. Dec. 15, 2015), ECF No. 234 ("Euribor Order I") (preliminarily approving $94 million settlement obtained by Lowey Dannenberg in a proposed class action alleging the manipulation of the Euro Interbank Offered Rate "Euribor").[3]

### B. The Settlement provides a considerable benefit to the Settlement Class.

The Settlement with JPMorgan, which is the initial, "ice breaker" settlement in this Action, provides the Settlement Class with substantial cooperation and monetary consideration of $22 million and serves as a potential catalyst for other Defendants to settle. *See In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2011 U.S. Dist. LEXIS 17255, at *50-51 (E.D. Mich. Feb. 22, 2011)

---

[3] *See also* Order Preliminarily Approving Class Action Settlement with HSBC Holdings plc and HSBC Bank plc and Conditionally Certifying a Settlement Class, *Sullivan, et al. v. Barclays plc, et al.*, No. 13-cv-2811 (PKC) (S.D.N.Y. Jan. 18, 2017), ECF No. 279 ("Euribor Order II") (preliminarily approving $45 million settlement obtained by Lowey Dannenberg).

("Also of significant value is the fact that the Settlement Agreement with [defendant] can serve as an 'ice-breaker' settlement and includes the promise of cooperation from [the defendant]"). This sum will also ensure funding to continue to pursue the litigation against the non-settling Defendants.

Another benefit of the Settlement is there is no right to reversion. That is, if the Settlement is finally approved, the settlement monies will **not** revert to JPMorgan for opt-outs or failures to submit a Proof of Claim and Release. Settlement Agreement ¶ 3.[4] Given the reality that claim rates often fall below 100%, the non-reversion term of the Settlement likely will enhance the benefits and the recovery that qualifying claimants will receive.

Beyond monetary consideration, the Settlement also obligates JPMorgan to provide specified cooperation to Plaintiffs and the Class to aid them in pursuing their case against the non-settling Defendants. This cooperation will include, among other things: (i) attorney proffers of fact regarding conduct known to JPMorgan; (ii) underlying documents and communications that JPMorgan previously provided to Governmental Agencies; (iii) reasonably available trade data pertaining to JPMorgan's transactions in Swiss franc-denominated inter-bank money market instruments for the years 2001 through 2011; (iv) reasonably available trade data pertaining to JPMorgan's transactions in Swiss Franc LIBOR-Based Derivatives for the years 2001 through 2011; (v) certain information contained in submissions to the Federal Reserve Bank of New York; and (vi) non-privileged declarations, affidavits, witness statements, or other sworn or unsworn statements of JPMorgan's employees. Settlement Agreement ¶ 4. JPMorgan will also provide Plaintiffs with reasonable access

---

[4] *Compare Boeing Co. v. Van Gemert*, 444 U.S. 472, 479-82 (1980) (in the litigated trial and judgment context, the share of the settlement due to class members who failed to claim reverted to defendants), *with Guerrero v. Wells Fargo Bank, N.A.*, No. C 12-04026, 2014 U.S. Dist. LEXIS 50015, at *6 (N.D. Cal. Apr. 7, 2014) (finding the lack of reversion to defendant of remaining portions of the net settlement an important benefit to the class). Under the Settlement with JPMorgan, the proceeds that would have been paid to those persons who fail to claim will be redistributed among, and enhance the recovery of, those Class Members who do claim.

to up to four current employees who Plaintiffs believe may have knowledge of the conduct alleged in the Action. *Id.*

In exchange for these benefits, the Releasing Parties will release JPMorgan from any and all claims relating to Swiss franc LIBOR or the Swiss Franc LIBOR-Based Derivatives that were allegedly distorted by JPMorgan's alleged manipulation of Swiss franc LIBOR. *Id.* ¶ 12. Plaintiffs' claims against JPMorgan will also be dismissed on the merits with prejudice. *Id.* ¶ 18.

### C. The Settlement is procedurally fair because it was produced by well-informed, arm's-length negotiations by experienced counsel.

"To determine procedural fairness, courts examine the negotiating process leading to the settlement." *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 618 (S.D.N.Y. 2012). Where a settlement "is the product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation," the settlement enjoys a "presumption of fairness." *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001); *see also Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 8331 (CM) (MHD), 2014 U.S. Dist. LEXIS 37872, at *6 (S.D.N.Y. Mar. 24, 2014) ("Co–Lead Counsel, who have extensive experience in prosecuting complex class actions, strongly believe the Settlement is in the best interests of the Class, an opinion which is entitled to 'great weight.'").

