CAHILL GORDON & REINDEL LLP
EIGHTY PINE STREET
NEW YORK, NY 10005-1702

L. HOWARD ADAMS
ROBERT A. ALESSI
HELENE R. BANKS
ANIRUDH BANSAL
DAVID L. BARASH
LANDIS C. BEST
BRADLEY J. BOND
BROCKTON B. BOSSON
KEVIN J. BURKE
JAMES J. CLARK
SEAN M. DAVIS
STUART G. DOWNING
ADAM M. DWORKIN
ANASTASIA EFIMOVA
JENNIFER B. EZRING
JOAN MURTAGH FRANKEL
JONATHAN J. FRANKEL
PIERRE M. GENTIN

CHARLES A. GILMAN
ARIEL GOLDMAN
JASON M. HALL
WILLIAM M. HARTNETT
CRAIG M. HOROWITZ
DOUGLAS S. HOROWITZ
TIMOTHY B. HOWELL
DAVID G. JANUSZEWSKI
ELAI KATZ
BRIAN S. KELLEHER
RICHARD KELLY
CHÉRIE R. KISER*
JOEL KURTZBERG
TED B. LACEY
MARC R. LASHBROOK
ALIZA R. LEVINE
JOEL H. LEVITIN

TELEPHONE (212) 701-3000
WWW.CAHILL.COM

1990 K STREET, N.W.
WASHINGTON, DC 20006-1181
(202) 862-8900

CAHILL GORDON & REINDEL (UK) LLP
24 MONUMENT STREET
LONDON EC3R 8AJ
+44 (0)20 7920 9800

WRITER'S DIRECT NUMBER

(212) 701-3120

GEOFFREY E. LIEBMANN
BRIAN T. MARKLEY
WILLIAM J. MILLER
NOAH B. NEWITZ
MICHAEL J. OHLER
DAVID R. OWEN
JOHN PAPACHRISTOS
LUIS R. PENALVER
KIMBERLY PETILLO-DECOSSARD
SHEILA C. RAMESH
MICHAEL W. REDDY
OLEG REZZY
JAMES ROBINSON
THORN ROSENTHAL
TAMMY L. ROY
JONATHAN A. SCHAFFZIN
JOHN SCHUSTER

MICHAEL A. SHERMAN
DARREN SILVER
JOSIAH M. SLOTNICK
RICHARD A. STIEGLITZ JR.
SUSANNA M. SUH
ANTHONY K. TAMA
JONATHAN D. THIER
SEAN P. TONOLLI*
JOHN A. TRIPODORO
GLENN J. WALDRIP, JR.
HERBERT S. WASHER
MICHAEL B. WEISS
S. PENNY WINDLE
DAVID WISHENGRAD
COREY WRIGHT
JOSHUA M. ZELIG
DANIEL J. ZUBKOFF

*ADMITTED IN DC ONLY

July 27, 2017

Re:   *Sonterra Capital Master Fund Ltd.* v. *Credit Suisse Group AG, et al.*, No. 15-cv-0871 (S.D.N.Y.)

Dear Judge Stein:

We represent Credit Suisse Group AG and Credit Suisse AG and write on behalf of all Foreign Defendants[1] in response to Plaintiffs' July 20, 2017 letter (the "Plaintiffs' Letter") (Dkt. 148), which argues that the Supreme Court's recent decision in *Bristol-Myers Squibb Co.* v. *Superior Court of California, San Francisco County*, 137 S. Ct. 1773 (2017) ("*Bristol-Myers*") provides additional support for their argument that they have adequately pled specific jurisdiction over the Foreign Defendants. Rather than supporting Plaintiffs' position, *Bristol-Myers* provides significant additional support that Plaintiffs' claims should be dismissed for lack of personal jurisdiction.

*First*, *Bristol-Myers*' "straightforward application . . . of settled principles of jurisdiction" confirms that specific jurisdiction cannot be based on Foreign Defendants' forum contacts that are unrelated to Plaintiffs' injuries. *See Bristol-Myers*, 137 S. Ct. at 1783. In *Bristol-Myers*, the Supreme Court held that the California courts could *not* exercise specific jurisdiction over claims by non-resident plaintiffs related to the alleged harmful effects of taking defendant Bristol-Myers's Plavix because the non-resident plaintiffs' claims were not related to any alleged wrongdoing by Bristol-Myers in California. Although Bristol-Myers had conducted research on other drugs in California, had other significant operations in California, and had hired a California company to distribute the drug nationally, these activities were not connected to the non-resident plaintiffs' claims. *Id.* at 1781 ("What is needed — and what is missing here — is a connection between the forum and the specific claims at issue"). To "illustrate[]" its holding, *id.* at 1781–82, the Court cited *Walden* v. *Fiore*, 134 S. Ct. 1115 (2014), which held that

---

[1] Unless otherwise specified, defined terms have the same meaning as in Defendants' briefs filed in support of Defendants' Motion to Dismiss the First Amended Class Action Complaint ("Defs.' PJ Br.") (Dkt. 64).

