

September 10, 2019

**BY ECF**
The Honorable Sidney H. Stein
United States District Court
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl St., Room 23A
New York, New York 10007

      Re:    *Sonterra Capital Master Fund, Ltd., et al. v. Credit Suisse Group AG, et al.*,
                No. 15-cv-0871 (SHS)

Dear Judge Stein:

      Without rehashing arguments already made, Plaintiffs wish to briefly respond to three points in Defendants' August 29, 2019 Letter, ECF No. 356 ("Defs.' Ltr.").

      I.      <u>Sonterra's Dissolution Has No Bearing on this Court's Subject Matter Jurisdiction.</u>

      Defendants attempt to distinguish *QS Holdco Inc. v. Bank of America Corp.*, 2019 WL 3716443 (S.D.N.Y. Aug. 6, 2019) ("*QS Holdco*") on the ground that the plaintiff there was a live entity at the time it filed the complaint. *See* Defs.' Ltr. at 5-6. This is a distinction without a difference. The point of *QS Holdco* is that defects under Rule 17—of whatever nature—do not divest the court of subject matter jurisdiction because a party's capacity to sue is a matter of prudential standing unrelated to the scope of Article III jurisdiction. 2019 WL 3716443, at *3.[1] Rule 17 "governs both the determination of a party's capacity to sue and be sued *and* his or her status as the real party in interest." *Esposito v. United States*, 368 F.3d 1271, 1273 (10th Cir. 2004) (emphasis added). It ensures that the right plaintiff is bringing the action. But it has nothing to say about whether the court has the constitutional power to entertain that action. *See QS Holdco*, 2017 WL 3716443, at *2. Defendants cite no authority, because none exists, to support their suggestion that some types of Rule 17 defects (e.g. dissolution of the named plaintiff) render an action a "legal nullity" while others (e.g. the named plaintiff not owning the claim) do not.

---

[1] Treating the plaintiff's capacity to sue as a matter of prudential standing rather than subject matter jurisdiction is the only way to make sense of Rule 17(b), which provides that a corporation's capacity to sue is determined by the law under which the corporation was organized. But state law, foreign law, or any other law under which corporations are organized cannot shrink a federal court's subject matter jurisdiction under Article III of the Constitution. *See Stern v. Marshall*, 564 U.S. 462, 484 (2011) ("When a suit is…brought within the bounds of federal jurisdiction, the responsibility for deciding that suit rests with Article III judges in Article III courts.").



II.  CalSTRS's and Dennis's Claims Relate Back, at a Minimum, to the First Amended Class Action Complaint.

Defendants' argument that Dennis's and CalSTRS's claims do not relate back to Divitto's claims under Rule 15 because Divitto did not assert claims for manipulation of bid-ask spreads is meritless. *See* Defs.' Ltr. at 6.[2] An amended pleading relates back to an earlier pleading where it involves the same "general fact situation." *See, e.g., In re Chaus Sec. Litig.*, 801 F. Supp. 1257, 1264 (S.D.N.Y. 1992) ("The principal inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party by the general fact situation alleged in the original pleading."). Here, all Plaintiffs' claims relate to the same price-fixing scheme carried out by the same individuals working at the same Defendant financial institutions to accomplish the same goal—boosting profits by manipulating the prices of CHF LIBOR-based derivatives. *See* First Am. Class Action Compl., ECF No. 36 ("FAC"). More than that, an amendment adding additional plaintiffs relates back to an earlier pleading where "the defendant has had actual notice that additional parties might assert claims arising out of the transaction or occurrence at issue." *Sokolski v. Trans Union Corp.*, 178 F.R.D. 393, 398 (E.D.N.Y. 1998) (quoting *Andujar v. Rogowski*, 113 F.R.D. 151, 158 (S.D.N.Y. 1986)). The FAC specifically advised Defendants that additional plaintiffs might join the action. ¶¶ 224-26. There can be no question that CalSTRS's and Dennis's claims would relate back to Divitto's.

III.  The Derivatives at Issue Here Are "Securities" Within the Meaning of the APAs.

It is immaterial that "[c]ourts have declined to recognize [derivatives] as securities" as a general matter. *See* Defs.' Ltr. at 4. The relevant inquiry here is whether derivatives are "Securities" under the APA's terms—which adopt a definition much broader than that of the federal securities laws, encompassing financial products of "any kind, type or nature." Judge Hellerstein consistently, and correctly, found that they are: "We have a Traded Securities, the derivative contracts.";[3] "the Sonterra assignment would be a good assignment."[4]

Plaintiffs respectfully request that the Court deny Defendants' motions to dismiss in their entirety.

Respectfully,

/s/ Vincent Briganti

---

[2] Additionally, because CalSTRS's and Dennis's claims do not rely on *American Pipe* tolling, *China Agritech* is irrelevant here. *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1803–04 (2018) ("This case concerns the tolling rule first stated in *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974).")

[3] *FrontPoint Asian Event Driven Fund, Ltd., v. Citibank, N.A.*, No. 16-cv-00563, Or. Arg. Tr. at 10:23-25, ECF No. 282 (S.D.N.Y. Apr. 12, 2018).

[4] *FrontPoint Asian Event Driven Fund, Ltd., v. Citibank, N.A.*, No. 16-cv-00563, Or. Arg. Tr. at 22:25-23:1, ECF No. 389 (S.D.N.Y. May 2, 2019).