

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------
SONTERRA CAPITAL MASTER FUND
LTD., *et al.*,

                        Plaintiffs,

        v.

CREDIT SUISSE GROUP AG, *et al.*,

                        Defendants.
------------------------------------------------------------

15-Cv-871 (SHS)

OPINION & ORDER

SIDNEY H. STEIN, U.S. District Judge.

    This action is but one in a series of cases in which investment funds, financial services companies, and individuals accuse major financial institutions of colluding to artificially impact benchmark interest rates for a variety of currencies. Here, plaintiffs bring a putative class action against large banks and interdealer brokers for purportedly working together to manipulate the prices of derivatives based on the Swiss franc London InterBank Offered Rate ("CHF LIBOR")—a daily interest rate benchmark designed to reflect the cost at which banks can borrow Swiss francs.

    This Court previously granted defendants' motion to dismiss the action but granted plaintiffs leave to replead. *Sonterra Capital Master Fund Ltd. v. Credit Suisse Grp. AG*, 277 F. Supp. 3d 521, 599–600 (S.D.N.Y. 2017) ("*Sonterra I*"). The Second Amended Complaint (SAC) revealed that many of the plaintiff entities had actually dissolved and no longer existed at the time the original complaint was filed. On this basis, defendants seek dismissal. Because the Court agrees that it indeed lacked subject matter jurisdiction over this action since the case's initial filing, defendants' motions to dismiss are granted.

I. BACKGROUND

    For the purpose of resolving defendants' motions to dismiss the SAC for lack of subject matter jurisdiction, a brief overview of the suit's allegations and procedural history will suffice. A comprehensive—perhaps fulsome—summary of the allegations in this action can be found in the Court's earlier decision. *Sonterra I*, 277 F. Supp. 3d at 537–43.

    In February 2015, Sonterra Capital Master Fund Ltd. ("Sonterra"), an investment fund, initiated this putative class action against multiple major banks, alleging manipulation and price-fixing of the CHF LIBOR and CHF LIBOR-based derivatives. Sonterra was a Cayman exempted company with its principal place of business in New York. (SAC ¶ 23; Compl. ¶ 24.)

In June 2015, Sonterra expanded its claims in a First Amended Complaint (FAC) against additional bank defendants. In the FAC, Sonterra was joined by other investment funds and financial services companies—the FrontPoint plaintiffs[1] and the Hunter plaintiffs[2]—as well as individual Frank Divitto. FrontPoint plaintiffs were five Delaware limited partnerships and two Cayman limited partnerships, all with their principal places of business in Connecticut. (SAC ¶¶ 25–31.) Hunter Plaintiffs were a Delaware limited partnership and four Cayman exempted companies, all with their principal places of business located in New York. (*Id.* ¶¶ 34–38.) In the FAC, Plaintiffs alleged that they suffered financially as a result of transacting in two types of Swiss franc LIBOR-based derivatives—Swiss franc currency futures contracts and Swiss franc FX forwards—at artificial prices allegedly caused by defendants' manipulation of CHF LIBOR. (FAC ¶¶ 20–27, 29–35, 37.)

In September 2017, the Court dismissed the FAC in this action for lack of constitutional standing (Count One) and for failing to state viable federal claims (Counts Two through Seven). *Sonterra I*, 277 F. Supp. 3d at 599. The Court declined to exercise its supplemental jurisdiction over the remaining state-law claims (Counts Eight and Nine). *Id.* at 599–600. Nevertheless, the Court signaled that plaintiffs were entitled to attempt to cure many of the identified deficiencies in a second amended filing. *Id.* at 599.

Plaintiffs seized this opportunity to re-plead, and plaintiffs—now joined by an additional individual—Richard Dennis—and a teachers' retirement fund—California State Teachers' Retirement System ("CalSTRS")—filed the SAC. That complaint repeated its claims for violations of antitrust law, the Commodity Exchange Act (CEA), and the Racketeer Influenced and Corrupt Organizations Act (RICO), as well as two alternative common law claims for unjust enrichment and breach of the implied covenant of good faith and fair dealing. It added, however, a new set of defendants: twelve interdealer brokers.[3] The SAC also incorporated new allegations, including chat messages and other documents given to plaintiffs as a result of their settlement with JPMorgan.

