**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SONTERRA CAPITAL MASTER FUND LTD., FRONTPOINT EUROPEAN FUND, L.P., FRONTPOINT FINANCIAL SERVICES FUND, L.P., FRONTPOINT HEALTHCARE FLAGSHIP ENHANCED FUND, L.P., FRONTPOINT HEALTHCARE FLAGSHIP FUND, L.P., FRONTPOINT HEALTHCARE HORIZONS FUND, L.P., FRONTPOINT FINANCIAL HORIZONS FUND, L.P., FRONTPOINT UTILITY AND ENERGY FUND L.P., HUNTER GLOBAL INVESTORS FUND I, L.P., HUNTER GLOBAL INVESTORS OFFSHORE FUND LTD., HUNTER GLOBAL INVESTORS SRI FUND LTD., HG HOLDINGS LTD., HG HOLDINGS II LTD., FRANK DIVITTO, RICHARD DENNIS, and the CALIFORNIA STATE TEACHERS' RETIREMENT SYSTEM on behalf of themselves and all others similarly situated, | Docket No. 15-cv-00871 (SHS) |
| Plaintiffs, | |
| - against - | |
| CREDIT SUISSE GROUP AG, CREDIT SUISSE AG, JPMORGAN CHASE & CO., THE ROYAL BANK OF SCOTLAND PLC, UBS AG, DEUTSCHE BANK AG, DB GROUP SERVICES UK LIMITED, TP ICAP PLC, TULLETT PREBON AMERICAS CORP., TULLETT PREBON (USA) INC., TULLETT PREBON FINANCIAL SERVICES LLC, TULLETT PREBON (EUROPE) LIMITED, COSMOREX AG, ICAP EUROPE LIMITED, ICAP SECURITIES USA LLC, NEX GROUP PLC, INTERCAPITAL CAPITAL MARKETS LLC, GOTTEX BROKERS SA, VELCOR SA AND JOHN DOE NOS. 1-50, | |
| Defendants. | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT WITH DEFENDANTS CREDIT
SUISSE GROUP AG AND CREDIT SUISSE AG, SCHEDULING HEARING FOR
FINAL APPROVAL THEREOF, AND APPROVAL OF THE PROPOSED FORM AND
PROGRAM OF NOTICE TO THE SETTLEMENT CLASS**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ..........................................................................................................ii

INTRODUCTION ....................................................................................................................... 1

OVERVIEW OF THE SETTLEMENT ....................................................................................... 3

I.     THE SETTLEMENT IS LIKELY TO BE APPROVED UNDER RULE 23(e)(2)............. 4

   A.   The Preliminary Approval Standard ................................................................. 4

   B.   The Settlement is Procedurally Fair ................................................................. 5

      1.   The Class Has Been Adequately Represented ................................................. 5

      2.   The Settlement is the Product of Arm's Length Negotiations ........................ 6

   C.   The Settlement is Substantively Fair ............................................................... 6

      1.   The Substantial Relief Provided by the Settlement and the Complexity, Costs, Risks, and Delay of Trial and Appeal Favor the Settlement ....................................................... 8

      2.   The *Grinnell* Factors Not Addressed Above Also Support Approval............................. 8

      3.   The Distribution Plan Satisfies Rule 23(e)(2)(c)(ii) ........................................ 9

      4.   The Requested Attorneys' Fees and Other Awards are Limited to Ensure that the Settlement Class Receives Adequate Relief ...................................... 9

      5.   There Are No Agreements That Impact the Adequacy of the Settlement ..................... 10

      6.   The Settlement Treats the Settlement Class Equitably ................................. 11

II.    THE COURT SHOULD CONDITIONALLY CERTIFY THE PROPOSED CLASS ..... 11

III.   THE COURT SHOULD APPROVE THE PROPOSED CLASS NOTICE PLAN AND EPIQ AS SETTLEMENT ADMINISTRATOR ........................................................ 11

IV.   THE COURT SHOULD APPOINT CITIBANK, N.A. AS ESCROW AGENT ............. 12

V.    PROPOSED SCHEDULE OF EVENTS ........................................................................ 13

CONCLUSION .......................................................................................................................... 13

