# EXHIBIT 1

**EXECUTION VERSION**

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FUND LIQUIDATION HOLDINGS LLC, as assignee and successor-in-interest to SONTERRA CAPITAL MASTER FUND LTD., FRONTPOINT EUROPEAN FUND, L.P., FRONTPOINT FINANCIAL SERVICES FUND, L.P., FRONTPOINT HEALTHCARE FLAGSHIP ENHANCED FUND, L.P., FRONTPOINT HEALTHCARE FLAGSHIP FUND, L.P., FRONTPOINT HEALTHCARE HORIZONS FUND, L.P., FRONTPOINT FINANCIAL HORIZONS FUND, L.P., FRONTPOINT UTILITY AND ENERGY FUND L.P., HUNTER GLOBAL INVESTORS FUND I, L.P., HUNTER GLOBAL INVESTORS OFFSHORE FUND LTD., HUNTER GLOBAL INVESTORS SRI FUND LTD., HG HOLDINGS LTD., HG HOLDINGS II LTD., RICHARD DENNIS, and the CALIFORNIA STATE TEACHERS' RETIREMENT SYSTEM on behalf of themselves and all others similarly situated, | Docket No. 15-cv-00871 (SHS) <br><br><br> **STIPULATION AND AGREEMENT OF SETTLEMENT AS TO DEFENDANTS NEX GROUP PLC, NEX INTERNATIONAL LIMITED (F/K/A ICAP PLC), ICAP CAPITAL MARKETS LLC (N/K/A INTERCAPITAL CAPITAL MARKETS LLC), ICAP SECURITIES USA LLC, AND ICAP EUROPE LIMITED** |
| Plaintiffs, | |
| - against - | |
| CREDIT SUISSE GROUP AG, CREDIT SUISSE AG, JPMORGAN CHASE & CO., NATWEST MARKETS PLC, UBS AG, DEUTSCHE BANK AG, DB GROUP SERVICES UK LIMITED, TP ICAP PLC, TULLETT PREBON AMERICAS CORP., TULLETT PREBON (USA) INC., TULLETT PREBON FINANCIAL SERVICES LLC, TULLETT PREBON (EUROPE) LIMITED, COSMOREX AG, ICAP EUROPE LIMITED, ICAP SECURITIES USA LLC, NEX GROUP LIMITED, INTERCAPITAL CAPITAL MARKETS LLC, GOTTEX BROKERS SA, VELCOR SA AND JOHN DOE NOS. 1-50, | |
| Defendants. | |

## TABLE OF CONTENTS

1.  TERMS USED IN THIS AGREEMENT ........................................................... 3

2.  NO ADMISSION OF LIABILITY .................................................................... 13

3.  SETTLEMENT CLASS ................................................................................... 13

4.  SETTLEMENT PAYMENT ............................................................................ 15

5.  COOPERATION ............................................................................................. 15

6.  PAYMENT OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND APPLICATION FOR INCENTIVE AWARD ................................................. 22

7.  APPLICATION FOR APPROVAL OF FEES, EXPENSES, AND COSTS OF SETTLEMENT FUND ADMINISTRATION ................................................... 24

8.  NO LIABILITY FOR FEES AND EXPENSES OF INTERIM LEAD COUNSEL ........ 24

9.  DISTRIBUTION OF AND/OR DISBURSEMENTS FROM SETTLEMENT FUND ... 24

10. DISBURSEMENTS PRIOR TO EFFECTIVE DATE .................................... 25

11. DISTRIBUTION OF BALANCES REMAINING IN NET SETTLEMENT FUND TO AUTHORIZED CLAIMANTS ...................................................................... 26

12. ADMINISTRATION/MAINTENANCE OF SETTLEMENT FUND ............................ 27

13. RELEASE AND COVENANT NOT TO SUE ............................................... 27

14. MOTION FOR PRELIMINARY APPROVAL .............................................. 30

15. CLASS NOTICE ............................................................................................ 30

16. PUBLICATION .............................................................................................. 31

17. MOTION FOR FINAL APPROVAL AND ENTRY OF FINAL JUDGMENT ............ 32

18. BEST EFFORTS TO EFFECTUATE THIS SETTLEMENT ......................... 34

19. EFFECTIVE DATE ........................................................................................ 34

20. OCCURRENCE OF EFFECTIVE DATE ...................................................... 35

21. FAILURE OF EFFECTIVE DATE TO OCCUR ........................................... 35

22. TERMINATION ............................................................................................. 35

23. EFFECT OF TERMINATION ........................................................................ 37

24. SUPPLEMENTAL AGREEMENT ................................................................ 38

25. CONFIDENTIALITY PROTECTION ........................................................... 39

26. BINDING EFFECT ........................................................................................ 40

27. INTEGRATED AGREEMENT ...................................................................... 40

28. NO CONFLICT INTENDED WITH HEADINGS ......................................... 41

29. NO PARTY IS THE DRAFTER .................................................................... 41

30.    CHOICE OF LAW ................................................................................................... 41

31.    EXECUTION IN COUNTERPARTS ..................................................................... 41

32.    CONTRIBUTION AND INDEMNIFICATION ..................................................... 41

33.    SUBMISSION TO AND RETENTION OF JURISDICTION ................................. 42

34.    RESERVATION OF RIGHTS ............................................................................... 42

35.    NOTICES ............................................................................................................... 43

36.    AUTHORITY ......................................................................................................... 43

37.    DISPUTES OR CONTROVERSIES ...................................................................... 43

38.    STAY ...................................................................................................................... 45

## STIPULATION AND AGREEMENT OF SETTLEMENT

THIS STIPULATION AND AGREEMENT OF SETTLEMENT (the **"Settlement Agreement"**) is made and entered into on March 13, 2023.  This Settlement Agreement is entered into on behalf of California State Teachers' Retirement System, Richard Dennis, Fund Liquidation Holdings LLC, and any subsequently named plaintiff(s) (collectively, the "Representative Plaintiffs"), for themselves and on behalf of each Class Member, by and through Interim Lead Counsel, and on behalf of NEX Group plc, NEX International Limited (f/k/a ICAP plc), ICAP Capital Markets LLC (n/k/a Intercapital Capital Markets LLC), ICAP Securities USA LLC, and ICAP Europe Limited (collectively, "ICAP"), by and through its undersigned counsel of record in this Action.  This Settlement Agreement is intended by the Parties to fully, finally, and forever resolve, discharge, and settle the Released Claims, upon and subject to the terms and conditions hereto.

WHEREAS, Representative Plaintiffs have filed a putative civil class action, *Sonterra Capital Master Fund Ltd., et al. v. Credit Suisse Group AG, et al.*, Case No. 15-cv-871 (SHS) (S.D.N.Y.), and have alleged, among other things, that Defendants, including ICAP, from January 1, 2001 through December 31, 2011, acted unlawfully by, *inter alia*, manipulating, aiding and abetting the manipulation of, and conspiring, colluding, or engaging in racketeering activities to manipulate Swiss franc LIBOR and the prices of Swiss Franc LIBOR-Based Derivatives (as defined respectively herein), in violation of the Commodity Exchange Act, 7 U.S.C. § 1 *et seq.*, the Sherman Antitrust Act, 15 U.S.C. § 1 *et seq.*, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968, and federal and state common law;

WHEREAS, Representative Plaintiffs further contend that they and the Settlement Class suffered monetary damages as a result of ICAP's and other Defendants' conduct;

WHEREAS, ICAP denies the material allegations in Representative Plaintiffs' pleadings and maintains that it has good and meritorious defenses, including lack of personal jurisdiction, to the claims of liability and damages made by Representative Plaintiffs;

WHEREAS, arm's length settlement negotiations have taken place between Representative Plaintiffs, Interim Lead Counsel, and ICAP, and this Settlement Agreement has been reached, subject to the final approval of the Court;

WHEREAS, ICAP agrees to cooperate with Representative Plaintiffs and Interim Lead Counsel, as set forth below in this Settlement Agreement;

WHEREAS, Interim Lead Counsel conducted an investigation of the facts and the law regarding the Action, considered the Settlement set forth herein to be fair, reasonable, adequate, and in the best interests of Representative Plaintiffs and the Settlement Class, and determined that it is in the best interests of the Settlement Class to enter into this Settlement Agreement in order to avoid the uncertainties of complex litigation and to assure a benefit to the Settlement Class;

WHEREAS, ICAP, while continuing to deny that it is liable for the claims asserted against it in the Action and maintaining that it has good and meritorious defenses thereto, has nevertheless agreed to enter into this Agreement (1) to avoid further expense, inconvenience, and distraction of burdensome and protracted litigation, thereby putting this controversy to rest and avoiding the risks inherent in complex litigation and (2) to obtain complete dismissal of the Action as to ICAP and a release of claims, as set forth herein;

WHEREAS, the Parties are entering into this Settlement Agreement for legitimate and practical reasons but without waiving any right, claim, or defense and without conceding or admitting any fact, allegation, or matter, the merits of the Action, or the strength of the opposing Party's position;

2

WHEREAS, the Parties agree that neither this Settlement Agreement nor any statement made in negotiation thereof shall be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by ICAP or of the truth of any of the claims or allegations in the Action;

WHEREAS, the Parties agree that this Settlement may not be used as evidence that Fund Liquidation Holdings LLC had or has authority and/or capacity to bring this or any other action against ICAP for alleged unlawful conduct of any kind.

