UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SONTERRA CAPITAL MASTER FUND LTD., *et al.*,

            Plaintiffs,

v.

CREDIT SUISSE GROUP AG, *et al.*,

            Defendants.

15-cv-871 (SHS)

OPINION & ORDER

---

SIDNEY H. STEIN, U.S. District Judge.

    This action is one of several alleging that major financial institutions colluded to artificially impact benchmark interest rates for various currencies. Plaintiffs here claim that a group of banks and brokers violated federal antitrust and RICO laws by manipulating the Swiss Franc London InterBank Offer Rate, known as CHF LIBOR. CHF LIBOR is calculated using interest rate quotes submitted by a panel of twelve banks and is used in determining the price of various financial instruments.

    In 2019, this Court dismissed plaintiffs' Second Amended Complaint for lack of subject matter jurisdiction. *Sonterra Capital Master Fund Ltd. v. Credit Suisse Grp. AG* (*Sonterra II*), 409 F. Supp. 3d 261 (S.D.N.Y. 2019). The United States Court of Appeals for the Second Circuit subsequently vacated that decision in light of its holding in *Fund Liquidation Holdings LLC v. Bank of America Corp.* (*SIBOR*), 991 F.3d 370 (2d Cir. 2021), and remanded this action to this Court for further proceedings. *Sonterra Cap. Master Fund Ltd. v. Credit Suisse Grp. AG*, No. 19-3367, 2021 WL 4997939 (2d Cir. Sept. 21, 2021). Plaintiffs then filed a Third Amended Complaint ("TAC"). (Dkt. No. 401.)

    Defendant UBS AG ("UBS") now moves to dismiss the Third Amended Complaint on the grounds that plaintiffs lack Article III standing to bring the claims they assert against UBS.[1] Because plaintiffs were never assigned the rights to bring the claims they assert, defendant's motion to dismiss the Third Amended Complaint is granted.

---

[1] Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss the Third Amended Complaint, Dkt. No. 416, will be referred to as "Mot." Plaintiffs' Omnibus Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Third Amended Complaint, Dkt. No. 438, will be referred to as "Opp." Defendants' Reply in Further Support of Defendants' Motion to Dismiss the Third Amended Complaint, Dkt. No. 448, will be referred to as "Reply."

I. **BACKGROUND**

An overview of the allegations and procedural history of this litigation should prove helpful. A comprehensive—in retrospect, fulsome—summary of the facts can be found in this Court's opinion granting the motion to dismiss the First Amended Complaint ("FAC"). *See Sonterra Cap. Master Fund Ltd. v. Credit Suisse Grp. AG* (*Sonterra I*), 277 F. Supp. 3d 521 (S.D.N.Y. 2017).

Plaintiffs are (1) Fund Liquidation Holdings LLC, which alleges that it is the successor-in-interest to (a) Sonterra Capital Master Fund Ltd. ("Sonterra"), (b) several entities associated with FrontPoint European Fund, L.P. (together, "FrontPoint"),[2] and (c) several entities associated with Hunter Global Investors Fund I, L.P. (together, "Hunter");[3] (2) Richard Dennis; and (3) the California State Teachers' Retirement System ("CalSTRS").

The moving defendants are the Broker Defendants[4] and UBS AG. All defendants except UBS have settled this litigation (Dkt. Nos. 501-506, 508-510, 513-514), and Plaintiff CalSTRS does not assert any claims against UBS. (TAC ¶ 42.)

There are two financial instruments at issue, both of which are CHF derivatives: CHF futures contracts and CHF foreign exchange forwards ("FX forwards"). CHF futures contracts are "standardized bilateral agreements that call for the purchase or sale of an underlying commodity on a certain future date." (TAC ¶ 120.) They are traded on specialized exchanges such as the Chicago Mercantile Exchange. (*Id.*) CHF foreign exchange forwards are also bilateral agreements, but instead of standardized terms, private parties directly negotiate customized terms in an over-the-counter transaction. (TAC ¶ 124.)

Importantly, while Dennis traded only futures contracts (TAC ¶ 41), Sonterra, FrontPoint, Hunter, and CalSTRS traded only FX forwards. (TAC ¶¶ 23-38, 42).

