**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

FUND LIQUIDATION HOLDINGS LLC, as assignee and successor-in-interest to SONTERRA CAPITAL MASTER FUND LTD., FRONTPOINT EUROPEAN FUND, L.P., FRONTPOINT FINANCIAL SERVICES FUND, L.P., FRONTPOINT HEALTHCARE FLAGSHIP ENHANCED FUND, L.P., FRONTPOINT HEALTHCARE FLAGSHIP FUND, L.P., FRONTPOINT HEALTHCARE HORIZONS FUND, L.P., FRONTPOINT FINANCIAL HORIZONS FUND, L.P., FRONTPOINT UTILITY AND ENERGY FUND L.P., HUNTER GLOBAL INVESTORS FUND I, L.P., HUNTER GLOBAL INVESTORS OFFSHORE FUND LTD., HUNTER GLOBAL INVESTORS SRI FUND LTD., HG HOLDINGS LTD., HG HOLDINGS II LTD., RICHARD DENNIS, and the CALIFORNIA STATE TEACHERS' RETIREMENT SYSTEM on behalf of themselves and all others similarly situated,

Plaintiffs,

- against –

CREDIT SUISSE GROUP AG, CREDIT SUISSE AG, JPMORGAN CHASE & CO., NATWEST MARKETS PLC, UBS AG, DEUTSCHE BANK AG, DB GROUP SERVICES UK LIMITED, TP ICAP PLC, TULLETT PREBON AMERICAS CORP., TULLETT PREBON (USA) INC., TULLETT PREBON FINANCIAL SERVICES LLC, TULLETT PREBON (EUROPE) LIMITED, COSMOREX AG, ICAP EUROPE LIMITED, ICAP SECURITIES USA LLC, NEX GROUP LIMITED, INTERCAPITAL CAPITAL MARKETS LLC, GOTTEX BROKERS SA, VELCOR SA AND JOHN DOE NOS. 1-50,

Defendants.

Docket No. 15-cv-00871 (SHS)

**ORDER APPROVING**
**DISTRIBUTION OF THE NET SETTLEMENT FUNDS**

Plaintiffs the California State Teachers' Retirement System, Richard Dennis, and Fund Liquidation Holdings LLC, by and through their Counsel, Lowey Dannenberg, P.C. ("Class Counsel"), having applied for an order approving the distribution of the Net Settlement Funds of the Settlements previously approved in the above-captioned action (the "Action"); the Court having read and considered all materials and arguments submitted in support of Plaintiffs' motion, including the Declaration of Jessie Mahn Regarding Distribution Plan (the "Mahn Declaration"), and the Memorandum in Support of Plaintiffs' Motion for Entry of an Order Approving Distribution of the Net Settlement Funds to Authorized Claimants;

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. This Order adopts and incorporates the definitions in the Stipulations and Agreements of Settlement ("Settlement Agreements") filed in this Action in connection with the Settlements with JPMorgan Chase & Co.; (2) NatWest Markets plc (f/k/a The Royal Bank of Scotland plc); (3) Deutsche Bank AG and DB Group Services (UK) Ltd.; (4) Credit Suisse Group AG and Credit Suisse AG; (5) NEX Group plc, NEX International Limited (f/k/a ICAP plc), ICAP Capital Markets LLC (n/k/a Intercapital Capital Markets LLC), ICAP Securities USA LLC, and ICAP Europe Limited; and (6) TP ICAP plc (f/k/a Tullett Prebon plc and n/k/a TP ICAP Finance plc), Tullett Prebon Americas Corp., Tullett Prebon (USA) Inc., Tullett Prebon Financial Services LLC, Tullett Prebon (Europe) Limited, and Cosmorex AG, Gottex Brokers SA, and Velcor SA (collectively, the "Settling Defendants"), and all capitalized terms, unless otherwise defined herein, have the same meanings as set forth in the Settlement Agreements or the Mahn Declaration.

2. The Court has subject matter jurisdiction over this Action and over all parties to the Action, including all Claimants.

3. Plaintiffs' Motion for Entry of an Order Approving Distribution of the Net Settlement Funds to Authorized Claimants is **GRANTED**. Accordingly:

a. The administrative recommendations of the Court-approved Settlement Administrator, Epiq Class Action & Claims Solutions, Inc. ("Epiq") to accept the Timely Eligible Claims set forth in **Exhibit D-1** to the Mahn Declaration and the Late But Otherwise Eligible Claims set forth in **Exhibit D-2** to the Mahn Declaration are approved.

b. Epiq's administrative recommendations to reject the Rejected Claims set forth in **Exhibit D-3** to the Mahn Declaration are approved;

c. Epiq will calculate award amounts for all Authorized Claimants (Exhibits D-1 and D-2 to the Mahn Declaration) as if the Net Settlement Funds were to be distributed now, after deducting all payments of fees and expenses incurred in connection with administering the Net Settlement Funds and previously approved by the Court, any estimated future payments for such fees and expenses, as well as any further payments for escrow fees, taxes, and costs of preparing appropriate tax returns, by calculating each Authorized Claimant's *pro rata* share of the Net Settlement Funds in accordance with the Court-approved Distribution Plan (an Authorized Claimant's "Distribution Amount").