The process leading up to the Settlement fully supports preliminary approval. Briganti Decl. ¶¶ 14-20. The Settlement is the result of more than 7 months of arm's-length, non-collusive negotiations between experienced counsel. JPMorgan and Plaintiffs began to discuss the possibility of settling the Action in November 2016. *Id.* ¶ 14. In the months that followed, Interim Lead Counsel and counsel for JPMorgan had numerous in-person meetings and telephone calls, during which counsel for each side expressed their views of the Action and JPMorgan's conduct in relation to the alleged conspiracy. *Id.* ¶¶ 15-17. At all times, counsel for JPMorgan argued that JPMorgan is not liable for the claims asserted against it in the Action. Following 7 months of hard-fought

negotiations, Plaintiffs and JPMorgan reached an agreement. *Id.* ¶ 18. JPMorgan does not admit any wrongdoing or liability as part of its Settlement and maintains that it has good and meritorious defenses to the claims brought against it in the Action. *See* Settlement Agreement.

The Settlement Class also benefitted from informed advocates. Prior to negotiating with JPMorgan, Interim Lead Counsel had researched and considered a wide range of relevant legal issues and analyzed the facts known to date, including government settlements, such as plea, non-prosecution, and deferred prosecution agreements, and engaged in ongoing consultations with a leading commodity manipulation consulting expert. *Id.* ¶ 6.

Interim Lead Counsel has extensive experience in litigating Commodity Exchange Act ("CEA") and antitrust claims (among others) and has obtained landmark settlements on behalf of some of the nation's largest pension funds and institutional investors. *See* Briganti Decl. ¶¶ 3-4; *see also* Briganti Decl. Ex. 2. Interim Lead Counsel believes that the Settlement reached with JPMorgan is in the best interests of the Settlement Class. Considering Interim Lead Counsel's extensive prior experience in complex class action litigation, their knowledge of the strengths and weaknesses of Plaintiffs' claims, and their assessment of the Settlement Class's likely recovery following trial and appeal, the Settlement is entitled to a presumption of procedural fairness.

**D.  There are no obvious or other deficiencies in the Settlement.**

The Settlement plainly satisfies the next *NASDAQ II* preliminary approval factor, as it involves a structure and terms that are commonly used in class action settlements in this District. *See NASDAQ II*, 176 F.R.D. at 102; *see also* Briganti Decl. ¶ 22.  The closest issue to a departure is in ¶ 23 of the Settlement Agreement, which gives JPMorgan the right, but not the obligation, in its sole discretion, to exercise certain rights, including terminating the Settlement Agreement, pursuant to the terms and conditions of a confidential Supplemental Agreement. These types of qualified rights to terminate, however, are common in class action settlements and are generally included based on

the defendant's desire to quiet the litigation through a class-wide settlement, without leaving open

any material exposure. *See, e.g.,* Euroyen Order ¶¶ 10-11.

### E.  The Settlement does not favor Plaintiffs or any Class Members or create any preferences.

The Settlement does not favor or disfavor any Plaintiffs or Class Members; nor does it

discriminate against, create any limitations, or exclude from payments, any persons or groups within

the Settlement Class. *See NASDAQ II,* 176 F.R.D. at 102; Settlement Agreement, *passim.*

Making such distinctions is fully allowable and expected, if there is a rational basis for them,

in plans of allocation. Plaintiffs need transactional records from JPMorgan before beginning the

process to formulate the plan of allocation of the Settlement proceeds. JPMorgan has informed

Interim Lead Counsel that it is in the process of isolating and collecting those records for

production, as contemplated by ¶ 4 of the Settlement Agreement.

Preliminary approval is routinely granted to settlements before any plan of allocation exists.

*See* Euribor Order I and Euribor Order II; *see also In re Wachovia Equity Secs. Litig.,* No. 08-6171 (RJS),

2012 U.S. Dist. LEXIS 97910, at *4 (S.D.N.Y. June 12, 2012) (approving plan of allocation after

preliminary approval of proposed settlement and certification of settlement class); *In re Canadian Sup.*

*Secs. Litig.,* No. 09-10087, 2011 U.S. Dist. LEXIS 132708, at *2 (S.D.N.Y. Nov. 16, 2011) (same); *In*

*re Giant Interactive Grp. Inc. Secs. Litig.,* 279 F.R.D. 151, 156 (S.D.N.Y. 2011) (same).

Even final approval of a class action settlement is appropriate prior to the preparation of a

plan of allocation, especially in a complex case in which only one or two defendants have settled and

sufficient records for determination as to the distribution of the proceeds are not yet available. *In re*

*"Agent Orange" Prod. Liab. Litig.,* 818 F.2d 145, 170 (2d Cir. 1987); *see also In re NASDAQ Market-*

*Makers Antitrust Litig.,* 187 F.R.D. 465, 480 (S.D.N.Y. 1998) ("*NASDAQ III*"); *In re HealthSouth Corp.*

*Sec. Litig.,* 334 Fed. App'x 248, 251, 253-55 (11th Cir. 2009); MANUAL FOR COMPLEX LITIGATION

(FOURTH) § 21.313 at 296; *Newberg on Class Actions* § 12:35 at 342 (4th ed. 2002).