CAHILL GORDON & REINDEL LLP

- 2 -

a Nevada court lacked jurisdiction over claims brought by "Nevada residents" who "suffered foreseeable harm in Nevada" because the "*relevant* conduct occurred" elsewhere. *Id.* (internal quotation marks omitted) (emphasis in *Bristol-Myers*). Thus, even an allegation that a plaintiff suffered injury in the forum is not enough to establish personal jurisdiction; at a minimum, the injury must be caused by something *the defendant* did in or specifically directed at the forum.[2] "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the state." *Id.* at 1781.

The rule set out in *Walden* and reaffirmed by *Bristol-Myers* is fatal to Plaintiffs' assertion of specific jurisdiction. Plaintiffs put forth vague and conclusory allegations regarding Foreign Defendants' general business activities in New York or the United States and argue that these activities confer specific jurisdiction.[3] *See* Plaintiffs' Letter at 2. Even if Plaintiffs had adequately alleged that Foreign Defendants traded in CHF LIBOR-based instruments in the United States — and they have not (*see* Defs.' PJ Br. at 13) — under *Bristol-Myers*, absent the requisite "'affiliation between the forum and the underlying controversy, principally [an] activity or occurrence that takes place in the forum State,' . . . specific jurisdiction is lacking *regardless of the extent of a defendant's unconnected activities* in the [forum]." *Bristol-Myers*, 137 S. Ct. at 1781 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)) (emphasis added).

Plaintiffs' argument that *Bristol-Myers* supports their assertion of specific jurisdiction because their claims are analogous to those of the California residents in *Bristol-Myers* is simply inaccurate. First, Bristol-Myers did not contest personal jurisdiction with respect to claims of California residents, and the Supreme Court did not address that exercise of jurisdiction, which is the basis of Plaintiffs' arguments. Second, even assuming that the California courts had specific jurisdiction over the claims of California residents, Plaintiffs' attempt to analogize their claims with those of the California residents does not hold. Plaintiffs suggest that, like the California residents in *Bristol-Myers*, they have adequately alleged jurisdiction because they purchased allegedly manipulated Swiss franc LIBOR-based instruments from within the United States. *See* Plaintiffs' Letter at 2. In *Bristol-Myers*, however, the California residents' claims were premised on a theory that Bristol-Myers defectively manufactured Plavix elsewhere and that Bristol-Myers itself *sold Plavix in the forum* to California plaintiffs, who then consumed it in the forum, resulting in the alleged injury. Here, in contrast, unlike in *Bristol-Myers* where the state law claim is that a defective product was sold in the forum, there is no allegation that Foreign Defendants did anything wrongful in the forum at all, or that their alleged manipulation of CHF LIBOR overseas was directly tied to the Swiss

---

[2] Plaintiffs' insistence that the relevant forum is the United States is refuted by Defendants' briefing in support of their motion to dismiss. Defs.' PJ Br. at 20-23.

[3] In so far as Plaintiffs' submission contains certain assertions that are not supported by their allegations, *see, e.g.*, Pls.' Letter at 3 ("Defendants did not act through a third party but through U.S.-based branches that have no separate legal existence from and are the same legal entity as the parent company operating in the United States."), Defendants have refuted those assertions in their briefing and do not address them again here. Defs.' PJ Br. at 9, 9n.

CAHILL GORDON & REINDEL LLP

- 3 -

franc LIBOR-based instruments sold across the globe, including the derivatives Plaintiffs allegedly purchased. Defs.' PJ Br. at 13–14.[4] Plaintiffs' improper attempt to shift the focus away from the purported manipulation out of which their claims arise, which allegedly occurred *wholly outside the United States*, and instead rely on *their own non*-suit-related conduct — *their* alleged purchase of instruments in the United States, almost entirely from *non*-defendants — misses the point entirely.[5] See Plaintiffs' Opposition to Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Venue ("Pls.' Opp.") (Dkt. 89) at 19. Nothing in *Bristol-Myers* supports such an expansive view of jurisdiction.

Plaintiffs incorrectly assert that *Bristol-Myers*' discussion of *Keeton* v. *Hustler Magazine, Inc.*, 465 U.S. 770 (1984), overturned the requirement that the relevant forum be the "focal point" of the alleged conspiracy. Plaintiffs' Letter at 3. In *Keeton*, which predated *Walden* by some 30 years, the Supreme Court was not confronted with a claim of jurisdiction premised solely on foreign conduct, as is the case here. Rather, the Court in *Keeton* was presented with specific allegations that the defendant published and distributed libelous statements *within* New Hampshire and therefore that its conduct was "purposefully directed" at that forum. *See Keeton*, 465 U.S. at 774–78. But those facts are entirely distinguishable from this case. Nothing in *Bristol-Myers* or *Keeton* remotely undermines the Second Circuit's well-established requirement that when the defendants' allegedly improper conduct occurred entirely abroad, as Plaintiffs contend here, the plaintiff must plead that it was done with the *express aim* of causing an effect in the forum, which Plaintiffs cannot do. *See* Defs.' PJ Br. at 19–20.