---

[1] FrontPoint European Fund, L.P., FrontPoint Financial Services Fund, L.P., FrontPoint Healthcare Flagship Enhanced Fund, L.P., FrontPoint Healthcare Flagship Fund, L.P., FrontPoint Healthcare Horizons Fund, L.P., FrontPoint Financial Horizons Fund, L.P., and FrontPoint Utility and Energy Fund, L.P. are referred to collectively as "FrontPoint plaintiffs." (SAC ¶ 32; FAC ¶ 28.)

[2] "Hunter plaintiffs" refers collectively, based on the most recent pleading, to Hunter Global Investors Fund I L.P., Hunter Global Investors Offshore Fund Ltd., Hunter Global Investors SRI Fund Ltd., HG Holdings Ltd., and HG Holdings II Ltd. (SAC ¶ 39.)

[3] Broker defendants include TP ICAP plc, Tullett Prebon Americas Corp., Tullett Prebon (USA) Inc., Tullett Prebon Financial Services LLC, Tullett Prebon (Europe) Limited, Cosmorex AG, ICAP Europe Limited, ICAP Securities USA LLC, NEX Group plc, Intercapital Capital Markets LLC, Gottex Brokers SA, and Velcor SA. (SAC ¶ 108.)

In addition, the SAC revealed for the very first time that the majority of plaintiffs do not exist. Sonterra, FrontPoint plaintiffs, and Hunter plaintiffs (collectively, "dissolved plaintiffs") allege that prior to winding up and dissolving, they assigned through Asset Purchase Agreements ("APAs") certain rights, title, and interests in assets and powers of attorney to Fund Liquidation Holdings, LLC ("FLH") in 2011 and 2012. (SAC ¶¶ 24, 33, 40.) Because of dissolved plaintiffs' purported lack of Article III standing, defendants now seek dismissal pursuant to Rule 12(b)(1) due to the absence of subject matter jurisdiction.[4]

## II. LEGAL STANDARD

Pursuant to Rule 12(b)(1), defendants challenge the Court's subject matter jurisdiction based on the plaintiffs' alleged lack of standing. Article III of the U.S. Constitution limits federal courts' jurisdiction to resolving "cases" and "controversies." U.S. Constitution, art. III, § 2; *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011). For an action to be deemed a case or controversy, plaintiffs must establish that they have standing to sue—a standard requiring that plaintiffs suffer an injury-in-fact that is fairly traceable to defendants' conduct and likely redressable by the court's ruling. *Cayuga Nation v. Tanner*, 824 F.3d 321, 331 (2d Cir. 2016); *Amidax*, 671 F.3d at 145. Standing "must exist at the commencement of the litigation." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 55 (2d Cir. 2016).

When evaluating a Rule 12(b)(1) motion to dismiss a complaint for lack of standing, the Court takes all uncontroverted facts in the complaint as true and draws all inferences in plaintiffs' favor. *Fountain v. Karim*, 838 F.3d 129, 134 (2d Cir. 2016); *Amidax*, 671 F.3d at 145. In doing so, the Court may consider evidence outside the pleadings to the extent jurisdictional facts—such as the assignment of claims—are in dispute. *Fountain*, 838 F.3d at 134; *Amidax Trading Grp.*, 671 F.3d at 145; *see Montefiore Med. Ctr. v. Local 272 Welfare Fund*, No. 14-CV-10229, 2015 WL 7970026, at *2 (S.D.N.Y. Oct. 19, 2015).