APPENDIX A............................................................................................................................. 14

# TABLE OF AUTHORITIES

**Cases**

*Beckman v. KeyBank, N.A.*,
   293 F.R.D. 467 (S.D.N.Y. 2013) ................................................................................ 4

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) ................................................................................... 7

*Dial Corp. v. News Corp.*,
   317 F.R.D. 426 (S.D.N.Y. 2016) ............................................................................ 10

*Guerrero v. Wells Fargo Bank, N.A.*,
   No. C 12-04026 WHA, 2014 WL 1365462 (N.D. Cal. Apr. 7, 2014) .......................... 6

*In re "Agent Orange" Prod. Liab. Litig.*,
   597 F. Supp. 740 (E.D.N.Y. 1984) ........................................................................... 8

*In re "Agent Orange" Prod. Liab. Litig.*,
   818 F.2d 216 (2d Cir. 1987) .................................................................................. 9

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
   No. 06-md-1775 (JG)(VVP), 2009 WL 3077396 (E.D.N.Y. Sept. 25, 2009) ................ 6

*In re Amaranth Nat. Gas Commodities Litig.*,
   No. 07-CV-6377 (SAS), 2012 WL 2149094 (S.D.N.Y. June 11, 2012) ....................... 9

*In re Austrian and German Bank Holocaust Litig.*,
   80 F. Supp. 2d 164 (S.D.N.Y. 2000) ........................................................................ 5

*In re Bisys Sec. Litig.*,
   No. 04-CV-3840 (JSR), 2007 WL 2049726 (S.D.N.Y. July 16, 2007) ........................ 9

*In re Currency Conversion Fee Antitrust Litig.*,
   264 F.R.D. 100 (S.D.N.Y. 2010) ............................................................................. 5

*In re GSE Bonds Antitrust Litig.*,
   414 F. Supp. 3d 686 (S.D.N.Y. 2019) ....................................................................... 5

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
   176 F.R.D. 99 (S.D.N.Y. 1997) ............................................................................... 7

*In re PaineWebber Ltd. P's ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997) ............................................................................. 9

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   330 F.R.D. 11 (E.D.N.Y. 2019) ........................................................................ 4, 5, 7

*In re Platinum & Palladium Commodities Litig.*,
   No. 10-cv-3617, 2014 WL 3500655 (S.D.N.Y. July 15, 2014) ..................................................... 4

*In re Stock Exchanges Options Trading Antitrust Litig.*,
   No. 99 Civ. 0962, 2005 WL 1635158 (S.D.N.Y. July 8, 2005) ..................................................... 4

*Meredith Corp. v. SESAC, LLC,*
   87 F. Supp. 3d 650 (S.D.N.Y. 2015) ........................................................................................... 10

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
   339 U.S. 306 (1950) ..................................................................................................................... 12

*Soberal-Perez v. Heckler*,
   717 F.2d 36 (2d Cir. 1983) ........................................................................................................... 11

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005) ................................................................................................. 4, 5, 11

*Weigner v. City of New York*,
   852 F.2d 646 (2d Cir. 1988) ......................................................................................................... 11

## Other Authorities

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.631 (2004) ..................................................... 10

Theodore Eisenberg, Geoffrey Miller & Roy Germano, *Attorneys' Fees* in Class Actions: 2009-
   2013, 92 N.Y.U. L. REV. 937 (2017) ........................................................................................... 10

## Rules

FED. R. CIV. P. 23(e)(1) ........................................................................................................................ 4

FED. R. CIV. P. 23(e)(2) ................................................................................................................. 5, 6, 7

## INTRODUCTION

Representative Plaintiffs[1] move under FED. R. CIV. P. 23 for preliminary approval of the proposed $13,750,000 settlement ("Settlement") with Credit Suisse Group AG and Credit Suisse AG (collectively, "Credit Suisse").[2] This Court previously preliminarily approved Plaintiffs' $22,000,000 Settlement with JPMorgan Chase & Co. (ECF No. 159) (the "JPMorgan Settlement"). Two other settlements were recently proposed for preliminary approval in the motion filed on June 29, 2022 (the "June 29 Motion").[3] If finally approved, the four Settlements will recover a total of $69,750,000 for the Settlement Class.