NOW, THEREFORE, Representative Plaintiffs, on behalf of themselves and the Settlement Class, by and through Interim Lead Counsel, and ICAP, by and through the undersigned counsel, agree that the Action and Released Claims be settled, compromised, and dismissed on the merits and with prejudice as to ICAP and without costs as to Representative Plaintiffs, the Settlement Class, or ICAP, subject to the approval of the Court, on the following terms and conditions:

## 1.        Terms Used In This Agreement

The words and terms used in this Settlement Agreement, which are expressly defined below, shall have the meaning ascribed to them.

(A)     **"Action"** means *Sonterra Capital Master Fund Ltd., et al. v. Credit Suisse Group AG, et al.*, Case No. 15-cv-871 (SHS) (S.D.N.Y.).

(B)     **"Agreement"** or **"Settlement Agreement"** means this Stipulation and Agreement of Settlement, together with any exhibits attached hereto, which are incorporated herein by reference.

(C)     **"Any"** means one or more.

(D)     **"Authorized Claimant"** means any Class Member who, in accordance with the terms of this Agreement, is entitled to a distribution from the Net Settlement Fund pursuant to any Distribution Plan or order of the Court.

(E)     **"Business Days"** means any days from Monday through Friday, inclusive, that are not federal holidays in the United States.  For the avoidance of doubt, Business Days shall be decided with reference to Eastern Time (ET).

(F)     **"Class"** or **"Settlement Class"** means all Persons (including both natural persons and entities) who purchased, sold, held, traded, or otherwise had any interest in Swiss Franc LIBOR-Based Derivatives during the Class Period, provided that, if Representative Plaintiffs expand the Class in any subsequent amended complaint, class motion, or settlement, the defined Class in this Agreement shall be expanded so as to be coterminous with such expansion. Excluded from the Settlement Class are the Defendants and any parent, subsidiary, affiliate or agent of any Defendant or any co-conspirator whether or not named as a Defendant, and the United States Government.

(G)     **"Class Member"** means a Person who is a member of the Class.

(H)     **"Class Period"** means the period of January 1, 2001 through December 31, 2011.

(I)     **"Class Notice"** means the form of notice of the proposed Settlement to be distributed to the Settlement Class as provided in this Agreement and the Preliminary Approval Order.

(J)     **"Court"** means the United States District Court for the Southern District of New York.

4

(K)     **"Defendants"** means the defendants currently or previously named in the Action and any parties that may be added to the Action as defendants through amended or supplemental pleadings or any other means.

(L)     **"Distribution Plan"** means any plan or formula of allocation of the Net Settlement Fund, to be approved by the Court, upon notice to the Class as may be required, whereby the Net Settlement Fund shall in the future be distributed to Authorized Claimants.

(M)     **"Effective Date"** means the date when this Settlement Agreement becomes final as set forth in Section 19 herein.

(N)     **"Escrow Agent"** means any Person designated by Interim Lead Counsel with the consent of ICAP, who Interim Lead Counsel anticipates will be Citibank, N.A., and approved by the Court to act as escrow agent for the Settlement Fund.

(O)     **"Execution Date"** means the date on which this Agreement is executed by the last Party to do so.

(P)     **"Fairness Hearing"** means a hearing scheduled by the Court following the issuance of the Preliminary Approval Order to consider the fairness, adequacy, and reasonableness of the proposed Settlement and Settlement Agreement.

(Q)     **"Final"** means, with respect to any court order, including, without limitation, the Final Approval Order and Final Judgment, that such order represents a final and binding determination of all issues within its scope and is not subject to further review on appeal or otherwise. An order becomes "Final" when: (i) no appeal has been filed and the prescribed time for commencing any appeal has expired; or (ii) an appeal has been filed and either (a) the appeal has been dismissed and the prescribed time, if any, for commencing any further appeal has expired, or (b) the order has been affirmed in its

5

entirety and the prescribed time, if any, for commencing any further appeal has expired. Any appeal or other proceeding pertaining solely to any order adopting or approving the Distribution Plan, and/or any order issued in respect of an application for attorneys' fees and expenses and Incentive Award(s) pursuant to Sections 6 and 7 below, shall not in any way delay or prevent the Final Judgment from becoming Final.

(R)    **"Final Approval Order"** means an order from the Court, the form of which shall be mutually agreed upon by the Parties and submitted to the Court, approving the Settlement following (i) preliminary approval of the Settlement Agreement, (ii) the issuance of the Class Notice pursuant to the Preliminary Approval Order, and (iii) the Fairness Hearing.

(S)    **"Final Judgment"** means the order of judgment and dismissal of the Action with prejudice as to ICAP, the form of which shall be mutually agreed upon by the Parties and submitted to the Court.

(T)    **"ICAP"** means NEX Group plc, NEX International Limited (f/k/a ICAP plc), ICAP Capital Markets LLC (n/k/a Intercapital Capital Markets LLC), ICAP Securities USA LLC, and ICAP Europe Limited.

(U)    **"Incentive Award"** means any award by the Court to Representative Plaintiffs as described in Section 6.

(V)    **"Interim Lead Counsel"** means Lowey Dannenberg, P.C., acting pursuant to the authority conferred by the Order, dated May 12, 2015, appointing interim lead class counsel (ECF No. 29).

(W)    **"Investment Vehicles"** means any investment company, separately managed account or pooled investment fund, including, but not limited to: (i) mutual fund

families, exchange-traded funds, fund of funds and hedge funds; and (ii) employee benefit plans.

(X)     **"LIBOR"** means the London Interbank Offered Rate.

(Y)     **"Net Settlement Fund"** means the Settlement Fund less Court-approved disbursements, including: (i) notice, claims administration, and escrow costs; (ii) any attorneys' fees and/or expenses awarded by the Court; (iii) any Incentive Award(s) awarded by the Court; and (iv) all other expenses, costs, taxes, and other charges approved by the Court.

(Z)     **"Other Settlement"** means any stipulation and agreement of settlement Representative Plaintiffs reach with any other Defendant involving this Action that will be submitted to the Court for notice and approval purposes at the same time as this Settlement Agreement.

(AA)    **"Parties"** means ICAP and Representative Plaintiffs collectively, and "**Party**" applies to each individually.

(BB)    **"Person"** means a natural person, corporation, limited liability corporation, professional corporation, limited liability partnership, partnership, limited partnership, association, joint-stock company, estate, legal representative, trust, unincorporated association, proprietorship, municipality, state, state agency, entity that is a creature of any state, any government, governmental, or quasi-governmental body or political subdivision, authority, office, bureau, agency or instrumentality of the government, any business or legal entity, or any other entity or organization; and any spouses, heirs, predecessors, successors, representatives, or assignees of any of the foregoing.

(CC)   **"Plaintiffs' Counsel"** means Interim Lead Counsel and other counsel for the Representative Plaintiffs.

(DD)   **"Preliminary Approval Order"** means an order by the Court, the form of which shall be mutually agreed upon by the Parties and submitted to the Court, issued in response to the Motion for Preliminary Approval in Section 14 and providing for, *inter alia*, preliminary approval of the Settlement, including certification of the Settlement Class for purposes of the Settlement only, and for a stay of all proceedings in the Action against ICAP until the Court renders a final decision on approval of the Settlement.

(EE)   **"Proof of Claim and Release"** means the form to be sent to Class Members, upon further order(s) of Court, by which any Class Member may make a claim against the Net Settlement Fund.

(FF)   "**Regulatory Agencies**" means any local, state, provincial, regional, or national regulatory, governmental or quasi-governmental agency or body that was authorized, is authorized or will be authorized to enforce laws and regulations concerning the conduct at issue in the Action, including, but not limited to, U.S. government authorities (including, without limitation, the United States Department of Justice, United States Commodity Futures Trading Commission, and New York State Department of Financial Services), and any non-U.S. governmental authority (including, without limitation, the United Kingdom Financial Conduct Authority (formerly, United Kingdom Financial Services Authority), European Commission, and Swiss Competition Commission), and their predecessors or successors.

(GG)   **"Released Claims"** means those claims described in Section 13 of this Settlement Agreement.

8

(HH)  **"Released Parties"** means ICAP and its affiliates, its predecessors, successors, assigns, its direct and indirect parents, subsidiaries, affiliates, and joint ventures, and each of their respective current and former officers, directors, employees, managers, members, partners, agents (in their capacity as agents of ICAP), shareholders (in their capacity as shareholders of ICAP), attorneys, insurers, or legal representatives, and the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing, except as otherwise provided in this paragraph. As used in this paragraph, "affiliates" means entities controlling, controlled by, or under common control with a Released Party. For the avoidance of doubt, Released Parties does not include named Defendant TP ICAP plc (f/k/a Tullett Prebon plc and n/k/a TP ICAP Finance plc), Tullett Prebon Americas Corp., Tullett Prebon (USA) Inc., Tullett Prebon Financial Services LLC, Tullett Prebon (Europe) Limited, and Cosmorex AG with respect to any claim of direct (non-derivative) liability arising out of its conduct alleged in the Action, or TP ICAP Group plc with respect to any ultimate liability, if any, it may have as the parent of Defendant TP ICAP plc (f/k/a Tullett Prebon plc and n/k/a TP ICAP Finance plc).