---

[2] FrontPoint European Fund, L.P., FrontPoint Healthcare Flagship Enhanced Fund, L.P., FrontPoint Healthcare Flagship Fund, L.P., FrontPoint Utility and Energy Fund, L.P., FrontPoint Healthcare Horizons Fund, L.P., FrontPoint Financial Horizons Fund, L.P., and FrontPoint Financial Services Fund, L.P.

[3] Hunter Global Investors Fund I, L.P., Hunter Global Investors Offshore Fund II, Ltd., Hunter Global Investors Fund II, L.P., HG Holdings II, Ltd., Hunter Global Investors Offshore Fund, Ltd., HG Holdings, Ltd., and Hunter Global Investors SRI Fund, Ltd.

[4] TP ICAP plc, Tullett Prebon Americas Corp., Tullett Prebon (USA) Inc., Tullett Prebon Financial Services LLC, Tullett Prebon (Europe) Limited, Cosmorex AG, Gottex Brokers SA, and Velcor SA.

Plaintiffs allege that UBS and three other banks "manipulat[ed] the prices of Swiss franc LIBOR-based derivatives," allowing them to "injure [their] competition by tipping the market in their favor every trading day, to the detriment of their counterparties." (*Id.* ¶¶ 2, 5.) Plaintiffs bring nine claims: (1) violation of Section 1 of the Sherman Act by colluding to widen the bid-ask spread for Swiss franc LIBOR-based derivatives products; (2) conspiracy to restrain trade in violation of Section 1 of the Sherman Act; (3) manipulation in violation of the Commodity Exchange Act 7 U.S.C. §§ 1 *et seq.*; (6) violation of the Racketeer Influenced and Corrupt Organizations Act 18 U.S.C. §§ 1961 *et seq.*; (7) conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act; (8) Unjust enrichment in violation of common law; (9) breach of the implied covenant of good faith and good dealing. Claims (4) and (5) are not brought against defendant UBS.

### A. Procedural History

The original complaint in this action was filed in 2015 (Dkt. No. 1), as was the first amended complaint which added plaintiffs FrontPoint, Hunter, and Frank Divitto. (Dkt. No. 36.) In September 2017, this Court granted defendants' motion to dismiss the First Amended Complaint with leave to replead, concluding, as relevant to defendant UBS, that plaintiffs had failed to allege an injury for purposes of Article III standing, failed to plausibly allege an antitrust conspiracy against any defendant except Royal Bank of Scotland, and that the RICO claims were impermissibly extraterritorial. *Sonterra I*, 277 F. Supp. 3d at 599.

A Second Amended Complaint was filed in December 2017 and added plaintiffs Dennis and CalSTRS. (Dkt. No. 185.) The Second Amended Complaint also revealed— for the first time—that Sonterra, FrontPoint, and Hunter had been dissolved several years before the case was initiated and alleged that they had assigned their claims to Fund Liquidation Holdings. The Court granted defendants' second motion to dismiss on the basis that the plaintiff entities lacked Article III standing because they had not existed at the time the complaint was filed. *Sonterra II*, 409 F. Supp. 3d at 268.

On appeal from a related case that involved the alleged manipulation of the Singapore Interbank Offer Rate—rather than LIBOR—the Second Circuit held in March 2021 that a real party in interest may satisfy Article III standing even though the plaintiffs had not existed at the original filing by "step[ping] into [a] dissolved entities' shoes without initiating a new action from scratch." *SIBOR*, 991 F.3d at 375. Following that holding, the Second Circuit vacated this Court's decision dismissing the Second Amended Complaint for lack of subject matter jurisdiction and, by agreement of the parties, remanded for proceedings consistent with the Second Circuit's decision.

*Sonterra Cap. Master Fund Ltd. v. Credit Suisse Grp. AG*, No. 19-3367, 2021 WL 4997939 (2d Cir. Sept. 21, 2021).

Plaintiffs subsequently filed the Third Amended Complaint, adding new factual allegations based on discovery from defendants, including UBS.[5] (Dkt. No. 402.) UBS now moves to dismiss that complaint on the grounds that plaintiffs still do not possess Article III standing.