d. Epiq will then conduct an "Initial Distribution" of the Net Settlement Funds as follows:

i. Authorized Claimants whose Distribution Amounts whose *pro rata* share of the Net Settlement Funds is less than $300 will receive the Minimum Payment Amount for $300.

ii. After determining the portion of the Net Settlement Funds that will be used to make the Minimum Payment Amounts, Epiq will calculate the *pro rata*

share of the remaining Net Settlement Funds for the remaining Authorized Claimants who would have received more than the Minimum Payment Amount.

iii. Authorized Claimants whose Distribution Amounts are less than $50,000 will be paid in full.

iv. After deducting the payments to Authorized Claimants receiving less than $50,000 (which includes those receiving the Minimum Payment Amount), 90% of the remaining balances of the Net Settlement Funds will be distributed *pro rata* to Authorized Claimants whose Distribution Amounts calculate to $50,000.00 or more.

v. The remaining 10% of the payments will be held in reserve (the "Reserve") to address any contingencies that may arise after the distribution with respect to claims and/or to pay for any future fees or expenses incurred in connection with administering the Net Settlement Funds that are authorized by the Court, as well as any further escrow fees, taxes, and the cost of preparing appropriate tax returns. To the extent the Reserve is not depleted, the remainder will be distributed in subsequent distribution(s) of these Settlements.

e. To encourage Authorized Claimants to promptly deposit distribution checks, and to avoid or reduce future expenses relating to unpaid distribution checks, all distribution checks will bear the notation, all distribution checks will bear a notation **"DEPOSIT PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT NEGOTIATED WITHIN 90 DAYS OF ISSUE DATE."** Epiq is authorized to take appropriate action to locate and/or contact any Authorized Claimant who or which has not negotiated his, her, or its payment within said time, as detailed in paragraph 43(vii) of the Mahn Declaration.

f. Authorized Claimants who do not cash their Initial Distribution checks within the time allotted will irrevocably forfeit all recovery from the Settlement. The funds allocated to all such stale-dated checks will be available to be re-distributed to other Authorized Claimants in the Second Distribution (should such distribution occur) as discussed below. Similarly, Authorized Claimants who do not cash their second or subsequent distributions (should such distributions occur) within the time allotted will irrevocably forfeit any further recovery from the Net Settlement Fund.

g. After Epiq has made reasonable and diligent efforts to have Authorized Claimants cash their Initial Distribution checks, but no earlier than six months after the Initial Distribution, Epiq will conduct a second distribution of the Net Settlement Funds (the "Second Distribution") in which the Reserve and any unclaimed amounts remaining in the Net Settlement Funds after the Initial Distribution, after deducting Epiq's fees and expenses incurred in connection with administering the Settlement for which it has not yet been paid (including the estimated costs of such Second Distribution), and after the payment of any Taxes, the costs of preparing appropriate tax returns, and any escrow fees, will be distributed to all Authorized Claimants that have a Distribution Amount of $50,000 or more, negotiated their Initial Distribution payment, and would receive at least $300 from such distribution based on their *pro-rata* share of the remaining funds.

h. Additional distributions, after deduction of costs and expenses, as described above and subject to the same conditions,, may occur thereafter until Class Counsel, in consultation with Epiq, determines that further redistribution is not cost-effective.

4. Unless otherwise ordered by the Court, no Claim Forms received after July 3, 2025 may be accepted for payment from the Settlements, or adjusted after November 13, 2025 may be

eligible for payment. All Persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claim Forms submitted herein, or otherwise involved in the administration or taxation of the Settlement Funds or the Net Settlement Funds, are hereby released and discharged from any and all claims arising from such involvement, and all Class Members, regardless whether they receive payment from the Net Settlement Funds, are hereby banned from making any further claims against the Net Settlement Funds, Plaintiffs, Class Counsel, Plaintiffs' Counsel, the Settlement Administrator, the Escrow Agent, or any other agent retained by Plaintiffs or Class Counsel in connection with the administration or taxation of the Settlement Funds or the Net Settlement Funds, or any other person released pursuant to the Settlement Agreements, beyond the amounts allocated to Authorized Claimants.

5. Unless ordered by the Court, one year after the final distribution, or, if there are no additional distributions, two years after the Initial Distribution, Epiq will destroy the paper and electronic copies of the claim forms and all supporting documentation.

6. The Settlement Administrator may be paid up to an additional $58,685 from the Settlement Funds for estimated fees and expenses expected to be incurred in connection with the distribution of the Net Settlement Funds. Any costs or expenses in excess of $58,685 may be paid from the Settlement Fund upon approval of the Court.

7. This Court retains jurisdiction to consider any further applications concerning the administration of the Settlements with Settling Defendants, and such other further relief as this Court deems appropriate.

**IT IS SO ORDERED.**

Signed this 6th day of February, 2026.

Honorable Sidney H. Stein
United States District Judge