But here, Plaintiffs do fully anticipate sending the proposed plan of allocation with the Class

Notice that will be given to members of the Settlement Class (along with notice of any other

settlements that have been preliminarily approved by that time). Thus, the proposed plan of

allocation will be available to Class Members before they have to decide to accept its benefits, opt-

out, or object to final approval. Accordingly, after receiving JPMorgan's transaction records,

Plaintiffs will seek to pursue the process for formulating a plan of allocation. Once it is created,

Interim Lead Counsel will file the proposed plan of allocation, as well as a Class Notice program, the

forms of notice, and proposed date for the Fairness Hearing, with the Court for preliminary

approval thereof. The Court will also have the opportunity review Plaintiffs' proposed plan of

allocation when considering whether to grant final approval of the Settlement.

    In these circumstances, the Settlement wholly avoids any preferences or discriminations.

Whether any such preferences or discriminations will even be proposed (and, if so, which ones), will

be determined by an appropriate process. Accordingly, this third *NASDAQ II* preliminary approval

element is fully satisfied.

### F. The Settlement consideration is well within the range of what possibly may be found, at final approval, to be fair and reasonable.

    The sizeable consideration that the Settlement provides falls well within the possible range

of reasonable consideration at final approval. *NASDAQ II,* 176 F.R.D. at 102. The range of

reasonableness "recognizes the uncertainties of law and fact in any particular case and the

concomitant risks and costs necessarily inherent in taking any litigation to completion . . . ." *Newman*

*v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972). In applying this factor, "[d]ollar amounts [in class action

settlement agreements] are judged not in comparison with the possible recovery in the best of all

possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent*

*Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd,* 818 F.2d 145 (2d Cir. 1987).

Private antitrust plaintiffs, unlike the government, have the burden to prove anticompetitive impact and damages. *Gottesman v. General Motors Corp.*, 436 F.2d 1205, 1210 (2d Cir. 1971). Even where the Department of Justice had secured a criminal guilty plea, civil juries have found no damages. *See, e.g.,* Special Verdict on Indirect Purchases, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI (N.D. Cal. Sept. 3, 2013), ECF No. 8562. "Indeed, the history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal." *NASDAQ III*, 187 F.R.D. at 476; *see also In re Flonase Antitrust Litig.,* 951 F. Supp. 2d 739, 748 (E.D. Pa. 2013) ("Even if [p]laintiffs had succeeded in proving liability at trial, there is no guarantee they would have recovered damages.").

JPMorgan's monetary consideration alone, $22 million, is greater than the amount of maximum potential damages JPMorgan would have argued it was liable for had the case proceeded to trial. *Compare Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995) ("*Maywalt*") (maximum "likely" damages is the appropriate test), *with In re Prudential Secs. Ltd. P'ships Litig.*, No. M-21-67 (MP), 1995 U.S. Dist. LEXIS 22103, at *41 (S.D.N.Y. Nov. 20, 1995) ("*Prudential*") (Pollack, J.) (where many non-settling defendants are present, class counsel must be circumspect in stating facts that may aid the non-settling defendants). JPMorgan would have argued—and still maintains—that it was not liable for any damages on any claims in the Action.

Plaintiffs' impact and damages theories against JPMorgan would have been sharply disputed, including at trial. This inevitably would have involved a "battle of the experts." *See NASDAQ III,* 187 F.R.D. at 476. "In this 'battle of experts,' it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors . . . ." *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985).

Before confronting the risks of proving impact and damages, Plaintiffs would have faced the

complexities, challenges, and risk of a far-greater task: establishing the other elements of liability. The facts and claims here are intricate. As recognized in similar contexts, "the complexity of [p]laintiff's claims *ipso facto* creates uncertainty." *In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 123 (S.D.N.Y. 2009). Establishing liability in the Action will involve obtaining and proving the meaning and significance of instant messages, trading patterns, and other facts or evidence. Trader communications will likely raise ambiguities and inferences. This creates many risks in establishing liability in this case. Interim Lead Counsel must be wary in describing in detail its proof risks due to the presence of non-settling Defendants. *See Prudential*, 1995 U.S. Dist. LEXIS 22103, at *41. But the answers to the key questions of fact and law for all Class Members' claims will be hotly disputed and Interim Lead Counsel will zealously seek to overcome all of the foregoing risks.