*Second*, *Bristol-Myers* reaffirms that Foreign Defendants' "relationship[s] with . . . third part[ies], standing alone, [are] an insufficient basis for jurisdiction." 137 S. Ct. at 1781 (citation and internal quotation marks omitted). The *Bristol-Myers* Court held that "the mere fact that *other* [*i.e.*, resident] plaintiffs were prescribed, obtained, and ingested Plavix in California— and allegedly sustained the same injuries as did the nonresidents—does not allow the State to assert specific jurisdiction over the nonresidents' claims." *Id.* (emphasis in original). Likewise, Plaintiffs' allegations that Foreign Defendants entered into Swiss franc LIBOR-based transactions in New York or the United States with *other* investors, Pls.' Opp. at 5, in no way supports *Plaintiffs*' assertion of specific jurisdiction over *their* claims.[6] *See* Defs.' PJ Br. at 15.

---

[4] Indeed, Judge Buchwald addressed similar allegations concerning alleged manipulation of USD LIBOR and held that due process was not satisfied by alleging that purportedly manipulated financial instruments were sold in the forum, but rather jurisdiction was only proper in the locations where plaintiffs adequately alleged the misconduct occurred (i.e., the jurisdictions where defendants allegedly made false submissions or requested them). *In re LIBOR-Based Fin. Instruments Antitrust Litig.* ("*LIBOR IV*"), 2015 WL 6243526, at *32 (S.D.N.Y. Oct. 20, 2015).

[5] For this reason, Plaintiffs' claim that Foreign Defendants had extensive in-forum suit-related conduct is similarly mistaken. None of the contacts Foreign Defendants allegedly had with the forum are suit-related. Defs.' PJ Br. at 15; Defendants' Personal Jurisdiction Reply Brief ("Defs.' PJ Reply Br.") (Dkt. 91) at 8.

[6] Plaintiffs nowhere allege that they transacted Swiss franc foreign exchange forwards with any Defendant in the United States. *See, e.g.*, First Amended Complaint (Dkt. 36) ¶¶ 199-201 (Sonterra alleges no contracts with any Foreign Defendants); *id.* at ¶ 202 (certain FrontPoint plaintiffs allege foreign exchange forward contracts with UBS

CAHILL GORDON & REINDEL LLP

- 4 -

*Third*, *Bristol-Myers* confirms that the exercise of specific jurisdiction requires Plaintiffs to allege that their injuries were proximately caused by Foreign Defendants' contacts, a threshold Plaintiffs have not met here. Defs.' PJ Br. at 16–17; Defs.' PJ Reply Br. at 8. Where, as here, a defendant has limited suit-related contacts with the forum, a plaintiff's injury must have been proximately caused by those contacts; and regardless of the extent of a defendant's overall contacts with the forum, the Second Circuit requires at a minimum a but-for connection. Defs.' PJ Reply Br. at 15–17. Prior to *Bristol-Myers*, cases in this district had held that a court could apply but-for causation based on non-suit related contacts. *See, e.g.*, *Gucci America Inc. v. Weixing Li*, 135 F. Supp. 3d 87, 98 (S.D.N.Y. 2015) (applying "but for" causation based on a defendant's non-suit related forum contacts). *Bristol-Myers* rejects as a matter of law, an approach to specific jurisdiction in which "the strength of the requisite connection between the forum and the specific claims at issue is relaxed if the defendant has extensive forum contacts that are unrelated to those claims." 137 S. Ct. at 1781. Therefore, after *Bristol-Myers*, courts may not exercise specific personal jurisdiction over a nonresident defendant unless that defendant has engaged in suit-related conduct in or specifically directed at the forum. That is not the case here. Defs.' PJ Br. at 15, 21.

Because *Bristol-Myers* strongly supports Foreign Defendants' argument that Plaintiff has failed to allege personal jurisdiction, Foreign Defendants respectfully request that the Court consider *Bristol-Myers*.

Respectfully submitted,

*/s/ Joel Kurtzberg*
Joel Kurtzberg

The Honorable Sidney H. Stein
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

BY ECF

cc:     Counsel of Record

---

and Credit Suisse but not in the United States); *id.* at ¶ 212 (Hunter alleges no contracts with any Foreign Defendants). In any event, even if the transactions were consummated in the United States, those instruments do not reference CHF LIBOR nor are they adequately alleged to have been manipulated, and, for each of those reasons, cannot be suit-related. Defs.' PJ Br. at 16-17.