## III. DISCUSSION

Defendants argue that dissolved plaintiffs lack both Article III standing and capacity to sue. The APAs, according to defendants, did not effectively transfer interests in this litigation's claims to FLH, the real party in interest. Regardless of whether the assignments were effective, defendants urge, Sonterra's lack of Article III standing when it initially filed suit rendered this action a legal nullity *ab initio*. Plaintiffs offer opposing arguments at every step of defendants' analysis. While the Court does not opine on the validity of the assignments or plaintiffs' capacity to sue, the Court concurs that the

---

[4] Because the Court concludes that it lacks jurisdiction to adjudicate this matter pursuant to Rule 12(b)(1), it need not consider defendants' arguments for dismissal pursuant Rule 12(b)(6) for lack of capacity and failure to state claims, or for dismissal pursuant to Rule 12(b)(2) and (b)(3) for lack of personal jurisdiction and venue.

original plaintiffs' lack of constitutional standing constitutes a jurisdictional defect that procedural devices cannot cure.

### A. As Nonexistent Entities that Purportedly Assigned Away Their Interests in this Litigation, Dissolved Plaintiffs Lack Article III Standing.

To have Article III standing, each plaintiff must have suffered a concrete and particularized, actual or imminent injury-in-fact that would likely be redressed by the relief requested. *Cayuga Nation*, 824 F.3d at 331; *Sonterra I*, 277 F. Supp. 3d at 544. Initially, this Court determined that plaintiffs had adequately pled standing with regard to the purported CHF LIBOR manipulation. *Id.* at 546–48. But that conclusion was reached on the premise that Sonterra, FrontPoint plaintiffs, and Hunter plaintiffs were live entities that retained their interests in this litigation.

Dissolved plaintiffs now reveal in the SAC that they assigned all relevant interests and rights to FLH. (SAC ¶¶ 24, 33, 40.) Such dissolutions following assignments of rights "extinguished [their] claims against [defendants] and deprived [them] of any interest in this litigation"—resulting in a lack of redressable injury to support their Article III standing. *Valdin Invs. Corp. v. Oxbridge Capital Mgmt., LLC*, 651 F. App'x 5, 7 (2d Cir. 2016); *accord Zurich Am. Ins. Co. v. Wausau Bus. Ins. Co.*, No. 16-CV-3643, 2018 WL 4684112, at *5 (S.D.N.Y. Sept. 28, 2018) ("[A]ssignment of the rights to a claim deprives the assignor of standing to bring any such claim."). *But see LBBW Luxemburg S.A. v. Wells Fargo Secs., LLC*, 744 F. App'x 710, 714 n.3 (2d Cir. 2018) (stating without analysis that a business entity had standing post-merger). In parallel litigation, another court of this district similarly found that Sonterra and some of the same FrontPoint plaintiffs lacked "standing to sue," even assuming the action's claims were completely assigned as alleged, "because they no longer ha[d] an interest in the litigation." *Dennis v. JPMorgan Chase & Co.*, 342 F. Supp. 3d 404, 409 & n.6 (S.D.N.Y. 2018) ("*BBSW Capacity*").

Dissolved plaintiffs' response does not focus on refuting the accusation that they lost, pre-suit, their potential to have standing. Rather, dissolved plaintiffs maintain that FLH had sued in their names in the original, first amended, and second amended complaints. (*See, e.g.*, Doc. #327 at 6 ("This action was not commenced by Sonterra, but rather by FLH in Sonterra's name."); Doc. #355 at 1 ("FLH . . . commenced this action on February 5, 2015 in Sonterra's name . . . .").) Such a qualification may be a crucial life raft for plaintiffs' case, because an assignee may have standing in its assignor's stead. *See Valdin*, 651 F. App'x at 7 ("It is possible, of course, that Valdin's assignee would have standing as the real party in interest."); *see also Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 285 (2008) ("Lawsuits by assignees . . . are 'cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process.'" (citation omitted)).

The SAC alleges that FLH had "the right, power, and authority" to sue in dissolved plaintiffs' names. (SAC ¶¶ 24, 33, 40.) Yet at no point in the complaint, FAC, or SAC do

4

plaintiffs give any indication that FLH is suing in the name of a dissolved entity. Each of those pleadings is bereft of any such statement. In fact, FLH is not even mentioned a single time in the first two pleadings. The original complaint and the FAC describe dissolved plaintiffs in the present tense, manifestly attempting to give the impression that they existed. *See Sonterra Capital Master Fund, Ltd. v. Barclays Bank PLC*, No. 15-CV-3538, 2019 WL 3858620, at *2 (S.D.N.Y. Aug. 16, 2019) ("*Sterling II*"). Moreover, plaintiffs attempt to have it both ways. If the APAs effectively assigned interests in the claims at issue, as plaintiffs contend, then FLH became the "real party in interest." Fed. R. Civ. P. 17(a)(1). As a result, it would have been "improper for FLH to file the case in [dissolved plaintiffs'] names." *BBSW Capacity*, 342 F. Supp. 3d at 414.