As discussed below and for the same reasons detailed in Representative Plaintiffs' brief in support of their June 29 Motion (ECF No. 383) (the "June 29 Brief"), the Credit Suisse Settlement fully satisfies the requirements for preliminary approval. First, the Settlement is procedurally fair, as Representative Plaintiffs and Interim Lead Counsel are adequate representatives for the Settlement Class, and the Settlement resulted from hard-fought arm's length negotiations with Credit Suisse. The terms of the Settlement are similar to the JPMorgan Settlement and are substantively fair, providing considerable relief to eligible Class Members.

As described herein and in the June 29 Motion, the Court may conditionally certify the proposed Settlement Class under Rule 23(a) and (b)(3), which is the same Settlement Class the

---

[1] Representative Plaintiffs are California State Teachers' Retirement System, Frank Divitto, Richard Dennis, and Fund Liquidation Holdings LLC. Unless noted, ECF citations are to the docket in this Action and internal citations and quotation marks are omitted. Interim Lead Counsel have been informed by Mr. Divitto's attorneys that he has passed away. Interim Lead Counsel anticipate making an appropriate application with respect to Mr. Divitto's representative status as soon as it is practicable.

[2] Attached as Exhibit 1 to the Declaration of Vincent Briganti dated July 13, 2022 ("Briganti Decl.") are the Stipulation and Agreement of Settlement as to Credit Suisse dated July 13, 2022 (the "Settlement Agreement"). Unless otherwise defined, capitalized terms in this memorandum of law have the same meaning as in the Settlement Agreement.

[3] See ECF Nos. 382-87. The June 29 Motion sought (1) preliminary approval of the class settlements with (a) NatWest Markets Plc (f/k/a The Royal Bank of Scotland plc) ("RBS"), and (b) Deutsche Bank AG and DB Group Services (UK) Ltd. (together, "Deutsche Bank"), and (2) the scheduling hearing for final approval of the settlements with RBS, Deutsche Bank, and JPMorgan (hereinafter, the "Prior Settlements").

Court preliminarily approved in connection with the JPMorgan Settlement.  In addition, the robust notice program described in the June 29 Motion will be used to also provide notice to the Settlement Class of the Credit Suisse Settlement.  The long form and short form notices attached to the Briganti Decl. will advise Class Members of this Settlement and the Prior Settlements, and supersede the versions attached to the June 29 Motion.[4] The Court should therefore grant this motion and enter the order filed herewith (the "Preliminary Approval Order") that:

(a)  preliminarily approves Representative Plaintiffs' proposed Settlement with Credit Suisse, subject to later, final approval;

(b)  conditionally certifies a Settlement Class on the claims against Credit Suisse, subject to later, final approval of such Settlement Class;

(c)  preliminarily approves the proposed Distribution Plan in connection with this Settlement, *see* Declaration of Vincent Briganti dated June 29, 2022 (the "June 29 Briganti Decl.") Ex. 7 (ECF No. 384-7);

(d)  appoints Representative Plaintiffs as representatives of the Settlement Class;

(e)  appoints Lowey Dannenberg, P.C. ("Lowey") as Class Counsel;

(f)  appoints Citibank, N.A. ("Citibank") as the Escrow Agent for the Settlement;

(g)  appoints Epiq Class Action and Claims Solutions, Inc. ("Epiq") as Settlement Administrator for the Credit Suisse Settlement;

(h)  approves the proposed forms of Class Notice to the Settlement Class (Briganti Decl. Exs. 2-4) and the proposed Class Notice plan, *see* June 29 Briganti Decl., Ex. 3 (ECF No. 384-3);

(i)  sets a schedule leading to the Court's evaluation of whether to finally approve the Settlement, including the date, time, and place of the Fairness Hearing; and

(j)  stays all proceedings in the Action related to each Settling Defendant except those relating to approval of the respective Settlement.

---

[4] In connection with this motion, Representative Plaintiffs have also filed amended proposed preliminary approval orders for the Prior Settlements that reference the updated notice documents attached to the Briganti Decl.