(II)  "**Releasing Parties**" means each and every Representative Plaintiff, Sonterra Capital Master Fund Ltd., FrontPoint European Fund, L.P., FrontPoint Financial Services Fund, L.P., FrontPoint Healthcare Flagship Enhanced Fund, L.P., FrontPoint Healthcare Flagship Fund, L.P., FrontPoint Healthcare Horizons Fund, L.P., FrontPoint Financial Horizons Fund, L.P., FrontPoint Utility and Energy Fund, L.P., Hunter Global Investors Fund I, L.P., Hunter Global Investors Fund II, L.P., Hunter Global Investors Offshore Fund Ltd., Hunter Global Investors Offshore Fund II Ltd., Hunter Global Investors SRI Fund Ltd., HG Holdings Ltd., HG Holdings II Ltd., and Frank Divitto, and

each and every Settling Class Member on their own behalf and on behalf of their respective predecessors, successors and assigns, direct and indirect parents, subsidiaries and affiliates, and on behalf of their current and former officers, directors, employees, agents, principals, members, trustees, estates, participants, representatives, fiduciaries, beneficiaries or legal representatives in their capacity as such, and the predecessors, successors, heirs, executors, administrators and assigns of each of the foregoing in their capacity as such. Notwithstanding that the U.S. Government is excluded from the Settlement Class, with respect to any Settling Class Member that is a government entity, Releasing Parties include any Settling Class Member as to which the government entity has the legal right to release such claims. As used in this provision, "affiliates" means entities controlling, controlled by, or under common control with a Releasing Party. For the avoidance of doubt, the "Releasing Parties" include all Persons entitled to bring claims on behalf of Settling Class Members relating to their transactions in Swiss Franc LIBOR-Based Derivatives or any similar financial instruments priced, benchmarked, or settled to Swiss franc LIBOR held by Representative Plaintiffs, Sonterra Capital Master Fund Ltd., FrontPoint European Fund, L.P., FrontPoint Financial Services Fund, L.P., FrontPoint Healthcare Flagship Enhanced Fund, L.P., FrontPoint Healthcare Flagship Fund, L.P., FrontPoint Healthcare Horizons Fund, L.P., FrontPoint Financial Horizons Fund, L.P., FrontPoint Utility and Energy Fund, L.P., Hunter Global Investors Fund I, L.P., Hunter Global Investors Fund II, L.P., Hunter Global Investors Offshore Fund Ltd., Hunter Global Investors Offshore Fund II Ltd., Hunter Global Investors SRI Fund Ltd., HG Holdings Ltd., HG Holdings II Ltd., and Frank Divitto, or Settling Class Members (to the extent such similar financial

instruments were entered into by a U.S. Person, or by a Person from or through a location within the U.S.).

(JJ)     **"Representative Plaintiffs"** means California State Teachers' Retirement System, Richard Dennis, Fund Liquidation Holdings LLC, and any subsequently named plaintiff(s) who was not subsequently withdrawn as a named plaintiff, and any named plaintiff who may be added to the action through amended or supplemental pleadings.  This Settlement Agreement is entered with each and every Representative Plaintiff.  In the event that one or more Representative Plaintiff(s) fails to secure court approval to act as a Representative Plaintiff, the validity of this Settlement Agreement as to the remaining Representative Plaintiffs, the Settlement Class, and Interim Lead Counsel shall be unaffected.

(KK)     **"Settlement"** means the settlement of the Released Claims set forth herein.

(LL)     **"Settlement Administrator"** means any Person that the Court approves to perform the tasks necessary to provide notice of the Settlement to the Class and to otherwise administer the Settlement Fund, as described further herein.  Interim Lead Counsel shall be responsible for selecting the Settlement Administrator, and ICAP shall not object to Interim Lead Counsel's selection.  Interim Lead Counsel anticipates selecting Epiq as Settlement Administrator.

(MM)     **"Settlement Amount"** means two million one hundred thousand U.S. dollars ($2,100,000.00).

(NN)     **"Settlement Fund"** means the Settlement Amount plus any interest that may accrue.

11

(OO)   **"Settling Class Members"** means Representative Plaintiffs and other members of the Settlement Class who do not timely and validly exclude themselves from the Settlement pursuant to Fed. R. Civ. P. 23(c) and in accordance with the procedure to be established by the Court.

(PP)   **"Swiss franc LIBOR"** means the London Interbank Offered Rate for the Swiss-franc.

(QQ)   **"Swiss Franc LIBOR-Based Derivatives"** means: (i) a three-month Euro Swiss-franc futures contract on the London International Financial Futures and Options Exchange ("LIFFE") entered into by a U.S. Person, or by a Person from or through a location within the U.S.; (ii) a Swiss-franc currency futures contract on the Chicago Mercantile Exchange ("CME"); (iii) a Swiss franc LIBOR-based interest rate swap entered into by a U.S. Person, or by a Person from or through a location within the U.S.; (iv) an option on a Swiss franc LIBOR-based interest rate swap ("swaption") entered into by a U.S. Person, or by a Person from or through a location within the U.S.; (v) a Swiss-franc currency forward agreement entered into by a U.S. Person, or by a Person from or through a location within the U.S.; and/or (vi) a Swiss franc LIBOR-based forward rate agreement entered into by a U.S. Person, or by a Person from or through a location within the U.S.

(RR)   **"U.S. Person"** means a citizen,  resident, or domiciliary of the United States or its territories; a corporation, including a limited liability company, either incorporated or headquartered in the United States or its territories; a partnership created or resident in the United States or its territories; any other Person or entity created and/or formed under the laws of the United States, including any state or territory thereof; or any other Person or entity residing or domiciled in the United States or its territories.

## 2.        No Admission of Liability

No Party admits any factual or legal assertion that has been advanced in the Action, and the Settlement Agreement (whether or not consummated), the Supplemental Agreement, the negotiations leading to the execution of this Agreement, and any proceedings in connection with this Settlement Agreement or approval of the Settlement shall not constitute or be deemed an admission, presumption, or concession by any Party with respect to any factual or legal assertion, or allegation, or claim that has been advanced in the Action or the validity of any defenses that could be or have been asserted by ICAP; provided, however, that if this Settlement Agreement is approved by the Court, the Parties and their respective counsel may refer to it to effectuate the protections from liability granted hereunder or otherwise to enforce the terms of the Settlement.

## 3.        Settlement Class

(A)        Representative Plaintiffs will file an application seeking the certification of the Settlement Class as described herein pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure.  Notwithstanding the sentence in Section 1(F) above that "[e]xcluded from the Settlement Class are the Defendants and any parent, subsidiary, affiliate or agent of any Defendant or any co-conspirator whether or not named as a Defendant, and the United States Government," and solely for purposes of this Settlement and this Settlement Class, the Parties agree that Investment Vehicles shall not be excluded from the Settlement Class solely on the basis of being deemed to be Defendants or affiliates or subsidiaries of Defendants.  However, to the extent that any Defendant or any entity that might be deemed to be an affiliate or subsidiary thereof (i) managed or advised and (ii) directly or indirectly held a beneficial interest in, said Investment Vehicle during the Class Period, that beneficial interest in the Investment Vehicle is excluded from the Settlement Class.  Under no circumstances may any Defendant (or any of their direct or indirect

parents, subsidiaries, affiliates, or divisions) receive a distribution for its own account from the Settlement Fund through an Investment Vehicle.

(B)     The Parties' agreement as to certification of the Settlement Class is solely for purposes of effectuating the Settlement and for no other purpose. ICAP retains all of its objections, arguments, and defenses with respect to class certification and reserves all rights to contest class certification, if the Settlement set forth in this Settlement Agreement does not receive the Court's Final approval, if the Court's approval is reversed or vacated on appeal, if this Settlement Agreement is terminated as provided herein, or if the Settlement set forth in this Settlement Agreement otherwise fails to become effective. The Parties acknowledge that there has been no stipulation to any classes or certification of any classes for any purpose other than effectuating the Settlement, and that if the Settlement set forth in this Settlement Agreement does not receive the Court's Final approval, if the Court's approval is reversed or vacated on appeal, if this Settlement Agreement is terminated as provided herein, or if the Settlement set forth in this Settlement Agreement otherwise fails to become effective, this agreement as to certification of the Settlement Class becomes null and void *ab initio*, and neither this Settlement Agreement nor any other settlement-related statement may be cited regarding certification of the Class or in support of an argument for certifying any class for any purpose related to this Action or any other proceeding.

(C)     Unless the Settlement is terminated, ICAP shall take no position with respect to any motion for class certification that Representative Plaintiffs anticipate filing and/or file in connection with their claims against other Defendants in the Action.  Nothing in this Settlement Agreement shall preclude ICAP from opposing motions for class certification or from taking positions in actions other than the Action.