## II. DISCUSSION

Pursuant to Federal Rule of Civil Procedure 12(b)(1), UBS challenges the Court's subject matter jurisdiction, alleging plaintiffs lack Article III standing to bring this action. Article III of the U.S. Constitution limits the jurisdiction of federal courts to resolving "cases" and "controversies." Art. III, § 2; *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). To be deemed a case or controversy, plaintiffs must establish that they have suffered an injury in fact that is fairly traceable to defendants' conduct and likely to be redressed by a favorable ruling by the court. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

"'The party invoking federal jurisdiction bears the burden of establishing' prudential and constitutional standing." *Keepers, Inc. v. City of Milford*, 807 F.3d 24, 39 (2d Cir. 2015) (quoting *Rajamin v. Deutsche Bank Nat'l. Tr. Co.*, 757 F.3d 79, 84 (2d Cir. 2014)). The Court takes all uncontroverted facts in the complaint as true and draws all inferences in plaintiffs' favor. *Fountain v. Karim*, 838 F.3d 129, 134 (2d Cir. 2016); *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140 (2d Cir. 2011). In doing so, the Court may consider evidence outside the pleadings to the extent jurisdictional facts—such as the assignment of claims—are in dispute. *Sonterra I*, 409 F. Supp. 3d at 266.

Although Sonterra, FrontPoint, and Hunter (the "Dissolved Funds") were dissolved before this action was first filed, Fund Liquidation Holdings may nevertheless satisfy Article III standing as a real party in interest. *SIBOR*, 991 F.3d at 375:

> Article III is satisfied so long as a party with standing to prosecute the specific claim in question exists at the time the pleading is filed. If that party (the real party in interest) is not named in the complaint, then it must ratify, join, or be substituted into the action within a reasonable time. Only if the real party in interest either fails to materialize or lacks

---

[5] The Third Amended Complaint dropped Divitto as a plaintiff.

4

standing itself should the case be dismissed for want of subject-matter jurisdiction.

*Id.* at 386. Plaintiffs acknowledge that the Dissolved Funds did not exist at the time this action was commenced. *Id.* at 266-67. Therefore, Fund Liquidation Holdings, as the real party in interest, may only pursue the Dissolved Funds' claims if Fund Liquidation Holdings had standing to do so at the time the pleadings were filed.[6] *See id.* at 386. Plaintiffs allege that they possess standing because the Dissolved Entities assigned their rights and claims to Fund Liquidation Holdings prior to the initial pleadings being filed. (TAC ¶¶ 24, 33, 40.)

### A. Fund Liquidation Holdings Lacks Article III Standing Because the APAs Did Not Assign Recovery Rights Arising from FX Forwards.

Three Asset Purchase Agreements define the scope of rights that the Dissolved Funds assigned to Fund Liquidation Holdings. All three provide that they shall be "governed by and construed in accordance with the laws of the State of New York." (ECF 418-1 (Sonterra), 418-2 (FrontPoint), 418-3 (FrontPoint Utility), 418-4 (Hunter) at Section 6.6.)[7] The APAs are largely identical, differing only in limited respects.

Each APA "transfers [to Fund Liquidation Holdings] . . . all [of the Seller's] right, title and interest in all of the Assets, including, without limitation, all of such Seller's rights to recover and receive any and all amounts now or hereafter payable pursuant to any Recovery Rights." (*See, e.g.*, Sonterra APA at Section 1.1.(a).)

A set of nesting definitions governs the scope of the rights that the Dissolved Funds assigned to Fund Liquidation Holdings in the APAs. Article II of the APAs defines "Assets" as the Seller's "right, title and interest in and to any and all Recovery Rights and any and all amounts payable in connection with any of the Existing Claims and the Future Claims." *Id.* "Recovery Rights" is defined as "with respect to any Claim, all monetary, legal and other rights held by or accruing to the [Seller] in respect of such Claim, including, without limitation, the aggregate amount which a Seller is, or may become, entitled to receive pursuant to any Settlement and/or Judgment in connection with such Claim." "Settlement" and "Judgment" take their ordinary meanings with respect to "Claims," and "Claims" means "any Existing Claim or Future Claim."

---

[6] Fund Liquidation Holdings must also have ratified, joined, or substituted into the action within a reasonable time. *See SIBOR*, 991 F.3d at 386. Defendants do not raise this as an issue.

[7] The APAs will be referred to by the seller entity, e.g., "Sonterra APA," and the FrontPoint APAs will be referred to collectively.