In light of the many risks of continued prosecution, the Settlement beneficially diversifies the Settlement Class's position. The Settlement provides Class Members with an immediate recovery and the opportunity to obtain future recoveries through settlements or verdicts against the remaining seven Defendants. In assessing the reasonableness and adequacy of benefits obtained in the Settlement, Interim Lead Counsel was mindful of the "benefits afforded the Class including the immediacy and certainty of the recovery, against the continuing risks of litigation." *See In re Marsh ERISA Litig.*, 265 F.R.D. 128, 139 (S.D.N.Y. 2010). Due to the ostensible risks of litigation, Interim Lead Counsel's considered judgment is that the total consideration that the Settlement with JPMorgan provides, including the cooperation that JPMorgan will provide to Plaintiffs, is fair, reasonable, and adequate in light of all the circumstances.

Therefore, the consideration offered to the Class Members in the Settlement is well within the range of that which may possibly later be found to be fair, reasonable, and adequate at final approval. *NASDAQ II*, 176 F.R.D. at 102; Briganti Decl. ¶ 23.

1. **Applying the *Grinnell* "final approval" Factors to the Settlement is unnecessary at preliminary approval.**

At final approval, the Court considers several factors in deciding whether a settlement is fair, reasonable, and adequate:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974) ("*Grinnell*"); *see also Maywalt*, 67 F.3d at 1079-80 (holding that fundamental to a determination of whether a settlement is fair, reasonable, and adequate "is the need to compare the terms of the compromise with the likely rewards of litigation."). In the discussion above, Plaintiffs have already addressed *Grinnell* Factors 4-6 and 8-9. These *Grinnell* Factors are the only appropriate considerations for preliminary approval. *In re Take Two Interactive Secs. Litig.,* No. 06 Civ. 803 (RJS), 2010 U.S. Dist. LEXIS 143837, at *32 n.8 (S.D.N.Y. June 29, 2010) ("A court reviewing a settlement for final approval must address the nine factors laid out in" *Grinnell*). Plaintiffs nonetheless address the remaining *Grinnell* Factors below.

***Grinnell* Factor 1.** The factual and legal issues in this Action involve esoteric financial complexities, but the future litigation may be handled pursuant to standard case management procedures. As is always true in cases involving large document productions by multiple defendants, a key component of the duration of the case will be the time that the non-settling Defendants require to produce their documents, and that the parties require to review the Defendants' documents as well as non-party documents. The litigation is likely to be expensive.

*__Grinnell__* __Factor 2.__ *Grinnell* Factor 2 (the reaction of the class to the settlement) is premature. Nonetheless, all of the named Plaintiffs favor the Settlement. Well-versed in the rigorous analysis of financial matters, Plaintiffs' approval is highly probative of the likely reaction by other Class Members upon similarly reviewing the Settlement with JPMorgan. Any Class Member who does not favor the deal can opt out. After the Settlement Class has been provided the Class Notice of the Settlement, Plaintiffs will address the Settlement Class's reaction in their motion for final approval.

*__Grinnell__* __Factor 3.__ The Court may approve a settlement at any stage of litigation. *See In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, MDL No. 1500, 2006 U.S. Dist. LEXIS 17588, at *36 (S.D.N.Y. Apr. 6, 2006). The Court's primary concern in examining the stage of litigation and the extent of discovery undertaken is to assess whether the settling parties "have engaged in sufficient investigation of the facts" to understand the strengths and weaknesses of their cases, and whether the settlement is adequate given those risks. *Id.* at *37.

Plaintiffs conducted extensive factual and legal research and consulted experts to assess the merits of their claims. Briganti Decl. ¶ 6. Plaintiffs reviewed publicly-available information, including government pleas, non-prosecution agreements, and deferred prosecution agreements. The information gathered during this process greatly informed Plaintiffs of the advantages and disadvantages of entering into the Settlement with JPMorgan. Although Plaintiffs have not received discovery from the Defendants, discovery is not required even at final approval of a settlement. *See Plummer v. Chemical Bank*, 668 F.2d 654, 658 (2d Cir. 1982); *see also In re AOL Time Warner, Inc.,* 2006 U.S. Dist. LEXIS 17588, at *36 (the relevant inquiry is whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement).

*Grinnell* **Factor 7.** JPMorgan has the ability to withstand a greater judgment than $22 million, but this *Grinnell* Factor alone does not bear on the appropriateness of the Settlement. *See In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 439, 460 (S.D.N.Y. 2004) ("[T]he fact that a defendant is able to pay more than it offers in settlement does not, standing alone, indicate that the settlement is unreasonable or inadequate"); *In re Tronox Inc.*, No. 14-cv-5495 (KBF), 2014 U.S. Dist. LEXIS 158767, at *21 (S.D.N.Y. Nov. 10, 2014) ("The law does not require a defendant to completely empty its pockets before a settlement may be approved—indeed, if it did, it is hard to imagine why a defendant would ever settle a case.").