Plaintiffs' reliance on *QS Holdco Inc. v. Bank of America Corp.*, No. 18-cv-824, 2019 WL 3716443 (S.D.N.Y. Aug. 6, 2019), does not alter this analysis. In *QS Holdco*, the court noted that a full assignment of claims may deprive the assignor of its capacity, but not necessarily its standing, to bring suit. *Id.* at *2–*3. Because the assignment in that case impacted the plaintiff's capacity alone, the court's subject matter jurisdiction was never in doubt. *Id.* Yet plaintiffs elide an important distinction between *QS Holdco* and this action: while the plaintiff in that case assigned its claims away, it did not cease to exist like dissolved plaintiffs here, but rather the plaintiff was an operational entity. *See id.* at *1–*2. Furthermore, *Valdin*'s conclusion that the assignor plaintiff lacked standing was grounded in an Article III—not a capacity and prudential standing—analysis. *See* 651 F. App'x at 7 & n.5 (disallowing Rule 17(a)(3) substitution because of the dissolved plaintiff's lack of standing, without deciding whether the assignor "lacked the capacity to bring the instant motion"). *Contra QS Holdco*, 2019 WL 3716443, at *2–*3 (distinguishing between Article III standing on the one hand and prudential standing and capacity on the other).

In sum, the Court concludes that dissolved plaintiffs—not FLH—brought this action, and that they lack standing. Next, the Court considers whether FLH, as the assumed assignee, may be substituted into this action to pursue the claims deriving from dissolved plaintiffs' injuries.

### B. Substitution of FLH Is Constitutionally Impermissible Because Procedural Means Cannot Confer Jurisdiction Upon the Court.

The parties dispute whether dissolved plaintiffs completely assigned the claims asserted in the SAC to FLH. Such a transfer of ownership of the claims would be essential for FLH to have standing to bring suit in dissolved plaintiffs' stead. *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L.*, 790 F.3d 411, 418 (2d Cir. 2015) ("The defendants, for their part, do not dispute that an assignment of claims from the noteholders to Cortlandt would allow Cortlandt to 'stand in the place of the injured party' and satisfy constitutional standing requirements." (citation omitted)); *W.R. Huff Asset Mgmt. Co., LLC*

5

*v. Deloitte & Touche LLP*, 549 F.3d 100, 108 (2d Cir. 2008) ("[A]n assignment of claims transfers legal title or ownership of those claims and thus fulfills the constitutional requirement of an 'injury-in-fact.'"). Yet assuming *arguendo* that these claims were effectively assigned to FLH[5]—an assumption that is in considerable doubt[6]—FLH still may not be substituted into this action.

Pursuant to Federal Rule of Civil Procedure 17(a)(3), a court must give a reasonable opportunity to substitute the real party of interest into the litigation. "A Rule 17(a) substitution of plaintiffs should be liberally allowed" under three conditions: (1) "the change is merely formal and in no way alters the original complaint's factual allegations as to the events or the participants"; (2) there was no indication "that the attempted assignments were undertaken in bad faith or in an effort to deceive or prejudice the defendants"; and (3) there was no prejudice or unfairness to defendants. *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 20–21 (2d Cir. 1997); *accord Klein ex rel. Qlik Techs., Inc. v. Qlik Techs., Inc.*, 906 F.3d 215, 218 (2d Cir. 2018); *Cortlandt*, 790 F.3d at 422. Again, assuming these three conditions are satisfied—another assumption in question[7]—FLH may not be substituted into an action over which the Court had, and continues to presently have, no constitutional authority to adjudicate.