## OVERVIEW OF THE SETTLEMENT[5]

The settlement negotiations with Credit Suisse took place over several months beginning in August 2021. Interim Lead Counsel engaged in lengthy negotiations with Credit Suisse's counsel over the material terms of the settlement, including the amount of the settlement consideration, the scope of the cooperation to be provided by Credit Suisse, the scope of the release, and the circumstances under which the Parties would have the right to terminate the settlement. After almost a year of discussions in which the parties exchanged competing views on liability and damages, Plaintiffs and Credit Suisse executed the Settlement Agreement on July 13, 2022.

As with the Prior Settlements, the proposed Settlement Class under the Settlement is defined as:

> All Persons (including both natural persons and entities) who purchased, sold, held, traded, or otherwise had any interest in Swiss Franc LIBOR-Based Derivatives during the period of January 1, 2001 through December 31, 2011 (the "Class Period"), provided that, if Representative Plaintiffs expand the Class in any subsequent amended complaint, class motion, or settlement, the defined Class in this Agreement shall be expanded so as to be coterminous with such expansion. Excluded from the Settlement Class are the Defendants and any parent, subsidiary, affiliate or agent of any Defendant or any co-conspirator whether or not named as a Defendant, and the United States Government.

Briganti Decl., Ex. 1 § 1(F); *see also* Order Preliminarily Approving Settlement with JPMorgan and Conditionally Certifying a Settlement Class, ECF No. 159; June 29 Briganti Decl., Ex. 1 § 1(E); Ex. 2 § 1(F).  In addition to the settlement payment, Credit Suisse will shortly provide Cooperation Materials that will advance the litigation against non-settling Defendants UBS and the Broker Defendants, identify potential Class Members, and (if necessary) further validate the Distribution Plan proposed by Representative Plaintiffs.  Briganti Decl., Ex. 1 § 5.  In exchange,

---

[5] The full procedural history of this Action is set forth in the June 29 Briganti Decl. ¶¶ 4-16.

the Settlement provides that the Releasing Parties will finally and forever release and discharge from and covenant not to sue the Released Parties for the Released Claims.  *Id.*, Ex. 1 § 13(A).

## **ARGUMENT**

## I.    THE SETTLEMENT IS LIKELY TO BE APPROVED UNDER RULE 23(e)(2)

### A.    The Preliminary Approval Standard

 "The compromise of complex litigation is encouraged by the courts and favored by public policy."  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005); *see Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 474-75 (S.D.N.Y. 2013) (courts encourage early settlements because they provide immediate relief and allow the reallocation of limited judicial resources).  As stated in the June 29 Brief, this Court is empowered to approve the Settlement because it has subject matter jurisdiction over this Action. *See* June 29 Brief at 5.

"Preliminary approval is generally the first step in a two-step process before a class action settlement is [finally] approved." *In re Stock Exchanges Options Trading Antitrust Litig.*, No. 99 Civ. 0962, 2005 WL 1635158, at *4 (S.D.N.Y. July 8, 2005).  The Court may preliminarily approve and direct notice of the proposed Settlement if it is likely that the Court, after a hearing, will find the Settlement satisfies FED. R. CIV. P. 23(e)(2) and the proposed Class may be certified. FED. R. CIV. P. 23(e)(1); *see In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019) ("*Payment Card*") (analyzing preliminary approval standard). The court considers both the "negotiating process leading up to the settlement, *i.e.*, procedural fairness, as well as the settlement's substantive terms, *i.e.*, substantive fairness." *In re Platinum & Palladium Commodities Litig.*, No. 10-cv-3617, 2014 WL 3500655, at *11 (S.D.N.Y. July 15, 2014).  The proposed Settlement meets this standard and should be preliminarily approved.

### B.       The Settlement is Procedurally Fair

The Settlement is entitled to a presumption of procedural fairness and adequacy. To assess procedural fairness, Rule 23(e)(2) requires the Court to find that "the class representatives and class counsel have adequately represented the class [and] the proposal was negotiated at arm's length." FED. R. CIV. P. 23(e)(2)(A)-(B). Where a settlement is the "product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation," the settlement enjoys a "presumption of fairness." *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000), *aff'd sub nom.*, *D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).