### 4.        Settlement Payment

ICAP shall pay by wire transfer to the Escrow Agent the Settlement Amount within fifteen (15) Business Days after the Court grants the Preliminary Approval Order. This fifteen (15) Business Day time period shall not begin to run unless and until Plaintiffs' Counsel have provided all required information, including wire instructions and Form W-9 to ICAP's counsel.  All interest earned by any portion of the Settlement Amount paid into the Settlement Fund shall be added to and become part of the Settlement Fund.  Upon occurrence of the Effective Date, no funds may be returned to ICAP through a reversion or other means. The Escrow Agent shall only act in accordance with instructions mutually agreed upon by the Parties and provided in writing by Interim Lead Counsel, except as otherwise provided in this Agreement.  Other than the payment of the Settlement Amount as set forth in this Section 4, ICAP shall have no responsibility for any interest, costs, or other monetary payment, including any attorneys' fees and expenses, taxes, or costs of notice or claims administration, except that ICAP shall be responsible for notice as required by 28 U.S.C. § 1715, as set forth in Section 15.

### 5.        Cooperation

(A)     ICAP shall provide reasonable cooperation to benefit the Class, as provided herein. Any dispute concerning whether ICAP has met the cooperation obligations set forth in the Stipulation shall be decided in accordance with the alternative dispute resolution process set forth in Section 37 of this Settlement Agreement.

(B)     All cooperation shall be coordinated in such a manner so that all unnecessary duplication and expense is avoided. Interim Lead Counsel shall tailor its requests for the production of documents with a view toward minimizing unnecessary burdens and costs to ICAP in connection with collecting, reviewing, and producing materials that have not already been

collected in the course of the Action, related settlements, reports, and/or investigations by Regulatory Agencies.

(C)     Notwithstanding any other provision in this Agreement, ICAP shall have no obligation to produce any document or provide any information that is privileged under the attorney-client privilege, work-product doctrine, joint-defense privilege, common-interest doctrine, bank examination privilege, and/or other applicable privilege or immunity from disclosure.  Further, ICAP shall have no obligation to produce or provide any information that is restricted from disclosure under any applicable domestic or foreign data privacy, bank secrecy, states secrets, or other law.  None of the cooperation provisions set forth herein are intended to, nor do they waive any such privileges or immunities.  Any disputes regarding privilege that cannot be resolved amongst the parties shall be reserved for resolution pursuant to the alternative dispute resolution procedures set forth in Section 37 of this Settlement Agreement.  ICAP agrees that its counsel will meet and confer with Interim Lead Counsel as is reasonably necessary to discuss any applicable privilege and/or to discuss in good faith whether the production is necessary of (a) privilege logs for any relevant documents reasonably requested by Representative Plaintiffs as cooperation discovery in accordance with this Agreement that ICAP withholds on the basis of any privilege, doctrine, immunity or regulatory objection, if and to the extent such privilege logs are reasonably necessary to establish the basis for ICAP's withholding of the documents; and (b) any existing privilege logs for documents that ICAP withheld from the U.S. government (but not from any other Regulatory Agency, as applicable) as part of its investigation into ICAP's alleged manipulation of Swiss franc LIBOR and Swiss franc LIBOR-Based Derivatives, to the extent such privilege logs relate to documents reasonably requested by Representative Plaintiffs as cooperation materials herein if and to the extent such privilege logs are reasonably necessary. Any production

of existing privilege logs, if any, will be made in such a way so as not to identify the Regulatory Agency or Agencies to which ICAP provided the privilege log or other documents.  To the extent the Parties cannot resolve any disputes as to the privileges and protections described in this Section or the production of privilege logs, they shall be reserved for resolution pursuant to the alternative dispute resolution procedures set forth in Section 37 of this Settlement Agreement.  If any document protected by the attorney-client privilege, work-product doctrine, the common interest doctrine, the joint defense privilege, the bank examination privilege, and/or any other applicable privilege or protection is accidentally or inadvertently produced, Representative Plaintiffs shall, upon notice from ICAP or its counsel, immediately cease reviewing the document and shall return the document and all copies of it to ICAP's counsel within five (5) Business Days.  Representative Plaintiffs and their counsel shall also delete or destroy the portions of any other documents or work product which refer to or summarize the document.  The document shall not be used or referred to in any way by Representative Plaintiffs or their counsel, and its production shall in no way be construed to have waived any privilege, protection, or restriction attached to such document or information.

(D)     Notwithstanding any other provision in this Agreement, ICAP shall have no obligation to produce any document or provide any information that is (a) relevant to any benchmark other than CHF LIBOR, provided that no document or information relevant to CHF LIBOR will be withheld because such document or information may also be relevant to some benchmark(s) other than CHF LIBOR or (b) restricted from disclosure under any applicable domestic or foreign data privacy, bank secrecy, state secrets, or other law.  In the event that Interim Lead Counsel reasonably request documents or information otherwise within the scope of the cooperation materials to be provided under this Agreement that ICAP reasonably believes in good

faith to be restricted from disclosure under any applicable domestic or foreign data privacy, bank secrecy, state secret, or other law and the restriction can be avoided without undue burden to ICAP through a reasonable workaround, such as by removing or anonymizing identifying information, ICAP shall cooperate in good faith with Representative Plaintiffs to implement such a workaround.

(E)     Notwithstanding any other provision of this Agreement, in the event that ICAP believes that Interim Lead Counsel has requested cooperation of a kind or to an extent that is not reasonable or not within the scope of ICAP's obligations as set forth herein, ICAP's counsel and Interim Lead Counsel agree to meet and confer with each other regarding such disagreement and to seek resolution pursuant to the alternative dispute resolution procedures set forth in Section 37 of this Settlement Agreement if necessary.

(F)     Interim Lead Counsel agrees to use any and all of the information and documents obtained from ICAP only for the purpose of the Action, and agrees to be bound by the terms of the Settlement Agreement and protective order entered in the Action.  If no protective order is in effect as of the date of the Agreement, the Parties agree that ICAP will have no obligation to produce any documents until either (a) the Court enters a mutually acceptable protective order or (b) ICAP and Representative Plaintiffs enter into a separate confidentiality agreement.  For the avoidance of doubt, Interim Lead Counsel expressly agrees that the documents, materials, and/or information provided by ICAP, including without limitation communications, trade data and oral presentations, may be used directly or indirectly by Interim Lead Counsel solely in connection with the prosecution of the Action against the non-settling Defendants, but not used directly or indirectly by any Person for the institution or prosecution of any other action or proceeding against any Released Party or for any other purpose whatsoever, including, but not limited to, (i) threatened or actual actions or proceedings concerning other financial benchmark rates, as well as, (ii) threatened

or actual actions or proceedings in jurisdictions outside the United States. The foregoing restriction shall not apply to any information or documents that is or becomes publicly available.

(G)    **Document Production.**    Subject to the restrictions set forth above, ICAP will provide cooperation to Representative Plaintiffs by producing to Interim Lead Counsel the following categories of documents, to the extent reasonably available and to the extent such documents exist, in an equivalent format to that in which they were produced to Regulatory Agencies (including any metadata included in such production) or, with respect to any documents not previously produced to Regulatory Agencies, in a format to be agreed, to the extent that such documents are reasonably available and accessible to ICAP and have not already been produced to Representative Plaintiffs in the Action.   Unless otherwise indicated, the time period of the documents subject to production shall be January 1, 2001 – December 31, 2011.

(i)      All documents and data produced by ICAP to any Regulatory Agency in connection with such Regulatory Agency's investigation of conduct related to Swiss franc LIBOR.

(ii)     To the extent not included within the documents and data produced pursuant to subsection (G)(i), ICAP shall produce to Interim Lead Counsel:

(a) Reasonably available trade data pertaining to transactions brokered by ICAP in Swiss franc-denominated inter-bank money market instruments for the years 2001 through 2011;

(b) Reasonably available trade data pertaining to transactions brokered by ICAP in Swiss Franc LIBOR-Based Derivatives for the years 2001 through 2011;

(iii)     Non-privileged declarations, affidavits, or other sworn or unsworn written statements of former and/or current ICAP directors, officers, or employees concerning the allegations set forth in the Action with respect to Swiss franc LIBOR and Swiss Franc LIBOR-Based Derivatives to the extent such documents exist, are reasonably available and accessible to ICAP, and not unduly burdensome to produce, and may be disclosed under applicable confidentiality or regulatory restrictions; and

(iv)     last-known contact information of former employees identified by Representative Plaintiffs in the form of counsel contact information, where known and to the extent ICAP is not prohibited from doing so by applicable law. Representative Plaintiffs will endeavor in good faith to seek access to the former employees referenced above only to the extent that the information sought by Representative Plaintiffs cannot be otherwise obtained by Representative Plaintiffs or provided by ICAP through other means, such as the production of documents. ICAP shall designate witness(es) to serve as ICAP's corporate representative pursuant to the framework of Rule 30(b)(6) of the Federal Rules of Civil Procedure in connection with any depositions, hearing or trial of the Defendants. ICAP will work in good faith with Representative Plaintiffs to designate such witness(es) to the extent reasonably necessary and only to the extent that the information sought by Representative Plaintiffs cannot be otherwise obtained, such as through written statements.