"Existing Claims" means "all claims to Recovery Rights related to the ownership of, or any transaction in, any Traded Security" where "Traded Security" means "all Securities that were owned, held, acquired, sold or otherwise disposed of by such Seller during the Trade Period."[8] "Future Claims" means "means any and all claims of the applicable Seller to Recovery Rights related to the ownership of, or any transaction in, any Traded Securities."[9] "Securities" means "any debt and/or equity securities of any kind, type or nature, including, without limitation, stock, bonds, options, puts, calls, swaps and similar instruments or rights."[10] *Id.*

As the parties agree, this cascade of definitions means that the assignment only includes FX Forwards if the APAs' definition of "debt and/or equity securities" includes FX Forwards. In a word, it does not. *See Fund Liquidation Holdings LLC v. UBS AG* (*Yen LIBOR*), No. 15-Cv-5844, 2021 WL 4482826, at *4 (S.D.N.Y. Sept. 30, 2021), (other grounds of decision clarified on reconsideration, No. 15-Cv-5844, 2022 WL 3904556 (S.D.N.Y. Aug. 30, 2022) ("the lower case 'securities' is not [explicitly defined in the APA] and signifies that the parties intended this term to be interpreted using its plain meaning, which does not include FX derivatives."))[11] "Debt securities" represent borrowed funds, and "equity securities" represent ownership interests. Neither can encompass FX Forwards which represent bilateral agreements over exchange rates. Both parties cite myriad sources to support their preferred reading of these terms. None

---

[8] The FrontPoint APAs also specifically exclude non-securities claims from both Existing Claims and Future Claims.

[9] The FrontPoint APAs use the term "Included Securities" instead of "Traded Securities." There is one difference in the definitions of these two terms: the FrontPoint APAs definition of Included Securities includes "all Securities in the Trade Data" but the Sonterra and Hunter APAs definitions of Traded Securities do not reference the Trade Data. Because the term "Securities" further restricts the definitions of Traded Securities and Included Securities, this difference does not alter the Court's analysis.

[10] Plaintiffs suggest that "swaps and similar instruments," includes FX Forwards. (Opp. at 11-12.) However, swaps and currency forwards are different instruments. Swaps are exchanges of cash flows between two counterparties from an underlying security. They are distinct from contracts guaranteeing one party a currency exchange rate later in time: to wit, FX Forwards.

[11] Contrary to Plaintiffs' insistence that the Second Circuit held in *SIBOR* that Fund Liquidation Holdings did receive a valid assignment of the relevant recovery rights, neither the Second Circuit nor the District Court below held as much. *See SIBOR*, 991 F.3d 370, 392 (2d Cir. 2021) ("Notably, this does not require us to resolve whether Fund Liquidation received a valid assignment from FrontPoint"); *Fund Liquidation Holdings LLC v. Citibank, N.A.*, 399 F. Supp. 3d 94, 99, 102-103 (S.D.N.Y. 2019) (dismissing Plaintiffs claims after finding it was not an efficient antitrust enforcer). Plaintiffs have unsuccessfully made this argument before. *See Yen Libor*, 2021 WL 4482826, at *4 n. 5 ("Contrary to Plaintiffs' contention, *SIBOR* does not 'fully support []' Fund Liquidation Holdings' substitution for Sonterra.").

change the simple fact that FX Forwards are mutually exclusive instruments from debt and equity securities. *See id.*, ("the language of the APA is unambiguous and, thus, does not present a circumstance that would require this Court to look beyond the four corners of the agreement.")

Because the APAs are not ambiguous on this point, the Court is "required to give effect to the contract as written and may not consider extrinsic evidence to alter or interpret its meaning." *United States Tr. Co. v. Jenner*, 168 F.3d 630, 632 (2d Cir. 1999). "Ambiguity is not created simply because the parties urge different interpretations." *Id*.: *see Banos v. Rhea*, 25 N.Y.3d 266, 276 (2015) ("Whether a contract is ambiguous is a question of law, and courts may not resort to extrinsic evidence to aid in interpretation unless the document is ambiguous.") For this reason, the Court assigns no evidentiary weight to either the Trade Data or to the sworn declaration of FrontPoint's former general counsel.[12] *See Fund Liquidation Holdings LLC v. Citibank, N.A.*, 399 F. Supp. 3d 94, 103 (S.D.N.Y. 2019), (vacated on other grounds by *Fund Liquidation Holdings LLC v. Bank of Am. Corp.*, 991 F.3d 370 (2d Cir. 2021) (because "the APA [terms] are unambiguous on their face, it is unnecessary and inappropriate to apply extrinsic evidence here."))