2. **Unlike in *Grinnell*, recovery on many of the claims being settled here is not foreclosed because of the availability of joint and several liability recovery from the remaining Defendants.**

A more detailed *Grinnell* analysis is also inappropriate because *Grinnell* involved the payment by all four defendants of $10 million, whereas here, JPMorgan has settled, but seven Defendants remain in the litigation. *See Grinnell*, 495 F.2d at 452. Most of the claims here are premised on joint or otherwise conspiratorial conduct that creates joint and several liability. *See Strobl v. New York Mercantile Exch.*, 582 F. Supp. 770, 778 (S.D.N.Y. 1984) (holding defendants jointly and severally liable on a jury verdict for price fixing and manipulation in violation of the antitrust laws and commodities laws, as well as common law fraud), *aff'd* 768 F.2d 22 (2d Cir. 1985). The situation here is different from the "entire settlement for all purposes" circumstance under review in *Grinnell*.

II. **The Court should certify the Settlement Class defined in the Settlement.**

At this preliminary approval stage, the Settlement Class for the claims against JPMorgan satisfies the provisions of Rule 23(a) and Rule 23(b)(3). The Settlement Class excludes persons and entities outside the purview of United States law, but includes those Persons protected by U.S. law who transacted in financial instruments, the prices of which Defendants allegedly distorted or

sought to distort, by manipulating Swiss franc LIBOR, in order to profit their proprietary trading positions. Specifically, the Settlement Agreement provides for the following Settlement Class:

> All Persons (including both natural persons and entities) who purchased, sold, held, traded, or otherwise had any interest in Swiss Franc LIBOR-Based Derivatives[5] during the period of January 1, 2001 through December 31, 2011 (the "Class Period"). Excluded from the Settlement Class are the Defendants (as defined in the Settlement Agreement) and any parent, subsidiary, affiliate or agent of any Defendant or any co-conspirator whether or not named as a Defendant, and the United States Government.

Settlement Agreement ¶ 1(E). Thus, the Court should preliminarily certify the Settlement Class defined in the Settlement Agreement.[6]

### A. The Settlement Class meets the Rule 23(a) requirements.

### 1. Numerosity

Rule 23(a) requires that the class be "so numerous that joinder of all class members is impracticable." FED. R. CIV. P. 23(a). Joinder need not be impossible, only "merely be difficult or inconvenient, rendering use of a class action the most efficient method to resolve plaintiffs' claims." *In re Initial Pub. Offering Sec. Litig.,* 260 F.R.D. 81, 90 (S.D.N.Y. 2009) ("*IPO*"). "Sufficient numerosity can be presumed at a level of forty members or more." *Id.* There are at least hundreds, if not thousands, of geographically dispersed persons and entities that fall within the Settlement Class definition. *See* Briganti Decl. ¶ 24. Thus, joinder of all of these individuals and entities would be impracticable.

---

[5] "Swiss Franc LIBOR-Based Derivatives" means: (i) a three-month Euro Swiss franc futures contract on the London International Financial Futures and Options Exchange ("LIFFE") entered into by a U.S. Person, or by a Person from or through a location within the U.S.; (ii) a Swiss franc currency futures contract on the Chicago Mercantile Exchange ("CME"); (iii) a Swiss franc LIBOR-based interest rate swap entered into by a U.S. Person, or by a Person from or through a location within the U.S.; (iv) an option on a Swiss franc LIBOR-based interest rate swap ("swaption") entered into by a U.S. Person, or by a Person from or through a location within the U.S.; (v) a Swiss franc currency forward agreement entered into by a U.S. Person, or by a Person from or through a location within the U.S.; and/or (vi) a Swiss franc LIBOR-based forward rate agreement entered into by a U.S. Person, or by a Person from or through a location within the U.S.

[6] JPMorgan consents to preliminary certification of the Settlement Class solely for the purpose of the Settlement and without prejudice to any position it may take with respect to class certification in any other action. Settlement Agreement ¶ 22(E).

### 2.   Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). This is a "'low hurdle' easily surmounted." *In re Prudential Sec. Inc. Ltd. Pshps. Litig.*, 163 F.R.D. 200, 206 n.8 (S.D.N.Y. 1995). Commonality requires the presence of only a single question common to the class. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011).

This case presents scores of common questions of fact and law. Personal jurisdiction, subject matter jurisdiction, the standards for an unlawful agreement, and multiple questions raised by Defendants' motions to dismiss create a core of common questions of fact and law relating to Plaintiffs' claims and Defendants' affirmative defenses. All Class Members have the equal need to demonstrate facts relative to these questions and argue the same legal points to establish their claims.