A plaintiff's Article III standing must be secure at the outset of litigation to confer jurisdiction on a federal court. *Carter*, 822 F.3d at 55. Where a court lacks jurisdiction over an action at any stage in the litigation, the case must be dismissed. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *see Altman v. Bedford Cent. Sch. Dist.*, 245 F.3d 49, 69 (2d Cir. 2001). The Federal Rules of Civil Procedure are powerless in such circumstances to confer jurisdiction where none exists. *See Disability Advocates, Inc. v. N.Y. Coal. for Quality Assisted Living, Inc.*, 675 F.3d 149, 160 (2d Cir. 2012) ("The Federal Rules of Civil Procedure 'do not extend or limit the jurisdiction of the district courts.' Fed. R. Civ. P. 82."). Specifically, "Rule 17(a) cannot be construed to extend subject matter jurisdiction." *Lunney v. United States*, 319 F.3d 550, 556–57 (2d Cir. 2003) (dismissing the case for lack of subject matter jurisdiction, rather than remanding for substitution under Rule 17(a), where plaintiff's "standing [wa]s dubious"); *accord Kinra v. Chi. Bridge & Iron Co.*, No. 17 Civ. 4251, 2018 WL 2371030, at *4 (S.D.N.Y. May 24, 2018) ("It seems self-evident that Rule 17, a

---

[5] *See BBSW Capacity*, 342 F. Supp. 3d at 409, 414 (assuming, without deciding, that Sonterra and FrontPoint plaintiffs completely assigned the case's claims to FLH).

[6] *See Fund Liquidation Holdings LLC v. Citibank, N.A.*, No. 16 Civ. 5263, 2019 WL 3388172, at *4–*5 (S.D.N.Y. July 26, 2019) ("*SIBOR III*") (holding that the same FrontPoint APA did not effect an assignment of claims to FLH); *Sterling II*, 2019 WL 3858620, at *4–*6 (same).

[7] *See BBSW Capacity*, 342 F. Supp. 3d at 417 (holding that allowing FLH to join the lawsuit would constitute more than the merely formal change allowed under Rule 17).

procedural rule, cannot resurrect a lawsuit that a court had no constitutional power to adjudicate at the outset."). Where no plaintiff had standing at a lawsuit's filing, it was "a nullity, and there was therefore no lawsuit pending for the real party in interest to 'ratify, join, or be substituted into' under Rule 17(a)(3) or otherwise." *Cortlandt*, 790 F.3d at 423 (describing the affirmed reasoning of the district court).[8]

Courts' general rule of thumb has been to allow Rule 17 substitution "to cure a standing defect when . . . at least one party to the suit had standing to assert at least one claim." *Tech-Sonic, Inc. v. Sonics & Materials, Inc.*, No. 3:12-cv-01376, 2016 WL 3962767, at *12 (D. Conn. July 21, 2016); *accord Clarex Ltd. v. Natixis Secs. Am. LLC*, No. 12 Civ. 0722, 2012 WL 4849146, at *8 (S.D.N.Y. Oct. 12, 2012) (where plaintiffs lacked standing on "*any* claim," the court lacked "jurisdiction to grant a request to substitute the real party in interest . . . under Rule 17(a)(3)"). In such a case, following substitution, "the action proceeds as if it had been originally commenced by the real party in interest." Fed. R. Civ. P. 17(a)(3); *Advanced Magnetics*, 106 F.3d at 21. However, where no plaintiff has standing on even a single claim, there is "no case or controversy" before the Court for it to even have "jurisdiction to entertain a motion under Rule 17." *Tech-Sonic*, 2016 WL 3962767, at *13. *But see Digizip.com, Inc. v. Verizon Servs. Corp.*, 139 F. Supp. 3d 670, 678 (S.D.N.Y. 2015). For example, the Second Circuit in *Valdin* disallowed a Rule 17(a) motion where the sole plaintiff at filing had lacked standing on all its claims. 651 F. App'x at 7. Similarly, in *DeKalb County Pension Fund v. Transocean Ltd.*, the Court of Appeals noted that lead-plaintiff's Rule 17 motion could not "relate back" to another plaintiff's earlier complaint because that party had lacked standing to assert its own claims. 817 F.3d 393, 412–13 (2d Cir. 2016). Consistent with this reasoning, in *BBSW Capacity*, the case-or-controversy requirement did not present a bar to allowing substitution because the lawsuit was also brought by an individual (Dennis) who had standing to sue. 342 F. Supp. 3d at 416. Conversely, in this action, only Sonterra filed the initial complaint in February 2015.