### 1.       The Class Has Been Adequately Represented

Adequate representation under Rule 23(e)(2)(A) (and 23(a)(4))[6] requires that the "interests . . . served by the Settlement [are] compatible with" those of settlement class members. *Wal-Mart Stores*, 396 F.3d at 110. This is met when the class representative's interests are not antagonistic to those of the class and their chosen counsel is qualified, experienced, and able to conduct the litigation. *See In re Currency Conversion Fee Antitrust Litig.*, 264 F.R.D. 100, 111-12 (S.D.N.Y. 2010); *Wal-Mart Stores*, 396 F.3d at 106-07 (adequate representation is established "by showing an alignment of interests between class members, not by proving vigorous pursuit of that claim.").

For the same reasons detailed in the June 29 Brief, Representative Plaintiffs' interests are aligned with those of the Settlement Class and Interim Lead Counsel's adequacy to serve as representatives of the Class is demonstrable. *See* June 29 Brief at 6-8.

---

[6] Courts analyze the adequacy of representation requirement of Rule 23(e)(2)(A) using the same considerations for representative adequacy under Rule 23(a)(4). *See Payment Card*, 330 F.R.D. at 30 n.25 ("This adequate representation factor [under Rule 23(e)(2)(A)] is nearly identical to the Rule 23(a)(4) prerequisite of adequate representation in the class certification context. As a result, the Court looks to Rule 23(a)(4) case law to guide its assessment of this factor."); *see also In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 701 (S.D.N.Y. 2019).

### 2.    The Settlement is the Product of Arm's Length Negotiations

Procedural fairness is presumed where a settlement is "the product of arm's length negotiations between experienced and able counsel on all sides." *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-md-1775 (JG)(VVP), 2009 WL 3077396, at *7 (E.D.N.Y. Sept. 25, 2009); *see also* FED. R. CIV. P. 23(e)(2)(B) (courts must consider whether settlement "was negotiated at arm's length"). That presumption applies here, as the Settlement was negotiated by knowledgeable counsel for Representative Plaintiffs and Credit Suisse, each represented by top law firms with extensive experience litigating antitrust class actions. *See* Briganti Decl. ¶¶ 22-23. Interim Lead Counsel spent many months in arm's length negotiations with Credit Suisse to reach agreement on the terms of the Settlement. Moreover, as described in Representative Plaintiffs' arguments set forth in the June 29 Brief, Interim Lead Counsel brought a wealth of knowledge and experience to bear to achieve this Settlement on behalf of the Settlement Class. *See* June 29 Brief at 8-10.

### C.    The Settlement is Substantively Fair

If the Settlement is finally approved, $13,750,000 will be recovered from Credit Suisse on behalf of the Settlement Class, and resulting in total recovery of $69,750,000 so far in this Action. As with the Prior Settlements, Representative Plaintiffs successfully negotiated with Credit Suisse that the Settlement Amount will **not** revert, regardless of how many Class Members submit proofs of claim. *See* Settlement Agreement § 4. Because claim rates typically fall below 100%, the non-reversion term in all four Settlements will enhance Authorized Claimants' recovery.[7]

The Settlement (together with the Prior Settlements) provides the Settlement Class one of the few (if not the only) means of obtaining any recovery for the alleged manipulation of Swiss Franc LIBOR-Based Derivatives. Under the Settlement Agreement, Credit Suisse will provide

---

[7] *See Guerrero v. Wells Fargo Bank, N.A.*, No. C 12-04026 WHA, 2014 WL 1365462, at *2 (N.D. Cal. Apr. 7, 2014) (finding the lack of reversion of remaining portions of the net settlement an important benefit to the class).

cooperation that can be used to facilitate the issuance of notice, further validate the Distribution Plan (should Interim Lead Counsel consider it necessary), and inform Representative Plaintiffs' litigation strategy to continue litigation against any non-settling Defendant.  In exchange, Credit Suisse will receive a release from claims based on the alleged manipulation of Swiss Franc LIBOR-Based Derivatives, and the Action will be dismissed with respect to Credit Suisse with prejudice.  These terms are substantively fair and easily fall within "the range of possible approval." *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("*NASDAQ II*").