(H)     Subject to subsection (E) above, Representative Plaintiffs may request additional

cooperation materials, documents, communications, data and information that are relevant to the claims or defenses in the Action and are reasonably accessible to ICAP and not unduly burdensome to produce.  ICAP will consider such additional requests in good faith, but ICAP need not agree to any such requests.  ICAP also agrees to cooperate to provide reasonably available information necessary for Representative Plaintiffs to authenticate or otherwise make useable at trial the aforementioned documents or other documents as Representative Plaintiffs may request, which may include providing reasonable access to witnesses for purposes of laying foundation for the admission of documents as evidence in the Action to the extent ICAP has control over those witnesses.  In the event that ICAP believes Representative Plaintiffs' counsel has unreasonably requested cooperation, or Representative Plaintiffs' counsel believes ICAP has unreasonably withheld cooperation, ICAP and Representative Plaintiffs' counsel agree to meet and confer in good faith regarding such disagreement and seek resolution if necessary pursuant to the alternative dispute resolution procedures set forth in Section 37 of the Settlement Agreement.  If such alternative dispute resolution is sought, the disputed aspect of cooperation shall be held in abeyance until such resolution by the procedures set forth in Section 37 of the Settlement Agreement and such abeyance shall not constitute a breach of the Settlement Agreement.

(I)     ICAP agrees to meet and confer promptly after the execution of the Settlement Agreement on a schedule for rolling production of documents subject to the terms of this Section 5.

(J)     **Continuation, Scope, and Termination of ICAP's Obligation.**   ICAP's obligations to cooperate are continuing until and shall terminate upon the earlier of: (i) the date when final judgment has been rendered with no remaining rights of appeal, in the Action against all Defendants; or (ii) four (4) years after the Court enters the Preliminary Approval Order.

6.      **Payment of Attorneys' Fees, Reimbursement of Expenses, and Application for Incentive Award**

(A)      Subject to Court approval, Representative Plaintiffs and Interim Lead Counsel shall be reimbursed and paid solely out of the Settlement Fund within ten (10) Business Days after Final Approval, for all fees and expenses including, but not limited to, attorneys' fees, and past, current, or future litigation expenses, and any Incentive Award approved by the Court.  ICAP shall have no responsibility for any costs, fees, or expenses incurred for or by Representative Plaintiffs' or Class Members' respective attorneys, experts, advisors, agents, or representatives.  Nothing in this provision shall expedite the date(s) for ICAP's payments, as set forth in Section 4.

(B)      Interim Lead Counsel, on behalf of all Plaintiffs' Counsel, may apply to the Court for an award from the Settlement Fund of attorneys' fees, plus interest. Interim Lead Counsel also may apply to the Court for reimbursement from the Settlement Fund of Plaintiffs' Counsel's litigation expenses, plus interest.  ICAP shall take no position with respect to Interim Lead Counsel's motion for attorneys' fees and expenses.  Representative Plaintiffs may make an application to the Court for an award in connection with their representation of the Settlement Class in this litigation, which amount constitutes the Incentive Award.

(C)      The Released Parties shall have no responsibility for, and no liability with respect to, the attorneys' fees, litigation expenses, or Incentive Award(s) that the Court may award in the Action.

(D)      The procedures for, and the allowance or disallowance by the Court of, any application for approval of fees, expenses, and costs and Incentive Award(s) (collectively, "Fee and Expense Application") are not part of the Settlement set forth in this Agreement and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in this Agreement.  Any order or proceeding relating to a

Fee and Expense Application, or the reversal or modification thereof, shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the Final Judgment and the Settlement of the Action as set forth herein.  No order of the Court or modification or reversal on appeal of any order of the Court concerning any Fee and Expense Application or the Distribution Plan shall constitute grounds for termination of this Agreement.

(E)     Prior to the Fairness Hearing, Interim Lead Counsel and Representative Plaintiffs shall file any motions seeking awards from the Settlement Fund for payment of attorneys' fees and reimbursement of costs and expenses, and for the payment of an Incentive Award as follows:

(i)     Plaintiffs' Counsel shall seek attorneys' fees of no more than one-third of the Settlement Fund;

(ii)     Interim Lead Counsel shall seek reimbursement for their costs and expenses incurred as of the date the Motion for Final Approval and Entry of Final Judgment is filed pursuant to Section 17; and

(iii)     Representative Plaintiffs may make an application to the Court for an award in connection with their representation of the Settlement Class in this litigation, which amount constitutes the Incentive Award.

(F)     Upon the Court's approval of an award of attorneys' fees, costs, and expenses, Interim Lead Counsel may withdraw from the Settlement Fund any such approved amount from subsections (E)(i) and (E)(ii) above, provided that any such withdrawal shall not take place earlier than the entry of the Final Approval Order by the Court. ICAP shall take no position with respect to Interim Lead Counsel's motion for attorneys' fees and expenses. If an event occurs that will cause the Settlement Agreement not to become Final (and the Effective Date not to occur) pursuant to Section 19 or if Representative Plaintiffs or ICAP terminates the Settlement Agreement pursuant

23

to Sections 22 through 24, then within ten (10) Business Days after receiving written notice of such an event from counsel for ICAP or from a court of appropriate jurisdiction, Interim Lead Counsel shall refund to the Settlement Fund any attorneys' fees, costs, and expenses (not including any non-refundable expenses as described in Section 10(B)) that were withdrawn plus interest thereon at the same rate at which interest is accruing for the Settlement Fund.

7.       **Application for Approval of Fees, Expenses, and Costs of Settlement Fund Administration**

Interim Lead Counsel may apply to the Court, at the time of any application for distribution to Authorized Claimants, for an award from the Settlement Fund of attorneys' fees for services performed and reimbursement of expenses incurred in connection with the administration of the Settlement after the date of the Fairness Hearing. Interim Lead Counsel reserves the right to make additional applications to the Court for payment from the Settlement Fund for attorneys' fees for services performed and reimbursement of expenses incurred.  Any such applications are subject to Court approval.

8.       **No Liability for Fees and Expenses of Interim Lead Counsel**

The Released Parties shall have no responsibility for, and no liability whatsoever with respect to, any payment(s) to Interim Lead Counsel for attorneys' fees, costs, and expenses and/or to any other Person who may assert some claim thereto, or any fee and expense award the Court may make in the Action.

9.       **Distribution of and/or Disbursements from Settlement Fund**

The Settlement Administrator, subject to such supervision and direction by the Court and/or Interim Lead Counsel as may be necessary, shall administer the Proof of Claim and Release forms submitted by the Settling Class Members and shall oversee the distribution of the Settlement

Fund pursuant to the Distribution Plan.  Upon the Effective Date (or earlier if provided in Section 10 herein), the Settlement Fund shall be applied in the order and as follows:

    (i)    to pay costs and expenses associated with the distribution of the Class Notice and administration of the Settlement as provided in this Section and Sections 15-16, including all costs and expenses reasonably and actually incurred in assisting Class Members with the filing and processing of claims against the Net Settlement Fund at any time after ICAP makes payments described in Section 4;

    (ii)    to pay Escrow Agent costs;

    (iii)    to pay taxes assessed on the Settlement Fund, and tax preparation fees in connection with such taxes;

    (iv)    to pay any attorneys' fees, costs, and expenses approved by the Court upon submission of a Fee and Expense Application, as provided in Sections 6-7;

    (v)    to pay the amount of any Incentive Award(s) for Representative Plaintiffs, as provided in Section 6;

    (vi)    to pay the Net Settlement Fund to Authorized Claimants, as allowed by the Agreement, any Distribution Plan, or order of the Court.

### 10.    Disbursements Prior to Effective Date

(A)    Except as provided in subsection (B) herein or by Court order, no distribution to any Class Member or disbursement of fees, costs, and expenses of any kind may be made from the Settlement Fund until the Effective Date.  As of the Effective Date, all fees, costs, and expenses and Incentive Awards as approved by the Court may be paid out of the Settlement Fund.

(B)      Upon written notice to the Escrow Agent by Interim Lead Counsel with a copy to ICAP, the following may be disbursed prior to the Effective Date: (i) reasonable costs of Class Notice and administration may be paid from the Settlement Fund as they become due (up to a maximum of $375,000); (ii) reasonable costs of the Escrow Agent may be paid from the Settlement Fund as they become due; (iii) taxes and tax expenses may be paid from the Settlement Fund as they become due; and (iv) Plaintiffs' Counsel's attorneys' fees and costs and expenses as approved by the Court (in accordance with Section 6).  In the event the Settlement is terminated or does not become Final for any reason (including if the Effective Date does not occur pursuant to Section 19), ICAP shall be entitled to the return of all such funds within ten (10) Business Days, plus all interest accrued thereon, except for up to $375,000 for reasonable costs of Class Notice and administration that have been actually disbursed prior to the date the Settlement was terminated or otherwise does not become Final for any reason (including if the Effective Date does not occur pursuant to Section 19), on the terms specified in Section 22.

(C)      Interim Lead Counsel will attempt in good faith to minimize the costs of the Escrow Agent, Class Notice, and administration.

### 11.      Distribution of Balances Remaining in Net Settlement Fund to Authorized Claimants

This is not a claims-made settlement.  The Net Settlement Fund shall be distributed to Authorized Claimants and, except as provided in Section 10(B), there shall be no reversion to ICAP.  The distribution to Authorized Claimants shall be in accordance with the Distribution Plan to be approved by the Court upon such notice to the Class as may be required.  Any such Distribution Plan is not a part of this Agreement.  No funds from the Net Settlement Fund shall be distributed to Authorized Claimants until the later of (i) the Effective Date or (ii) the date by which the Distribution Plan has received final approval and the time for any further appeals with respect

26

to the Distribution Plan has expired.  Should there be any balance remaining in the Net Settlement Fund (whether by reason of tax refunds, uncashed checks, or otherwise), Interim Lead Counsel shall submit an additional distribution plan to the Court for its approval.