Accordingly, the APAs do not assign to plaintiffs the claims they bring against UBS, and therefore, plaintiffs lack Article III standing to assert them.

### B. Dennis Lacks Article III Standing Because Neither He nor Frank Divitto Can Validly Step In as the Real Party in Interest.

Because the Dissolved Funds did not exist when this case was filed and Fund Liquidation Holdings also lacked standing, defendant UBS's motion to dismiss the Third Amended Complaint must be granted unless plaintiff Richard Dennis possesses Article III standing. As reviewed above, the Second Circuit in *SIBOR* held that, "Article III is satisfied so long as a party with standing to prosecute the specific claim in question exists at the time the pleading is filed. If that party (the real party in interest) is not named in the complaint, then it must ratify, join, or be substituted into the action within a reasonable time." 991 F.3d at 386.

---

[12] Judge George Daniels, in the *Yen LIBOR* case, added, "[t]he term 'Traded Securities,' as defined by the APA, makes clear that Sonterra only assigned its claims relating to its ownership or transaction in securities or securities adjacent instruments." *Yen LIBOR*, 2021 WL 4482826, at *4. "Securities," he wrote, makes "no reference" to Trade Data and there is no reason it "should be interpreted" as such. *Id.*

Dennis (and CalSTRS.[13]) did not join this action until the Second Amended Complaint was filed, nearly three years after the original complaint. Dennis, asserting his own claims and filing years late, cannot "step into the dissolved [Funds'] shoes." *Id.* at 375. Plaintiffs acknowledge this, contending instead that plaintiff Frank Divitto filed within a reasonable amount of time,[14] conferring standing on Dennis who later validly joined. (Opp. at 29-30.) However, a party "stepping in" to prosecute the claims of a dissolved entity must have "standing to prosecute the specific claim in question." *SIBOR*, 991 F.3d at 386. Indeed, *SIBOR* was premised on the assumption that Fund Liquidation Holdings was the real party in interest with standing to prosecute the specific claims because Fund Liquidation Holdings had received a valid assignment from the Dissolved Funds. *Id.* at 388-89.

Divitto was not a real party in interest. "The real party in interest is the party with the legal title to the claim asserted and is the party with the stake in the controversy that is being used to invoke the court's jurisdiction." *Id.* Although the real party in interest does not need to be an assignee of the original filing party, the real party in interest must be the "functional equivalent of the original plaintiff." *SIBOR*, 991 F.3d at 389; *see Branch of Citibank, N.A. v. De Nevares*, 74 F.4th 8, 21 (2d Cir. 2023). Divitto was by no means the functional equivalent of the original plaintiffs. He was not the assignee of any of Sonterra's claims, he did not even trade the same instruments that the Dissolved Funds did. He traded forward contracts (FAC ¶ 37), and the Dissolved Funds traded only FX forwards (FAC ¶ 20). In *Sonterra I*, this Court dismissed Divitto's claims for failing to allege that "he suffered actual damages by transacting at times when defendants manipulated CHF LIBOR." 277 F. Supp. 3d at 570. On either of these facts, the addition of Divitto was not "simply to correct a technical error in the original pleading's caption." *SIBOR*, 991 F.3d at 391. Divitto, himself failing to possess "standing to prosecute the specific claim in question," cannot build a bridge to cure Dennis' lack of standing.

Accordingly, the Court grants UBS's motion to dismiss the Third Amended Complaint in full and with prejudice.

---

[13] Defendants also assert that CalSTRS lacks standing, but CalSTRS does not assert any claims against remaining moving defendant UBS. (TAC ¶ 42.)

[14] Divitto filed as a party in the First Amended Complaint just five months after the original complaint was filed. He has since passed away and is not named as a plaintiff in the Third Amended Complaint.

Dated: New York, New York
September 29, 2025

SO ORDERED:

_____
Sidney H. Stein, U.S.D.J.

9