Greatly adding to the common questions of law and fact are the same liability and impact questions that every Plaintiff and Class Member has to answer through the same body of common class-wide proof. For example:

1.  What constitutes a false or manipulative submission by a Swiss franc LIBOR contributor panel bank? This threshold question involves issues of fact that will be of overriding importance in this litigation. As their traders allegedly talked and colluded about the optimal level of Swiss franc LIBOR to profit their proprietary positions held in Swiss Franc LIBOR-Based Derivatives, certain Defendants to the Action allegedly adjusted their Swiss franc LIBOR submissions in the direction of their financial self-interest. Nonetheless, we expect Defendants to the Action will contend that the communications are ambiguous, that the evidence is otherwise mixed, and/or they had non-manipulative reasons for their Swiss franc LIBOR submissions.

2.  What constitutes a false or fixed bid-ask spread on over-the-counter ("OTC") Swiss Franc LIBOR-Based Derivatives by a market maker in the foreign exchange and interest rate derivatives markets?

3.  What was the allegedly true, non-fixed bid-ask spread for OTC Swiss Franc LIBOR-Based Derivatives during each day of the Class Period?

4.  Which of the Defendants were engaged in conspiratorial conduct in Swiss franc LIBOR and for what period(s) were they involved in the same?

5.  What would the non-manipulated Swiss franc LIBOR be in the "but-for" world for each day of the Class Period?

These common questions involve dozens of common sub-questions of fact and law that are also common to all members of the Settlement Class. Rule 23(a)(2) is overwhelmingly satisfied for purposes of conditional certification.

### 3.  Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). This permissive standard is satisfied when "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009); *see also Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 155 (S.D.N.Y. 2002) ("Since the claims only need to share the same essential characteristics, and need not be identical, the typicality requirement is not highly demanding.").

The Plaintiffs' and Class Members' claims arise from the same course of conduct involving the alleged false reporting and manipulation of Swiss franc LIBOR, as well as their alleged fixing of the bid-ask spread on OTC Swiss Franc LIBOR-Based Derivatives, by some or all of the Defendants to the Action. Thus, Plaintiffs' claims are typical of the Class Members' claims. *See, e.g., Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 376-77 (2d Cir. 1997) (finding the named plaintiffs' claims typical of the class's under Rule 23(a)(3) where "each named plaintiff challenges a different aspect of the child welfare system"; "[t]he claimed deficiencies implicate different statutory, constitutional and regulatory schemes"; and "no single plaintiff (named or otherwise) is affected by each and every legal violation alleged . . . and [] no single specific legal claim identified by the plaintiffs affects every member of the class"); *see also* Euroyen Order ¶ 4 (conditionally certifying settlement class of persons who purchased sold, held, traded, or otherwise had any interest in derivatives products priced, benchmarked and/or settled to Euroyen TIBOR and Yen-LIBOR);

16

Euribor Order I ¶ 4; Euribor Order II ¶ 4. Typicality is satisfied for purposes of conditional certification.

### 4. Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4); *Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). Generally, courts consider "whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Id.* at 61.

### a. The Plaintiffs suffer no disabling conflicts with the members of the Settlement Class.

"[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Martens v. Smith Barney Inc.,* 181 F.R.D. 243, 259 (S.D.N.Y. 1998); *see also In re NASDAQ Market-Makers Antitrust Litig.,* 169 F.R.D. 493, 514-15 (S.D.N.Y. 1996) (*"NASDAQ I"*) (to warrant denial of class certification, "it must be shown that any asserted 'conflict' is so palpable as to outweigh the substantial interest of every class member in proceeding with the litigation."). No such fundamental conflict exists here for purposes of conditional certification.

*First*, all Settling Class Members share an overriding interest in obtaining the largest possible monetary recovery from JPMorgan (and, for that matter, all of the remaining non-settling Defendants). *See Global Crossing*, 225 F.R.D. at 453 (certifying a settlement class and finding that "[t]here is no conflict between the class representatives and the other class members. All share the common goal of maximizing recovery."); *see also In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir. 1981) (certifying settlement class and holding that "so long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes.").

17

*Second*, all Settling Class Members share a common interest in obtaining JPMorgan's early cooperation to benefit the Settlement Class.

*Third*, all Settling Class Members share the same overriding interests to overcome the procedural dismissal motions, develop the enormous fact record during discovery, overcome the ambiguities and competing explanations, and establish the collusive, successful manipulation of Swiss franc LIBOR and Swiss Franc LIBOR-Based Derivatives. Further, all Settling Class Members share the interest to successfully show that such manipulation of Swiss franc LIBOR was sufficient to cause injury and to quantify the impact of such manipulation on Swiss franc LIBOR and the prices of Swiss Franc LIBOR-Based Derivatives.