Thus, at the start of this litigation, *no* plaintiff had Article III standing and therefore this Court is unable to exercise its adjudicatory authority. Accordingly, FLH cannot now invoke Rule 17 to "confer jurisdiction where it did not originally exist." *See SIBOR III*, 2019 WL 3388172, at *6.

Furthermore, contrary to plaintiffs' assertions, the Court could not have gained subject matter jurisdiction when Divitto—and later Dennis and CalSTRS—joined the suit. Those plaintiffs—two natural persons and a live entity—would have Article III standing

---

[8] Although *Cortlandt* at the time declined to formally resolve the "question whether a plaintiff may use Rule 17(a)(3) to remedy a standing deficiency when it lacks standing as to *all* of its claims," 790 F.3d at 423, that sidestep has not been the U.S. Court of Appeals for the Second Circuit's last word on the issue. More recently, the Court of Appeals has approvingly cited *Cortlandt*'s discussion of the inapplicability of substitution under Rule 17(a)(3) where there exists no justiciable lawsuit. *Klein*, 906 F.3d at 227 n.7.

7

to maintain this action had they originally sued. Fatally for plaintiffs, however, they only joined the action by means of a procedural mechanism: amended complaints. *See* Fed. R. Civ. P. 15. Just as Rule 17, one procedural rule, cannot "resurrect" litigation, neither can its brethren Rule 15. *See Disability Advocates*, 675 F.3d at 160; *Kinra*, 2018 WL 2371030, at *4; *see also D.J. through O.W. v. Conn. State Bd. of Educ.*, No. 3:16-cv-01197, 2019 WL 1499377, at *2 (D. Conn. Apr. 5, 2019) ("If Plaintiff is without standing, then amendment to a pleading will not be allowed, as a plaintiff 'may not create jurisdiction by amendment when none exists.'" (citation omitted)); *Sharehold Representative Servs. LLC v. Sandoz Inc.*, No. 12 Civ. 6154, 2013 WL 4015901, at *7–*8 (S.D.N.Y. Aug. 7, 2013) (rejecting the suggestion that Rule 15 or 17 could be used to cure any standing defects in existence when a suit was filed). *But see Haddad Bros. Inc. v. Little Things Mean A Lot, Inc.*, No. 00Civ.0578, 2000 WL 1099866, at *9 (S.D.N.Y. Aug. 4, 2000).

In conclusion, because Sonterra wound up and dissolved—and was not in existence—when it brought this action in 2015, this suit was, and remains, a legal nullity. No amendment or substitution can cure this threshold jurisdictional defect, and thus dismissal is mandatory.

### C. A New Complaint Filed by Plaintiffs Would Be Time-Barred.

With this action dismissed for lack of subject matter jurisdiction, the Court need not reach the many alternative avenues for dismissal set forth by defendants. An important observation, however, is that any putative class action newly filed by Divitto, Dennis, CalSTRS, or FLH would be futile on timeliness grounds.[9] The relation back doctrine would be unavailable to any new action since this litigation was dismissed as a legal nullity. *See SIBOR III*, 2019 WL 3388172, at *6 (noting that a complaint brought by a proper assignee "would be a new filing, not capable of relating back in time to Frontpoint's and Sonterra's filing"); *cf. Aponte v. Liggett Grp.*, No. 13 Civ. 569, 2014 WL 1087977, at *1 (S.D.N.Y. Mar. 18, 2014). And the statutes of limitations for all claims in the SAC have long-since expired.[10]

---

[9] Courts may dismiss plainly untimely complaints at the pleadings stage. *See Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 798 n.12 (2d Cir. 2014); *7 W. 57th St. Realty Co., LLC v. Citigroup, Inc.*, 314 F. Supp. 3d 497, 517 (S.D.N.Y. 2018), *aff'd*, 771 F. App'x 498 (2d Cir. 2019); *Sonterra I*, 277 F. Supp. 3d at 566.