Under Rule 23(e), the substantive fairness of a settlement is assessed by considering whether "the relief provided for the class is adequate," in light of "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under FED. R. CIV. P. 23 (e)(2)(C). The Court is also required to confirm that the Settlement "treats class members equitably relative to each other." FED. R. CIV. P. 23(e)(2)(D). In the Second Circuit, courts also consider the factors provided in *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974) ("*Grinnell*"), which overlap with the consideration of Rule 23(e)(2)(C)-(D). *See Payment Card*, 330 F.R.D. at 29. Both the Rule 23(e)(2)(C)-(D) and *Grinnell* factors support preliminary approval of the Settlement.[8]

---

[8] The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *See Grinnell*, 495 F.2d at 463.

1.      **The Substantial Relief Provided by the Settlement and the Complexity, Costs, Risks, and Delay of Trial and Appeal Favor the Settlement**

Representative Plaintiffs incorporate by reference their argument set forth in the June 29 Brief. *See* June 29 Brief at 11-14.

2.      **The *Grinnell* Factors Not Addressed Above Also Support Approval**

a.      **The reaction of the Settlement Class to the Settlement**

Representative Plaintiffs incorporate by reference their argument set forth in the June 29 Brief. *See* June 29 Brief at 14.

b.      **The stage of the proceedings**

Representative Plaintiffs incorporate by reference their argument set forth in the June 29 Brief. *See* June 29 Brief at 14-15.

c.      **The Ability of Settling Defendants to withstand greater judgment**

Representative Plaintiffs incorporate by reference their argument set forth in the June 29 Brief. *See* June 29 Brief at 15.

d.      **Reasonableness of the Settlement in Light of the Best Possible Recovery and Attendant Litigation Risks**

The reasonableness factor weighs the settlement relief against the case's strength, including the likelihood of recovery at trial.  This factor "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein,* 464 F.2d 689, 693 (2d Cir. 1972). Under this factor, "[d]ollar amounts are judged not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984).

The $13,750,000 settlement fund created by the Credit Suisse Settlement, when combined with the $34,000,000 from the Deutsche Bank and RBS Settlements and the $22,000,000 from the

JPMorgan Settlement, is an excellent recovery for the Settlement Class.  *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997)  (stating "'great weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation").  Representative Plaintiffs' experts analyzed publicly available data from Reuters, Bank for International Settlements ("BIS") Triennial Surveys, and the Federal Reserve Bank of New York's U.S. based market surveys to preliminarily assess the potential harm experience by the Settlement Class.   After considering various factors, including transaction volumes and outstanding notional amounts in Swiss Franc LIBOR-Based Derivatives, the class period, and the potential impact of the alleged manipulation, the experts calculated a damages range of between $869 million and $963 million.  Based on this, the Settlements recover between 7.2% and 8.0% of the estimated damages.

### 3.    The Distribution Plan Satisfies Rule 23(e)(2)(c)(ii)

Representative Plaintiffs incorporate by reference their argument set forth in the June 29 Brief. *See* June 29 Brief at 16-18.

### 4.    The Requested Attorneys' Fees and Other Awards are Limited to Ensure that the Settlement Class Receives Adequate Relief

Lead Counsel will limit their attorneys' fee request with respect to the Settlement and the Prior Settlements to no more than twenty-eight percent of the Settlement Amounts ($19.53 million), which may be paid upon final approval. Briganti Decl., Ex. 2, at 25; *see In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 216, 223 (2d Cir. 1987). This fee request is comparable to the fees awarded in other cases of similar size and complexity. *See, e.g., In re Amaranth Nat. Gas Commodities Litig.*, No. 07-CV-6377 (SAS), 2012 WL 2149094, at *2 (S.D.N.Y. June 11, 2012) (approving fee of 30% of the $77.1 million settlement amount);  *In re Bisys Sec. Litig.*, No. 04-CV-3840 (JSR), 2007 WL 2049726, at *2 (S.D.N.Y. July 16, 2007)  (approving fee of 30% of a