### 12.      Administration/Maintenance of Settlement Fund

The Settlement Fund shall be maintained by Interim Lead Counsel under supervision of the Court and shall be distributed solely at such times, in such manner, and to such Persons as shall be directed by subsequent orders of the Court (except as provided for in this Agreement) consistent with the terms of this Settlement Agreement.  The Parties intend that the Settlement Fund be treated as a "qualified settlement fund" within the meaning of Treasury Regulation § 1.468B.  Interim Lead Counsel shall ensure that the Settlement Fund at all times complies with Treasury Regulation § 1.468B in order to maintain its treatment as a qualified settlement fund.  To this end, Interim Lead Counsel shall ensure that the Settlement Fund is approved by the Court as a qualified settlement fund and that any Escrow Agent, Settlement Administrator, or other administrator of the Settlement Fund complies with all requirements of Treasury Regulation § 1.468B-2.  Any failure to ensure that the Settlement Fund complies with Treasury Regulation § 1.468B-2, and the consequences thereof, shall be the sole responsibility of Interim Lead Counsel.  ICAP and ICAP's counsel shall have no responsibility or liability for any act, omission, or determination of Interim Lead Counsel or the payment or withholding of any taxes, expenses, or costs incurred in connection with the taxation of the Settlement Fund or the filing of any returns.

### 13.      Release and Covenant Not To Sue

(A)     The Releasing Parties finally and forever release and discharge from and covenant not to sue the Released Parties for any and all manner of claims, including unknown claims, causes of action, cross-claims, counter-claims, charges, liabilities, demands, judgments, suits, obligations,

debts, setoffs, rights of recovery, or liabilities for any obligations of any kind whatsoever (however denominated), whether class, derivative, or individual, in law or equity or arising under constitution, statute, regulation, ordinance, contract, or otherwise in nature, for fees, costs, penalties, fines, debts, expenses, attorneys' fees, and damages, whenever incurred, and liabilities of any nature whatsoever (including joint and several), known or unknown, suspected or unsuspected, asserted or unasserted, which Settling Class Members or any of them ever had, now has, or hereafter can, shall or may have, representatively, derivatively or in any other capacity, against the Released Parties arising from or relating in any way to conduct alleged in the Action or which could have been alleged in the Action against the Released Parties concerning any Swiss Franc LIBOR-Based Derivatives or any other financial instruments priced, benchmarked, or settled to Swiss franc LIBOR purchased, sold, and/or held by the Representative Plaintiffs, Class Members, and/or Settling Class Members (to the extent such other financial instruments were entered into by a U.S. Person, or by a Person from or through a location within the U.S.), including, but not limited to, any alleged manipulation of Swiss franc LIBOR under the Commodity Exchange Act, 7 U.S.C. § 1 *et seq.*, or any other statute, regulation, or common law, or any purported conspiracy, collusion, racketeering activity, or other improper conduct relating to Swiss franc LIBOR (including, but not limited to, all claims under Section 1 of the Sherman Antitrust Act 15 U.S.C. § 1 *et seq.*, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968, and any other federal or state statute, regulation, or common law). The following claims shall not be released by this Settlement: (i) any claims against former ICAP employees arising solely from those former employees' conduct that occurred while those former employees were not employed by ICAP; (ii) any claims against interdealer brokers (other than ICAP) or their employees or agents when and solely to the extent they were engaged as employees or agents of

the other Defendants or of other interdealer brokers that are not affiliates or subsidiaries of ICAP; (iii) any claims against the named Defendants in the Action other than ICAP; or (iv) any claims against any defendant who may be subsequently added in the Action, other than any Released Party. For the avoidance of doubt, Released Claims does not include claims arising under foreign law based solely on transactions executed entirely outside the United States by Class Members domiciled outside the United States.

(B)     Although the foregoing release is not a general release, such release constitutes a waiver of Section 1542 of the California Civil Code (to the extent it applies to the Action), which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

This release also constitutes a waiver of any and all provisions, rights, and benefits of any federal, state or foreign law, rule, regulation, or principle of law or equity that is similar, comparable, equivalent to, or which has the effect of, Section 1542 of the California Civil Code.  The Settling Class Members acknowledge that they are aware that they may hereafter discover facts in addition to, or different from, those facts which they know or believe to be true with respect to the subject matter of this Agreement, but that it is their intention to release fully, finally, and forever all of the Released Claims, and in furtherance of such intention, the release shall be irrevocable and remain in effect notwithstanding the discovery or existence of any such additional or different facts.  In entering and making this Agreement, the Parties assume the risk of any mistake of fact or law and the release shall be irrevocable and remain in effect notwithstanding any mistake of fact or law.

29

### 14.        Motion for Preliminary Approval

As soon as practicable after the Execution Date, at a time to be mutually agreed upon by ICAP and Interim Lead Counsel, Interim Lead Counsel shall submit this Settlement Agreement to the Court and shall file a motion for entry of the Preliminary Approval Order in this Action.

### 15.        Class Notice

(A)        In the event that the Court preliminarily approves the Settlement, Interim Lead Counsel shall, in accordance with Rule 23 of the Federal Rules of Civil Procedure, provide Class Members, whose identities can be determined after reasonable efforts, with notice of the date of the Fairness Hearing.  The Class Notice may be sent solely for this Settlement or combined with notice of Other Settlements or of any litigation class.  The Class Notice shall also explain the general terms of the Settlement Agreement, the general terms of the proposed Distribution Plan, the general terms of the Fee and Expense Application, and a description of Class Members' rights to object to the Settlement, request exclusion from the Class and appear at the Fairness Hearing. The text of the Class Notice shall be agreed upon by the Parties before its submission to the Court for approval thereof. To the extent not inconsistent with the scope of discovery already agreed upon and produced in the Actions, ICAP agrees to provide Interim Lead Counsel with reasonably available contact information for potential Class Member customers for whom or which ICAP brokered Swiss Franc LIBOR-Based Derivatives transactions during the Class Period, to the extent not prevented from doing so by any court order or any law, regulation, policy, or other rule of any Regulatory Agency or governmental body restricting disclosure of such information. Representative Plaintiffs agree that ICAP may, at their sole discretion, (i) have their third-party agent provide the Class Notice to any customers for whom or which ICAP brokered Swiss Franc LIBOR-Based Derivatives during the Class Period or (ii) provide customer information only to

the Settlement Administrator for purposes of distributing the Class Notice, to the extent that ICAP reasonably concludes in good faith that such steps are required or advisable based on such counterparty information being subject to any applicable domestic or foreign data privacy, bank secrecy, or other law, rule, or regulation.  If ICAP does provide Class Notice pursuant to this Section, ICAP shall complete such notice no later than the date set by the Court to complete mailed notice pursuant to the Preliminary Approval Order and provide Interim Lead Counsel with the number of Class Notices sent by ICAP pursuant to this Section. All reasonable fees, costs, and expenses of ICAP's third-party agent(s) in providing the Class Notice to any counterparties to Swiss Franc LIBOR-Based Derivatives that ICAP transacted with during the Class Period will be paid from the Settlement Fund.  Such reasonable fees, costs, and expenses of ICAP's third-party agent(s) shall not exceed $100,000 in total.

(B)     In the event that the Court preliminarily approves the Settlement, ICAP shall bear the costs and responsibility for timely serving notice of the Settlement as required by the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715.  ICAP shall also cause a copy of such CAFA notice and proof of service of such notice to be provided to Interim Lead Counsel.

### 16.        Publication

Interim Lead Counsel shall cause to be published a summary in accord with the Class Notice submitted to the Court by the Parties and approved by the Court.  ICAP shall have no responsibility for providing publication or distribution of the Settlement or any notice of the Settlement to Class Members or for paying for the cost of providing notice of the Settlement to Class Members except as provided for in Section 10(B).  The Parties shall mutually agree on any content relating to ICAP that will be used by Interim Lead Counsel and/or the Settlement Administrator in any Settlement-related press release or other media publication, including on

websites.

### 17.        Motion for Final Approval and Entry of Final Judgment

(A)      After Class Notice is issued, and prior to the Fairness Hearing, Interim Lead Counsel, on behalf of the Representative Plaintiffs, shall move for entry of the Final Approval Order and Final Judgment:

(i)      finally certifying solely for settlement purposes the Settlement Class as defined herein;

(ii)      finding that the Class Notice constituted the best notice practicable under the circumstances and complied in all respects with the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process;

(iii)      finally approving this Settlement Agreement and its terms as being a fair, reasonable and adequate settlement of the Settlement Class's claims against ICAP under Rule 23 of the Federal Rules of Civil Procedure;

(iv)      directing that, as to the Released Parties, the Action be dismissed with prejudice and without costs as against the Settling Class Members;

(v)      discharging and releasing the Released Claims as to the Released Parties;

(vi)      barring claims by any Person against the Released Parties for contribution, indemnification, or similar claims (however denominated) for all or a portion of any amounts paid or awarded in the Action by way of settlement, judgment, or otherwise;

(vii)      determining pursuant to Fed. R. Civ. P. 54(b) that there is no just reason for delay and directing that the Final Judgment shall be final and appealable;

(viii)      finding that the Court has personal jurisdiction over the Representative Plaintiffs, ICAP (in this Action only and for purposes of this Settlement), and all Class Members and subject matter jurisdiction over the Action to approve the Settlement Agreement and all exhibits attached thereto under 28 U.S.C. § 1331;

(ix)      reserving the Court's continuing and exclusive jurisdiction over the Settlement and this Agreement, including the administration and consummation of this Agreement; and

(x)      containing such other and further provisions consistent with the terms of this Agreement to which ICAP and Representative Plaintiffs expressly consent in writing.