### b.    Interim Lead Counsel is adequate.

Plaintiffs and the Settlement Class are represented by experienced and skilled counsel. This Court has already appointed Lowey Dannenberg as Interim Class Counsel, having found counsel's experience sufficient and relevant. ECF No. 29. The same reasoning applies to find that this part of the adequacy prong is satisfied as well.

Lowey Dannenberg has vigorously represented the Settlement Class in this Action, having negotiated the Settlement. Lowey Dannenberg will obtain valuable information provided by JPMorgan. Settlement Agreement ¶ 4. With over 50 years of experience litigating complex class actions, Lowey Dannenberg has achieved some of the most significant class action recoveries under the CEA and has secured almost a billion dollars in recoveries on behalf of Fortune 100 Companies and other sophisticated investors in antitrust and competition-related litigation. Briganti Decl., Ex. 2 (Lowey Dannenberg Firm Resume); *see also* Euroyen Order ¶ 5 (appointing Lowey Dannenberg as settlement class counsel in $58 million settlements with HSBC and Citibank); Euribor Order I ¶ 6 (appointing Lowey Dannenberg as settlement class counsel in $94 million settlement with Barclays); Euribor Order II ¶ 6 (appointing Lowey Dannenberg as settlement class counsel in $45 million

settlement with HSBC); Order Preliminarily Approving Class Action Settlement and Conditionally Certifying a Settlement Class, *In re London Silver Fixing, Ltd., Antitrust Litig.*, No. 14-MD-02573-VEC (S.D.N.Y. Nov. 23, 2016), ECF No. 166 (appointing Lowey Dannenberg as settlement class counsel in $38 million settlement with Deutsche Bank).

Therefore, upon certifying the Settlement Class, the Court should also appoint Lowey Dannenberg as Class Counsel. The Rule 23(a)(4) requirements that there be no fundamental conflict and that counsel is adequate are both satisfied for purposes of conditional certification.

### c.    The Court should appoint Class Counsel under Rule 23(g)(1).

Rule 23(g)(1) provides that "a court that certifies a class must appoint class counsel." FED. R. CIV. P. 23(g)(1). Where, as here, only one application is made seeking appointment as class counsel, "the court may appoint that applicant only if the applicant is adequate under Rule 23(g)(1) and (4)." FED. R. CIV. P. 23(g)(2). For the reasons described above, Lowey Dannenberg is adequate and should be appointed as Class Counsel for the Settlement Class.

### B.  The proposed Settlement Class satisfies Rule 23(b)(3).

Once Rule 23(a) has been satisfied, Plaintiffs must also conditionally establish: (1) "that the questions of law or fact common to class members predominate over any questions affecting only individual members"; and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).

### 1.  Predominance

Certification is proper under Rule 23(b)(3) where "a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Brown v. Kelly*, 609 F.3d 467, 483 (2d Cir. 2010). To satisfy the predominance requirement, a plaintiff must show "that the issues in the class action that are subject to generalized proof, and thus applicable to the

class as a whole, . . . predominate over those issues that are subject only to individualized proof." *Brown*, 609 F.3d at 483 (ellipses in original). "If the most substantial issues in controversy will be resolved by reliance primarily upon common proof, class certification will generally achieve the economies of litigation that Rule 23(b)(3) envisions." *In re Air Cargo Shipping Servs. Antitrust Litig.*, MDL No. 1775, 2014 U.S. Dist. LEXIS 180914, at *194 (E.D.N.Y. Oct. 15, 2014); *see also Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045-49 (2016) ("When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately").

"Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws[,]" as opposed to mass tort cases in which the "individual stakes are high and disparities among class members are great." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). Predominance can be established in some antitrust cases because the elements of the claims lend themselves to common proof. *See, e.g.,* NEWBERG ON CLASS ACTIONS §§ 18:28 & 18:29 (4th ed. 2002) (noting that allegations of antitrust conspiracies generally establish predominance of common questions). Some antitrust claims are particularly well suited for class treatment because liability focuses on defendants' alleged unlawful actions, not the actions of individual plaintiffs. *Compare Amchem,* 521 U.S. at 624, *with Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012).

The "predominance inquiry will sometimes be easier to satisfy in the settlement context." *In re Am. Int'l Grp. Secs. Litig.,* 689 F.3d 229, 240 (2d Cir. 2012). Unlike class certification for litigation purposes, a settlement class presents no management difficulties for the court as settlement, not trial, is proposed. *Amchem,* 521 U.S. at 620; *see also NASDAQ I,* 169 F.R.D. at 517 (stating that the predominance test standard is met "unless it is clear that individual issues will overwhelm the common questions and render the class action valueless").