[10] The statutes of limitations for plaintiffs' federal claims are four years for the antitrust and RICO counts and two years for the CEA counts. 15 U.S.C. § 15b; 7 U.S.C. § 25(c); *Levy v. BASF Metals Ltd.*, 917 F.3d 106, 108 (2d Cir. 2019); *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 361 (2d Cir. 2013); *Sonterra I*, 277 F. Supp. 3d at 566, 575, 583. Assuming a new complaint properly pleads a conspiracy, the Class Period allegedly ended on December 31, 2011. (SAC ¶¶ 529, 533.) Even with the benefit of tolling pursuant to the doctrine of fraudulent concealment, plaintiffs were on notice of their antitrust and RICO claims by December 18, 2012, and their CEA claims by February 6, 2013. *Sonterra I*, 277 F. Supp. 3d at 568, 576 n.29, 583. Thus, any complaint filed in 2019 or beyond would be time-barred. Because no federal claim would have been timely

8

It is worth noting that a new filing may not be saved by *American Pipe* tolling. Pursuant to the rule first announced in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), "the timely filing of a class action tolls the applicable statute of limitations for all persons encompassed by the class complaint." *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1804 (2018).

Contrary to defendants' position, the reason for *American Pipe*'s inapplicability does not stem from the Supreme Court's recent decision in *China Agritech*. That decision held that "*American Pipe* does not permit the maintenance of a follow-on class action past expiration of the statute of limitations" — specifically "[u]pon denial of class certification." *Id.* Defendants loosely read this decision to preclude all *American Pipe* tolling where a putative class action was dismissed, even if the dismissal occurred prior to a court rendering a class certification decision. Yet courts in this district have more faithfully understood *China Agritech* to "only appl[y] when class action status previously ha[d] been denied." *Betances v. Fischer*, No. 11-cv-3200, 2019 WL 1213146, at *6 (S.D.N.Y. Feb. 21, 2019); *see also Hart v. BHH, LLC*, No. 15cv4804, 2018 WL 5729294, at *2 (S.D.N.Y. Nov. 2, 2018) ("The linchpin of the *China Agritech* decision was that plaintiffs there brought the action *after* the denial of class certification in the prior action.").

Rather, plaintiffs' claims were not tolled during the pendency of this action because it has been a legal nullity. The Court recognizes that there exists "a split in this District" on the question whether *American Pipe* tolling may apply to claims where the original putative class plaintiff was dismissed for lack of standing.[11] *Pac. Life Ins.*, 2018 WL 1382105, at *8; *Leber v. Citigroup 401(K) Plan Inv. Comm.*, 129 F. Supp. 3d 4, 22 n.8 (S.D.N.Y. 2015); *Police & Fire Ret. Sys. of City of Detroit*, 2014 WL 1257782, at *8; *Direxion Shares ETF Trust*, 279 F.R.D. at 237 n.9. And the Second Circuit has yet to "directly address[] or decide[]" this question. *Monroe Cty. Emps.' Ret. Sys.*, 980 F. Supp. 2d at 488–89; *accord Lighthouse Fin. Grp. v. Royal Bank of Scotland Grp., PLC*, 902 F. Supp. 2d 329, 348 n.14 (S.D.N.Y. 2012).

The courts that have applied *American Pipe* tolling to circumstances such as this one — where the original putative class action is dismissed for lack of standing — rely heavily on

---

filed, supplemental jurisdiction over plaintiffs' (likely also untimely) common law claims would be relinquished.