$65.87 million settlement fund); *see also* Theodore Eisenberg, Geoffrey Miller & Roy Germano, *Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. L. REV. 937, 950 tbl. 2 (2017) (finding the mean and median percentage fees in S.D.N.Y. class cases from 2009 to 2013 were 27% and 31%, respectively). In addition to attorneys' fees, Interim Lead Counsel will seek payment for litigation costs and expenses not to exceed $750,000 and Incentive Awards not to exceed a total of $300,000. *See Meredith Corp. v. SESAC, LLC,* 87 F. Supp. 3d 650, 671 (S.D.N.Y. 2015) (reasonable expenses may be reimbursed from the settlement); *Dial Corp. v. News Corp.*, 317 F.R.D. 426, 439 (S.D.N.Y. 2016) (class representatives may be awarded an incentive award for their efforts). Interim Lead Counsel will separately file their Fee and Expense Application seeking approval of the requested awards. That application and all supporting papers will be posted on a website (the "Settlement Website") promptly after filing for Class Members to review prior to the objection deadline.

### 5.     There Are No Agreements That Impact the Adequacy of the Settlement

Rule 23(e)(3) requires that "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal." Here, the Settlement Agreement sets forth all such terms or specifically identify all other agreements that relate to the Settlement (namely, the Supplemental Agreement). *See* Briganti Decl., ¶ 11; Ex. 1, § 24. The Supplemental Agreement provides Credit Suisse a qualified right to terminate the Settlement Agreement under certain circumstances before final approval. *Id.* This type of agreement is standard in complex class action settlements and does not impact the fairness of the Settlement.[9]

---

[9] These types of qualified rights to terminate are generally included based on the defendant's desire to quiet the litigation through a class-wide settlement, without leaving open any material exposure. *See, e.g., Laydon v. Mizuho Bank, Ltd.*, No. 12-cv-3419 (S.D.N.Y. June. 22, 2016), ECF No. 659 ¶¶ 10-11; *accord* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.631 (2004) (explaining that "[k]nowledge of the specific number of opt outs that will vitiate a settlement might encourage third parties to solicit class members to opt out.").

6.      **The Settlement Treats the Settlement Class Equitably**

Representative Plaintiffs incorporate by reference their argument set forth in the June 29

Brief. *See* June 29 Brief at 19-20.

## II.   THE COURT SHOULD CONDITIONALLY CERTIFY THE PROPOSED CLASS

The proposed Settlement Class to be certified for settlement purposes is:

> All Persons (including both natural persons and entities) who purchased, sold, held,
> traded, or otherwise had any interest in Swiss Franc LIBOR-Based Derivatives
> during the Class Period, provided that, if Representative Plaintiffs expand the Class
> in any subsequent amended complaint, class motion, or settlement, the defined
> Class in this Agreement shall be expanded so as to be coterminous with such
> expansion. Excluded from the Settlement Class are the Defendants and any parent,
> subsidiary, affiliate or agent of any Defendant or any co-conspirator whether or not
> named as a Defendant, and the United States Government.

This is the same Settlement Class proposed in connection with the Prior Settlements. The Court

previously found the proposed Settlement Class satisfies Rule 23(a) as well as Rule 23(b)(3), and

should again make the same determination here.[10] Representative Plaintiffs also incorporate by

reference their argument set forth in the June 29 Brief. *See* June 29 Brief at 20-24.

## III.   THE COURT SHOULD APPROVE THE PROPOSED CLASS NOTICE PLAN AND EPIQ AS SETTLEMENT ADMINISTRATOR

Due process and Rule 23 require that the Class receive adequate notice of the Settlement.

*Wal-Mart Stores*, 396 F.3d at 114. To be adequate, the method(s) used to issue notice must be

reasonable.  *See Soberal-Perez v. Heckler*, 717 F.2d 36, 43 (2d Cir. 1983); *Weigner v. City of New*

*York*, 852 F.2d 646, 649 (2d Cir. 1988) (due process only requires that counsel "acted reasonably

in selecting means likely to inform persons affected").

The proposed Class Notice plan (*see* June 29 Briganti Decl. Ex. 3) and forms of notice (*see*

---

[10] Credit Suisse consents to preliminary certification of the Settlement Class solely for the purpose of the
Settlement and without prejudice to any position they may take with respect to class certification in any other action
or in the event that the Settlement is terminated. Settlement Agreement § 3.