(B)      Prior to the Fairness Hearing, as provided in Section 6, Interim Lead Counsel will timely request by separate motion that the Court approve its Fee and Expense Application.  The Fee and Expense Application and the Distribution Plan are matters separate and apart from the Settlement between the Parties.  If the Fee and Expense Application or the Distribution Plan are not approved, in whole or in part, it will have no effect on the finality of the Final Approval Order approving the Settlement and the Final Judgment dismissing the Action with prejudice as to ICAP.

**18.**        **Best Efforts to Effectuate This Settlement**

The Parties agree to cooperate with one another to the extent reasonably necessary to effectuate and implement the terms and conditions of this Agreement and to exercise their reasonable best efforts to accomplish the terms and conditions of this Agreement.

**19.**        **Effective Date**

Unless terminated earlier as provided in this Settlement Agreement, this Settlement Agreement shall become effective and final as of the date upon which all of the following conditions have been satisfied:

(A)        The Settlement Agreement has been fully executed by ICAP and Representative Plaintiffs through their counsel;

(B)        The Court has certified a Settlement Class and entered the Preliminary Approval Order, substantially in the form agreed to by the Parties, approving this Settlement Agreement, and approving the program and form for the Class Notice;

(C)        Class Notice has been issued as ordered by the Court;

(D)        The Court has entered the Final Approval Order substantially in the form agreed to by the Parties finally approving the Settlement Agreement in all respects as required by Rule 23(e) of the Federal Rules of Civil Procedure; however, this required approval does not include the approval of the Fee and Expense Application and the Distribution Plan;

(E)        The Court has entered its Final Judgment as to the Released Parties with respect to Representative Plaintiffs and Settling Class Members substantially in the form agreed to by the Parties; and

(F)     The occurrence of the later of the following: (i) the resolution of any and all appeals regarding the Settlement (subject to Section 22 below) or (ii) the expiration of the time to appeal or seek permission to appeal the Settlement.

### 20.          Occurrence of Effective Date

Upon the occurrence of all of the events specified in Section 19, any and all remaining interest or right of ICAP in or to the Settlement Fund, if any, shall be absolutely and forever extinguished, and the Net Settlement Fund shall be transferred from the Escrow Agent to the Settlement Administrator at the written direction of Interim Lead Counsel.  Each of the Releasing Parties shall forever be enjoined from prosecuting in any forum any Released Claim against any of the Released Parties and agrees and covenants not to sue any of the Released Parties on the basis of any Released Claims or to assist any third party in prosecuting any Released Claims against any Released Parties.

### 21.          Failure of Effective Date to Occur

If any of the conditions specified in Section 19 are not satisfied, then this Agreement shall be terminated, subject to and in accordance with Section 22, unless the Parties mutually agree in writing to continue with it for a specified period of time.

### 22.          Termination

(A)     ICAP shall have the right, but not the obligation, in its sole discretion, to terminate this Settlement Agreement by providing written notice to Interim Lead Counsel within ten (10) Business Days of ICAP's learning of any of the following events:

(i)      the Court enters an order declining to enter the Preliminary

Approval Order pursuant to Representative Plaintiffs' motion under Section

14 or the Final Approval Order pursuant to the Parties' joint motion under

Section 17 in any material respect;

(ii)     the Court enters an order refusing to approve the Settlement Agreement or any material part of it;

(iii)     the Court enters an order declining to enter the Final Judgment and order of dismissal in any material respect;

(iv)     the Court enters an alternative judgment that differs materially from the Final Judgment agreed to by the Parties;

(v)     the Final Judgment and order of dismissal is modified or reversed by a court of appeal or any higher court in any material respect; or

(vi)     an alternative judgment is modified or reversed by a court of appeal or any higher court in any material respect.

(B)     Interim Lead Counsel, acting on behalf of the Representative Plaintiffs, shall have the right, but not the obligation, in their sole discretion, to terminate this Settlement Agreement by providing written notice to ICAP's counsel within ten (10) Business Days of any of the following events, provided that the occurrence of the event substantially deprives Plaintiffs of the benefit of the Settlement:

(i)     the Court enters an order declining to enter Representative Plaintiffs' Motion for Preliminary Approval pursuant to Section 14 or the Motion for Final Approval pursuant to Section 17 in any material respect;

(ii)     the Court enters an order refusing to approve the Settlement Agreement or any material part of it;

(iii)     the Court enters an order declining to enter the Final Judgment and order of dismissal in any material respect;

36

(iv)      the Court enters an alternative judgment that differs materially from the Final Judgment agreed to by the Parties;

(v)      the Final Judgment and order of dismissal is modified or reversed by a court of appeal or any higher court in any material respect;

(vi)      an alternative judgment is modified or reversed by a court of appeal or any higher court in any material respect; or

(vii)      ICAP, for any reason, fails to comply with Section 4 and fails to cure such non-compliance as contemplated by Section 22(C) below.

(C)      In the event that ICAP, for any reason, fails to comply with Section 4, then on ten (10) Business Days written notice to ICAP's counsel, during which ten-day period ICAP shall have the opportunity to cure the default without penalty, Representative Plaintiffs, by and through Interim Lead Counsel, may terminate this Settlement Agreement or elect to enforce it as provided by the Federal Rules of Civil Procedure, unless ICAP cures the default during such ten (10) Business Day period.

### 23.      Effect of Termination

Unless otherwise ordered by the Court, in the event that the Effective Date does not occur or this Agreement should terminate or be cancelled, or otherwise fail to become effective for any reason, including, without limitation, in the event that the Settlement as described herein is not finally approved by the Court or the Final Judgment is reversed or vacated following any appeal, then:

(A)      Within ten (10) Business Days after written notification of such event is sent by counsel for ICAP or Interim Lead Counsel to all Parties and the Escrow Agent, the Settlement Amount, and all interest earned in the Settlement Fund will be refunded, reimbursed, and repaid

by the Escrow Agent to ICAP, except as provided in Section 10(B).

(B)     The Escrow Agent or its designee shall apply for any tax refund owed to the Settlement Fund and pay the proceeds to ICAP, after deduction of any fees or expenses reasonably incurred in connection with such application(s) for refund;

(C)     The Parties shall be restored to their respective positions in the Action as of December 22, 2022, with all of their respective legal claims and defenses preserved as they existed on that date, including without limitation any objection or defense based on lack of personal jurisdiction; and

(D)     Upon termination of this Settlement Agreement, then:

(i)      this Agreement shall be null and void *ab initio* and of no further effect, and none of ICAP, the Representative Plaintiffs, or members of the Settlement Class shall be bound by any of its terms;

(ii)     any and all releases shall be of no further force and effect;

(iii)    the Parties shall be restored to their respective positions in the Action as of December 22, 2022 with all of their respective legal claims and defenses preserved as they existed on that date; and

(iv)    any judgment or order entered by the Court in accordance with the terms of this Settlement Agreement shall be treated as vacated, *nunc pro tunc*.

## 24.      Supplemental Agreement

In addition to the provisions contained in Section 22(A) herein, ICAP shall have the rights specified in a Supplemental Agreement as to ICAP (the "Supplemental Agreement") to be executed between Representative Plaintiffs and ICAP, including the right, but not the obligation,

in its sole discretion, to terminate this Settlement Agreement.   The Supplemental Agreement shall not be submitted to the Court except in the event of a dispute thereunder, in which case the Parties shall seek to file it only under seal.

### 25.        Confidentiality Protection

Representative Plaintiffs, Interim Lead Counsel, ICAP's counsel and ICAP agree to keep private and confidential the terms of this Settlement Agreement, except for disclosure at the Court's direction or disclosure *in camera* to the Court, until this document is filed with the Court, provided, however, that nothing in this Section shall prohibit or restrict a Party's ability to make any disclosures it deems necessary to comply with any relevant laws and regulations, as well as (i) communicate with their counsel, auditors, insurers, or any state, federal or foreign regulatory authority, regarding the Settlement or its underlying facts or circumstances, (ii) make financial statement disclosures regarding the existence of the Settlement, or (iii) otherwise disclose the Settlement or its underlying facts or circumstances to the extent required by any relevant laws, subpoena or other form of judicial process. Nothing in this provision shall preclude ICAP from disclosing, without notice to Interim Lead Counsel, the fact, circumstances, amount, or terms of the Settlement as a result of a good faith determination that such disclosure is required or advisable pursuant to bank regulatory requirements, SEC requirements (or the requirements of comparable authorities in other jurisdictions), listing or exchange requirements, or other legal or regulatory requirements, or from disclosing the fact, circumstances, amount, or terms of the Settlement to its regulators, insurers, or external auditors.  The foregoing provisions shall not preclude ICAP from notifying co-Defendants that ICAP intends to cease participation in future joint defense efforts with respect to the Action. Notwithstanding the foregoing, Interim Lead Counsel acknowledges that counsel for ICAP represents the other named broker defendants in this Action (TP ICAP plc,

Tullett Prebon Americas Corp., Tullett Prebon (USA) Inc. Tullett Prebon Financial Services LLC, Tullett Prebon (Europe) Limited, Cosmorex AG, Velcor SA and Gottex Brokers SA) and that the terms of this Settlement Agreement may be disclosed to the named broker defendants in this Action that are represented by counsel for ICAP.