If the claims against JPMorgan had not been settled, dozens of common questions would have predominated over individual questions in the prosecution of the claims against JPMorgan. The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *IPO*, 260 F.R.D. at 92. Here, all Plaintiffs and Class Members face and must answer the same common factual and legal questions to establish personal jurisdiction, subject matter jurisdiction, conspiracy, unlawful Swiss franc LIBOR manipulation, the amount of such Swiss franc LIBOR manipulation, unlawful fixing of the bid-ask spread on OTC Swiss Franc LIBOR-Based Derivatives, and many additional matters of proof. These common questions predominate over individual questions for purposes of conditional certification. *See Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 105 (2d Cir. 2007) (in price-fixing case, "allegations of the existence of a price-fixing conspiracy are susceptible to common proof"); *see also In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 139 (2d Cir. 2001), *overruled on other grounds by, In re Initial Public Offering Sec. Litig.*, 471 F. 3d 24, 42 (2d Cir. 2006) ("Common issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues."). The Settlement Class satisfies Rule 23(b)(3) as common issues predominate over individual issues for purposes of conditional certification.

### 2. Superiority

Rule 23(b)(3)'s "superiority" requirement obliges a plaintiff to show that a class action is superior to other methods available for "fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b). The Court balances the advantages of class action treatment against alternative available methods of adjudication. *See* FED. R. CIV. P. 23(b)(3)(A)-(D) (listing four non-exclusive factors relevant to this determination). The superiority requirement is applied leniently in the settlement context because the court "need not inquire whether the case, if tried, would present intractable management problems." *Amchem*, 521 U.S. at 620.

A class action is the superior method for the fair and efficient adjudication and settlement of this Action. *First*, Class Members are significant in number and geographically disbursed, making a "class action the superior method for the fair and efficient adjudication of the controversy." *See In re Currency Conversion Fee Antitrust Litig.*, 224 F.R.D. 555, 566 (S.D.N.Y. 2004).

*Second*, the majority of Class Members have neither the incentive nor the means to litigate these claims. The damages most of the individual Class Members suffered are likely to be small compared to the very considerable expense and burden of individual litigation. This makes it uneconomic for an individual to protect his/her rights through an individual suit. That is why no Class Member "has displayed any interest in bringing an individual lawsuit." *See Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 661 (S.D.N.Y. 2015). A class action allows claimants to "pool claims which would be uneconomical to litigate individually," as "no individual may have recoverable damages in an amount that would induce him to commence litigation on his own behalf." *Currency Conversion*, 224 F.R.D. at 566. "Under such circumstances, a class action is efficient and serves the interest of justice." *Id.*

*Third*, the prosecution of separate actions by hundreds (or thousands) of individual Class Members would impose heavy burdens upon the Court. It would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Settlement Class. Thus, both prongs of Rule 23(b)(3) are satisfied for purposes of conditional certification.

## III.    The Court should appoint Citibank as Escrow Agent.

The Settlement Agreement requires Interim Lead Counsel and JPMorgan to jointly designate an Escrow Agent to maintain the Settlement Fund. Interim Lead Counsel and JPMorgan have jointly designated Citibank to serve as Escrow Agent and Citibank has agreed to provide its services as Escrow Agent at market rates.

## **CONCLUSION**

For the reasons stated above, Plaintiffs respectfully request that the Court enter the accompanying proposed order that, among other things: (1) grants preliminary approval of the proposed Settlement with JPMorgan; (2) conditionally certifies the Settlement Class on the claims against JPMorgan for purposes of sending Class Notice; (3) appoints Lowey Dannenberg as Class Counsel; and (4) appoints Citibank as Escrow Agent under the Settlement Agreement.

Dated: July 21, 2017
White Plains, New York

LOWEY DANNENBERG, P.C.

By: /s/ Vincent Briganti
       Vincent Briganti
       Geoffrey M. Horn
       Peter D. St. Phillip
       Michelle E. Conston
       44 South Broadway, Suite 1100
       White Plains, New York 10601
       Tel.: 914-997-0500
       Fax: 914-997-0035
       vbriganti@lowey.com
       ghorn@lowey.com
       pstphillip@lowey.com
       mconston@lowey.com

*Interim Class Counsel*

       Christopher Lovell
       Gary S. Jacobson
       Benjamin M. Jaccarino
       LOVELL STEWART HALEBIAN
       JACOBSON LLP
       61 Broadway, Suite 501
       New York, NY 10006
       Tel.: 212-608-1900
       Fax: 212-719-4677
       clovell@lshllp.com
       gsjacobson@lshllp.com
       bjaccarino@lshllp.com

*Additional Counsel for Plaintiffs*

23