[11] *Compare Pac. Life Ins. Co. v. Bank of N.Y. Mellon*, No. 17 Civ. 1388, 2018 WL 1382105, at *8 (S.D.N.Y. Mar. 16, 2018) (tolling under *American Pipe*); *Police & Fire Ret. Sys. of City of Detroit v. Goldman, Sachs & Co.*, No. 10 Civ. 4429, 2014 WL 1257782, at *8 (S.D.N.Y. Mar. 27, 2014) (same); *Monroe Cty. Emps.' Ret. Sys. v. YPF Sociedad Anonima*, 980 F. Supp. 2d 487, 489–90 (S.D.N.Y. 2013) (same), *with In re Puda Coal Secs. Inc. Litig.*, No. 11 Civ. 2598, 2013 WL 5493007, at *13–*15 (S.D.N.Y. Oct. 1, 2013) (not tolling); *In re Direxion Shares ETF Trust*, 279 F.R.D. 221, 237–38 (S.D.N.Y. 2012) (same); *N.J. Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*, No. 08 Civ. 5653, 2010 WL 6508190, at *2 & n.1 (S.D.N.Y. Dec. 15, 2010) (same).

*American Pipe's* efficiency concern: that without tolling, would-be class members would file a multiplicity of protective filings if tasked with investigating the sufficiency of putative class representatives. *See, e.g., Pac. Life Ins.*, 2018 WL 1382105, at *8; *Monroe Cty. Emps.' Ret. Sys.*, 980 F. Supp. 2d at 490. These courts have determined that "the better policy is to allow tolling where the original plaintiff lacked standing, unless the procedural defect was so clear that no reasonable plaintiff could have relied on the class representative under the circumstances." *Id.*

Yet, allowing tolling would incentivize plaintiffs to "effectively hold their place in line by initiating lawsuits in disregard" of standing requirements. *Puda Coal*, 2013 WL 5493007, at *15; *see also N.J. Carpenters Health Fund*, 2010 WL 6508190, at *2 n.1. A hesitance to create such perverse incentives outweighs any competing policy concerns here, where plaintiffs knew—and perhaps purposely concealed—that most of the named entities ceased to exist. *See Sterling II*, 2019 WL 3858620, at *2 (describing how defendants first contacted plaintiffs about perceived "inaccuracies" in the amended complaint regarding FrontPoint and Sonterra's existence). At the very least, the parties involved here—FLH, Divitto, Dennis, and CalSTRS—would not be able to claim that they reasonably relied on Sonterra, FrontPoint plaintiffs, and Hunter plaintiffs to serve as class representatives when their co-plaintiffs did not exist all along. *Cf. Direxion Shares ETF Trust*, 279 F.R.D. at 237 (rejecting the suggestion that the Supreme Court would have "intended the rule of tolling to allow" the insertion of jurisdiction where intervenors were on notice that their interests were not being protected). These plaintiffs may not benefit from Sonterra's placeholder litigation when they could have filed their own actions at any time. *See Testa v. Becker*, 910 F.3d 677, 684 (2d Cir. 2018) ("Litigants may benefit from equitable tolling only if they were 'diligent in pursuit of their claims.'" (citing *China Agritech*, 138 S. Ct. at 1808)).

As *SIBOR III* noted, *American Pipe* tolling cannot be employed to "revive an otherwise infirm action." 2019 WL 3388172, at *7; *cf. Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 111 n.21 (2d Cir. 2013) ("Where the named plaintiff's claim is one over which 'federal jurisdiction never attached,' there can be no class action." (citation omitted)). Where there has been no class action over which a court has jurisdiction, there are no claims that can be tolled. *See N.J. Carpenters Health Fund*, 2010 WL 6508190, at *2 ("[W]here a Plaintiff lacks standing—there is no case. And if there is no case, there can be no tolling." (citations omitted)). Therefore, a refiling of these same claims would be futile on timeliness grounds.

## IV. CONCLUSION

Because Sonterra did not exist at the time of the original complaint's filing, Sonterra lacked Article III standing to initiate this litigation. Thus, the Court has never had subject matter jurisdiction over this action—a legal nullity. Even assuming dissolved plaintiffs

had properly assigned the claims in this suit to FLH, the invocation of the procedural mechanisms of amendments and substitutions may not generate jurisdiction from nothing. The Court grants defendants' motions to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.

Dated: New York, New York
       September 16, 2019

SO ORDERED:

_____
Sidney H. Stein, U.S.D.J.