Briganti Decl. Exs. 2-4) are "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). The direct-mailing notice component will involve sending the Long-Form Notice (Briganti Decl. Ex. 2) and the Claim Form (*id.* Ex. 4) via First-Class Mail, postage prepaid to potential Class Members. *See* ECF No. 384-3 (Declaration of Cameron R. Azari, Esq. ("Anzari Decl.")). The Supreme Court has consistently found that mailed notice satisfies the requirements of due process. *See, e.g.*, *Mullane*, 339 U.S. at 319. The Settlement Administrator also will publish notice in various periodicals and publications, and through a digital media campaign. *See* Briganti Decl. Ex. 3. Class Members that do not receive the Class Notice via direct mail likely will receive notice via the publications or word of mouth. The Settlement Website, www.swissfranclibroclassactionsettlement.com, will serve as an information source regarding the Settlement. On the Settlement Website, Class Members can review and obtain: (i) a blank Proof of Claim and Release form for the Settlement; (ii) the Long-Form and Short-Form Notices; (iii) the proposed Distribution Plan; (iv) the Settlement Agreement; and (v) key pleadings and Court orders. The Settlement Administrator will also operate a toll-free telephone number to answer Class Members' questions and facilitate claims filing.

As with the Prior Settlements, Interim Lead Counsel recommend that Epiq be appointed as Settlement Administrator. Epiq developed the Class Notice plan in coordination with Interim Lead Counsel and has experience in administering class action settlements. *See* Anzari Decl.

## IV.    THE COURT SHOULD APPOINT CITIBANK, N.A. AS ESCROW AGENT

Interim Lead Counsel, with Settling Defendants' consent, have designated Citibank, N.A. to serve as Escrow Agent for the Settlement. Citibank has served as escrow agent in numerous

settlements,[11] and has agreed to provide its services at market rates.

## V.     PROPOSED SCHEDULE OF EVENTS

In Appendix A, Representative Plaintiffs propose a schedule for issuance of Class Notice, objection and opt-out opportunities for Settlement Class Members, and Representative Plaintiffs' motions for final approval, attorneys' fees, expense reimbursements, and Incentive Awards. This schedule is the same as the one in the June 29 Brief.  If the Court agrees, Representative Plaintiffs request that the Court schedule the Fairness Hearing for one hundred fifty-six (156) calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter. The remaining deadlines will be determined by reference to the date the Preliminary Approval Order is entered or the Fairness Hearing date.

### CONCLUSION

For the foregoing reasons, Representative Plaintiffs respectfully request that the Court grant this motion and enter the accompanying Preliminary Approval Orders.

Dated: July 13, 2022
White Plains, New York

**LOWEY DANNENBERG, P.C.**

By: /s/ Vincent Briganti
Vincent Briganti
Geoffrey M. Horn
44 South Broadway, Suite 1100
White Plains, New York 10601
Tel.: 914-997-0500
Fax: 914-997-0035
vbriganti@lowey.com
ghorn@lowey.com

*Interim Lead Counsel*

---

[11] *See, e.g., Boutchard v. Gandhi et al.*, No. 18-cv-7041 (N.D. Ill.); *Fund Liquidation Holdings LLC et al. v. Citibank, N.A. et al.*, No. 16-cv-5263 (AKH) (S.D.N.Y.).

**APPENDIX A**

| PROPOSED SCHEDULE OF SETTLEMENT EVENTS | |
|---|---|
| **Event** | **Timing** |
| Deadline to begin mailing of Class Notice to Class Members and post the Notice and Claim Form on the Settlement Website | 60 days after entry of the Preliminary Approval Order ("PAO") |
| Substantial completion of initial distribution of mailed notices | 100 days after entry of the PAO |
| Deadline for Representative Plaintiffs to file papers in support of final approval and application for fees and expenses | 42 days prior to the Fairness Hearing |
| Deadline for requesting exclusion and submitting objections | 28 days prior to the Fairness Hearing |
| Deadline for filing reply papers | 7 days prior to the Fairness Hearing |
| Fairness Hearing | 156 days after the PAO |
| Deadline for submitting Claim Forms | 30 days after the Fairness Hearing |