### 26.      Binding Effect

(A)     This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of ICAP, the Released Parties, the Representative Plaintiffs, and Settling Class Members.

(B)     The waiver by any Party of any breach of this Settlement Agreement by another Party shall not be deemed a waiver of such breach by any other Party or a waiver by any Party of any other prior or subsequent breach of this Settlement Agreement.

### 27.      Integrated Agreement

This Settlement Agreement, including any exhibits hereto and agreements referenced herein, contains the entire, complete, and integrated statement of each and every term and provision agreed to by and among the Parties and is not subject to any condition not provided for or referenced herein.  This Settlement Agreement supersedes all prior or contemporaneous discussions, agreements, and understandings among the Parties to this Settlement Agreement with respect hereto, including the Term Sheet executed on December 22, 2022.  This Settlement Agreement may not be modified in any respect except by a writing that is executed by all the Parties hereto.

### 28.        No Conflict Intended with Headings

The headings used in this Settlement Agreement are for the convenience of the reader only and shall not have any substantive effect on the meaning and/or interpretation of this Settlement Agreement.

### 29.        No Party Is the Drafter

None of the Parties shall be considered to be the drafter of this Settlement Agreement or any provision herein for the purpose of any statute, case law, or rule of interpretation or construction that might cause any provision to be construed against the drafter.

### 30.        Choice of Law

All terms within the Settlement Agreement and its exhibits hereto shall be governed by and construed in accordance with the laws of the State of New York, without regard to its choice of law or conflict of laws principles, including N.Y. General Obligations Law § 15-108, which bars claims for contribution by joint tortfeasors and other similar claims.

### 31.        Execution in Counterparts

This Settlement Agreement may be executed in one or more counterparts.  Facsimile and scanned/PDF signatures shall be considered valid signatures.  All executed counterparts shall be deemed to be one and the same instrument.  There shall be no agreement until the fully signed counterparts have been exchanged and delivered to each of the Parties.

### 32.        Contribution and Indemnification

This Settlement Agreement is expressly intended to absolve the Released Parties against any claims for contribution, indemnification, or similar claims from other Defendants in the Action and other alleged co-conspirators, arising out of or related to the Released Claims, in the manner and to the fullest extent permitted under the law of New York or any other jurisdiction that might

be construed or deemed to apply for claims for contribution, indemnification, or similar claims against any Released Parties.  Notwithstanding the foregoing, should any court determine that any Defendant or other alleged co-conspirator is/was legally entitled to any kind of contribution or indemnification from any Released Parties arising out of or related to the Released Claims, Representative Plaintiffs agree that any money judgment subsequently obtained by Representative Plaintiffs against any such Defendant or other co-conspirator shall be reduced to an amount such that, upon paying the entire amount, the Defendant or other co-conspirator would have no claim for contribution, indemnification, or similar claims against the Released Parties.

### 33.        Submission to and Retention of Jurisdiction

The Parties, Released Parties, and the Settlement Class irrevocably submit, to the fullest extent permitted by law, to the exclusive jurisdiction of the United States District Court for the Southern District of New York solely for the specific purpose of any suit, action, or proceeding to interpret or enforce the terms of this Settlement Agreement, or the exhibits hereto, and such consent to specific jurisdiction shall not be deemed a waiver of any jurisdictional defense previously or currently asserted in the Action or by ICAP in any other Action.  For the purpose of such suit, action, or proceeding, to the fullest extent permitted by law, the Parties, Released Parties and the Settlement Class irrevocably waive and agree not to assert, by way of motion, as a defense, or otherwise, any claim or objection that they are not subject to the jurisdiction of such Court, or that such Court is, in any way, an improper venue or an inconvenient forum or that the Court lacked power to approve this Settlement Agreement or enter any of the orders contemplated hereby.

### 34.        Reservation of Rights

This Settlement Agreement does not settle or compromise any claims by Representative Plaintiffs, or any Class Member asserted against any Defendant or any potential defendant other

than ICAP and the Released Parties.  The rights of any Class Member against any other Person other than ICAP and the Released Parties are specifically reserved by Representative Plaintiffs and the Class Members.

### 35.  Notices

All notices and other communications under this Settlement Agreement shall be sent to the Parties to this Settlement Agreement at their address set forth on the signature page herein, *viz*, if to Representative Plaintiffs, then to: Vincent Briganti, Lowey Dannenberg, P.C., 44 South Broadway, Suite 1100, White Plains, New York 10601 and if to ICAP, then to: Shari A. Brandt, Perkins Coie LLP, 1155 Avenue of the Americas, New York, New York 10036 or such other address as each party may designate for itself, in writing, in accordance with this Settlement Agreement.

### 36.  Authority

In executing this Settlement Agreement, Interim Lead Counsel represent and warrant that they have been fully authorized to execute this Settlement Agreement on behalf of the Representative Plaintiffs and the Settlement Class (subject to final approval by the Court after notice to all Class Members), and that all actions necessary for the execution of this Settlement Agreement have been taken.  ICAP represents and warrants that the undersigned is fully empowered to execute the Settlement Agreement on behalf of ICAP, and that all actions necessary for the execution of this Settlement Agreement have been taken.

### 37.  Disputes or Controversies

Any dispute or controversy arising out of or relating to the cooperation set forth in Section 5 herein, including any claims under any statute, law, or regulation, shall be resolved first by discussion among counsel for the Parties, and failing that, by mediation, or, if mediation fails to

resolve the dispute, by arbitration, in each case administered by a neutral agreed upon by the Parties at JAMS, Inc., formerly known as Judicial Arbitration and Mediation Services ("JAMS"), in accordance with its procedures and Comprehensive Arbitration Rules & Procedures then in effect ("Rules") and in accordance with the Expedited Procedures in those Rules (or such other alternative dispute resolution organization as all Parties shall agree), except as modified herein. The arbitration shall be conducted on a strictly confidential basis, and the Parties shall not disclose the existence or nature of any claim; any documents, correspondence, briefing, exhibits, or information exchanged or presented in connection with any claim; or any rulings, decisions, or results of any claim or argument (collectively, "Arbitration Materials") to any third party, with the sole exception of the Parties' respective legal counsel (who shall also be bound by these confidentiality terms) or under seal in any judicial proceeding commenced in connection with this Section 37 or to the extent that such disclosure is required or advisable pursuant to bank regulatory requirements, SEC requirements, or other legal or regulatory requirements.  The arbitral decision shall be final and binding upon the Parties hereto.  Any arbitral award may be entered as a judgment or order in any court of competent jurisdiction.  Except as the Rules may provide, the Parties shall share JAMS's administrative fees and the mediator's or arbitrator's fees and expenses, with Representative Plaintiffs responsible for 50% and ICAP responsible for 50% of these fees.  Each Party shall be responsible for such Party's attorneys' fees and costs, except as otherwise provided by any applicable statute, rule or law.  Either Party may commence litigation in any state or federal court of competent jurisdiction located in New York County, New York to obtain injunctive relief in aid of arbitration, to compel arbitration, or to confirm or vacate an arbitrator's award.  The Parties agree to take all steps necessary to protect the confidentiality of the Arbitration Materials in connection with any such proceeding, agree to use their best efforts to file all confidential

information (and documents containing confidential information) under seal, and agree to the entry of an appropriate protective order encompassing the confidentiality terms of any settlement agreement.  The seat of arbitration shall be New York, New York.

### 38.  Stay

The Parties stipulate and agree that all proceedings and deadlines in the Action (including with respect to discovery, except with respect to ICAP's cooperation obligation as provided in Section 5 above) between Representative Plaintiffs and ICAP shall be stayed pending the Court's entry of the Preliminary Approval Order and continuing through until final approval of the Settlement.  The stay will automatically be dissolved if the Settlement is terminated in accordance with the provisions of Sections 22 or 24 of this Settlement Agreement.

[*remainder of page intentionally left blank*]

Dated:  March 13, 2023       By: _____
                                  Vincent Briganti
                                  **LOWEY DANNENBERG, P.C.**
                                  44 South Broadway, Suite 1100
                                  White Plains, New York 10601
                                  Telephone: (914) 997-0500

                                  *Interim Lead Counsel for Representative Plaintiffs and the Proposed Class*

Dated:  March 13, 2023       By: _____
                                  Shari Brandt
                                  **PERKINS COIE LLP**
                                  1155 Avenue of the Americas
                                  New York, New York 10036-2711
                                  Telephone: (212) 262-6900

                                  *Counsel for NEX Group plc, NEX International Limited (f/k/a ICAP plc), ICAP Capital Markets LLC (n/k/a Intercapital Capital Markets LLC), ICAP Securities USA LLC, and ICAP Europe Limited*